# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: APPLE iPHONE 3G AND 3GS "MMS" MARKETING AND SALES PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CASES | CIVIL ACTION NO. 09-05470<br><br>MDL No. 2116<br><br>SECTION "J"<br>JUDGE BARBIER<br><br>MAGISTRATE JUDGE WILKINSON |

## DEFENDANT APPLE'S BRIEF ON THE TIMING AND SCOPE OF DISCOVERY

Pursuant to the Court's January 15, 2010 Order, defendant Apple Inc. ("Apple") files its Brief on the Scope and Timing of Discovery.

### INTRODUCTION

The Court has asked for briefing on the timing and scope of discovery. Apple believes that the actions in this MDL proceeding (the "Actions") should proceed according to established principles for complex litigation. Thus, discovery should not begin until after amendments to the existing pleadings are finalized, the sufficiency of plaintiffs' allegations is scrutinized pursuant to Rules 8, 9 and 12 of the Federal Rules of Civil Procedure, and the pleadings are settled. When discovery does commence, it should be limited to class issues as set forth below.

- 1 -

As discussed at the previous Case Management Conference, the initial motion(s) Apple contemplates do not focus on technical pleading defects, but rather go to issues that are potentially dispositive of the entire case. At a minimum, motion practice will substantially limit the potential class, the potential class period, and the scope of discovery, thereby conserving the resources of all parties and the Court.

Further, when discovery commences, it should be limited to class issues. Unlike many cases where it is difficult to draw a line between class and merits discovery, here class discovery will be well-defined and relatively limited. Plaintiffs' claims are based on alleged uniform representations regarding the availability of the Multi-Media Services ("MMS") enhanced text function on Apple's iPhone. Thus, class discovery necessarily will focus on the timing and content of the representations, and the purported class members' exposure to and reliance on the representations. Until that discovery is completed and the issue of class certification is resolved, additional discovery would be both premature and potentially wasteful.[1]

**RELEVANT BACKGROUND**

As this Court is aware, the central focus of this litigation surrounds the availability of MMS on the Apple iPhone. MMS is one of many functions offered on Apple's iPhone and supported by ATTM's wireless network. MMS enhances the basic text function of the iPhone by enabling users to send pictures and videos in addition to standard text. MMS was not offered until the release of the most recent iPhone, the iPhone 3GS in June 2009. (From the time the original iPhone was released, however, other functions, such as email, were available on the iPhone to allow users to send pictures and videos.)

---

[1] Apple understands that defendant AT&T Mobility LLC ("ATTM") proposes that all discovery should be deferred pending the resolution of its anticipated motions to compel arbitration. Defendant Apple agrees with ATTM. Discovery should be deferred as to Apple as well as ATTM. If it is not, piecemeal, inefficient and duplicative

**The iPhone**

Apple launched the original iPhone ("iPhone 2G") in June 2007. The 2G phone did not have MMS capability. No MMS functionality was available or advertised.

A year later, Apple launched a new version of the iPhone – the iPhone 3G. Both iPhone 2G and iPhone 3G had the capability to send text messages using Standard Messaging Services ("SMS") from the time of their initial release. Neither iPhone 2G nor iPhone 3G supported the enhanced multimedia text function, MMS.

In June 2009, Apple launched a third generation of its iPhone – iPhone 3GS. As part of the iPhone 3GS launch, Apple announced that MMS functionality would be supported by ATTM at the end of the summer on both the iPhone 3GS and the iPhone 3G. (For the iPhone 3G, MMS and other additional functionality would be provided through a software update.) MMS does not affect the iPhone's basic SMS text function but merely enhances the basic text feature by enabling users to send pictures and videos in addition to standard text. Subsequent advertisements or other representations by defendants regarding MMS functionality specifically disclosed that MMS would not be available until the end of Summer 2009. On September 4, 2009, ATTM announced that MMS support would be enabled in the United States on September 25, 2009, and it has been available since that date.

**The Actions**

As the facts described above demonstrate, members of the purported class were on notice at all relevant times as to when MMS would become available and could not have been misled

---

discovery will result. The better course is to begin discovery after the arbitration motions are resolved, so that the discovery can proceed against both defendants in a consolidated, uniform process.

regarding its availability. Notably, the first of these lawsuits was filed before MMS was even enabled. The pile-on that has followed consists of complaints that are virtual word-for-word copies of the complaint in the first-filed lawsuit. None of the complaints reflects the fundamental reality that MMS was released as represented, or that the timing of the release was disclosed from the very beginning. No one was misled and no one was injured. That reality defeats plaintiffs' claims. Even putative class members who somehow claim to have been misled were without MMS functionality for – at most – three months.

