In Re: Apple iPhone 3G and 3GS MMS Marketing and Sales Practices Litigation                                    Doc. 34 Att. 1
Case 2:09-md-02116-CJB-JCW   Document 34-2   Filed 02/23/10   Page 1 of 9

1

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA
 2

 3   ****************************************************************

 4   IN RE:  APPLE iPHONE 3G AND
     3GS MMS MARKETING AND SALES
 5   PRACTICES LITIGATION
                                        MDL NO. 2116
 6                                      NEW ORLEANS, LOUISIANA
                                        JANUARY 15, 2010, 9:30 A.M.
 7

 8   ****************************************************************

 9
                       TRANSCRIPT OF STATUS CONFERENCE
10            HEARD BEFORE THE HONORABLE CARL J. BARBIER
                     UNITED STATES DISTRICT JUDGE
11

12

13   APPEARANCES:

14
     FOR THE PLAINTIFF:        LAW OFFICES OF SCOTT R. BICKFORD
15                             BY:  SCOTT R. BICKFORD, ESQUIRE
                               338 LAFAYETTE STREET
16                             NEW ORLEANS, LA   70130

17
                               THE MURRAY LAW FIRM
18                             BY:  STEPHEN MURRAY, ESQUIRE
                               650 POYDRAS STREET, SUITE 1100
19                             NEW ORLEANS, LA   70130

20
                               CLIMACO, LEFKOWITZ, PECA,
21                             WILCOX & GARAFOL
                               BY:  JOHN R. CLIMACO, ESQUIRE
22                             55 PUBLIC SQUARE
                               CLEVELAND, OH 44113
23

24                             DANIEL BECNEL LAW OFFICES
                               BY:  DANIEL BECNEL, ESQUIRE
25                             106 WEST 7TH STREET
                               RESERVE, LA   70084
```

```
 1  FOR THE DEFENDANT:      IRWIN, FRITCHIE, URQUHART & MOORE
                            BY:  QUENTIN URQUHART, JR., ESQUIRE
 2                          400 POYDRAS STREET
                            NEW ORLEANS, LA 70130
 3
                            JONES WALKER
 4                          BY:  GARY J. RUSSO, ESQUIRE
                            600 JEFFERSON STREET, SUITE 1600
 5                          LAFAYETTE, LA  70501

 6                          CROWELL & MORING
                            BY:  KATHLEEN T. SOOY, ESQUIRE
 7                               TRACY A. ROMAN, ESQUIRE
                            1001 PENNSYLVANIA AVENUE, NW
 8                          WASHINGTON, DC  20004

 9                          MORRISON FORESTER
                            BY:  PENELOPE PREOVOLOS, ESQUIRE
10                               HEATHER A. MOSER, ESQUIRE
                            425 MARKET STREET
11                          SAN FRANCISCO, CA 94105

12
    ALSO PRESENT:           BRIAN STRANGE, ESQUIRE
13                          JAMES DUGAN, ESQUIRE
                            RONNIE PENTON, ESQUIRE
14
                            DOUGLAS MOORE, ESQUIRE
15                          LAWRENCE CENTOLA, ESQUIRE
                            DAVID CIALKOWSKI, ESQUIRE
16
                            ANITA JASKOT, ESQUIRE
17                          E. KIRK WOOD, ESQUIRE
                            TIMOTHY BLOOD, ESQUIRE
18
                            PETER CAMBS, ESQUIRE
19                          DANIEL GERMAIN, ESQUIRE
                            TIM ENGELMEYER, ESQUIRE
20
                            MAX MARX, ESQUIRE
21                          JOEL SCHWARTZ, ESQUIRE
                            PATRICK WARNER, ESQUIRE
22
                            FRANK PISCITELLI, ESQUIRE
23                          GARY DOUGLAS, ESQUIRE
                            VIRGINIA ANELLO, ESQUIRE
24
                            MICHAEL ECUYER, ESQUIRE
25                          J. ANDREW MEYER, ESQUIRE
```

