UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| IN RE: APPLE iPHONE 3G AND 3GS "MMS"<br>MARKETING AND SALES PRACTICES<br>LITIGATION | : MDL NO. 2116<br>:<br>: 2:09-md-2116<br>:<br>: |
| THIS MATTER APPLIES TO ALL CASES | : SECTION: J<br>:<br>: JUDGE BARBIER<br>: MAG. JUDGE WILKINSON |

**PLAINTIFFS' REPLY MEMORANDUM ON THE
SCOPE, EXTENT, AND TIMING OF DISCOVERY**

NOW INTO COURT, through Plaintiffs' Liaison Counsel and Plaintiffs' Executive Committee, come the Putative Class Plaintiffs ("Plaintiffs"), who file the instant Reply Memorandum in accordance with Pre-Trial Order #3; to wit:

Although Defendants have proposed to introduce some carefully selected documents in the context of an "early dispositive motion" to dismiss Plaintiffs' claims, they argue that Plaintiffs should not be entitled to combat evidence with evidence. Plaintiffs' claims are fact-based, and cannot be "resolved" by the introduction of Defendants' favorite documents. To suggest that Plaintiffs should be required to argue against such evidence empty-handed is grossly unfair. Thus, Plaintiffs should be permitted to conduct discovery *now*, in order to prepare to meet Apple's version of the facts in this action. Such discovery should not be conducted on a bifurcated schedule—neither Apple nor AT&T has shown that such an approach is necessary or efficient here and indeed it is neither, as Plaintiffs explain herein. As to AT&T, discovery into the validity of the arbitration clause at issue is appropriate and necessary prior to a motion to compel arbitration. Accordingly, Plaintiffs request that the Court allow Plaintiffs to propound discovery upon Apple and to conduct limited discovery as to AT&T.

1

I.      **FACT ISSUES ARE EVIDENT, CONTRARY TO DEFENDANTS' ASSERTIONS.**

Defendants have consistently taken the position that all advertisements of MMS subsequent to June 2009 disclosed that MMS would not be available until the end of the summer of 2009 and propose to bring an "early dispositive motion" with support from documents outside the pleadings.  *See* Def. AT&T Br. (Rec Doc #34) at 2; Def. Apple Br. (Rec Doc #32) at 3. Aside from the fact that this is manifestly one-sided, Plaintiffs have submitted an August 25, 2009 video[1] of the images displayed in Apple and AT&T stores specifically advertising MMS availability for the iPhone that do not mention *anything* about the lack of availability until summer 2009.[2]  Thus, Exhibit "A" directly contradicts the Defendants' statements contained in their briefs and statements made in open court and demonstrates that fact issues exist.

There is a need for immediate discovery into the entirety of facts of this case.  Defendants cannot be allowed to cherry-pick the documents beneficial to their case, produce only those cherry-picked documents, and then file a dispositive motion.  If evidence is going to be produced, Plaintiffs should have a similar opportunity to combat that evidence with the particulars surrounding the marketing, advertisements, and contractual obligations involved here. Such discovery should commence immediately.

II.     **PLAINTIFFS' PLEADINGS ARE ADEQUATE AND DISCOVERY SHOULD PROCEED.**

Apple argues that discovery should not commence until the pleadings are "settled."[3] Based on the statements made to date, Apple will never agree that the pleadings are "settled" until the Plaintiffs agree to Apple's version of the facts.  Regardless of the facts pled in the

---

[1] *See* Exhibit "A" (manual attachment) to Rec Doc #35.
[2] It is undisputed that on August 25, 2009 MMS was not available for the iPhone in the United States.
[3] *See* Def. Apple Br. at 5.

original complaints or subsequent complaints, Apple will file dispositive motions and has proposed to offer evidence supporting such motions.  Discovery should be allowed pending the Apple's filing of its dispositive motions, to allow Plaintiffs to respond to such motions.

