UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

*******************************************************************

IN RE:  APPLE iPHONE 3G AND
3GS MMS MARKETING AND SALES
PRACTICES LITIGATION

                          MDL NO. 2116
                          NEW ORLEANS, LOUISIANA
                          FRIDAY, MARCH 12, 2010, 10:00 A.M.

*******************************************************************


                TRANSCRIPT OF STATUS CONFERENCE
        HEARD BEFORE THE HONORABLE CARL J. BARBIER
                UNITED STATES DISTRICT JUDGE



APPEARANCES:


FOR THE PLAINTIFF:        LAW OFFICES OF SCOTT R. BICKFORD
                          BY:  SCOTT R. BICKFORD, ESQUIRE
                          338 LAFAYETTE STREET
                          NEW ORLEANS, LA  70130


                          THE MURRAY LAW FIRM
                          BY:  STEPHEN MURRAY, ESQUIRE
                          650 POYDRAS STREET, SUITE 1100
                          NEW ORLEANS, LA  70130


                          DANIEL BECNEL LAW OFFICES
                          BY:  DANIEL BECNEL, ESQUIRE
                          106 WEST 7TH STREET
                          RESERVE, LA  70084

```
 1   APPEARANCES:   (CONTINUED)

 2

 3   FOR THE DEFENDANT:        IRWIN, FRITCHIE, URQUHART & MOORE
                               BY:  QUENTIN URQUHART, JR., ESQUIRE
 4                             400 POYDRAS STREET
                               NEW ORLEANS, LA 70130
 5

 6                             JONES WALKER
                               BY:  GARY J. RUSSO, ESQUIRE
 7                             600 JEFFERSON STREET, SUITE 1600
                               LAFAYETTE, LA  70501
 8

 9                             CROWELL & MORING
                               BY:  KATHLEEN T. SOOY, ESQUIRE
10                             1001 PENNSYLVANIA AVENUE, NW
                               WASHINGTON, DC  20004
11
                               MORRISON FORESTER
12                             BY:  PENELOPE PREOVOLOS, ESQUIRE
                                    HEATHER A. MOSER, ESQUIRE
13                             425 MARKET STREET
                               SAN FRANCISCO, CA 94105
14

15

16   ALSO PRESENT:            BRIAN STRANGE, ESQUIRE
                              JAMES DUGAN, ESQUIRE
17                            RONNIE PENTON, ESQUIRE

18
                              DOUGLAS MOORE, ESQUIRE
19                            LAWRENCE CENTOLA, ESQUIRE
                              VIRGINIA ANELLO, ESQUIRE
20

21                            J. ANDREW MEYER, ESQUIRE
                              DAVID O'QUINN, ESQUIRE
22                            STEPHEN SWEDLOW, ESQUIRE
                              MICHAEL GURLEY, ESQUIRE
23

24

25
```

```
 1   APPEARANCES:  (CONTINUED)

 2

 3   PRESENT VIA TELEPHONE:   DAVID CIALKOWSKI, ESQUIRE
                              TIMOTHY BLOOD, ESQUIRE
 4                           E. KIRK WOOD, ESQUIRE
                              JOHN CLIMACO, ESQUIRE
 5

 6                           PATRICK WARNER, ESQUIRE
                              SCOTT, KALISH, ESQUIRE
 7                           PETER CAMBS, ESQUIRE

 8
                              TAMAR ARMINAK, ESQUIRE
 9                           DANIEL GERMAIN, ESQUIRE
                              ANITA JASKOT, ESQUIRE
10

11                           TIM ENGELMEYER, ESQUIRE
                              MATT MORELAND, ESQUIRE
12                           FRANK PISCITELLI, ESQUIRE
                              ART SADIN, ESQUIRE
13

14

15
     OFFICIAL COURT REPORTER:      CATHY PEPPER, CRR, RMR, CCR
16                                 500 POYDRAS STREET, ROOM B406
                                    NEW ORLEANS, LA  70130
17                                 (504) 589-7779

18   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER.
19

20

21

22

23

24

25
```

**P-R-O-C-E-E-D-I-N-G-S**

FRIDAY, MARCH 12, 2010

M O R N I N G   S E S S I O N

(COURT CALLED TO ORDER)

THE DEPUTY CLERK:  All rise.

THE COURT:  Good morning, everyone.  Who's on the phone?  We've got two different lists.

MR. MORELAND:  And I believe someone else just joined, Your Honor.

THE COURT:  Who's that?

MR. MORELAND:  This is Matt Moreland and I believe someone else just joined.

THE COURT:  Who's that?

THE SPEAKER:  Art Sadin.

THE COURT:  How do you spell that?

THE SPEAKER:  S-A-D-I-N.  He's going to be coming to the phone.

THE COURT:  Okay.  Who else has joined that's on the phone since we took a roll call?

MR. CLIMACO:  Climaco, C-L-I-M-A-C-O.

THE COURT:  No, I heard Mr. Climaco.  Who's the next person?

MR. MORELAND:  That was Matt Moreland, Your Honor.

 1          THE COURT:  Oh, Matt Moreland.  I've got your name,

 2  Matt.

 3          MR. MORELAND:  Thank you, Your Honor.

 4          THE COURT:  Anyone else?

 5          MR. WOOD:  Kirk Wood, Your Honor.

 6          THE COURT:  We've got your name.

 7              Okay.  Everyone who is here has signed in?

 8              Okay.  We're here this morning to talk primarily

 9  about the scope and timing of discovery.  Mr. Bickford.

10          MR. BICKFORD:  Good morning, Your Honor.

11          THE COURT:  I've read what each side has filed.  What I

12  guess I don't understand is, I kind of thought when we had met

13  last time on January 15th that there was, I'm not saying there

14  was absolute agreement, but that even the plaintiffs had more or

15  less acquiesced in the notion that we would let, the plaintiffs

16  would file their amended complaints first.  I think you have a

17  deadline in May for that; am I correct?

18          MR. BICKFORD:  Yes, Your Honor.

19          THE COURT:  We're not even there yet, where you haven't

20  amended your complaints yet.

21              The next step would be the defendants would file

22  their motions based on the pleadings.  That would be a motion to

23  enforce arbitration and 12(b)(6) motions or Rule 9 motions,

24  Rule 8 motions.

25              And at that point, you all would meet and confer

1    and see if you all can agree on the scope and need for discovery,

2    if any, pertaining to those motions.

3            I mean, ordinarily, there wouldn't be a need for

4    discovery strictly on a Rule 12 motion, for example.  We're

5    looking at your pleas.  Have you stated a claim or not?  We don't

6    need discovery for that.

7            Now, sometimes documents come into play.  For

8    example, if you're suing on a contract, then the contract would

9    be relevant to a Motion to Dismiss.  Whether you attached it or

10   not, they could attach it.  But now, once I read your memoranda,

11   it looks like you've changed direction here on me.

12           MR. BICKFORD:  I don't think that we've changed

13   direction, Your Honor.  I think that we had always looked at this

14   case as a consumer products case in which Apple marketed a

15   product that they didn't have.  And wasn't available.  And we

16   think that the, their marketing practices, be it whatever,

17   however they disclosed or didn't disclose that they had MMS,

18   whatever disclaimers that they had, whether they were purposely

19   designed to attract people or unpurposely designed to attract

20   people, are at issue.  And they were at issue from the get-go in

21   this case.  And they were at issue from the start of this

22   litigation forward, and that we ought to have the opportunity to

23   discover their marketing practices in this case.

24           Given to Your Honor is a perfect example of the

25   videotape that was attached to our admission, which then Apple

1   attached their videotape.  Four minutes into the videotape, there

2   is an entire discussion about MMS and texting.  There is no

3   disclaimer.  You have to watch to 9 minutes and 14 seconds to see

4   a 1.3-second disclaimer flash across the screen saying, MMS not

5   available until this date.

6          And that's only one example of the marketing

7   practices that we're dealing with.  We're dealing with a

8   Smartphone that was marketed to the general public that didn't

9   have a feature that virtually every other phone out there had.

10  It would be like selling a phone that, to you, to make phone

11  calls and you get home and find it only calls California.

12         That's the marketing issues that we're dealing

13  with.  There is always going to be issues of adequacy in working.

14         Now, stepping back, on the AT&T side, we do agree

15  with AT&T that there shouldn't be any discovery with regard to,

16  there should only be discovery with regard to the arbitration

17  issues, but only when they are raised.  They haven't been raised

18  yet.  They haven't been put into play.  So when they do get put

19  into play, we believe that arbitration does have some extrinsic

20  discovery attached to it, you know, particularly when we're

21  dealing with claims which seek to ban class actions, seek to ban

22  consumer class actions.

23         THE COURT:  There have been a number of cases cited, and

24  frankly, there are a lot of cases, a number of cases that find

25  unconscionable these arbitration agreements that try to ban class

1    actions.  But I don't know why you need discovery on that.  They

2    are what they are.  If they do, it's a legal argument, it seems

3    to me.

4         MR. BICKFORD:  No, because we have the right to test the

5    procedural unconscionability and the substantive

6    unconscionability of these things.  For instance, how do people

7    contract with Apple?  How do they contract with AT&T?

8         THE COURT:  How do your clients contract is the issue, I

9    think.  How do your clients contract?  You should know that,

10   right?

11        MR. BICKFORD:  Individually, from a procedural

12   standpoint, that's correct with regard to the procedural nature

13   of the element of looking at --

14        THE COURT:  Okay.  How many clients do you represent?

15   Who do you represent?  Give me an example.

16        MR. BICKFORD:  There, right now, there are 30 actions

17   filed in this thing.

18        THE COURT:  No, give me an example of an individual that

19   you represent.  And what did they do?  They went to an Apple

20   store?

21        MR. BICKFORD:  They went --

22        THE COURT:  Did they go online?  Did they go get the

23   contract with AT&T at the store or what?

