**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: APPLE iPHONE 3G AND 3GS "MMS" MARKETING AND SALES PRACTICES LITIGATION | MDL NO. 2116<br><br>2:09-md-2116<br><br>SECTION:  J |
| THIS DOCUMENT RELATES TO:<br>Philip Sterker/N.D. Cal., Case No. 09-4242<br>Tim Williams/Jose Jaime/Laurie Guenther/<br>C.D. Cal., Case No. 09-6914 | JUDGE BARBIER<br>MAG. JUDGE WILKINSON |

## FIRST AMENDED COMPLAINT

Plaintiffs, by and through their undersigned counsel, individually and on behalf of all others similarly situated, for their Complaint against Defendants, on information and belief, and personal knowledge, state as follows.

### NATURE OF THE CASE

1.      Plaintiffs, on behalf of themselves and certain purchasers of iPhone 3G and 3GS cellular telephones, as further defined below, bring this consumer rights class action against defendants, Apple, Inc. ("Apple") and AT&T Mobility, LLC ("AT&T").

2.      Since 2007, Apple and AT&T co-marketed the iPhone with AT&T's wireless network service.  As a result of Defendants' "exclusivity agreement," when purchasing an iPhone during the Class period, Defendants required all Class members to obtain wireless service, including messaging plans, for their iPhones exclusively from AT&T.

3.      On or around the time the Defendants began their launch of the new generation of the 3G phones, text messaging was a standard feature of mobile phones and extremely popular.  This medium allowed consumers to send messages and photos to other phone users without having to be connected to an Internet service.   Texting is a faster, easier, and less expensive way to communicate between consumers than traditional email.  All other phones on AT&T's network that had cameras offered this popular feature to text photos.

4.      Plaintiffs are informed and believe that as the Defendants were about to launch the 3G phone, a grave complication developed.  Sending pictures by text took considerably more capacity than sending a written text message, and AT&T realized that its entire network would be overloaded if millions of new iPhone users began texting pictures on the 3G iPhone.

5.      AT&T needed to build up its network to support this new capacity and that would take time.  Defendants knew that consumers would expect that the iPhone, a "revolutionary product" with a superior camera and picture quality,  would  be able to text pictures.  Defendants did not want to lose market share by announcing this feature

would not be available and did not want to delay the lucrative launch of the new generation of 3G iPhones and thus, lose out on the extra revenue from millions of additional customers who had to lock into AT&T's exclusive contract for service.

6.     AT&T's network was unable to provide the service of texting pictures until it upgraded its network and therefore, the Apple iPhone 3G and 3GS phones could not, contrary to almost all other phones on the market, text or receive pictures from other phones.

7.     AT&T made a decision to let all of its customers, except iPhone customers, have access to its network to text pictures.  AT&T promoted and sold unlimited texting plans to all it customers, called "Messaging Unlimited" which gave its customers the ability to send unlimited messages to any wireless phone in the United States for $19.99 per month.  Promoting its Messaging Unlimited MMS capabilities, AT&T advertised and represented to consumers, including Plaintiffs, that its Messaging Unlimited plan **"included text, picture, video and IM."**  AT&T also offered unlimited "Family Plans" for $30.00 per month.  While AT&T allowed customers other than iPhones users to text pictures, AT&T intentionally barred iPhone users from having the same ability given its network limitations.  However, AT&T continued to charge the consumers for that service and represented to the iPhone users that the service included pictures.

8.     For Apple's part, it covered up the "problem" with an intentionally misleading advertising campaign.  Specifically, Apple never disclosed to consumers that they had to pay for the picture messaging under the unlimited plans from their exclusive

3

provider, AT&T, even though they would not have that service. Moreover, Apple made affirmative representations that such a service was available on the iPhone, including large in-store videos showing people texting pictures with small, fine print disclosures about when the service was available, intentionally designed so that consumers would not see or understand them.

9. Defendants' marketing campaign promoted the iPhone operating on AT&T 3G and 3GS networks by promising the latest in mobile technology capable of everything other mobile devices could do, including Multimedia Messaging Service or "MMS", and much more. Despite these promises, the iPhone's MMS function was knowingly and consciously disabled while, at the same time, Defendants' advertised that MMS was a feature included with the iPhone 3G and 3GS and AT&T's messaging service plans.

10. MMS was and is commonly available on many phones and mobile networks, including AT&T's. Even though the function was disabled, AT&T charged Class members the same price as customers with different phones which support MMS service. That is, despite advertisements to the contrary, Class members paid for something they did not receive.

11. AT&T breached its contracts with Plaintiffs, the Class and the Sub-Class by charging for and receiving payment for the MMS feature and service that they did not provide, and they have otherwise been unjustly enriched at the expense of Plaintiffs and the Class members.

12.     Defendants each engaged in conduct that is likely to deceive and has deceived the public through (1) omission, suppression and concealment from the public of material facts related to the iPhone 3G and 3GS mobile phones' MMS features and the AT&T messaging plans, and (2) making and disseminating or causing to be made or disseminated untrue and/or misleading statements that were known, or by the exercise of reasonable care should have been known, to be untrue or misleading.