The great majority of plaintiffs' complaints – nineteen of twenty-three – were copied almost *verbatim* from the complaint filed by Meredith Goette, et al., in Missouri on July 29, 2009. The language and allegations of *Goette* are essentially repeated in the following 18 complaints: *Carbine* (Louisiana 8/7/09), *Mecker* (Illinois 8/17/09), *Sullivan* (Ohio 8/25/09), *Petrangelo* (Ohio 8/25/09), *Carr* (Ohio 8/27/09), *Kamarian* (California 9/10/09), *Sterker* (California (9/14/09), *Williams* (California 9/23/09), *Irving* (Minnesota 9/24/09), *Baxter* (Michigan 10/6/09), *Franklin* (Alabama 10/28/09), *Monticelli* (11/16/09), *Davis* (Alabama 12/15/09), *Friloux* (Texas 12/16/09), *Mejia* (Florida 12/24/09), *Gros* (Louisiana 12/29/09), *Jackson* (Mississippi 1/4/10), *Novick* (Florida 1/5/10), and *Aleman* (Texas 1/7/10).

The claims set forth in these nineteen complaints are not supported by sufficient factual allegations to satisfy Rules 8, 9 and 12.[2] The specific facts that plaintiffs avoid are fatal to their claims. Plaintiffs claim that Apple began marketing MMS as early as 2008 without identifying a single advertisement from that time period. That is because Apple did not advertise or market MMS until 2009. Similarly, the complaints allege that Apple advertised MMS as being immediately available in June 2009, but omit the express disclaimer contained in Apple's

---

[2] The remaining four complaints are similarly deficient – none identifies the specific representations that allegedly induced any of the named plaintiffs to purchase an iPhone.

advertisements that MMS would not be available until late summer 2009. Finally, the complaints contend that the only notice regarding MMS availability was a "mouse print disclaimer" on Apple's website, but again omit the disclaimer that was included wherever MMS was advertised.

## ARGUMENT

### I. EARLY DISPOSITIVE MOTIONS WILL RESOLVE OR SIGNIFICANTLY NARROW THE ACTIONS AND DISCOVERY SHOULD BE STRUCTURED ACCORDINGLY

Discovery should not commence until the pleadings are settled. More specifically, Apple suggests that plaintiffs be given an opportunity to finalize and amend their existing complaints to provide proper factual support for their allegations, and to amend or delete allegations that are not supportable. If appropriate, Apple will then file its motions challenging the sufficiency of those pleadings under Rules 8, 9 and 12. Alternatively or in addition, Apple may also file an early dispositive motion if it is necessary to introduce limited documents outside the pleadings to demonstrate, for example, the existence and content of the MMS disclosure. Plaintiffs and Apple will then meet and confer to determine what discovery, if any, is necessary for plaintiffs to oppose Apple's motions.

Apple's proposal would promote the "just and efficient" prosecution of this consolidated litigation as contemplated by 28 U.S.C. § 1407(a). As set forth below, none of the complaints in the Actions satisfies the requirements of Rules 8, 9 and 12. When the complaints are scrutinized under those Rules, and if necessary tested by an early dispositive motion, Apple believes that the actions may well be dismissed in their entirety; if not, they will be greatly narrowed. As a result, unnecessary and overbroad discovery will be avoided.

### A. The Complaints As Pled Do Not Satisfy Rules 8, 9 or 12

Not a single one of the twenty-three complaints filed thus far passes muster under federal pleading standards. Most of the complaints appear to have been copied from pleadings filed early in the Summer of 2009, before MMS was available. None of the complaints contains sufficient, specific factual allegations to state a claim under Rules 8, 9 and 12, especially as those Rules have been interpreted and amplified in the United States Supreme Court's recent decisions in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

Thus, the first-filed *Goette* complaint states that the named plaintiffs "went into an AT&T store on or about August 2008" – almost a year before MMS was advertised in any form – and that "the store representative in each case misrepresented and/or concealed, suppressed, or omitted material facts as to the iPhone having MMS functionality." See Paragraphs 41 and 43 of the original *Goette* complaint. These generalized and conclusory assertions fall far short of the specific allegations required to satisfy the Federal Rules. *See Iqbal*, ___ U.S. at ___, 129 S. Ct. at 1949 (holding that conclusory, talismanic recitations of elements of causes of action do not satisfy the specificity requirements of Rule 8). Indeed, these allegations could fairly be read to mean that the "store representative" said *nothing* about MMS (that is certainly the case for the named plaintiffs and purported class members who bought their iPhones in 2008). Yet these copy-cat complaints repeat these allegations essentially unaltered.