```
OFFICIAL COURT REPORTER:      CATHY PEPPER, CRR, RMR, CCR
                              500 POYDRAS STREET, ROOM B406
                              NEW ORLEANS LA  70130
                              (504) 589-7779

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
PRODUCED BY COMPUTER.
```

**I N D E X**

| AGENDA | PAGE |
|---|---|
| INTRODUCTION OF COUNSEL................................ | 4 |
| FILING OF ADDITIONAL COMPLAINTS........................ | 7 |
| MASTER COMPLAINT....................................... | 11 |
| SCOPE OF DISCOVERY..................................... | 11 |
| AMENDMENT OF THE PLEADINGS............................. | 13 |
| FILING RESPONSIVE PLEADINGS OR INITIAL MOTIONS......... | 17 |
| TIMING AND SCOPE OF DISCOVERY.......................... | 20 |
| DESIGNATING LIAISON COUNSEL ON THE DEFENSE SIDE........ | 39 |
| DATE OF **NEXT STATUS CONFERENCE IS FRIDAY, MARCH 12TH, AT 9:30**............................................. | 42 |

1  this question, there will be discovery on the arbitration issue
2  as well.
3          THE COURT:  What kind of discovery would you have an
4  arbitration issue?
5          MR. BICKFORD:  Well, if, in fact, the arbitration --
6          THE COURT:  Wouldn't that be a --
7          MR. BICKFORD:  -- is unconscionable under the terms of
8  the law; in other words, if, in fact, where the arbitration --
9          THE COURT:  Wouldn't that be a legal issue, not a
10 factual issue?  I'm trying to get some understanding of what kind
11 of discovery you would need on that.
12         MR. BICKFORD:  For instance, I don't know what
13 agreements -- AT&T and Apple have a monopoly with regard to the
14 iPhone.  I don't know what kind of joint agreements they have
15 between themselves which may abrogate the arbitration, itself.  I
16 don't know what kind of agreements they have or memos that go
17 back and forth with regard to arbitration.  I don't know how they
18 communicated in the arbitration clause to individual consumers,
19 whether or not that was done electronically, whether or not it
20 was done five days after people bought the phone already.  A lot
21 of the agreements --
22         THE COURT:  I don't know enough about this, but you buy
23 one of these phones, you sign some sort of agreement?  Do you get
24 an agreement?
25         MR. BICKFORD:  No, it's done electronically.

1    THE COURT: Every time I go on the Internet to do
2 anything, I've got to say "I accept," and you accept, and God
3 knows what you're accepting when you accept something, but
4 everybody just says "I accept" now, I guess, if you want to get
5 through the web page.
6    MR. BICKFORD: But I can buy the phone at an Apple store
7 and then go and sign up with AT&T separately.
8    THE COURT: What I'm saying, one way or another, you're
9 signing up for some agreement. It's in the agreement. Whatever
10 it is, it is. I just don't understand what kind of discovery
11 you're going to need on that. It seems to me they could tee that
12 up as a legal issue. Once they tee it up and you file your
13 opposition, you'll show there is a need for some limited
14 discovery. I can't envision it now, but maybe you're right.
15    MR. BICKFORD: There has been extensive discovery, for
16 instance, in the Eleventh Circuit in a similar AT&T arbitration
17 issue granted by the Court there because there are
18 conscionability issues with regard to the arbitration clause, how
19 it's communicated to people, where it is, how it affects people,
20 whether they have the opportunity, whether or not it's binding,
21 whether or not it is, in fact, an agreement that they have in
22 place that I have a choice of, given the consumer product I'm
23 buying.
24    So there is a variety of issues that need to be
25 discovered with regard to the case. As I said, whether or not

1   there are other legal agreements that go between the two
2   companies in terms of the way they set this up -- because Apple
3   does not have an arbitration agreement contained in their
4   contracts.  AT&T claims they do, in certain cases.  Do they have
5   it for all the people here?  Do they not?  It is something that
6   is going to raise a number of factual issues in order to brief.
7              I've looked at the law.  The laws that the courts
8   have looked at in arbitration cases are heavily fact-dependent in
9   terms of whether or not the arbitration agreement is
10  unconscionable in terms of how it's applied to individual