### A.   Apple's Proposal Necessitates Discovery Begin Immediately.

Apple prefaces its Rule 12 arguments by arguing that Putative Class Plaintiffs must "state a claim before unlocking the door to discovery."  *See* Def. Apple Br. (Rec Doc #32) at 7 (citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)).  The Putative Class Plaintiffs have alleged three legal theories in their complaints, all of which state a claim and necessitate discovery:

●   *Breach of Contract:*   AT&T was contractually obligated to provide MMS. However, AT&T did not provide MMS.  Therefore, Plaintiffs and putative Class Members were charged for that service, despite never receiving it during the class period.   Apple shares liability for damages because, by virtue of Apple's exclusive bargain with AT&T, Plaintiffs and Class Members could not receive services, including MMS, from other providers.

●   *Consumer Protection I (Material Omissions):*   Because AT&T's service agreement expressly included the obligation of AT&T to provide MMS, both AT&T and Apple had a duty to adequately disclose that MMS would *not* be provided to iPhone users.  Failure to do so constituted a material omission.

●   *Consumer Protection II (Affirmative Misrepresentations):*   Apple and AT&T affirmatively marketed and advertised the iPhone's MMS functionality without adequate disclosure that such messaging services were not available at the time of purchase.

Thus, the factual allegations currently in the complaints filed in this action state valid claims and discovery is appropriate...

Apple admits that the motions it contemplates filing require production of evidence.[4]  If the motions require documents beyond the pleadings, discovery should commence allowing the

---

[4] *See* Transcript of January 15, 2010 Status Conference, at 27, wherein counsel for Apple states Apple's intent to file ". . . simple, limited summary judgment motions."; *id.* at 28 wherein

Plaintiffs to obtain the necessary documents that contradict Apple's version of the facts and that are needed to oppose Apple's motions.

Commencing discovery does not preclude Apple from filing dispositive motions. Plaintiffs can propound discovery followed by Apple filing its dispositive motions. Once Plaintiffs and the Court review Apple's dispositive motions, the Court can limit or expand the scope of discovery depending on the issues raised in the dispositive motions.

Should Apple file dispositive motions prior to Plaintiffs being allowed to conduct any discovery, Plaintiffs will oppose and cite Federal Rule of Civil Procedure 56(f) which allows the non-moving party to keep open the doors of discovery in order to adequately combat a summary judgment motion. *See Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915 (5th Cir. 1992). Such "continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course" unless "the non-moving party has not diligently pursued discovery of the evidence." *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1267 (5th Cir. 1991).

**B.      Apple's Arguments Regarding Sufficiency of the Pleadings Should Be Ignored.**

Apple's argument that Plaintiffs' pleadings are insufficient under Federal Rules of Civil Procedure 8, 9 and 12 is disingenuous. First, Apple completely contradicts itself, on the one hand arguing that Plaintiffs have not satisfied the pleading standards under Rule 8 and the Supreme Court's decisions in *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and yet, on the other hand, offering to produce evidence to defeat certain of Plaintiffs' claims on the merits. The purpose of Rule 8 is to provide

---

counsel for Apple stated ". . . that there are probably some documents outside the pleadings we would want to introduce . . ."

a defendant with notice so that the defendant is prepared to defend against the claim. *Keko v. Hingle*, 1999 WL 508406, at *7 (E.D. La. 1999) (citing Wright & Miller, Federal Practice & Procedure: Civil 2d § 1202). Here, Apple clearly is on notice of the claims in this case, evidenced by its stated ability to defeat them by carefully plucking and producing certain documents in an attempt to defeat Plaintiffs' claims, before Plaintiffs have even filed any amended complaint in this action. Thus, any attempt by Apple to argue that Plaintiffs have not satisfied Rule 8 pleading burdens should not be countenanced.

Furthermore, Apple faults Plaintiffs' pleadings for deficiency under Rule 9 and states that Plaintiffs themselves possess any information they may need to combat Apple's proposal to marshal evidence to defeat their fraud-based claims. But Apple is proposing to selectively produce evidence related to Plaintiffs' fraud claims—which are by their very nature questions of fact—while seeking to prevent Plaintiffs from discovering any information that might refute this selective production. Apple may not mount a defense based on cherry-picked documents, to defeat claims which present factual questions, and at the same time argue that Plaintiffs should not be entitled to review the entirety of the evidence.

Finally, Apple's arguments as to the deficiencies in Plaintiffs' pleadings are an attempt to color the Court's view on this action and are inappropriately presented. Apple should save its critique for a formal motion to dismiss.