24        MR. BICKFORD:  Both.  We represent people that have done

25   a variety of things.  But that's the procedural aspect of how did

1   I contract, where was the contract available to me, where was the

2   contract available to the consumers?

3           The substantive deal is, how does the practice,

4   this arbitration clause, how does it affect consumers as a whole?

5   Is it unconscionable as a whole to the marketplace?  Does it

6   affect the marketplace?

7       THE COURT:  Wait.  First you have to file suit on behalf

8   of individuals as class representatives.  It seems like we've got

9   to look at how it affects them.  Do we have a claim first?  If

10  they don't have a claim, they can't represent other people.  So

11  if they can't follow class action, that's your argument it seems

12  to me.  You may have a very good argument there.  I think you

13  probably do, but I don't see the need for a lot of or maybe any

14  discovery on that.  It says what it says.

15          Now, unless your people are going to say, I didn't

16  sign that, I didn't agree to that, maybe that's a factual issue,

17  but, whatever it says, it says, and I suspect they have either

18  your clients' signature or they have them clicking a button

19  saying we agree to that.  There are a lot ways you can agree to

20  things.

21      MR. BICKFORD:  With all due respect, Judge, if you go

22  back to the seminal case of *Prima Paint*, which is the

23  Supreme Court case --

24      THE COURT:  We're not going to spend a year, year and a

25  half discovering whether this case goes to arbitration.  That's

1   the purpose of arbitration.

2         MR. BICKFORD:  I don't think so, and we don't

3   anticipate --

4         THE COURT:  Wait.  Why don't you let them file the

5   motion, then you can look at it, then you can sit down with them

6   and say, We think we need discovery on this issue, these issues

7   pertaining to arbitration.  They might agree with you if you

8   narrowly focus it, and we may not have an issue.  But your

9   approach now I don't think is reasonable that you just want to

10  open up discovery totally without even knowing what they are

11  going to file.  You haven't seen where they are going to file

12  yet.

13        MR. BICKFORD:  What we are proposing today, Judge, to

14  the Court is that we are prepared, there are now 30 suits filed,

15  and that number is growing in the MDL.  And I have noticed that

16  there have been a couple of other suits filed recently, and I

17  expect the number will grow.  What we are prepared to do, having

18  looked at the motions, having discussed this --

19        THE COURT:  You haven't looked at any motions yet.  They

20  haven't been filed.

21        MR. BICKFORD:  Not the motions, but the briefs in this

22  case.  Having looked at that is that we're preparing to file an

23  exemplar suit, one of the lawsuits, amend that lawsuit and file

24  it by April 1st, with the Court, with concomitant discovery on

25  that suit.

1          This, I think, would be a compromise position to

2    the position that AT&T and Apple took is that they wanted to

3    consolidate a complaint.  This wouldn't be a consolidated

4    complaint.  It would be more like a bellwether or exemplar

5    complaint that goes forward, which will raise, I think, probably

6    95 percent of the issues that the Court is going to have to deal

7    with in the case.

8          There are going to be other issues because of other

9    substantive law issues from other states, et cetera, but there

10   are a core group of issues that I think the Court, having now

11   read these briefs, understands now exist out there.  I think by

12   us taking one complaint and going forward and amending that, that

13   we can then tee that up in a fashion which takes care of

14   90 percent, 95 percent of all the issues in the case, which will

15   then be resolved to the other existing complaints.

16         THE COURT:  You're going to do that by the deadline we

17   have previously given you to --

18         MR. BICKFORD:  We're going to do that by April 1st,

19   Judge.  We would like to concomitantly serve discovery at that

20   point.  If, in fact, they think the discovery is beyond bounds,

21   burdensome with regard to their motions, et cetera, they'll have

22   the opportunity to basically come in and object and say --

23         THE COURT:  I still think you're putting the cart before

24   the horse here; I think you need to slow down, take a deep

25   breath, file your amended complaint or your exemplar complaint.

1   Let them look at it.  They'll have Rule 12 motions to dismiss,

2   Rule 9, Rule 8, whatever, arbitration motions.  I don't see any

3   harm to your side of the case by letting them file their motions.

4   We're not going to just go pell-mell and decide, I'm not going to

5   let them file their motion and hear it 15 days later.  This is

6   not that kind of case obviously.  You look at it.  You sit down

7   and confer with them, say, This is the discovery we think we need

8   related to these motions.  Maybe they'll agree with at least some

9   of your discovery.  I suspect they will.  And to the extent you

10  can't agree, then you come to me and we'll have a hearing and

11  I'll decide what discovery you get.  But I don't like the

12  approach of just opening up the door to everything at this time

13  for a number of real practical reasons.  I mean, first of all, if

14  they are right on any or just some of their motions, it's going

15  to substantially narrow the issues or narrow the scope of the

16  class or so forth, and I don't want the parties on either side

17  spending a lot of money and time and effort that are going to be

18  a total waste of time in the end.  It makes no sense.

19          MR. BICKFORD:  If we go forward and file by April 1st or

20  exemplar suit, what we would like to do is be able to set aside

21  the rest of the amendments of this growing number of cases.  The

22  amendments to those suits would be, I would assume --

23          THE COURT:  It's sort of like the same ideas except

24  you're just going to amend one of the individual --

25          MR. BICKFORD:  Yes, and go forward and it will have a --

1      THE COURT:  I don't see the problem with that.  It

2  sounds like a good idea.  I don't know the defense should have a

3  problem with that.

4      MR URQUHART:  Your Honor, if I could respond briefly.

5      THE COURT:  Yes.

6      MR URQUHART:  Quentin Urquhart on behalf of Apple.  This

7  proposal to file a quote, unquote, exemplar complaint, this is

8  the first we've heard of it.

9      THE COURT:  First I've heard of it, too.  I don't see

10  any problem with it.  What's the problem?

11      MR. URQUHART:  Your Honor, our only problem is that we

12  don't, so long as that complaint encompasses the loss applicable

13  to all the other plaintiffs who have named and filed suit, we

14  probably don't have a problem with it.  But what we don't want to

15  see happen is an exemplar complaint that is filed just under one

16  law that they happen to select that they prefer under the

17  circumstances.  We don't know at this point because this proposal

18  wasn't presented to us what they intend to include in an exemplar

19  complaint, what form that is going to take.

20      THE COURT:  You'll find out in about two weeks.

21      MR URQUHART:  Yeah, but I guess our point is, Judge, we

22  don't want to in any way be seen as conceding or acquiescing to

23  the filing of such a complaint or following that type of

24  procedure at this juncture when we don't know what's going to be

25  in it, we don't know what form it's going to fall in.

1    THE COURT:  Let me tell you what we're going to do:  I

2    don't see any harm in letting them file that.  In fact, I think

3    they have got a right to file it.  They've got an absolute right

4    to file it.  They'll be well within the deadline for amending the

5    complaint, so they could file it.  If you're not happy with it,

6    you can file something and we'll deal with it at that time.

7         They would still have the right and opportunity to

8    individually amend every complaint, if that's what you want them

9    to do.  I'm not sure what you're asking them to do.

10    MR URQUHART:  Well, Your Honor, when we were here prior

11    to the initial hearing, the plaintiffs fought filing a master

12    complaint.  They took the position they didn't want one.

13    THE COURT:  Your side didn't think it was a good idea

14    either.

15    MR URQUHART:  Well, under the circumstances, Your Honor,

16    given what was a relatively limited number of complaints that we

17    saw, we agree.

18    THE COURT:  All of these complaints allege essentially

19    the same thing.  In fact, as you pointed out, 19 of 23 were

20    verbatim a copy from the original complaint.

21    MR URQUHART:  And, Your Honor, we agree with this.  We

22    just don't want this to open the door to cherry picking one

23    state's law in which they would apply.  So that's our point.

24    MR. RUSSO:  I think that is -- Gary Russo, Your Honor,

25    on behalf of ATTM.  Regardless of whether or not they file an

1    exemplar complaint, which actually we don't think that process

2    even exists, but even if they file that exemplar complaint, there

3    are still 30 separate state laws that apply.

4            Now, Your Honor, that's a perfectly reasonable

5    suggestion that they file it and then we take issue with it

6    through papers at that point.  And the other procedure that you

7    set forth is exactly what we had offered originally, that we file

8    our papers and they sit with us and we confer and see if we can

9    avoid all of these discovery issues.

10           THE COURT:  Okay.

11           MR URQUHART:  We can wait until April 1st and see what

12   happens, Your Honor.

13           THE COURT:  By the way, in the interest of full

14   disclosure, I now have an Apple iPhone, which I did not have the

15   last time we were here.  I had a Blackberry.  I still have my

16   Blackberry, too.

17           MR. BICKFORD:  Do you have the plaintiff's app on that?

18           THE COURT:  The plaintiff's app?  I don't think so.  But

19   what happened since we last met is, I was invited to be a

20   participant, there is a pilot program going on in the federal

21   judiciary right now, because some judges want to use iPhones.

22   And I won't bore you with all of the details, but there is an

23   issue of compatibility with, the federal courts use an antiquated

24   e-mail software called Lotus Notes, which people laugh at you

25   when you tell them you use Lotus Notes.  Look, Mr. Bickford is

1    laughing now, you know.  But that's what we have, and we're kind

2    of stuck with it.  And it's not very compatible with iPhones, and

3    they are working on it, and they asked some judges, and I said,

4    Yeah, I'll do it, it might be a good idea.  And obviously, I'm

5    not a member of the class because I got this after September of

6    2009.

7                Until this morning, I had never even tried to send,

8    what do you call it, MMS Photo.  But I took a picture of my law

9    clerk and I managed to figure out how to do it, so I sent her her

10   own picture to her cell phone and she said she got it, so I guess

11   it's working, for whatever that's worth.