## PARTIES

13.     Plaintiff Philip Sterker ("Sterker") is a resident of San Mateo County, California and a citizen of California.  In July 2009, Sterker purchased an iPhone 3GS from Apple and a messaging service plan from AT&T in Burlingame, California.  At the time he purchased his iPhone 3GS and AT&T messaging service, Sterker expected that the iPhone would have the ability to text pictures and specifically was charged for a texting plan that AT&T represented included texting pictures, when in fact it would not.

14.     Prior to purchasing the 3GS, Sterker owned an iPhone 2G.  Upon purchasing the iPhone 3GS, Sterker  reasonably expected that the newer iPhone model would have the capacity and ability to send picture messages.  The ability to send a picture by text message was a material part of the purchase of the iPhone 3GS to Sterker.

15.     Sterker would not have purchased the 3GS if he had known that picture messaging was not available at the time of purchase.  Sterker reasonably relied upon the representations by Apple and AT&T and his general understanding of the "revolutionary"

nature of the 3GS to form his belief that his iPhone 3GS had the ability to send picture messages by text.

16.     After Sterker purchased the iPhone and signed up for a messaging plan, he learned that his iPhone 3GS did not have the capacity to send pictures by text message. Sterker attempted unsuccessfully to send and receive pictures through various "work around" methods he discovered through internet research.   Since the time picture messaging finally became available to iPhone users, Sterker has regularly sent pictures each month with his iPhone 3GS for both work and personal purposes.

17.     Sterker has suffered injury in fact and has lost money as a result of the Defendants' unfair competition and unlawful conduct because *inter alia* he paid more for an iPhone than he should have paid and he was charged and paid for a service he did not receive.

18.     Plaintiff Tim Williams ("Williams") is a resident of Los Angeles Coun**ty,** California and a citizen of California.  On or about July 11, 2009, Williams purchased an iPhone 3GS from Apple and a messaging service plan from AT&T in the Sherman Oaks Fashion Square Mall.  At the time he purchased his iPhone 3GS and AT&T messaging service, Williams relied upon the Defendants' false advertisements promoting the picture texting feature and service  he believed he would have the ability to text pictures on his iPhone 3GS and have picture messaging as part of his AT&T messaging plan.

19.     Prior to purchasing the 3GS, Williams' cellular phone had picture messaging functionality.  The ability to send a picture by text message was a material part of the purchase of a cellular phone to Williams.  Williams would not have purchased the

3GS if he had known that picture messaging was not available at the time of purchase. Williams reasonably relied upon the representations by Apple and AT&T – both the television commercials and videos referenced in this complaint and his general understanding of the "revolutionary" nature of the 3GS – to believe that his iPhone had the ability to send pictures by text function.

20. After Williams purchased the iPhone and signed up for the messaging unlimited plan, he learned that his iPhone 3GS did not have the capacity to send pictures by text message the way his prior cellular phone did.

21. Williams has suffered injury in fact and has lost money as a result of the Defendants' unfair competition and unlawful conduct because he paid more for an iPhone than he should have paid and he was charged and paid for a service he did not receive.

22. Plaintiff Jose Jaime ("Jaime") is a resident of Los Angeles County, California and a citizen of California. In April 2009, Jaime purchased an iPhone 3G and messaging service plan from an AT&T store in Montebello, California. Jaime originally purchased the iPhone 3G. Several weeks later, he exchanged it for an iPhone 3GS, which had just become available. At the time he purchased his iPhone 3G, 3GS and AT&T messaging service, Jaime expected that the iPhone would have the ability to text pictures and specifically was charged for a texting plan that AT&T represented included texting pictures, when it in fact would not. Jaime has suffered injury in fact and has lost money as a result of the Defendants' unfair competition and unlawful conduct because he paid more for an iPhone than he should have paid and he was charged and paid for a service he did not receive.

23.     Plaintiff Laurie Guenther ("Guenther") is a resident of Los Angeles County, California and a citizen of California.  In July 2008, Guenther purchased three 3G iPhones and messaging service plan for herself and her family from the Topanga Mall Apple Store in Canoga Park, California.  At the time she purchased her iPhone 3G and AT&T messaging service, Guenther expected that the iPhone would have the ability to text pictures and specifically was charged for a texting plan that AT&T represented included texting pictures, when in fact it would not.   Guenther has suffered injury in fact and has lost money as a result of the Defendants' unfair competition and unlawful conduct because she paid more for an iPhone than she should have paid and she was charged and paid for a service she did not receive.

24.     Defendant AT&T Mobility, L.L.C. (AT&T) is a Delaware limited liability corporation with its principal place of business in Atlanta, Georgia.  Defendant Apple, Inc. (Apple) is a California corporation with its principal place of business in Cupertino, California.

25.     Defendants each participated in advertising campaigns designed to promote the iPhone 3G and 3GS so that consumers believed they were capable of texting photos or had an MMS feature and MMS included in the messaging plan.  At the same time, AT&T promoted its messaging plan so that consumers who purchased the iPhone 3G and 3GS believed texting photos or MMS was included in the price being charged for the messaging plans.

## JURISDICTION AND VENUE

26.     The amount in controversy in this action, as defined by 28 U.S.C. § 1332(d)(6), exceeds $5,000,000 exclusive of costs and interest and some members of the Class and Sub-Class are citizens of a state different from a defendant.