The missing allegations, moreover, are solely in plaintiffs' possession and control. No discovery is necessary for plaintiffs to identify the specific ads, website information, or oral statements they relied upon.

Indeed, if discovery takes place before plaintiffs are required to allege viable claims, it is likely to impede defendants' ability to obtain an accurate picture of what, precisely, the plaintiffs

saw or heard that led each of them to purchase an iPhone. There is a manifest danger that plaintiffs will be unable to separate what they knew and relied upon at the time of purchase from what they learned later through this lawsuit. For this reason among others, the pleadings should be settled before discovery commences.

### B. Plaintiffs Must Adequately Plead Their Claims Before Discovery Commences

Threshold issues as to the sufficiency of plaintiffs' allegations should be resolved before the parties undertake expensive, protracted discovery. Plaintiffs have no legitimate basis to object to deferring discovery until amendment of their pleadings and an evaluation of the sufficiency of their allegations. Under the Federal Rules, plaintiffs have an obligation to state a claim before unlocking the door to discovery. *Twombly,* 550 U.S. at 557-59, 127 S. Ct. at 1966-67. Indeed, at the status conference, the Court recognized the importance of the concerns discussed in *Twombly* when plaintiffs' counsel indicated that they wanted to conduct discovery to facilitate amendments of the complaint. In the words of the Court:

> Well, you're supposed to have facts when you file a lawsuit. That's the whole idea. You can't do discovery before you file a lawsuit.

January 15, 2010 Transcript, p. 15.

Not only is a plaintiff required to have facts before he or she files a lawsuit, a lawsuit is not to be filed without an independent investigation into the facts. Complaints that merely copy the allegations of another lawsuit do not satisfy the independent due diligence required prior to filing a complaint. *See Fraker v. Bayer Corp.*, No. CV F 08-1564 AWI GSA, slip op. (E.D. Cal. Oct. 6, 2009) and *Johns v. Bayer Corp.*, No. 09-CV-1935 DMS (JMA), slip op. (S.D. Cal. Feb. 9, 2010) (copies attached). In these recent consumer fraud cases, the courts struck allegations that were copied from other proceedings. Here, the complaints in eighteen of the Actions are merely

copies of an early complaint filed in July 2009,[3] and, unless repled, are similarly subject to dismissal.

Apple asks only what the Federal Rules require – that plaintiffs state a claim based on independent inquiry into the actual facts. To survive a motion to dismiss, a complaint must contain sufficient facts that "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed [through discovery]." 550 U.S. at 558, 127 S. Ct. 1967. Gone are the days when a plaintiff could assert "a wholly conclusory statement of claim" and survive a motion to dismiss simply because his "pleadings left open the possibility that [he or she] might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 550 U.S. at 561, 127 S. Ct. at 1968. *Twombly* and *Iqbal* require that plaintiff plead facts establishing more than a mere possibility of recovery.

Moreover, the present Actions are based on allegations of fraud and misrepresentation, and thus are subject to the requirements of Rule 9(b). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Plaintiffs are required to plead the "who, what, when, where, and how" of the misconduct charged, as well as the circumstances indicating fraudulent conduct. *See Williams v. WMX Techs.,* 112 F.3d 175, 178 (5th Cir. 1997), *cert. denied*, 522 U.S. 966, 118 S. Ct. 412 (1997) ("[d]irectly put, the who, what, when, and where [of fraud] must be laid out *before* access to discovery process is granted"); *see, e.g., Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 721 (E.D. La. 2009) (applying Rule 9(b) to Louisiana Unfair Trade Practices Act where **"plaintiff's [] claim is based on defendants' allegedly fraudulent misrepresentation"**).

---

[3] The other four complaints are substantially similar.

These pleading requirements are based in large measure on the potential for discovery abuse. In the words of the Supreme Court: "[I]t is only by taking care to require allegations that reach the [requisite] level [of specificity] that we can hope to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support [the alleged] claim." *Twombly*, 550 U.S. at 559, 127 S. Ct. at 1967. "Something beyond the mere possibility must be alleged, lest the plaintiff with 'a largely groundless claim' be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id*. at 557-58, 127 S. Ct. at 1966.