11  consumers.
12             That's part of the track of discovery.  The other
13  part of the track of discovery becomes, you know, in terms of --
14  so that we're not wasting a half a year and not doing any
15  discovery is going forward in terms of class certification issues
16  as well as issues on the merits.
17             THE COURT:  Let me hear from the other side.
18             MR. RUSSO:  Your Honor, on behalf of ATTM, you have
19  actually articulated our position in what we've suggested to
20  Scott earlier.  We actually thought we had made some progress in
21  that regard.  Our suggestion, Your Honor, is allow us to file our
22  motion to enforce the arbitration clause.  We'll meet and confer
23  with the plaintiffs to talk about discovery.  Because we're not
24  suggesting right now that there is absolutely no way any
25  discovery is going to be conducted, but we'd like to hear what

1  they have to say.  They'll see our briefs.  They can review them.
2  We'll meet and confer, and if we can't agree, we'll come back to
3  Your Honor for some direction on that point.
4            Rather than have that discussion now, we would like
5  to get our motion filed, have our discussion with them and see if
6  there really is an issue.  There may not be one.
7            MR. BICKFORD:  Which is why we asked the Court for the
8  briefing schedule on these issues with regard to the scope and
9  need for discovery, because I think that there are several
10 complicated issues that we would like to apprise the Court of
11 more fully.  We think we can do --
12           THE COURT:  How much time do you want to do that?
13 That's probably a good suggestion.
14           MR. BICKFORD:  I think there is a suggested time
15 schedule that we put in the our brief, which is essentially
16 mid-February basis, we both file briefs simultaneously with the
17 Court and then some time shortly thereafter, we file replies to
18 each side's brief so that the issue is laid out before the Court,
19 and then at a monthly status conference, the Court, having had a
20 chance to review it, we can either argue our positions or the
21 Court could ask us questions with regards to its concerns about
22 them.
23           MR. RUSSO:  Your Honor, our only concern with that is we
24 have not suggested there is not going to be any discovery, but we
25 hope to get the pleadings amended, see what the issues are,

Case 2:09-md-02116-CJB-JCW   Document 34-2   Filed 02/23/10   Page 8 of 9

25

1  determine what motions we need to file.  At which point, we sit
2  down and confer with plaintiffs on what discovery is necessary.
3          THE COURT:  I kind of sense that you all know what the
4  issues are now from what's been filed.  This is not that
5  complicated a case in terms of what's alleged here.  It's a
6  pretty simple, straightforward case.  It's alleged that the
7  defendants misrepresented some feature of this phone when they
8  marketed it.
9          I think you know what the issues are.  You said it
10 was all fully disclosed.  It's not a complicated case to me.
11 We've got all of these lawyers here, but it boils down to, it
12 seems to me, a pretty simple, straightforward -- there may be
13 some difficult legal issues, like arbitration and some of these
14 other issues, but the case, itself, seems pretty basic and simple
15 to me.
16         MR. URQUHART:  Your Honor, if I could just be heard just
17 briefly at this point, and I'm going to have Ms. Preovolos
18 address it specifically.  I believe there are some factual issues
19 that are worth getting clarified early before we go down the
20 discovery path, and I'll let Ms. Preovolos --
21         THE COURT:  Well, then, it seems to fit with what
22 Mr. Bickford is suggesting is that each side get, I think he's
23 asking for about 30 days from now to file briefs on these various
24 issues, to lay out your positions, and certainly I would
25 encourage you all to meet and talk to each other, to see to what

REPORTER'S CERTIFICATE

   I, Cathy Pepper, Certified Realtime Reporter, Registered Merit Reporter, Registered Professional Reporter, Certified Court Reporter of the State of Louisiana, Official Court Reporter for the United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

                              *s/Cathy Pepper*
                              Cathy Pepper, CRR, RMR, CCR
                              Official Court Reporter
                              United States District Court