## III.   IN THIS CASE, BIFURCATION OF DISCOVERY IS NOT IN THE INTERESTS OF JUDICIAL EFFICIENCY.

Both Defendants argue for "phasing," or bifurcation, of "class"-related discovery to take place separately from "merits"-related discovery. However, AT&T's own proposed discovery requests demonstrate why front-loading class-related discovery would not streamline the process. AT&T promises to first seek, "[f]or example, . . . where and when *each named plaintiff*

purchased an iPhone, what advertisements and representations regarding MMS each named plaintiff saw and relied upon in making the purchase, as well as whether each named plaintiff uses MMS and the extent of such usage." Def. AT&T Br. at 10 (emphasis added). Yet these requests seek only individual, merits discovery of the named Plaintiffs, geared toward a summary judgment motion rather than a class certification motion. Ironically, AT&T's position unwittingly demonstrates that class and merits discovery is too closely intertwined in this case to benefit from bifurcation, which would serve only as a basis to generate objections and to entrench disputes.

Apple's characterization of Plaintiffs' claims—and its subsequent conclusions about what class discovery is necessary—is simply wrong, and thus far too narrow. Apple incorrectly states, "Plaintiffs' claims are *based entirely on what defendants represented* regarding the availability of MMS. Thus, class discovery will necessarily be limited to defendants' alleged representations (including relevant disclosures), where and when these representations were made, and what representations plaintiffs were exposed to and relied upon."[5] Def. Apple Br. at 10 (emphasis added). To the contrary, Plaintiffs' claims are also based on the legal theory that, aside from any representations Apple may have affirmatively made, Apple had a duty to disclose (and materially omitted) the fact that, regardless of whether class members knew the iPhone was incapable of sending and receiving MMS messages, customers purchasing a text messaging package *would be charged* for MMS by virtue of their contracts with AT&T. Apple also failed to disclose the material facts that AT&T, the exclusive provider of iPhone services, *was obligated* to provide

---

[5] Plaintiffs are curious to find out how, for purposes of a procedural motion like class certification, it is essential to discover whether and what *representations* Plaintiffs and class members "relied" upon, when Apple simultaneously portends that, for purposes of a dispositive motion on the pleadings, its alleged "*disclosures*" will be sufficient to knock out all claims in one fell swoop, regardless of whether any Plaintiff or class member actually saw them or understood them.

MMS services to consumers purchasing text messaging packages.  In addition, Plaintiffs assert that Apple caused them to incur breach of contract damages due to the fact that Apple did not permit its customers lawfully to use a substitute provider, who could have enabled MMS.  Thus, the scope of discovery applicable to Apple far exceeds the small "affirmative misrepresentation" box Apple disingenuously keeps offering to the Court.[6]

In support of their theory that discovery should be bifurcated along class-merits lines, Apple and AT&T both rely primarily on a 1982 case that affirmed a District Court's decision, prior to the class certification motion, not to permit the plaintiffs to seek "documents relating to every aspect of life in the jails of Mississippi's 82 counties."  *Stewart v. Winter*, 669 F.2d 328, 331-32 (5th Cir. 1982).  The lawsuit at issue in that case, however, was complaining about, oddly enough, just about every aspect of life in Mississippi's jails.  *See id.* at 330 (noting that plaintiffs complain about summary discipline administered in the jails and, "in general terms that many of the jails are in a state of deterioration and are overcrowded; that visiting privileges, classification

---

[6] Apple improperly takes a swipe at the merits of class certification in its brief.  Def. Apple Br. at 10-11.  Apple's doubts about the viability of class certification notwithstanding, Defendant points to no law or rule requiring every class member to have been misled via the same exact advertisement or pamphlet.  Classes can be certified where a defendant has created a common misconception among class members through broadly-cast marketing campaign or through a common failure to disclose material information.  *See, e.g.*, *In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009) ("[W]hile a plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct, the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct.  Furthermore, where, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements."); *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*, No. 99-MD-1309, 2004 WL 909741 (D. Minn. Apr. 28, 2004) (refusing to decertify consumer fraud class and quoting *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 14 (Minn. 2001), for proposition that, "[I]n cases such as this, where the plaintiffs' damages are alleged to be caused by a lengthy course of prohibited conduct that affected a large number of consumers, the showing of reliance that must be made to prove a causal nexus need not include direct evidence of reliance by individual consumers of defendants' products.").  Classes can also be certified where there has been a common breach of a standard form contract—a legal theory both Defendants conspicuously ignore.

and diagnosis of inmates, medical care, access to legal materials, staff training, rehabilitation programs, and recreational opportunities are all inadequate; and that the result of these inadequacies is tension and violence among the inmates"). That case is distinguishable.