12               But anyway, I figure I should disclose that I have

13   one of these things.  I'll be honest, I'm still not as

14   comfortable with it as I am with my Blackberry, but we'll see.

15   We'll see how it goes.

16               All right.  I think, one thing that was pointed out

17   in the memoranda that I filed is that it seems that the

18   plaintiffs are making some additional allegations that were not

19   contained in any of the complaints, as far as I can tell.  That's

20   fine, but I think you need to make sure you amend your complaint.

21   I guess you're going to do that as part of your --

22               MR. BICKFORD:  With specificity, yes, Your Honor.

23               THE COURT:  For example, you say in your memorandum that

24   plaintiffs have alleged three different legal theories:  A breach

25   of contract that AT&T was contractually obligated to provide MMS

1   and did not provide MMS.  And then the second claim or theory is

2   that both Apple and AT&T had a duty to adequately disclose that

3   MMS would not be provided to iPhone users and failed to do so.

4   And then the last one was the misrepresentation claim that they

5   affirmatively marketed and advertised iPhone's MMS functionality

6   without adequate disclosure that such services were not available

7   at the time of purchase.  The last claim is what is alleged in

8   the complaint as far as I can tell.

9          MR. BICKFORD:  Yes, I think that we additionally briefed

10   that in our briefing, the fact that AT&T was actually billing for

11   MMS services.

12          THE COURT:  Yes, and that's not alleged in your

13   complaint either.

14          MR. BICKFORD:  Specifically on the, well, this came to

15   light as we started collecting billing information, et cetera, so

16   we will amend that, but we clearly have billing information

17   indicating that AT&T is --

18          THE COURT:  In other words, if I understand that

19   allegation, what you're alleging is that when people bought

20   iPhones, even though they didn't have the MMS service capability,

21   they were being charged for it; is that what you're saying?

22          MR. BICKFORD:  There was a line item on the bill itself

23   that says, "Texting MMS" and the charge.

24          MR. STRANGE:  Your Honor, Bryan Strange for the

25   plaintiffs.

1          THE COURT:  Come up to microphone.

2          MR. STRANGE:  In our case, the Striker complaint, which

3   was transferred here from California, we did make that exact

4   allegation.

5          THE COURT:  Oh, you did?  Okay.  I didn't read every

6   complaint.  I frankly looked at the ones that, I think the

7   defendants say was the first complaint.  Goette, G-O-E-T-T-E.

8          MR. STRANGE:  Your Honor, the basis of our claim against

9   AT&T was exactly that, that they were charging for a service that

10  they weren't providing.

11         THE COURT:  It's a different claim.

12         MR. STRANGE:  Yes, Your Honor.

13         THE COURT:  Obviously.

14             So as I understand it, Mr. Bickford, what you're

15  proposing is rather than amending, you would prefer just to file

16  the exemplar complaint rather than amending all of the individual

17  complaints; is that what I'm hearing?

18         MR. BICKFORD:  We would, Your Honor.  And if, in fact,

19  after we filed, after we file this complaint, if, in fact, the

20  defendants have issue with that procedure and want us to, you

21  know, continue on the road to amend another 30 or 40 complaints

22  at that time, I think we can visit at that moment.  But as I

23  said, I think that 90 percent of all of the issues, you know, in

24  this case are going to be contained within that, yes, there are

25  going to be state substantive law issues that are going to change

1  from complaint to complaint; however, having looked at this

2  universe of things, I know the vast majority, and as I say, close

3  to 90 percent of all of the issues are going to get resolved

4  there, I think it's a very expeditious way for this Court to deal

5  with the great bulk of the issues in this case, rather than

6  having to ferret through 30 different petitions, or by that time

7  40 different petitions and complaints and figure out what's what

8  and rule on motions that may be disparate from complaint to

9  complaint.

10         And that's why we were proposing it.  And we would

11 ask that we don't have to amend, you know, the other complaints

12 until, you know, we revisit the issue, but we're certainly

13 willing to wait until after April 1st and revisit that issue at

14 that time.

15         THE COURT:  All right.  So then otherwise, I guess we

16 can stick to the schedule that we put in place last time we were

17 here.  In terms of filing of amendments, filing of motions,

18 briefing, responses and so forth.

19         MR. BICKFORD:  Well, we would just ask on behalf of the

20 plaintiff that, in fact, if we file by April 1st that I think

21 that the Court gave 30, 45 days.

22         MR. BECNEL:  Sixty.

23         MR. BICKFORD:  Sixty days to file the motions that the

24 defendants then file within 60 days and we just move it along.

25         MR. STRANGE:  Judge, our suggestion is we stay with the

1   schedule we have.  We'll look at that exemplar complaint when it

2   comes in and promptly file whatever, if we can't sit down and

3   work it out with Mr. Bickford ahead of time.

4           THE COURT:  We're not talking about a big difference in

5   time here.  Just a month or so, six weeks or something, so I

6   don't know that that's going to make a lot of difference.  I

7   think we'll just stick with the same schedule we have now.

8               But, I think the defendants ought to file something

9   to advise the Court, and the plaintiffs, if you take issue in

10  some respect with what Mr. Bickford suggested.

11          Did someone just join on the phone?

12          MR URQUHART:  I think that was the lose signal.

13          MR. RUSSO:  Your Honor, if we could have 30 days from

14  April 1st, but that doesn't mean we don't have conversations

15  during that period, but 30 days to file whatever papers we would

16  have with respect to the exemplar complaint.  Our objection to

17  the exemplar.

18          THE COURT:  Right.  So that would put that due somewhere

19  around May 1st, which would still, if there is a problem and the

20  plaintiffs end up needing time to amend their individual

21  complaints, they still have time to do that.

22          MR. BICKFORD:  Yes.  And I guess what I would ask then

23  is maybe the best timing for the next conference that we have

24  would be sometime shortly after they file whatever papers they

25  intend to file.

1          THE COURT:  Maybe the first week of May.

2              Why don't we give you 20 days.  Give us a little

3   more cushion, a little cushion in there.  The defendants are to

4   file any objections to the plaintiffs' proposed exemplar

5   complaint within 20 days after it's filed, okay?  And then we'll

6   have our next conference in the first week of May.  Let's get a

7   date for that now.  Eileen, do you have your calendar?  I

8   probably need the calendar Hope keeps because she's got some

9   other stuff.

10          MR. RUSSO:  Judge, I know the preference was to schedule

11  these on a Friday, but with some of the lawyers traveling in,

12  there was a question whether or not a Thursday might be

13  convenient for the Court.

14          THE COURT:  It depends on what Thursday it is.  Like

15  yesterday, I had a criminal docket that took about two-thirds of

16  the day.  I do my criminal matters on Thursdays.  I start on

17  Thursday mornings.

18              Are you suggesting that you all would prefer a

19  Thursday to a Friday?

20          MR. RUSSO:  I think so, Judge.

21          MR URQUHART:  Yes, Your Honor.

22          MR. RUSSO:  From looking at schedules, if the 13th is a

23  convenient day, that's a Thursday, the second week in May.

24          THE COURT:  That would be better for me than the 6th,

25  because the 20th I'm going to be out, well, I may be out and the

1  6th is a criminal day for me, a criminal motion day.

2          MR. BECNEL:  That would be great.

3          MR URQUHART:  That would be great, Your Honor.

4          THE COURT:  Is the 13th okay for the plaintiffs' side?

5          MR. BICKFORD:  Yeah, that should work, Judge.

6          THE COURT:  We'll set the time on Thursday, May 13th for

7  our next status conference.

8               Does anybody have any idea how many different

9  states are involved in these class actions at the present time?

10         MR. BICKFORD:  I believe it's 22 or 23.  I would suspect

11 the number will grow.

12         MR. MURRAY:  Judge, New Jersey and Massachusetts are

13 being filed Tuesday.

14         THE COURT:  All right.

15         MR. BECNEL:  We have a number of them from almost every

16 state.  Daniel Becnel.  Parker Waichman and I have a number of

17 them from most of the states.  We just hadn't filed them yet.

18 Waiting to do a direct file order to file them directly here.

19         THE COURT:  Okay.

20         MR. BICKFORD:  And, it was pointed out to me, Judge,

21 there is a nationwide putative class in this, so at some point

22 every law is going to be in place.

23         THE COURT:  I understand.  Right.  So what we will do

24 then, is, as I said, once the defendants file their motions,

25 whether those are Rule 12 motions, Rule 8 or 9 motions or motions

1   to enforce arbitration, and then the briefing is done on that,

2   I'll schedule it for, probably schedule it for oral argument.  I

3   don't know if I need to set a deadline for you all to meet and

4   confer with respect to any discovery that the plaintiffs think

5   they need once those motions are filed.  I guess you should do

6   that as soon as feasible right after the motions are filed.

7            MR. BICKFORD:  Yes, I would suspect that it might be, it

8   might be prudent if we had a small status conference, even in

9   chambers, to just discuss that scheduling issue or on the phone

10  after the motions are filed so that we could pick a timeline.  I

11  don't think it's necessary to have a conclave, as it were, on the

12  issue, but I think that liaison counsel could probably confer on

13  the telephone with the Court and pick a reasonable scheduling

14  time.

15           THE COURT:  What I mean is, before you raise any issues

16  with me, I want you all to meet and confer among yourselves and

17  try to agree as much as you can on the scope and need for

18  discovery with respect to those motions.

19           MR URQUHART:  I think that what we, what our practice

20  would be, would be upon receiving the motions to give the

21  defendants proposed discovery, to let them comment and confer on

22  it and I'll submit what can't be decided to the Court in terms of

23  its scope and --

24           THE COURT:  All I'm saying is, I don't want you to just

25  send something by e-mail.  I want you to actually sit down with

1   them and talk about it.  I think that makes a big difference

2   sometimes.  Have a cup of coffee, meet face to face.