27.     Apple is a resident of the United States District Court for the Northern District of California, and Apple and AT&T each have ongoing and systematic contacts with residents of California.  Defendants have at all relevant times engaged in the manufacturing, distributing, marketing, promoting and selling of iPhone and 3G, 3GS and MMS messaging services to residents of the U.S. and the Northern District of California.

## COMMON FACTS

This section sets forth Defendants' specific representations and omissions described above as part of the conduct of AT&T charging for a service it did not provide and by the deceptive marketing practices of Apple and AT&T.

28.     Defendants Apple and AT&T each promoted and advertised the iPhone and AT&T's messaging plans.  To maximize profits, Apple would manufacture the iPhones and AT&T was the exclusive network upon which the iPhone would operate including the exclusive provider of messaging service plans for the iPhone, for which AT&T charges its customers more money than a basic phone service or phone and data service plan.

29.     Apple is a personal computing and digital media distribution company.  Its products include Mac computers, iPod digital music players, iTunes online music store, and iPhone mobile devices.  Apple generated $32 billion in revenue in fiscal 2008.

30.     AT&T is one of the largest wireless network companies in the world, with roughly 80 million wireless subscribers and $124 billion in revenue in fiscal 2008.

31.     In January 2007, Apple announced the creation of a new mobile phone, claiming that it "reinvented the phone" and offered "revolutionary" features.  The new phone was called the iPhone.  From its launch in 2007 to the present, Defendants have sold iPhones from their stores and websites.

32.     The iPhone is a high-end mobile device, capable of making telephone calls, accessing the Internet, taking photographs, operating as a digital music player, and sending and receiving other popular messaging formats, such as MMS.

33.     MMS provides added benefits to the consumer, including advantages over email;  No separate charge for a data plan for e-mail service is required;  MMS allows consumers to make full use of the cell phones' camera and video functions and then send the pictures or video utilizing the mobile phone number.  Sending text, pictures and videos via a mobile phone's messaging function is faster and simpler; and MMS's can be sent to and from most mobile phones, even those that do not have email functionality.

34.     In an effort to continue building demand for the popular iPhone, following the launch of the iPhone 2G on June 29, 2007, in October of 2007, AT&T continued marketing its Messaging Unlimited plan by airing television commercials, that conveyed the same message that its messaging plans allowed customers to send text, pictures and

videos over their phones.  Typical of the television commercials, is one that featured a mother scolding her children and their grandmother for sending thousands of text messages in a month.  The announcer then cuts in stating, "Now get a texting plan the whole family can N-J-O-Y.  AT&T brings your family unlimited messaging to anyone on any network."  An orange screen appears showing in large bold print, "UNLIMITED MESSAGING" with words, "Text, Picture, Video, IM" below.

35.     This well orchestrated and omnipresent marketing plan  led to significant demand for the iPhone and messaging plans.  In July 2008 Defendants started selling the next generation iPhone, the iPhone 3G.

36.     The 3G network offered significant advantages over the 2G network. 3G or 3rd Generation, is a family of standards for mobile telecommunications defined by the International Telecommunication Union, which includes GSM EDGE, UMTS, and CDMA2000 as well as DECT and WiMAX. Services include wide-area wireless voice telephone, video calls, and wireless data, all in a mobile environment.  Compared to 2G and 2.5G services, 3G allows simultaneous use of speech and data services and higher data rates (up to 14.0 Mbit/s on the downlink and 5.8 Mbit/s uplink ). Thus, 3G networks enable network operators to offer users a wider range of more advanced services while achieving greater network capacity through improved spectral efficiency.

37.     In anticipation of the launch of the iPhone 3G, in June 2008, AT&T announced its "iPhone 3G pricing plans," which were the same plans offered to all of its customers, including those without the iPhone.  All of AT&T's plans that are relevant here require customers to enroll with AT&T for a period of years or face steep "early

termination fees."  These plans expressly included "texting plans."  AT&T offered all of

its customers a choice between a $20 per month "unlimited" individual plan or a $30 per

month "unlimited" family plan.  All AT&T customers who purchased one of these

texting plans paid for and received MMS, except iPhone 3G customers, who paid for, but

did not receive MMS.  In other words, just like all other wireless service providers,

AT&T sold the MMS service in a "bundle" with text messaging, where both messaging

formats are included for a fixed price each month.

38.     From the introduction of the iPhone 3G in July of 2008 through June 27,

2009, Apple sold over 20 million iPhones, with AT&T being the exclusive provider of

the mobile network and messaging plans.

39.     The iPhone 3G was a financial bonanza for Apple and AT&T.  In October

2008, Apple CEO Steve Jobs announced that based on revenue, Apple had become the

third-largest mobile phone supplier in the world.

40.     Only after the launch of the iPhone 3G in July 2008, did AT&T publish a

statement in the AT&T Answer Center page of its website acknowledging problems

related to MMS:

> Customers who are sent a MMS message and own a non-MMS
> capable device will receive a text message instead of an actual MMS
> message.   The message will contain the website address of
> www.viewmymessage.com/1  or  www.viewmymessage.com/2 as well
> as a user name and password.  To view the MMS message, please
> access the website from a computer and enter the user name and
> password provided in the text message.

41.     AT&T was instructing customers interested in MMS to access a website

from a computer to view a message sent from one mobile phone to another mobile phone,

which negated the whole purpose of purchasing a phone and message plan that supposedly included MMS capabilities.