Plaintiffs thus must be afforded an opportunity to amend their complaints to comply with Rules 8, 9 and 12. Once the amendments are complete, defendants should be allowed to challenge the sufficiency of those allegations by appropriate motions.

    **C.**    **Apple's Motions Will Dispose of the Actions or at a Minimum Greatly Narrow the Issues for Discovery**

Apple believes that if plaintiffs' claims, including the full content of the relevant advertisements and disclosures, are properly pled, defendants' motions will dispose of these Actions. Plaintiffs' core allegation is that defendants' advertising and marketing misrepresented the availability of a single feature, MMS, of the iPhone 3G and 3GS. However, from the first time MMS was announced, defendants repeatedly and consistently disclosed that MMS would not be available until late Summer 2009. There was no misrepresentation, concealment, or misconduct of any kind. If this issue cannot be resolved on the pleadings, it can certainly be resolved by an early dispositive motion introducing limited documents showing the existence and content of the disclosure.

If defendants' preliminary motions are granted in their entirety, there will be no need for further discovery. Even if the motions are not granted in their entirety, they will substantially narrow the parties and issues remaining and the discovery that will be required. For example, most of the complaints seek certification of a class of purchasers from July 1, 2008, and include named plaintiffs who purchased their iPhones in 2008, long before MMS was even advertised as an option. The proposed early motion practice thus should, at a minimum, eliminate those named plaintiffs who purchased prior to 2009 and otherwise significantly narrow the scope of discovery. Documents and witnesses regarding the iPhone 2G, or regarding the iPhone 3G from the time of its launch until the announcement and release of the software upgrade in 2009, will be completely irrelevant and thus not subject to discovery. Apple's proposal conserves the resources of all parties and the Court.

### III. The Court Should Bifurcate Discovery And Address Class Issues Prior to Merits Discovery

As set forth above, Apple believes that the Actions can be disposed of by early motion practice. If any portion of plaintiffs' claims survives, however, discovery should then focus on class issues. In the present Actions, class and merits discovery are readily delineated. Plaintiffs' claims are based entirely on what defendants represented regarding the availability of MMS. Thus, class discovery will necessarily be limited to defendants' alleged representations (including relevant disclosures), where and when these representations were made, and what representations plaintiffs were exposed to and relied upon.

When that discovery is complete, the parties and the Court will have in their possession all information necessary to determine whether any class can be certified. Apple believes that no class can be certified. The purported class members were each exposed to different advertisements and/or representations, if any at all. Plaintiffs' individual transactions involve

different iPhone products purchased at different times in a variety of different retail stores for different reasons and with different patterns of use. Further, Plaintiffs raise claims based on widely disparate state consumer protection and warranty laws, as well as state-law contract, fraud, tort, and other common-law claims. As a result, plaintiffs will not be able to meet Rule 23's requirements of typicality, commonality, adequacy or predominance of common issues, among other deficiencies.

If defendants are correct and class certification is denied, the Actions will likely be dismissed or resolved. If any plaintiff chooses to pursue his or her individual claims, the scope of any merits discovery will be dramatically reduced. Even if a class is certified in one or more of the actions, any certified class is likely to be significantly narrower than the classes alleged in the complaints. The efficiency of resolving class issues before commencing merits discovery is evident; the first phase of discovery should be limited to class issues. *Stewart v. Winter*, 669 F.2d 328, 331-32 (5th Cir. 1982) ("[W]e think it imperative that the district court be permitted to limit pre-certification discovery to evidence that, in its sound judgment, would be 'necessary or helpful' to certification decision."); 32-21P *Manual for Complex Litigation* (Fourth) § 21.1 (2010) ("[d]iscovery relevant only to the merits delays the certification decision and may ultimately be unnecessary").

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE, LLC

*/s/ David W. O'Quinn*
QUENTIN F. URQUHART, JR. (#14475)
DAVID W. O'QUINN (#18366)
DOUGLAS J. MOORE (#27706)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101

PENELOPE A. PREOVOLOS (*admitted pro hac vice*)
ANDREW MUHLBACH (*admitted pro hac vice*)
HEATHER A. MOSER (*admitted pro hac vice*)
MORRISON & FOERSTER, LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been electronically filed and served upon all known counsel of record by electronic service and/or U. S. mail, properly addressed, this the 23rd day of February, 2010.

*/s/ David W. O'Quinn*