The present complaints do not present a laundry list of disparate, unrelated complaints committed by the Defendants, as in *Stewart* (a case whose eventual motion for class certification would be viewed from the outset as having little likelihood of success due to the multitude of non-related facts triggering liability). Rather, the cases here present a narrow issue of fact (non-provision of photo and video transmission via text messaging) in support of a handful of legal theories (deceptive representations and omissions and damages for breach of contract and unjust enrichment).

AT&T further relies upon a line of cases beginning with its citation to *Harris v. Option One Mortgage Corp.*, for the proposition that "courts . . . routinely defer merits discovery . . .," but without describing the proper circumstances under which such a limitation is appropriate. Def. AT&T Br. at 9. In *Harris*, for instance, the court specifically found that the defendant had satisfied its burden of establishing that merits discovery would cost much more, inherently finding that significant *non*-overlap of class and merits facts were sought at the outset. *See* 261 F.R.D. 98, 111 (D.S.C. 2009) ("By allowing merits discovery to occur with class certification discovery, [defendant] contends that it will take months of legal work and cost it hundreds of thousands of dollars, all for a purported class that may not be certified," citing affidavit evidence).

However, in the present case, AT&T and Apple provide *no* evidence that the burdens of allowing discovery "to proceed in its normal course," in the words of the *Harris* court (*id.*), would be any different than if this Court were to limit discovery. Nor can they. Plaintiffs have

not propounded their requests, so AT&T and Apple have no idea whether their initial requests are unrelated to class certification or would be unduly burdensome due to significant non-overlap of merits- and class-related issues.  In essence, they provide nothing but arguments based on broad concepts.  These overtures do not satisfy the Rules.  Furthermore, Plaintiffs' opening memorandum establishes that the facts related to class certification and merits overlap so profoundly that bifurcation would be and academic exercise, serving only to provide a basis for theoretical and impractical objections and disputes.

Under the Federal Rules of Civil Procedure, the party seeking to limit discovery "must show good cause by demonstrating a particular need for protection.  For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 2005 WL 1400463, *2 (E.D. La. Jun. 1, 2005).  Essentially, Defendants' request to limit discovery to class-related issues falls under the rigors of Rule 26(c)(4), which allows the court in certain circumstances to order "that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters." Fed. R. Civ. P. 26(c)(4).  However, the Rule "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).  In its present request, neither Defendant shows with any specificity how the discovery sought is unrelated to class certification or that it would be unduly burdensome due to significant non-overlap.  Defendants inappropriately address this issue from a philosophical perch, rather than shouldering their specific burden to show good cause to limit discovery under the rules.

The only other published disposition AT&T cites is *Larson v. Burlington Northern and Santa Fe Railway Co.*, in which Magistrate Judge Erickson *did not* determine that "class"

discovery should precede "merits" discovery.  210 F.R.D. 663 (D. Minn. 2002).  In that case, the court did not bifurcate discovery into class-first, merits-second phases, as Defendants propose here.  Rather, the *Larson* order expressly did the opposite, and ordered that the individual plaintiffs' merits discovery *precede* class discovery.  *Id.* at 665.  Thus, the *Larson* court ordered *full* discovery of the named plaintiffs' claims—documents and depositions that would establish the merits of the named plaintiffs' claims.  *See Larson*, 210 F.R.D. at 665-67 (ordering discovery as to facts related to plaintiffs' claims of a common fraudulent scheme, including any necessary depositions). This is a novel way to address the issue, but it certainly is *not* what either party advocates here.

Finally, as demonstrated in Plaintiffs' opening memorandum, courts more recently have found that the good faith experiment with limiting pre-certification discovery has not succeeded, particularly where significant overlap of class and merits issues exists.  Due to the staggering overlap of class- and merits-related facts in class actions, limitations on pre-certification discovery, rather than streamlining the process, most often result in the entrenchment of acrimonious discover disputes.  This produces delay, not swift process, it produces increased costs and attorneys fees for the parties, rather than decreasing them, and it taxes the Court's resources, rather than lifting its burdens.