3          MR. RUSSO:  We'll do that, Your Honor.  We understand

4   your direction.

5          THE COURT:  Okay.

6          MR URQUHART:  We get the message, Your Honor.

7          THE COURT:  Do you want me to send it by MMS?

8          MR URQUHART:  Touche.

9          THE COURT:  By the way, what's that other Apple device

10  now?

11         MR. BICKFORD:  iPad?

12         THE COURT:  No, no, not that one even.  It's the one

13  that's like this but it's not a phone.

14         MR. BECNEL:  The iPod Touch.  You can't do MMS on that

15  because it's not a phone.  Am I right about that?  How does that

16  work?  It has every feature but a phone?

17         MR URQUHART:  It has Internet connectivity, Judge, but

18  it doesn't necessarily have a phone feature.

19         MR. BICKFORD:  You can't talk on it.  And you can't

20  text.  Texting is linked to the phone communication versus the

21  data communication.

22         THE COURT:  What else do we need to talk about here this

23  morning?  Does anybody have anything else?

24         MR. BICKFORD:  We have no other matters, Judge.

25         MR URQUHART:  We have no other matters as well.

1          MR. RUSSO:  None here, Your Honor.

2          MR. BECNEL:  Just as an abundance of caution, Daniel

3   Becnel.  There is another Apple case that is scheduled that I

4   will argue before the MDL panel on the 25th in San Diego.  It

5   deals with sales taxes on Internet service on AT&T and so on and

6   so forth.  So I don't know whether I filed the suit here; it's in

7   another division.  I don't know if they are going to send it here

8   or wherever.  There is about 50 suits filed.

9          THE COURT:  It doesn't sound like it's related.  It

10  sounds like a different case than this case.

11         MR. BECNEL:  I understand, but I just wanted to alert

12  you.  I don't know what they are going to do with it.

13         THE COURT:  I'm not volunteering to take every case

14  against Apple or AT&T that's tried.  One is enough.

15              All right.  Have a good day, folks.  Thank you for

16  coming.

17         (WHEREUPON, at 10:15 p.m.  the proceedings were

18  concluded.)

19                        *    *    *

20

21

22

23

24

25

REPORTER'S CERTIFICATE

    I, Cathy Pepper, Certified Realtime Reporter, Registered
Merit Reporter, Registered Professional Reporter, Certified Court
Reporter of the State of Louisiana, Official Court Reporter for
the United States District Court, Eastern District of Louisiana,
do hereby certify that the foregoing is a true and correct
transcript, to the best of my ability and understanding, from the
record of the proceedings in the above-entitled and numbered
matter.



                              *s/Cathy Pepper*
                              Cathy Pepper, CRR, RMR, CCR
                              Official Court Reporter
                              United States District Court

**1**

**1.3-second** [1] - 7:4
**1001** [1] - 2:10
**106** [1] - 1:23
**10:00** [1] - 1:7
**10:15** [1] - 25:17
**1100** [1] - 1:20
**12** [5] - 1:7, 4:2, 6:4, 12:1, 22:25
**12(b)(6** [1] - 5:23
**13th** [3] - 21:22, 22:4, 22:6
**14** [1] - 7:3
**15** [1] - 12:5
**15th** [1] - 5:13
**1600** [1] - 2:7
**19** [1] - 14:19
**1st** [8] - 10:24, 11:18, 12:19, 15:11, 19:13, 19:20, 20:14, 20:19

**2**

**20** [2] - 21:2, 21:5
**20004** [1] - 2:10
**2009** [1] - 16:6
**2010** [2] - 1:7, 4:2
**20th** [1] - 21:25
**22** [1] - 22:10
**23** [2] - 14:19, 22:10
**25th** [1] - 25:4

**3**

**30** [8] - 8:16, 10:14, 15:3, 18:21, 19:6, 19:21, 20:13, 20:15
**338** [1] - 1:17
**3G** [1] - 1:4
**3GS** [1] - 1:5

**4**

**40** [2] - 18:21, 19:7
**400** [1] - 2:4
**425** [1] - 2:13
**45** [1] - 19:21

**5**

**50** [1] - 25:8
**500** [1] - 3:15
**504** [1] - 3:16
**589-7779** [1] - 3:16

**6**

**60** [1] - 19:24
**600** [1] - 2:7
**650** [1] - 1:20
**6th** [2] - 21:24, 22:1

**7**

**70084** [1] - 1:23
**70130** [4] - 1:17, 1:20, 2:4, 3:16
**70501** [1] - 2:7
**7TH** [1] - 1:23

**8**

**8** [3] - 5:24, 12:2, 22:25

**9**

**9** [4] - 5:23, 7:3, 12:2, 22:25
**90** [3] - 11:14, 18:23, 19:3
**94105** [1] - 2:13
**95** [2] - 11:6, 11:14

**A**

**A.M** [1] - 1:7
**ability** [1] - 26:8
**able** [1] - 12:20
**above-entitled** [1] - 26:9
**absolute** [2] - 5:14, 14:3
**abundance** [1] - 25:2
**acquiesced** [1] - 5:15
**acquiescing** [1] - 13:22
**action** [1] - 9:11
**actions** [5] - 7:21, 7:22, 8:1, 8:16, 22:9
**additional** [1] - 16:18
**additionally** [1] - 17:9
**adequacy** [1] - 7:13
**adequate** [1] - 17:6
**adequately** [1] - 17:2
**admission** [1] - 6:25
**advertised** [1] - 17:5
**advise** [1] - 20:9
**affect** [2] - 9:4, 9:6
**affects** [1] - 9:9
**affirmatively** [1] - 17:5

**agree** [11] - 6:1, 7:14, 9:16, 9:19, 10:7, 12:8, 12:10, 14:17, 14:21, 23:17
**agreement** [1] - 5:14
**agreements** [1] - 7:25
**ahead** [1] - 20:3
**alert** [1] - 25:11
**allegation** [2] - 17:19, 18:4
**allegations** [1] - 16:18
**allege** [1] - 14:18
**alleged** [3] - 16:24, 17:7, 17:12
**alleging** [1] - 17:19
**almost** [1] - 22:15
**ALSO** [1] - 2:15
**amend** [8] - 10:23, 12:24, 14:8, 16:20, 17:16, 18:21, 19:11, 20:20
**amended** [3] - 5:16, 5:20, 11:25
**amending** [4] - 11:12, 14:4, 18:15, 18:16
**amendments** [3] - 12:21, 12:22, 19:17
**AND** [2] - 1:4, 1:5
**ANDREW** [1] - 2:21
**ANELLO** [1] - 2:19
**ANITA** [1] - 3:9
**anticipate** [1] - 10:3
**antiquated** [1] - 15:23
**anyway** [1] - 16:12
**app** [2] - 15:17, 15:18
**APPEARANCES** [3] - 1:14, 2:1, 3:1
**Apple** [11] - 6:14, 6:25, 8:7, 8:19, 11:2, 13:6, 15:14, 17:2, 24:9, 24:3
**APPLE** [1] - 1:4
**applicable** [1] - 3:12
**apply** [2] - 14:23, 15:3
**approach** [2] - 10:9, 12:12
**April** [7] - 10:24, 11:18, 12:19, 15:11, 19:13, 19:20, 20:14
**arbitration** [10] - 5:23, 7:16, 7:19, 7:25, 9:4, 9:25, 10:1, 10:7, 12:2, 23:1
**argue** [1] - 25:4
**argument** [4] - 8:2, 9:11, 9:12, 23:2
**ARMINAK** [1] - 3:8
**ART** [1] - 3:12
**Art** [1] - 4:16
**aside** [1] - 12:20

**aspect** [1] - 8:25
**assume** [1] - 12:22
**AT&T** [12] - 7:14, 7:15, 8:7, 8:23, 11:2, 16:25, 17:2, 17:10, 17:17, 18:9, 25:5, 25:14
**attach** [1] - 6:10
**attached** [4] - 6:9, 6:25, 7:1, 7:20
**ATTM** [1] - 14:25
**attract** [2] - 6:19
**available** [5] - 6:15, 7:5, 9:1, 9:2, 17:6
**AVENUE** [1] - 2:10
**avoid** [1] - 15:9

**B**

**B406** [1] - 3:15
**ban** [3] - 7:21, 7:25
**BARBIER** [1] - 1:11
**based** [1] - 5:22
**basis** [1] - 18:8
**Becnel** [2] - 22:16, 25:3
**BECNEL** [8] - 1:22, 1:22, 19:22, 22:2, 22:15, 24:14, 25:2, 25:11
**BEFORE** [1] - 1:11
**behalf** [4] - 9:7, 13:6, 14:25, 19:19
**bellwether** [1] - 11:4
**best** [2] - 20:23, 26:8
**better** [1] - 21:24
**beyond** [1] - 11:20
**Bickford** [5] - 5:9, 15:25, 18:14, 20:3, 20:10
**BICKFORD** [33] - 1:16, 1:16, 5:10, 5:18, 6:12, 8:4, 8:11, 8:16, 8:21, 8:24, 9:21, 10:2, 10:13, 10:21, 11:18, 12:19, 12:25, 15:17, 16:22, 17:9, 17:14, 17:22, 18:18, 19:19, 19:23, 20:22, 22:5, 22:10, 22:20, 23:7, 24:11, 24:19, 24:24
**big** [2] - 20:4, 24:1
**bill** [1] - 17:22
**billing** [3] - 17:10, 17:15, 17:16
**Blackberry** [3] - 15:15, 15:16, 16:14
**BLOOD** [1] - 3:3