### 3GS

42.     The most recent version of the iPhone, launched in June 2009, is called the "3GS."  The iPhone 3GS sold over one million units in its first three days on the market, which included the best sales day in Apple history.

43.     In the spring of 2009, Apple and AT&T each initiated an advertising campaign to sell its older 3G models in preparation for the launch of 3GS.  Following the previous formula of falsely advertising MMS capabilities and messaging plans that included MMS, in March of 2009 Defendants began promoting the iPhone 3GS claiming it had a MMS feature.  On March 17, 2009, Apple issued a press release relating to the iPhone 3GS, which stated in part, "The new iPhone OS 3.0 software will be available to iPhone…users this summer with over 100 new features including…MMS to send and receive photos…."  That same press release states that "MMS available only on the iPhone 3G….", which was false and misleading.

44.     On March 17, 2009, Apple gave a presentation to the media about the upcoming release of the new 3GS, including a video presentation by Scott Forstall, Apple's Senior VP for iPhone software, where he stated, "But the big news for the messages application is we're adding support for MMS.  So this, this is support for multimedia, you can now send and receive photos…so now you have one app to send and

receive text, photos…That is what we're doing with messages….  Several minutes later, Mr. Forstall says, "messages now support for MMS."  This too was false and misleading.

45.     While Apple was promoting the 3GS's MMS feature, AT&T continued marketing its messaging plans claiming they included MMS capability, when, in fact, that was not the case for its current 3G users and was not going to be the case for the new 3GS purchasers.

46.     On June 8, 2009, a new customer of AT&T and Apple was able to purchase the iPhone 3G at a greatly reduced price.  As part of the false advertising campaign, the Apple packaging that came with the iPhone 3G claimed the availability of MMS, with no reference to the service not being available until late summer.  This packaging insert was also false and misleading.

47.     On June 10, 2009, AT&T continued to falsely promote the iPhone and its messaging service by advertising on its website, without any late summer disclaimer, that the iPhone 3GS had MMS functionality.

48.     Likewise, furthering this false advertising campaign to promote the iPhone and messaging plan, Apple posted on its website, on the "iPhone OS 3.0 Software Update" page, that MMS would be available, so that customers could "send MMS messages and include photos, audio, and contact info.  Even tap to snap a picture right inside Messages."  A graphic showed the iPhone text message bubbles with a picture inserted.

49.     At certain times during the class period, a similar graphic appeared on Apple's website promoting the iPhone 3G and its ability to "send photos, video, audio

and more" with a mouse print-sized disclaimer indicating "MMS Support from AT&T coming in late summer."



50.      At certain times during the class period, both Apple and AT&T had in-store displays and/or videos that showed the iPhone sending photos via text messaging. AT&T stores had seven foot-tall white Apple kiosks, which showed a continuously rolling video demonstrating all the features of the iPhone 3GS, including a specific section about MMS demonstrating someone sending a video of kids playing on the beach and sending a picture of a sailboat via MMS.

51.      The false advertising regarding the MMS feature and messaging service plan was also reinforced by Apple's Guided Tour for the 3GS.  This Guided Tour has an entire section devoted to the iPhone's camera and claims that the user can "MMS" pictures:



52.     Then, several minutes later in Apple's Guided Tour for the 3GS, there is a section devoted to MMS where the announcer claims that the "messaging application on iPhone 3GS now supports MMS."



53.     On its website, Apple represented the following at certain times during the

class period:

> **Send MMS**
>
> *Take a photo or shoot some video, then send it via Messages.  You can also send audio recordings from Voice Memos, contact information from Contacts, and locations from Maps.*

54.     At certain times during the class period, a Pop-Up window on Apple's

website read:

> *Sharing Photos and Videos*
> *You can take a photo or make a video (iPhone 3 GS only) from within Messages and include it in your conversation with another MMS-capable device.*

55.     On its website AT&T represented the following at certain times during the

class period:

> <u>*Messages*</u>
> *Use messages to send text, photos, audio, video, and more.  Forward a whole message or just the important parts.*



56.     As a direct result of relying upon the false and deceptive representations and omissions in Defendants' advertisements and promotions, millions of customers, including the named Plaintiffs herein, purchased the 3G and 3GS, reasonably expecting to have the ability to send and receive MMS messages on their iPhone 3Gs and 3GSs.

57.     Contrary to Defendants' advertising claims, AT&T's iPhone mobile phone messaging service did not support MMS during the class period.

58.     In furtherance of this false advertising, on July 21, 2009, a month after the launch of the 3GS, Apple held an Investors Conference Call.  Apple mentioned the availability of MMS (incorrectly stated it was "MMF").  During the Investors Conference Call Apple mentioned nothing about MMS not being available until late summer.

59.     Regardless of whether consumers purchased their iPhone 3Gs or 3GSs from Apple or AT&T, the purchase of an iPhone requires a two-year contract for service

through AT&T.  The iPhone cannot be used on any other mobile phone service network in the United States.

60.     Regardless of the particular iPhone purchased, the same basic pricing plans exist for all iPhones.  For messaging, individual plans through AT&T charge $20 per month for Messaging Unlimited, $15 per month for Messaging 1500, and $5 per month for Messaging 200.   Family Plans charge $30 per month (per phone) for Messaging Unlimited.