## IV.   AT&T ADMITS THAT DISCOVERY MUST BE CONDUCTED PRIOR TO DETERMINING THE ARBITRATION MOTION.

In its brief on discovery, AT&T quotes the Unites States Supreme Court, which opines, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).  Thus, even AT&T agrees that this Court may consider factual issues, although those factual issues are limited to the making and performance of the agreement to arbitrate.  Plaintiffs

10

request that this Court allow discovery to proceed on the making and performance of the agreement to arbitrate ("arbitration discovery") (*See* Pltf. Br. (Rec. Doc # 33), at 15-16).

In the cases cited by AT&T, courts do not allow *merits discovery* to proceed pending a motion to compel arbitration. However, even in cases cited by AT&T, courts allowed *arbitration discovery* to proceed pending a ruling on the arbitration motion. *See, e.g., Cunningham v. Van Ru Credit Corp.*, No. 06-10452, 2006 WL 2056576 (E.D. Mich. Jul. 21, 2006) ("Defendant is estopped from preventing discovery on the factual issues Defendant raises in support of its motion to compel arbitration."), *Intertec Contracting A/S v. Turner Steiner Int'l, S.A.*, No. 98 Civ. 9116 (CSH), 2001 WL 812224 (S.D.N.Y. Jul. 18, 2001) (parties had mutual exchange of documents relevant to arbitration issue). Thus, as demonstrated by Plaintiffs' opening memorandum and by cases relied upon by AT&T, discovery concerning the validity of AT&T's arbitration and class action ban provisions is necessary and appropriate.

Plaintiffs request that this Court order AT&T to file any motions to compel arbitration by March 26, 2010. Plaintiffs will propound arbitration discovery to AT&T by April 1, 2010. AT&T should be ordered to respond to arbitration discovery by April 30, 2010. Plaintiffs will file their opposition to the arbitration motion by May 31, 2010, and the Court can hear arguments on the arbitration issue at the June 2010 status conference.

## V.   SHOULD THE COURT DISAGREE WITH PLAINTIFFS' POSITION, PLAINTIFFS ARE ENTITLED TO RULE 26 DISCLOSURES.

A Preliminary Conference Notice has not yet been sent out by this Honorable Court. If and when a Preliminary Conference Notice is sent, the parties will meet pursuant to Local Rule 26.4 and will make Rule 26(a)(1) disclosures. Respectfully, the Putative Class Plaintiffs must be afforded the opportunity to review the documents disclosed in the Rule 26(a)(1) disclosures prior to this Court hearing any early dispositive motions based on any legal theory. Thus, should this

Court not agree with the Putative Class Plaintiffs' position on discovery, Putative Class Plaintiffs ask that this Court set a deadline for Rule 26(a)(1) disclosures.

## VI.    CONCLUSION

For the reasons stated in this Reply Memorandum and for the reasons stated in the Plaintiffs' original Discovery Brief, Plaintiffs should be allowed to conduct discovery against Apple and arbitration discovery against AT&T (assuming AT&T files the motion to compel arbitration by March 26, 2010).

Respectfully submitted:

/s/ *SCOTT R. BICKFORD*
SCOTT R. BICKFORD (1165)
Martzell & Bickford
338 Lafayette St.
New Orleans, LA 70130
Telephone:    504/581-9065
Facsimile:     504/581-7636
usdcedla@mbfirm.com

**John R. Climaco**
CLIMACO, LEFKOWITZ, PECA, WILCOX &
GAROFOLI CO. LPA
55 Public Square
Suite 1950
Cleveland, OH 44113
Telephone:    (216) 621-8484
Facsimile:     (216) 771-1632

**Stephen B. Murray, Sr.**
MURRAY LAW FIRM
650 Poydras Street, Suite 1100
New Orleans, Louisiana 70130
Telephone:    504.525.8100
Facsimile:     504.584.5249

**Ronnie G. Penton**

12

Law Offices of RONNIE G. PENTON
209 Hoppen Place
Bogalusa, LA 70427
Telephone:      985/732-5651
Facsimile:      985/735-5579