**bore** [1] - 15:22
**bought** [1] - 17:19
**bounds** [1] - 11:20
**breach** [1] - 16:24
**breath** [1] - 11:25
**BRIAN** [1] - 2:15
**briefed** [1] - 17:9
**briefing** [3] - 17:10, 19:18, 23:1
**briefly** [1] - 13:4
**briefs** [2] - 10:21, 11:11
**Bryan** [1] - 17:24
**bulk** [1] - 19:5
**burdensome** [1] - 11:21
**button** [1] - 9:18
**BY** [8] - 1:16, 1:19, 1:22, 2:3, 2:6, 2:9, 2:12, 3:17, 3:18

**C**

**C-L-I-M-A-C-O** [1] - 4:22
**CA** [1] - 2:13
**calendar** [2] - 21:7, 21:8
**California** [2] - 7:11, 18:3
**CALLED** [1] - 4:4
**CAMBS** [1] - 3:6
**capability** [1] - 17:20
**care** [1] - 11:13
**CARL** [1] - 1:11
**cart** [1] - 11:23
**case** [19] - 6:14, 6:21, 6:23, 9:22, 9:23, 9:25, 10:22, 11:7, 11:14, 12:3, 12:6, 18:2, 18:24, 19:5, 25:3, 25:10, 25:13
**cases** [4] - 7:23, 7:24, 12:21
**Cathy** [2] - 26:3, 26:14
**CATHY** [1] - 3:15
**caution** [1] - 25:2
**CCR** [2] - 3:15, 26:14
**cell** [1] - 16:10
**CENTOLA** [1] - 2:18
**certainly** [1] - 19:12
**CERTIFICATE** [1] - 26:1
**Certified** [2] - 26:3, 26:4
**certify** [1] - 26:7
**cetera** [3] - 11:9, 11:21, 17:15
**chambers** [1] - 23:9

**change** [1] - 18:25
**changed** [2] - 6:11, 6:12
**charge** [1] - 17:23
**charged** [1] - 17:21
**charging** [1] - 18:9
**cherry** [1] - 14:22
**CIALKOWSKI** [1] - 3:3
**circumstances** [2] - 13:17, 14:15
**cited** [1] - 7:23
**claim** [8] - 6:5, 9:9, 9:10, 17:1, 17:4, 17:7, 18:8, 18:11
**claims** [1] - 7:21
**class** [9] - 7:21, 7:22, 7:25, 9:8, 9:11, 12:16, 16:5, 22:9, 22:21
**clause** [1] - 9:4
**clearly** [1] - 17:16
**CLERK** [1] - 4:7
**clerk** [1] - 16:9
**clicking** [1] - 9:18
**clients** [3] - 8:8, 8:9, 8:14
**clients'** [1] - 9:18
**Climaco** [2] - 4:22, 4:23
**CLIMACO** [2] - 2:19, 4:22
**close** [1] - 19:2
**coffee** [1] - 24:2
**collecting** [1] - 17:15
**comfortable** [1] - 16:14
**coming** [2] - 4:18, 25:16
**comment** [1] - 23:21
**communication** [2] - 24:20, 24:21
**compatibility** [1] - 15:23
**compatible** [1] - 16:2
**complaint** [32] - 11:3, 11:4, 11:5, 11:12, 11:25, 13:7, 13:12, 13:15, 13:19, 13:23, 14:5, 14:8, 14:12, 14:20, 15:1, 15:2, 16:20, 17:8, 17:13, 18:2, 18:6, 18:7, 18:16, 18:19, 19:1, 19:8, 19:9, 20:1, 20:16, 21:5
**complaints** [11] - 5:16, 5:20, 11:15, 14:16, 14:18, 16:19, 18:17, 18:21, 19:7, 19:11, 20:21

**compromise** [1] - 11:1
**COMPUTER** [1] - 3:18
**conceding** [1] - 13:22
**conclave** [1] - 23:11
**concluded** [1] - 25:18
**concomitant** [1] - 10:24
**concomitantly** [1] - 11:19
**confer** [7] - 5:25, 12:7, 15:8, 23:4, 23:12, 23:16, 23:21
**conference** [4] - 20:23, 21:6, 22:7, 23:8
**CONFERENCE** [1] - 1:10
**connectivity** [1] - 24:17
**consolidate** [1] - 11:3
**consolidated** [1] - 11:3
**consumer** [2] - 6:14, 7:22
**consumers** [1] - 9:2, 9:4
**contained** [2] - 16:19, 18:24
**continue** [1] - 18:21
**CONTINUED** [2] - 2:1, 3:1
**contract** [11] - 6:8, 8:7, 8:8, 8:9, 8:23, 9:1, 9:2, 16:25
**contractually** [1] - 16:25
**convenient** [2] - 21:13, 21:23
**conversations** [1] - 20:14
**copy** [1] - 14:20
**core** [1] - 11:10
**correct** [3] - 5:17, 8:12, 26:7
**counsel** [1] - 23:21
**couple** [1] - 10:16
**COURT** [63] - 1:1, 3:15, 4:4, 4:8, 4:12, 4:15, 4:17, 4:20, 4:23, 5:1, 5:4, 5:6, 5:11, 5:19, 7:23, 8:8, 8:14, 8:18, 8:22, 9:7, 9:24, 10:4, 10:19, 11:16, 11:23, 12:23, 13:1, 13:5, 13:9, 13:20, 14:1, 14:13, 14:18, 15:10, 15:13, 15:18, 16:23, 17:12, 17:18, 18:1, 18:5, 18:11, 18:13, 19:15,

20:4, 20:18, 21:1, 21:14, 21:24, 22:4, 22:6, 22:14, 22:19, 22:23, 23:15, 23:24, 24:5, 24:7, 24:9, 24:12, 24:22, 25:9, 25:13
**Court** [16] - 9:23, 10:14, 10:24, 11:6, 11:10, 19:4, 19:21, 20:9, 21:13, 23:13, 23:22, 26:4, 26:5, 26:6, 26:15, 26:16
**courts** [1] - 15:23
**criminal** [4] - 21:15, 21:16, 22:1
**CROWELL** [1] - 2:9
**CRR** [2] - 3:15, 26:14
**cup** [1] - 24:2
**cushion** [2] - 21:3

**D**

**DANIEL** [3] - 1:22, 1:22, 3:8
**Daniel** [2] - 22:16, 25:2
**data** [1] - 24:21
**date** [2] - 7:5, 21:7
**DAVID** [2] - 2:21, 3:3
**days** [8] - 12:5, 19:21, 19:23, 19:24, 20:13, 20:15, 21:2, 21:5
**DC** [1] - 2:10
**deadline** [4] - 5:17, 11:16, 14:4, 23:3
**deal** [4] - 9:3, 11:6, 14:6, 19:4
**dealing** [4] - 7:7, 7:12, 7:21
**deals** [1] - 25:5
**decide** [2] - 12:4, 12:11
**decided** [1] - 23:22
**deep** [1] - 11:24
**DEFENDANT** [1] - 2:3
**defendants** [8] - 5:21, 18:7, 18:20, 19:24, 20:8, 21:3, 22:24, 23:21
**defense** [1] - 13:2
**DEPUTY** [1] - 4:7
**designed** [2] - 6:19
**details** [1] - 15:22
**device** [1] - 24:9
**Diego** [1] - 25:4
**difference** [3] - 20:4, 20:6, 24:1
**different** [7] - 4:9,

16:24, 18:11, 19:6, 19:7, 22:8, 25:10
**direct** [1] - 22:18
**direction** [3] - 6:11, 6:13, 24:4
**directly** [1] - 22:18
**disclaimer** [2] - 7:3, 7:4
**disclaimers** [1] - 6:18
**disclose** [3] - 6:17, 16:12, 17:2
**disclosed** [1] - 6:17
**disclosure** [2] - 15:14, 17:6
**discover** [1] - 6:23
**discovering** [1] - 6:23
**discovery** [21] - 5:9, 6:1, 6:4, 6:6, 7:15, 7:16, 7:20, 8:1, 9:14, 10:6, 10:10, 10:24, 11:19, 11:20, 12:7, 12:9, 12:11, 15:9, 23:4, 23:18, 23:19
**discuss** [1] - 23:9
**discussed** [1] - 10:18
**discussion** [1] - 7:2
**dismiss** [1] - 12:1
**Dismiss** [1] - 6:9
**disparate** [1] - 19:8
**District** [3] - 26:6, 26:16
**DISTRICT** [3] - 1:1, 1:2, 1:11
**division** [1] - 25:7
**docket** [1] - 21:15
**documents** [1] - 6:7
**done** [2] - 8:24, 23:1
**door** [2] - 12:12, 14:22
**DOUGLAS** [1] - 2:18
**down** [5] - 10:5, 11:24, 12:6, 20:2, 23:25
**due** [2] - 9:21, 20:18
**DUGAN** [1] - 2:16
**during** [1] - 20:15
**duty** [1] - 17:2

**E**

**e-mail** [2] - 15:24, 23:25
**Eastern** [1] - 26:6
**EASTERN** [1] - 1:2
**effort** [1] - 12:17
**Eileen** [1] - 21:7
**either** [4] - 9:17, 12:16, 14:14, 17:13
**element** [1] - 8:13
**encompasses** [1] - 13:12

**end** [2] - 12:18, 20:20
**enforce** [2] - 5:23, 23:1
**ENGELMEYER** [1] - 3:10
**entire** [1] - 7:2
**entitled** [1] - 26:9
**ESQUIRE** [32] - 1:16, 1:19, 1:22, 2:3, 2:6, 2:9, 2:12, 2:12, 2:15, 2:16, 2:16, 2:18, 2:18, 2:19, 2:19, 2:21, 2:21, 2:22, 2:22, 3:3, 3:4, 3:5, 3:6, 3:6, 3:8, 3:8, 3:9, 3:10, 3:11, 3:11, 3:12
**essentially** [1] - 14:18
**et** [3] - 11:9, 11:21, 17:15
**exact** [1] - 18:3
**exactly** [2] - 15:7, 18:9
**example** [7] - 6:4, 6:8, 6:24, 7:6, 8:15, 8:18, 16:23
**except** [1] - 12:23
**exemplar** [14] - 10:23, 11:4, 11:25, 12:20, 13:7, 13:15, 13:18, 15:1, 15:2, 18:16, 20:1, 20:16, 20:17, 21:4
**exist** [1] - 11:11
**existing** [1] - 11:15
**exists** [1] - 15:2
**expect** [1] - 10:17
**expeditious** [1] - 19:4
**extent** [1] - 12:9
**extrinsic** [1] - 7:19