61.     At various times during the class period, AT&T's invoices and account statement summaries specifically indicated that "Multimedia Messaging" or MMS was included in the messaging packages purchased by certain Class members.

62.     For example, Plaintiff Williams received statements for the billing periods 07/15/2009-8/14/2009 and 8/15/2009-9/14/2009 that indicated MMS was included in his messaging plan.   Specifically, the portion of his statements for the "FAMILY MSG UNLIMITED" plan stated that it "Includes: Multimedia Messaging Text Messaging".

| Wireless Data | | | |
|---|---|---|---|
| DATA PLAN IPHONE | 08/15-09/14 | 30.00 | 30.00 |
| FAMILY MSG UNLIMITED | 08/15-09/14 | 30.00 | 30.00 |
| Includes: | | | |
| Multimedia Messaging | | | |
| Text Messaging | | | |
| MEDIA MAX UNL MNET | 08/15-09/14 | 0.00 | 0.00 |
| Includes: | | | |
| DATA ACCESS | | | |
| DATA ACCESS | | | |
| **TOTAL MONTHLY SERVICE CHARGES** | | | **$140.99** |

63.     At least 12 other AT&T mobile phones provided MMS as part of the messaging bundles during the class period.  The AT&T mobile phone network had the capacity to support MMS services during the class period, and AT&T provides MMS to

non-iPhone customers.  However, AT&T did not provide MMS to any iPhone customers during the class period despite charging them the same rates for their messaging bundles.

64.     During the class period, AT&T charged iPhone customers the same price for messaging bundles per month, as represented in the iPhone customers' invoices that stated that the charge for messaging included MMS, but failed to provide the MMS portion of the messaging service - even though it provided this service to all other AT&T mobile phone customers with MMS-capable telephones for the same price it was charging the iPhone customers who were not provided the MMS service.  Specifically, for every other AT&T mobile phone, Messaging Unlimited, Messaging 1500, and Messaging 200 are the exact same prices, respectively, as the Messaging Unlimited, Messaging 1500, and Messaging 200 charges for iPhone customers.

65.     During the class period through advertising campaigns, Apple and AT&T each misrepresented and/or concealed, suppressed, or omitted material facts to and from customers about the fact that MMS was not an available feature on the iPhone 3G and 3GS.  Further, iPhone users had to pay for MMS if they wanted unlimited AT&T messaging plans.

## CLASS ACTION ALLEGATIONS

66.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(1) and (b)(3) on behalf of the following Class:

> All United States residents who purchased an iPhone 3G or 3GS from AT&T Mobility L.L.C. or Apple, Inc. from July 11, 2008 to September 25, 2009, primarily for personal, family, or household use.  Excluded from the Class are any judicial officers presiding over this action, and defendants, including their officers, directors and employees.

This Class includes the following Sub-Class:

> All California residents who purchased an iPhone and a text messaging plan from AT&T from July 11, 2008 to September, 2009, primarily for personal, family, or household use.  Excluded from the Sub-Class are any judicial officers presiding over this action, and defendants, including their officers, directors and employees.

67.     The Class and Sub-Class are sufficiently numerous because they are comprised of millions of consumers, the joinder of which is not practicable.

68.     There are questions of law and fact that are common to the proposed Class and Sub-Class, including, but not limited to, the following:

a.   Whether the Defendants each advertised the iPhone 3G and 3GS as having the ability to text pictures;

b.   Whether the Defendants each advertised that the messaging plans included the ability to text pictures;

c.   Whether the Defendants each charged Plaintiffs, the Class and Sub-Class for a  phone that could text pictures when it did not;

d.   Whether Defendants each charged Plaintiffs, the Class and Sub-Class for messaging service plans that that could text pictures when they did not;

e.   Whether Defendants' conduct is unlawful, unfair, or fraudulent;

f.   Whether Defendants each engaged in unfair, deceptive, untrue or misleading advertising;

g.   Whether Defendants' conduct is unfair, misleading or tends to mislead;

h.  Whether Defendants each intended the public to be misled into believing that the iPhone 3G and 3GS mobile phone had the ability to send and receive pictures by text;

i.  Whether Defendants' conduct is in violation of the California Consumers Legal Remedies Act;

j.  Whether Defendants' conduct is in violation of the consumer protection laws of other states; and

k.  Whether the Class and Sub-Class are entitled to monetary relief, including damages, and the proper measure of that relief.

69.  The money lost by Plaintiffs or individual members of the Class or Sub-Class are relatively small when compared to the expense of litigating the legal and factual issues raised by this lawsuit.  As a result, unless this case proceeds as a class action, Plaintiffs and the Class members will, as a practical matter, be unable to pursue their individual claims. Thus, certification of this case as a class action is the only fair and efficient method for the adjudication of this controversy.

70.  Plaintiffs and their counsel do not envision any unusual difficulty in the management of this action as a class action.

71.  The common questions set forth above predominate over any issues affecting only individual Class members.

72.  Plaintiffs' claims are typical of the claims of the members of the Class and Sub-Class, as all such claims arise from the purchase of the iPhone 3G or 3GS and the messaging plans Plaintiffs purchased from AT&T.

73.     Class treatment is a superior method for the fair and efficient adjudication of the controversy in that such treatment will permit a large number of similarly situated persons to efficiently prosecute their common claims without the duplication of evidence, effort and expense that would arise from individual actions.