**F**

**face** [2] - 24:2
**fact** [7] - 11:20, 14:2, 14:19, 17:10, 18:18, 18:19, 19:20
**factual** [1] - 9:16
**failed** [1] - 17:3
**fall** [1] - 13:25
**far** [2] - 16:19, 17:8
**fashion** [1] - 11:13
**feasible** [1] - 23:6
**feature** [3] - 7:9, 24:16, 24:18
**federal** [2] - 15:20, 15:23
**ferret** [1] - 19:6
**figure** [3] - 16:9, 16:12, 19:7

**file** [36] - 5:16, 5:21, 9:7, 10:4, 10:11, 10:22, 10:23, 11:25, 12:3, 12:5, 12:19, 13:7, 14:2, 14:3, 14:4, 14:5, 14:6, 14:25, 15:2, 15:5, 15:7, 18:15, 18:19, 19:20, 19:23, 19:24, 20:2, 20:8, 20:15, 20:24, 20:25, 21:4, 22:18, 22:24

**filed** [17] - 5:11, 8:17, 10:14, 10:16, 10:20, 13:13, 13:15, 16:17, 18:19, 21:5, 22:13, 22:17, 23:5, 23:6, 23:10, 25:6, 25:8

**filing** [4] - 13:23, 14:11, 19:17

**fine** [1] - 16:20

**FIRM** [1] - 1:19

**first** [9] - 5:16, 9:7, 9:9, 12:13, 13:8, 13:9, 18:7, 21:1, 21:6

**flash** [1] - 7:4

**focus** [1] - 10:8

**folks** [1] - 25:15

**follow** [1] - 9:11

**following** [1] - 13:23

**FOR** [2] - 1:16, 2:3

**foregoing** [1] - 26:7

**FORESTER** [1] - 2:11

**form** [2] - 13:19, 13:25

**forth** [4] - 12:16, 15:7, 19:18, 25:6

**forward** [5] - 6:22, 11:5, 11:12, 12:19, 12:25

**fought** [1] - 14:11

**four** [1] - 7:1

**FRANCISCO** [1] - 2:13

**FRANK** [1] - 3:11

**frankly** [2] - 7:24, 18:6

**FRIDAY** [2] - 1:7, 4:2

**Friday** [2] - 21:11, 21:19

**FRITCHIE** [1] - 2:3

**full** [1] - 15:13

**functionality** [1] - 17:5

**G**

**G-O-E-T-T-E** [1] - 18:7

**GARY** [1] - 2:6

**Gary** [1] - 14:24

**general** [1] - 7:8

**GERMAIN** [1] - 3:8

**get-go** [1] - 6:20

**given** [3] - 6:24, 11:17, 14:16

**Goette** [1] - 18:7

**great** [3] - 19:5, 22:2, 22:3

**group** [1] - 11:10

**grow** [2] - 10:17, 22:11

**growing** [2] - 10:15, 12:21

**guess** [7] - 5:12, 13:21, 16:10, 16:21, 19:15, 20:22, 23:5

**GURLEY** [1] - 2:22

**H**

**half** [1] - 9:25

**happy** [1] - 14:5

**harm** [2] - 12:3, 14:2

**hear** [1] - 12:5

**heard** [4] - 4:23, 13:8, 13:9

**HEARD** [1] - 1:11

**hearing** [3] - 12:10, 14:11, 18:17

**HEATHER** [1] - 2:12

**hereby** [1] - 26:7

**home** [1] - 7:11

**honest** [1] - 16:13

**Honor** [27] - 4:11, 4:25, 5:3, 5:5, 5:10, 5:18, 6:13, 6:24, 13:4, 13:11, 14:10, 14:15, 14:21, 14:24, 15:4, 15:12, 16:22, 17:24, 18:8, 18:12, 18:18, 20:13, 21:21, 22:3, 24:3, 24:6, 25:1