74.     Plaintiffs will fairly and adequately represent the interests of the members of the Class and Sub-Class.  Plaintiffs' interests are the same as, and not in conflict with, the other members of the proposed Class and Sub-Class.   Plaintiffs' counsel is experienced in handling class actions and complex litigation.


## COUNT I

Plaintiffs Sterker, Williams, Jaime, and Guenther by and through their undersigned counsel, individually and on behalf of all others similarly situated, and for Count I of their Complaint against Defendants, state as follows:

75.     Plaintiffs incorporate paragraphs 1 through 74 and paragraphs 89 through 140 by reference, as though fully set forth herein.

76.     This count is brought pursuant to California Business and Professions Code § 17200 by Plaintiffs Sterker, Williams, Jaime, and Guenther, individually and on behalf all others similarly situated against Defendants.

77.     California Business & Professions Code § 17200 provides that: "*unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [Section 17500]*."

78.     California Business & Professions Code § 17500 provides in relevant part:

*It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.*

79.     In the marketing of the iPhone 3G and 3GS and messaging bundled service plans, Defendants have engaged in unfair competition as defined in California Business & Professions Code § 17200, through the practices enumerated in this Complaint.

80.     At the time Plaintiffs purchased their iPhones, all phones with cameras had the ability to text pictures.  Defendants marketing campaign and sales promotions were likely to deceive Plaintiffs and the Class so that they reasonably would believe that the iPhone, as the leader in graphics and with the best camera on the market, could text a picture.  Defendants failed to disclose that they would not allow Plaintiffs to text pictures because AT&T's network would be over-burdened.  Further, Plaintiffs were charged by

AT&T and paid for messaging plans that included the ability to text pictures and video, but did not receive what they paid for.

81.     Plaintiffs Sterker, Williams, Jaime, and Guenther relied on representations made in Defendants' uniform campaign of untrue and/or misleading marketing when choosing to purchase an iPhone 3G, 3GS and messaging plans as set forth above.

82.     California Business & Professions Code § 17204 provides for a private cause of action in stating that "*[a]ctions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction. . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.*"

83.     Plaintiffs Sterker, Williams, Jaime, and Guenther have suffered injury in fact and have lost money or property as a result of Defendants' unfair competition. Plaintiffs purchased 3G and 3GS iPhones and messaging service plans under the impression that they would be able to text pictures. During the class period, Class Members and Plaintiffs continued to pay for messaging bundles at the same rates (for concomitant packages) that AT&T charged customers whose wireless plans did, in fact, provide the ability to text pictures, while the Plaintiffs did not.

84.     After AT&T allowed iPhone users to text pictures, Plaintiffs and Class members were still charged and continued to pay the exact same rate for their messaging bundles and/or packages.

85.     California Business & Professions Code § 17203 provides the court with available remedies in stating that *"[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments...as may be necessary to restore to any person in interest any money or property ... which may have been acquired by means of such unfair competition."*

86.     Defendants have wrongfully retained moneys belonging to Plaintiffs and Class members that it has acquired by means of unlawful, unfair or fraudulent business acts or practices and/or unfair, deceptive, untrue, or misleading advertising.

87.     By the conduct alleged above, Defendants have each engaged in a scheme to cheat a large number of consumers out of individually small sums of money.

88.     If the Court determines that California law should not be applied to Defendants Apple and/or AT&T with respect to all Class members, this count is alternatively brought pursuant to California law for the portion of the Class and Sub-Class and/or with respect to particular Defendants for which this Court determines California law is applicable and the concomitant consumer protection laws of other states for the remainder of the Class and Sub-Class claims against particular Defendants.

## COUNT II

Plaintiffs Sterker, Williams, Jaime, and Guenther, by and through their undersigned counsel, individually and on behalf of all others similarly situated, and for Count II of their Complaint against AT&T, state as follows:

89.     Plaintiffs incorporate paragraphs 1 through 88 by reference, as though fully set forth herein.

90.     Defendant AT&T required Plaintiffs and Class members to enter into an agreement for wireless service in exchange for the "privilege" of purchasing an iPhone. Specifically, Plaintiffs and Class members were required to enter into an exclusive two year wireless service agreement with AT&T.  The iPhone was forbidden from being used on any other wireless carrier's network.  Part of that two year service agreement for Class members included the purchase of messaging plans which were marketed and sold both as "unlimited messaging" and as messaging bundles.

91.     Plaintiffs and Class members performed all conditions, covenants, and promises required by them on their part to be performed in accordance with the terms and conditions of the agreement.

92.     Defendant AT&T expressly and/or impliedly promised Plaintiffs that the iPhone 3G and 3GS messaging plans included the ability to send pictures by text message.  This feature is and has been at various times referred to as "picture messaging" "texting a picture" and by its more technical term – MMS.

93.     Defendant AT&T both explicitly and implicitly promised to provide the ability for iPhone users who purchased messaging plans and bundles (whether purchased as a "messaging unlimited" plan or purchased in finite numbers of messages) the ability to send picture messages.  AT&T charged the same price for each of its messaging plans and bundles to iPhone users as it charged to all other wireless service subscribers with cellular phones other than the iPhone.

94.     All other AT&T wireless customers were provided the picture messaging functionality for the same price charged to iPhone customers of AT&T.  iPhone users were denied this ability and functionality despite paying for it.  AT&T charged for this function knowing that during the class period AT&T could not and/or would not provide picture messaging with the iPhone 3G or 3GS and messaging plans.