**HONORABLE** [1] - 1:11

**Hope** [1] - 21:8

**horse** [1] - 11:24

**I**

**idea** [4] - 13:2, 14:13, 16:4, 22:8

**ideas** [1] - 12:23

**IN** [1] - 1:4

**include** [1] - 13:18

**indicating** [1] - 17:17

**individual** [4] - 8:18, 12:24, 18:16, 20:20

**individually** [2] - 8:11, 14:8

**individuals** [1] - 9:8

**information** [2] - 17:15, 17:16

**initial** [1] - 14:11

**instance** [1] - 8:6

**intend** [2] - 13:18, 20:25

**interest** [1] - 15:13

**Internet** [2] - 24:17, 25:5

**invited** [1] - 15:19

**involved** [1] - 22:9

**iPad** [1] - 24:11

**iPhone** [3] - 1:4, 15:14, 17:3

**iPhone's** [1] - 17:5

**iPhones** [3] - 15:21, 16:2, 17:20

**iPod** [1] - 24:14

**IRWIN** [1] - 2:3

**issue** [15] - 6:20, 6:21, 8:8, 9:16, 10:6, 10:8, 15:5, 15:23, 18:20, 19:12, 19:13, 20:9, 23:9, 23:12

**issues** [16] - 7:12, 7:13, 7:17, 10:6, 11:6, 11:8, 11:9, 11:10, 11:14, 12:15, 15:9, 18:23, 18:25, 19:3, 19:5, 23:19

**item** [1] - 17:22

**itself** [1] - 17:22

**J**

**JAMES** [1] - 2:16

**January** [1] - 5:13

**JASKOT** [1] - 3:9

**JEFFERSON** [1] - 2:7

**Jersey** [1] - 22:12

**JOHN** [1] - 2:19

**join** [1] - 20:11

**joined** [3] - 4:10, 4:14, 4:20

**JONES** [1] - 2:6

**JR** [1] - 2:3

**JUDGE** [1] - 1:11

**Judge** [10] - 9:21, 10:13, 11:19, 13:21, 21:10, 21:20, 22:5, 22:20, 24:17, 24:24

**judge** [2] - 19:25, 22:12

**judges** [2] - 15:21, 16:3

**judiciary** [1] - 15:21

**juncture** [1] - 13:24

**K**

**KALISH** [1] - 3:6

**KATHLEEN** [1] - 2:9

**keeps** [1] - 21:8

**kind** [3] - 5:12, 12:6, 16:1

**KIRK** [1] - 3:4

**Kirk** [1] - 5:5

**knowing** [1] - 10:10

**L**

**LA** [6] - 1:17, 1:20, 1:23, 2:4, 2:7, 3:16

**LAFAYETTE** [2] - 1:17, 2:7

**last** [6] - 5:13, 15:15, 15:19, 17:4, 17:7, 19:16

**laugh** [1] - 15:24

**laughing** [1] - 16:1

**law** [6] - 11:9, 13:16, 14:23, 16:8, 18:25, 22:22

**LAW** [3] - 1:16, 1:19, 1:22

**LAWRENCE** [1] - 2:18

**laws** [1] - 15:3

**lawsuit** [1] - 10:23

**lawsuits** [1] - 10:23

**lawyers** [1] - 21:11

**least** [1] - 12:8

**legal** [2] - 8:2, 16:24

**less** [1] - 5:15

**letting** [2] - 12:3, 14:2

**liaison** [1] - 23:12

**light** [1] - 17:15

**limited** [1] - 14:16

**line** [1] - 17:22

**linked** [1] - 24:20

**lists** [1] - 4:9

**LITIGATION** [1] - 1:5

**litigation** [1] - 6:22

**look** [6] - 9:9, 10:5, 12:1, 12:6, 15:25, 20:1

**looked** [6] - 6:13, 10:18, 10:19, 10:22, 18:6, 19:1

**looking** [3] - 6:5, 8:13, 21:22

**looks** [1] - 6:11

**lose** [1] - 20:12

**loss** [1] - 13:12

**Lotus** [1] - 15:24, 15:25

**Louisiana** [2] - 26:5, 26:6

**LOUISIANA** [2] - 1:2, 1:6

**M**

**mail** [2] - 15:24, 23:25

**majority** [1] - 19:2

**managed** [1] - 16:9

**MARCH** [2] - 1:7, 4:2

**MARKET** [1] - 2:13

**marketed** [3] - 6:14, 7:8, 17:5

**MARKETING** [1] - 1:5

**marketing** [4] - 6:16, 6:23, 7:6, 7:12

**marketplace** [2] - 9:5, 9:6

**Massachusetts** [1] - 22:12

**master** [1] - 14:11

**MATT** [1] - 3:11

**Matt** [4] - 4:13, 4:25, 5:1, 5:2

**matter** [1] - 26:10

**matters** [3] - 21:16, 24:24, 24:25

**MDL** [3] - 1:6, 10:15, 25:4

**mean** [4] - 6:3, 12:13, 20:14, 23:15

**MECHANICAL** [1] - 3:17

**meet** [4] - 5:25, 23:3, 23:16, 24:2

**mell** [1] - 12:4

**member** [1] - 16:5

**memoranda** [2] - 6:10, 16:17

**memorandum** [1] - 16:23

**Merit** [1] - 26:4

**message** [1] - 24:6

**met** [2] - 5:12, 15:19

**MEYER** [1] - 2:21

**MICHAEL** [1] - 2:22

**microphone** [1] - 18:1

**might** [5] - 10:7, 16:4, 21:12, 23:7, 23:8

**minutes** [2] - 7:1, 7:3

**misrepresentation** [1] - 17:4

**MMS** [14] - 1:5, 6:17, 7:2, 7:4, 16:8, 16:25, 17:1, 17:3, 17:5, 17:11, 17:20, 17:23, 24:7, 24:14

**moment** [1] - 18:22

**money** [1] - 12:17

**month** [1] - 20:5
**MOORE** [2] - 2:3, 2:18
**MORELAND** [5] - 3:11, 4:10, 4:13, 4:25, 5:3
**Moreland** [3] - 4:13, 4:25, 5:1
**MORING** [1] - 2:9
**morning** [5] - 4:8, 5:8, 5:10, 16:7, 24:23
**mornings** [1] - 21:17
**MORRISON** [1] - 2:11
**MOSER** [1] - 2:12
**most** [1] - 22:17
**Motion** [1] - 6:9
**motion** [5] - 5:22, 6:4, 10:5, 12:5, 22:1
**motions** [26] - 5:22, 5:23, 5:24, 6:2, 10:18, 10:19, 10:21, 11:21, 12:1, 12:2, 12:3, 12:8, 12:14, 19:8, 19:17, 19:23, 22:24, 22:25, 23:5, 23:6, 23:10, 23:18, 23:20
**move** [1] - 19:24
**MR** [72] - 4:10, 4:13, 4:22, 4:25, 5:3, 5:5, 5:10, 5:18, 6:12, 8:4, 8:11, 8:16, 8:21, 8:24, 9:21, 10:2, 10:13, 10:21, 11:18, 12:19, 12:25, 13:4, 13:6, 13:11, 13:21, 14:10, 14:15, 14:21, 14:24, 15:11, 15:17, 16:22, 17:9, 17:14, 17:22, 17:24, 18:2, 18:8, 18:12, 18:18, 19:19, 19:22, 19:23, 19:25, 20:12, 20:13, 20:22, 21:10, 21:20, 21:21, 21:22, 22:2, 22:3, 22:5, 22:10, 22:12, 22:15, 22:20, 23:7, 23:19, 24:3, 24:6, 24:8, 24:11, 24:14, 24:17, 24:19, 24:24, 24:25, 25:1, 25:2, 25:11
**MURRAY** [3] - 1:19, 1:19, 22:12

## N

**name** [2] - 5:1, 5:6
**named** [1] - 13:13
**narrow** [2] - 12:15

**narrowly** [1] - 10:8
**nationwide** [1] - 22:21
**nature** [1] - 8:12
**necessarily** [1] - 24:18
**necessary** [1] - 23:11
**need** [14] - 6:1, 6:3, 6:6, 8:1, 9:13, 10:6, 11:24, 12:7, 16:20, 21:8, 23:3, 23:5, 23:17, 24:22
**needing** [1] - 20:20
**never** [1] - 16:7
**NEW** [5] - 1:6, 1:17, 1:20, 2:4, 3:16
**New** [1] - 22:12
**next** [5] - 4:23, 5:21, 20:23, 21:6, 22:7
**NO** [1] - 1:6
**none** [1] - 25:1
**Notes** [2] - 15:24, 15:25
**noticed** [1] - 10:15
**notion** [1] - 5:15
**number** [10] - 7:23, 7:24, 10:15, 10:17, 12:13, 12:21, 14:16, 22:11, 22:15, 22:16
**numbered** [1] - 26:9
**NW** [1] - 2:10

## O

**O'QUINN** [1] - 2:21
**object** [1] - 11:22
**objection** [1] - 20:16
**objections** [1] - 21:4
**obligated** [1] - 16:25
**obviously** [3] - 12:6, 16:4, 18:13
**OF** [3] - 1:2, 1:10, 1:16
**offered** [1] - 15:7
**OFFICES** [2] - 1:16, 1:22
**Official** [2] - 26:5, 26:15
**OFFICIAL** [1] - 3:15
**once** [3] - 6:10, 22:24, 23:5
**one** [13] - 7:6, 10:23, 11:12, 12:24, 13:15, 14:12, 14:22, 16:13, 16:16, 17:4, 24:12, 25:14
**ones** [1] - 18:6
**online** [1] - 8:22
**open** [2] - 10:10, 14:22
**opening** [1] - 12:12
**opportunity** [3] - 6:22,

11:22, 14:7
**oral** [1] - 23:2
**ORDER** [1] - 4:4
**order** [1] - 22:18
**ordinarily** [1] - 6:3
**original** [1] - 14:20
**originally** [1] - 15:7
**ORLEANS** [5] - 1:6, 1:17, 1:20, 2:4, 3:16
**otherwise** [1] - 19:15
**ought** [2] - 6:22, 20:8
**own** [1] - 16:10

## P

**p.m** [1] - 25:17
**Paint** [1] - 9:22
**panel** [1] - 25:4
**papers** [4] - 15:6, 15:8, 20:15, 20:24
**Parker** [1] - 22:16
**part** [1] - 16:21
**participant** [1] - 15:20
**particularly** [1] - 7:20
**parties** [1] - 12:16
**PATRICK** [1] - 3:5
**pell** [1] - 12:4
**pell-mell** [1] - 12:4
**PENELOPE** [1] - 2:12
**PENNSYLVANIA** [1] - 2:10
**PENTON** [1] - 2:16
**people** [8] - 6:19, 6:20, 8:6, 8:24, 9:10, 9:15, 15:24, 17:19
**Pepper** [3] - 26:3, 26:13, 26:14
**PEPPER** [1] - 3:15
**percent** [5] - 11:6, 11:14, 18:23, 19:3
**perfect** [1] - 6:24
**perfectly** [1] - 15:4
**period** [1] - 20:15
**person** [1] - 4:24
**pertaining** [2] - 6:2, 10:7
**PETER** [1] - 3:5
**petitions** [2] - 19:6, 19:7
**phone** [14] - 4:8, 4:19, 4:21, 7:9, 7:10, 16:10, 20:11, 23:9, 24:13, 24:15, 24:16, 24:18, 24:20
**Photo** [1] - 16:8
**pick** [2] - 23:10, 23:13
**picking** [1] - 14:22
**picture** [2] - 16:8, 16:10

**pilot** [1] - 15:20
**PISCITELLI** [1] - 3:11
**place** [2] - 19:16, 22:22
**PLAINTIFF** [1] - 1:16
**plaintiff** [1] - 19:20
**plaintiff's** [2] - 15:17, 15:18
**plaintiffs** [10] - 5:14, 5:15, 13:13, 14:11, 16:18, 16:24, 17:25, 20:9, 20:20, 23:4
**plaintiffs'** [2] - 21:4, 22:4
**play** [3] - 6:7, 7:18, 7:19
**pleadings** [1] - 5:22
**pleas** [1] - 6:5
**point** [7] - 5:25, 11:20, 13:17, 13:21, 14:23, 15:6, 22:21
**pointed** [3] - 14:19, 16:16, 22:20
**position** [3] - 11:1, 11:2, 14:12
**POYDRAS** [3] - 1:20, 2:4, 3:15
**practical** [1] - 12:13
**practice** [2] - 9:3, 23:19
**PRACTICES** [1] - 1:5
**practices** [3] - 6:16, 6:23, 7:7
**prefer** [3] - 13:16, 18:15, 21:18
**preference** [1] - 21:10
**PREOVOLOS** [1] - 2:12
**prepared** [2] - 10:14, 10:17
**preparing** [1] - 10:22
**present** [1] - 22:9
**PRESENT** [2] - 2:15, 3:3
**presented** [1] - 13:18
**previously** [1] - 11:17
**Prima** [1] - 9:22
**primarily** [1] - 5:8
**problem** [7] - 13:1, 13:3, 13:10, 13:11, 13:14, 20:19
**procedural** [4] - 8:5, 8:11, 8:12, 8:25
**procedure** [3] - 13:24, 15:6, 18:20
**proceedings** [2] - 25:17, 26:9
**PROCEEDINGS** [2] - 3:17, 4:1
**process** [1] - 15:1

**PRODUCED** [1] - 3:18
**product** [1] - 6:15
**products** [1] - 6:14
**Professional** [1] - 26:4
**program** [1] - 15:20
**promptly** [1] - 20:2
**proposal** [2] - 13:7, 13:17
**proposed** [2] - 21:4, 23:21
**proposing** [3] - 10:13, 18:15, 19:10
**provide** [2] - 16:25, 17:1
**provided** [1] - 17:3
**providing** [1] - 18:10
**prudent** [1] - 23:8
**public** [1] - 7:8
**purchase** [1] - 17:7
**purpose** [1] - 10:1
**purposely** [1] - 6:18
**put** [4] - 7:18, 19:16, 20:18
**putative** [1] - 22:21
**putting** [1] - 11:23

## Q

**QUENTIN** [1] - 2:3
**Quentin** [1] - 13:6
**quote** [1] - 13:7

## R

**raise** [2] - 11:5, 23:15
**raised** [2] - 7:17
**rather** [3] - 18:15, 18:16, 19:5
**RE** [1] - 1:4
**read** [4] - 5:11, 6:10, 11:11, 18:5
**real** [1] - 12:13
**Realtime** [1] - 26:3
**reasonable** [3] - 10:9, 15:4, 23:13
**reasons** [1] - 12:13
**receiving** [1] - 23:20
**recently** [1] - 10:16
**record** [1] - 26:9
**RECORDED** [1] - 3:17
**regard** [4] - 7:15, 7:16, 8:12, 11:21
**regardless** [1] - 14:25
**Registered** [2] - 26:3, 26:4
**related** [2] - 12:8, 25:9
**relatively** [1] - 14:16