95.     In return for this promise, Plaintiffs and Class members paid AT&T for messaging plans reasonably expecting these plans to include the ability to send picture messages.

96.     AT&T breached the agreement by failing to provide messaging service plans that included the ability to send picture messages during the Class period.

97.     As a result of Defendants' breach of the agreements with Plaintiffs and Class members, Plaintiffs and the Class members suffered damages to be determined according to proof at the time of trial.

## COUNT III

Plaintiffs Sterker, Williams, Jaime, and Guenther, by and through their undersigned counsel, individually and on behalf of all others similarly situated, and for Count I of their Complaint against Defendants Apple, Inc. and AT&T Mobility, LLC, state as follows:

98.     Plaintiffs incorporate paragraphs 1 through 97 by reference, as though fully set forth herein.

99.     This count is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA") by Plaintiffs Sterker, Williams, Jaime, and Guenther individually and on behalf of the Class against Apple and AT&T.

100.    The CLRA laws govern Defendants' conduct.

101.    California Civil Code section 1761 provides in relevant part:

*(a) "Goods" means tangible chattels brought or leased for use primarily for personal, family or household purposes …*

*(c) "Person" means an individual, partnership, corporation, limited liability company, association, or other group, however organized.*

*(d) "Consumer" means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family or household services.*

Cal. Civ. Code § 1761.

102.    At all relevant times both Apple and AT&T were "persons" as that term is defined in California Civil Code § 1761(c).

103.    At all relevant times, Plaintiffs and Class members were "consumers" as defined in California Civil Code § 1761(d), since Plaintiffs and Class members purchased the Apple iPhone 3G and/or 3GS primarily for personal, family or household purposes.

104.    Defendants' iPhone 3G and 3GS mobile phones are "goods" within the meaning of California Civil Code § 1761(a).

105.    In addition, Plaintiffs were exposed to Defendants' uniform advertising campaign claiming that iPhone 3G, 3GS and the messaging plans included MMS, when, in fact, that was not the case.

106.    The CLRA provides in pertinent part:

*The following ... unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: ... (5) Representing that goods or services have ... characteristics, ... uses, (or) benefits, ... which they do not have .... ...(7) Representing that goods or services are of a particular standard, quality, or grade, ... if they are of another. ...(9) Advertising goods or services with intent not to sell them as advertised. ... (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.*

Cal. Civ. Code § 1770.

107.    The acts or practices were deceptive, misrepresented, concealed, suppressed or omitted facts material to Plaintiffs', Class members' and Sub-Class members' decisions to purchase iPhone 3G and 3GS mobile phones and messaging bundles.

108.    The deceptive facts released by the Defendants that misrepresented, concealed or suppressed material facts, as alleged in the preceding paragraph, occurred in connection with Defendants' conduct of trade and commerce.

109.    Defendants' unfair and/or deceptive acts and/or practices violate the CLRA.

110.    On September 17, 2009, Plaintiffs provided Defendants with written notice of their claims and the Class's claims, via U.S. certified mail, return receipt requested, and demanded that, within 30 days, Defendants correct, repair, replace or otherwise rectify the deceptive practices complained of herein for the entire Class pursuant to California Civil Code § 1770.  Defendants failed to do so or agree to do so.

Therefore, Plaintiffs now seek damages for such deceptive practices pursuant to California Civil Code Section 1782.

111.   Plaintiffs seek damages, restitution and punitive damages under Civil Code § 1780(a)(1), (3) and (4).

112.   By the conduct alleged above, Defendants have each engaged in a scheme to cheat a large number of consumers out of individually small sums of money.

113.   If the Court determines that California law should not be applied to Defendants Apple and/or AT&T with respect to all Class members this count is alternatively brought pursuant to California law for the portion of the Class and/or with respect to particular Defendants for which this Court determines California law is applicable and the concomitant consumer protection laws of other states for the remainder of the Class claims against particular Defendants.

## COUNT IV

Plaintiffs Sterker, Williams, Jaime, and Guenther by and through their undersigned counsel, individually and on behalf of all others similarly situated, and for Count IV of their Complaint against Defendants, state as follows:

114.   Plaintiffs incorporate paragraphs 1 through 113 by reference, as though fully set forth herein.

115.   Defendants each expressly and/or impliedly promised Plaintiffs that the iPhone 3G and iPhone 3GS and the messaging plans included MMS.

116.   In return for this promise, Plaintiffs paid the Defendants for iPhones and messaging plans that were to include MMS.

117.    Defendants each breached the contract by failing to provide iPhones and messaging service plans that included MMS.

118.    As a result of Defendants' breach of contract, Plaintiffs and the Class Members suffered damages to be determined according to proof at the time of trial.

## COUNT V

Plaintiffs Sterker, Williams, Jaime, and Guenther, by and through their undersigned counsel, individually and on behalf of all others similarly situated, and for Count V of their Complaint against Defendants, state as follows:

119.    Plaintiffs incorporate paragraphs 1 through 118 by reference, as though fully set forth herein.

120.    The contract between Plaintiffs and Defendants included an implied covenant of good faith and fair dealing.

121.    Defendants each breached this implied covenant in the contract when, in bad faith, they promised to provide an iPhone and messaging service plan that included MMS, charged for that functionality, knowing that during the class period they could not and/or would not provide MMS with the iPhone 3G, 3GS and messaging plans.