**relevant** [1] - 6:9
**Reporter** [6] - 26:3, 26:4, 26:5, 26:15
**REPORTER** [1] - 3:15
**REPORTER'S** [1] - 26:1
**represent** [5] - 8:14, 8:15, 8:19, 8:24, 9:10
**representatives** [1] - 9:8
**RESERVE** [1] - 1:23
**resolved** [2] - 11:15, 19:3
**respect** [5] - 9:21, 20:10, 20:16, 23:4, 23:18
**respond** [1] - 13:4
**responses** [1] - 19:18
**rest** [1] - 12:21
**revisit** [2] - 19:12, 19:13
**rise** [1] - 4:7
**RMR** [3] - 3:15, 26:14
**road** [1] - 18:21
**roll** [1] - 4:21
**RONNIE** [1] - 2:16
**ROOM** [1] - 3:15
**rule** [1] - 19:8
**Rule** [8] - 5:23, 5:24, 6:4, 12:1, 12:2, 22:25
**Russo** [1] - 14:24
**RUSSO** [8] - 2:6, 14:24, 20:13, 21:10, 21:20, 21:22, 24:3, 25:1

## S

**S-A-D-I-N** [1] - 4:18
**s/Cathy** [1] - 26:13
**SADIN** [1] - 3:12
**Sadin** [1] - 4:16
**sales** [1] - 25:5
**SALES** [1] - 1:5
**SAN** [1] - 2:13
**San** [1] - 25:4
**saw** [1] - 14:17
**schedule** [6] - 19:16, 20:1, 20:7, 21:10, 23:2
**scheduled** [1] - 25:3
**schedules** [1] - 21:22
**scheduling** [2] - 23:9, 23:13
**scope** [5] - 5:9, 6:1, 12:15, 23:17, 23:23
**SCOTT** [3] - 1:16,

1:16, 3:6
**screen** [1] - 7:4
**second** [2] - 17:1, 21:23
**seconds** [1] - 7:3
**see** [12] - 6:1, 7:3, 9:13, 12:2, 13:1, 13:9, 13:15, 14:2, 15:8, 15:11, 16:14, 16:15
**seek** [2] - 7:21
**select** [1] - 13:16
**selling** [1] - 7:10
**seminal** [1] - 9:22
**send** [4] - 16:7, 23:25, 24:7, 25:7
**sense** [1] - 12:18
**sent** [1] - 16:9
**separate** [1] - 15:3
**September** [1] - 16:5
**serve** [1] - 11:19
**service** [3] - 17:20, 18:9, 25:5
**services** [2] - 17:6, 17:11
**set** [4] - 12:20, 15:7, 22:6, 23:3
**shortly** [1] - 20:24
**side** [6] - 5:11, 7:14, 12:3, 12:16, 14:13, 22:4
**sign** [1] - 9:16
**signal** [1] - 20:12
**signature** [1] - 9:18
**signed** [1] - 5:7
**sit** [5] - 10:5, 12:6, 15:8, 20:2, 23:25
**six** [1] - 20:5
**sixty** [2] - 19:22, 19:23
**slow** [1] - 11:24
**small** [1] - 23:8
**Smartphone** [1] - 7:8
**software** [1] - 15:24
**someone** [3] - 4:10, 4:14, 20:11
**sometime** [1] - 20:24
**sometimes** [2] - 6:7, 24:2
**somewhere** [1] - 20:18
**soon** [1] - 23:6
**SOOY** [1] - 2:9
**sort** [1] - 12:23
**sound** [1] - 25:9
**sounds** [2] - 13:2, 25:10
**SPEAKER** [2] - 4:16, 4:18
**specifically** [1] - 17:14

**specificity** [1] - 16:22
**spell** [1] - 4:17
**spend** [1] - 9:24
**spending** [1] - 12:17
**standpoint** - 8:12
**start** [2] - 6:21, 21:16
**started** [1] - 17:15
**state** [3] - 15:3, 18:25, 22:16
**State** [1] - 26:5
**state's** [1] - 14:23
**states** [3] - 11:9, 22:9, 22:17
**STATES** [2] - 1:1, 1:11
**States** [2] - 26:6, 26:16
**status** [2] - 22:7, 23:8
**STATUS** [1] - 1:10
**stay** [1] - 19:25
**STENOGRAPHY** [1] - 3:17
**step** [1] - 5:21
**STEPHEN** [2] - 1:19, 2:22
**stepping** [1] - 7:14
**stick** [2] - 19:16, 20:7
**still** [7] - 11:23, 14:7, 15:3, 15:15, 16:13, 20:19, 20:21
**store** [2] - 8:20, 8:23
**Strange** [1] - 17:24
**STRANGE** [6] - 2:15, 17:24, 18:2, 18:8, 18:12, 19:25
**STREET** [7] - 1:17, 1:20, 1:23, 2:4, 2:7, 2:13, 3:15
**strictly** [1] - 6:4
**Striker** [1] - 18:2
**stuck** [1] - 16:2
**stuff** [1] - 21:9
**submit** [1] - 23:22
**substantially** [1] - 12:15
**substantive** [4] - 8:5, 9:3, 11:9, 18:25
**suggested** [1] - 20:10
**suggesting** [1] - 21:18
**suggestion** [2] - 15:5, 19:25
**suing** [1] - 6:8
**suit** [6] - 9:7, 10:23, 10:25, 12:20, 13:13, 25:6
**SUITE** [2] - 1:20, 2:7
**suits** [4] - 10:14, 10:16, 12:22, 25:8
**Supreme** [1] - 9:23
**suspect** [4] - 9:17,

12:9, 22:10, 23:7
**SWEDLOW** [1] - 2:22

## T

**TAMAR** [1] - 3:8
**taxes** [1] - 25:5
**tee** [1] - 11:13
**telephone** [1] - 23:13
**TELEPHONE** [1] - 3:3
**terms** [2] - 9:17, 23:22
**test** [1] - 8:4
**text** [1] - 24:20
**Texting** [1] - 17:23
**texting** [2] - 7:2, 24:20
**THE** [67] - 1:11, 1:16, 1:19, 2:3, 4:7, 4:8, 4:12, 4:15, 4:16, 4:17, 4:18, 4:20, 4:23, 5:1, 5:4, 5:6, 5:11, 5:19, 7:23, 8:8, 8:14, 8:18, 8:22, 9:7, 9:24, 10:4, 10:19, 11:16, 11:23, 12:23, 13:1, 13:5, 13:9, 13:20, 14:1, 14:13, 14:18, 15:10, 15:13, 15:18, 16:23, 17:12, 17:18, 18:1, 18:5, 18:11, 18:13, 19:15, 20:4, 20:18, 21:1, 21:14, 21:24, 22:4, 22:6, 22:14, 22:19, 22:23, 23:15, 23:24, 24:5, 24:7, 24:9, 24:12, 24:22, 25:9, 25:13
**theories** [1] - 16:24
**theory** [1] - 17:1
**they've** [1] - 14:3
**thirds** [1] - 21:15
**three** [1] - 16:24
**Thursday** [5] - 21:12, 21:14, 21:17, 21:19, 21:23, 22:6
**Thursdays** [1] - 21:16
**TIM** [1] - 3:10
**timeline** [1] - 23:10
**timing** [2] - 5:9, 20:23
**TIMOTHY** [1] - 3:3
**TO** [1] - 4:4
**today** [1] - 10:13
**took** [5] - 4:21, 11:2, 14:12, 16:8, 21:15
**total** [1] - 12:18
**totally** [1] - 10:10
**Touch** [1] - 24:14
**Touche** [1] - 24:8

**transcript** [1] - 26:8
**TRANSCRIPT** [2] - 1:10, 3:17
**transferred** [1] - 18:3
**traveling** [1] - 21:11
**tried** [2] - 16:7, 25:14
**true** [1] - 26:7
**try** [2] - 7:25, 23:17
**Tuesday** [1] - 22:13
**two** [3] - 4:9, 13:20, 21:15
**two-thirds** [1] - 21:15
**type** [1] - 13:23

## U

**unconscionability** [2] - 8:5, 8:6
**unconscionable** [2] - 7:25, 9:5
**under** [3] - 13:15, 13:16, 14:15
**United** [2] - 26:6, 26:16
**UNITED** [2] - 1:1, 1:11
**universe** [1] - 19:2
**unless** [1] - 9:15
**unpurposely** [1] - 6:19
**unquote** [1] - 13:7
**up** [5] - 10:10, 11:13, 12:12, 18:1, 20:20
**Urquhart** [1] - 13:6
**URQUHART** [18] - 2:3, 2:3, 13:4, 13:6, 13:11, 13:21, 14:10, 14:15, 14:21, 15:11, 20:12, 21:21, 22:3, 23:19, 24:6, 24:8, 24:17, 24:25
**users** [1] - 17:3

## V

**variety** [1] - 8:25
**vast** [1] - 19:2
**verbatim** [1] - 14:20
**versus** [1] - 24:20
**VIA** [1] - 3:3
**videotape** [3] - 6:25, 7:1
**VIRGINIA** [1] - 2:19
**virtually** [1] - 7:9
**visit** [1] - 18:22
**volunteering** [1] - 25:13

## W

**Waichman** [1] - 22:16
**wait** [4] - 9:7, 10:4, 15:11, 19:13
**waiting** [1] - 22:18
**WALKER** [1] - 2:6
**WARNER** [1] - 3:5
**WASHINGTON** [1] - 2:10
**waste** [1] - 12:18
**watch** [1] - 7:3
**ways** [1] - 9:19
**week** [3] - 21:1, 21:6, 21:23
**weeks** [2] - 13:20, 20:5
**WEST** [1] - 1:23
**WHEREUPON** [1] - 25:17
**whole** [2] - 9:4, 9:5
**willing** [1] - 19:13
**WOOD** [2] - 3:4, 5:5
**Wood** [1] - 5:5
**words** [1] - 17:18
**worth** [1] - 16:11

## Y

**year** [2] - 9:24
**yesterday** [1] - 21:15
**yourselves** [1] - 23:16