122.    As a result of each Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs and the Class Members suffered damages to be determined according to proof at the time of trial.

## COUNT VI

Plaintiffs Sterker, Williams, Jaime, and Guenther, by and through their undersigned counsel, individually and on behalf of all others similarly situated, and for

Count VI of their Complaint against Defendants, state as follows:

123.    Plaintiffs incorporate paragraphs 1 through 122 by reference, as though fully set forth herein.

124.    Plaintiffs, and each member of the Class and Sub-Class, formed a contract with each Defendant at the time Plaintiffs and the other Class members purchased the iPhone 3G, 3GS and messaging plans that were to include MMS functionality, but did not.

125.    The terms of that contract include the promises and affirmations of fact made by Defendants on the iPhone and AT&T labels, packaging materials, websites, advertisements and/or press releases, all of which created or constituted express warranties that became part of the basis of the bargain and part of a standardized contract between Plaintiffs and the Class members on the one hand, and Defendants on the other.

126.    All conditions precedent to Defendants' liability under this contract have been performed by Plaintiffs and the Class and Sub-Class.

127.    Defendants each breached the terms of this contract, including the express warranties, with Plaintiffs and the Class members by not providing an iPhone 3G, 3GS and messaging service plans that included MMS.

128.    As a result of Defendants' breach of their contract and warranties, Plaintiffs and the Class members suffered damages to be determined according to proof at the time of trial.

**COUNT VII**

Plaintiffs Sterker, Williams, Jaime, and Guenther by and through their undersigned counsel, individually and on behalf of all others similarly situated, and for Count VII of their Complaint against Defendants, state as follows:

129.    Plaintiffs incorporate paragraphs 1 through 128 by reference, as though fully set forth herein.

130.    By their deceptive, misleading and unlawful conduct alleged herein, Defendants unjustly received a benefit at the expense of Plaintiffs and Class Members.

131.    It is unjust to allow Defendants to retain the profits from their deceptive, misleading and unlawful conduct alleged herein without providing compensation to Plaintiffs and Class Members.

132.    Defendants acted with conscious disregard for the rights of Plaintiffs and Class Members.

133.    Plaintiffs and the Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by the Defendants from their deceptive, misleading and unlawful conduct.

**COUNT VIII**

Plaintiffs Sterker, Williams, Jaime, and Guenther, by and through their undersigned counsel, individually and on behalf of all others similarly situated, and for Count VIII of their Complaint against Defendants, state as follows:

134.   Plaintiffs incorporate paragraphs 1 through 133 by reference, as though fully set forth herein.

135.   Defendants misrepresented, concealed, suppressed, or omitted the following material facts in connection with the sale and advertisement of iPhone 3G, iPhone 3GS and messaging plans to Plaintiffs and Class members:

(i)     AT&T had not upgraded its network to support MMS, and, therefore, MMS would be unavailable on iPhones until the network was upgraded;

(ii)    AT&T would not have its network upgraded for many months;

(iii)   The 3.0 Software Upgrade would not, by itself, solve the problem and make MMS available on the iPhone.

136.   Defendants failed to exercise ordinary care in their advertising, marketing, and sale of the iPhone 3G, iPhone 3GS and messaging plans to Plaintiffs, Class members, and/or the public in general.

137.   Defendants breached their duty in representing the functionality and effectiveness of the MMS feature for the iPhone 3G, iPhone 3GS and their associated messaging plans to Plaintiffs, Class members, and/or the public in general.

138.   As a direct result of the deception, misrepresentation, unfair practices, concealment, suppression, and omission by each Defendant, Plaintiffs have suffered an ascertainable loss of money, including, but not limited to the difference in value between the iPhone and messaging plans as represented and the iPhone and messaging plans that Defendants actually provided to Plaintiffs and Class Members.

139.   Defendants' actions were negligent, if not intentional, without a justification or excuse.

140.   As a direct and proximate result of the foregoing acts and omissions, Plaintiffs and Class members have suffered damages.  Plaintiffs and Class members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

**WHEREFORE**, Plaintiffs pray:

1.     That this matter be certified as a class action with the Class and Sub-Class defined as set forth above, that Plaintiffs be appointed Class and Sub-Class Representatives and their attorneys be appointed Class Counsel;

2.     That judgment be entered against Defendants for damages, restitution and disgorgement in an amount to be proven at trial; and

3.     For other equitable relief or other relief that the Court may deem just and proper, including pre- and post-judgment interest.

4.     For attorneys' fees and reasonable costs incurred during the prosecution of this class action.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

DATED: April 1, 2010

Respectfully Submitted,

 /s/ SCOTT R. BICKFORD
SCOTT R. BICKFORD (1165)
Martzell & Bickford
338 Lafayette St.
New Orleans, LA 70130
Telephone:     504/581-9065
Facsimile:     504/581-7636
usdcedla@mbfirm.com
Liaison Counsel on Behalf of the
Plaintiffs' Steering Committee

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of April, 2010, I electronically filed the foregoing with

the Clerk of court by using the CM/ECF system which will send a notice of electronic filing.

/s/ SCOTT R. BICKFORD
SCOTT R. BICKFORD