UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: APPLE iPHONE 3G AND 3GS "MMS" MARKETING AND SALES PRACTICES LITIGATION | CIVIL ACTION<br><br>MDL No. 2116 |
| THIS DOCUMENT RELATES TO ALL CASES | SECTION "J"<br>JUDGE BARBIER<br><br>MAGISTRATE JUDGE WILKINSON |

MEMORANDUM IN SUPPORT OF DEFENDANT
APPLE INC.'S OBJECTIONS TO PLAINTIFFS'
PROPOSED "EXEMPLAR" COMPLAINT

Pursuant to the Court's March 19, 2010 Order, defendant Apple Inc. ("Apple") files its

Memorandum in Support of its Objections to Plaintiffs' Proposed "Exemplar" Complaint

("Memorandum").

SUMMARY OF ARGUMENT

Plaintiffs' proposed "exemplar" complaint does precisely what defendants warned it

would during the March 12, 2010 hearing.  Plaintiffs seek to cherry pick the law of a single

state—California—that plaintiffs apparently believe is favorable to them (Hr'g Tr. 13:11-19,

14:21-15:3, Mar. 12, 2010), while ignoring the laws of the other states that plaintiffs concede are

at issue (*id*. at 22:20-22).  Plaintiffs thus seek to limit defendants' pleadings motions to this

single complaint under California law and to proceed to discovery and class certification solely

on the complaint.  (*Id*. at 10:22-25.)

1

Plaintiffs' proposal is a blatant violation of defendants' due process rights and proper MDL procedure. The proposal also potentially wastes months of effort by the parties and the Court. The "Majority Plaintiffs"[1] previously sought to have the actions encompassed by this MDL (the "Actions") transferred to this Court and opposed transfer to California on the basis that the "nexus of this action is not in California." Ironically, these same Majority Plaintiffs now seek in their "exemplar complaint" to pursue two California Actions under California law only, while ignoring all the other Actions and applicable state laws. This bizarre twist in forum shopping ignores the basic tenet that the MDL process is not intended to alter the substantive rights of the parties or the choice of law that would otherwise apply to the underlying Actions. Plaintiffs cannot come to the Eastern District of Louisiana to pursue discovery and ultimately class certification under California law while ignoring the law that would apply in the other twenty cases filed to date.

Plaintiffs' proposed "heads I win, tails you lose" strategy results in unacceptable inefficiencies at every stage and defeats the underlying purpose of these MDL proceedings. If plaintiffs ultimately lose motions to dismiss the exemplar complaint, they will simply tee up the remaining complaints under different state laws, requiring a second round of briefing and decisions. If plaintiffs are able to survive motions to dismiss the "exemplar complaint" (which defendants contend they cannot), they propose to then proceed to discovery and their motion for class certification under California law only. But unless California law applies to the entire nationwide class (which plaintiffs concede it does not), the parties and Court will then need to return to square one with pleadings motions on the other twenty plus complaints.

Finally, even under the extraordinarily unlikely scenario that this Court would ever certify a nationwide class under California law, the United States Supreme Court's *Lexecon* decision[2] requires that each Action be remanded to its home district for trial. Class certification

---

[1] Opp'n to Cross Mot. For Transfer & Consolidation of Related Actions to the Northern District of California at 2, Oct. 14, 2009 (JPML Docket No. 15).

[2] *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

is conditional, meaning that the California courts to which the cases were remanded could decertify the class at any time through trial.  The result would be to leave the remaining cases in procedural limbo.  Since pretrial proceedings would not have been conducted in those cases, the parties in each case would potentially have to begin anew, with motions to dismiss, discovery, and class certification proceedings.

It is to avoid just such unacceptable consequences that MDL class actions proceed either under a master administrative complaint, or on all underlying complaints.  In the initial Joint Case Management Statement herein, defendants proposed that plaintiffs file a master complaint "containing allegations that encompass the entire range of allegations and types of proposed class actions contained in individual cases filed in this Court or transferred to this Court by the MDL Panel."[3]  Defendants emphasized that the master complaint would not alter the rights of any party or the applicable choice-of-law rules, but would be "an administrative, managerial device intended to promote efficiency and judicial economy."

Plaintiffs opposed filing a master complaint, but now seek to file a single complaint that *does* alter applicable substantive rights and choice-of-law rules to select the single state law that plaintiffs believe is most favorable to them.  Plaintiffs may not do so.  As defendants have consistently maintained, plaintiffs must either file a single master complaint that encompasses all allegations and classes that they intend to pursue in the underlying Actions, or they must proceed, as they initially argued to this Court they could, on all the complaints.  This Court should reject plaintiffs' attempt to proceed based upon what is, for all practical purposes, a master complaint, but one that impermissibly alters the state laws that apply to each Action and selects the law of a single jurisdiction.

---

[3] Joint Proposed Case Management Order at 2, lodged in the E.D. La. on Jan. 12, 2010.

**RELEVANT BACKGROUND**

### A.   Plaintiffs Filed Twenty-Four Complaints Alleging Violations of Thirteen Different States' Laws.

Between August 7, 2009, and March 15, 2010, plaintiffs filed twenty-four putative class actions alleging state-law claims based on Apple's and AT&T Mobility LLC's ("ATTM") advertising and marketing regarding the availability of a single feature – Multimedia Messaging Services ("MMS") – of the iPhone 3G and 3GS.  The Actions allege violations of the state consumer protection and common laws of Alabama, California, Florida, Illinois, Louisiana, Michigan, Minnesota, Mississippi, Missouri, New Jersey, New York, Ohio, and Texas, and are brought on behalf of thirty-three individual plaintiffs from those thirteen states.[4]  The Actions are all pled as putative class actions.  Only five complaints allege putative nationwide classes.  The remaining nineteen complaints allege putative statewide classes.

### B.   The "Majority Plaintiffs" Opposed Transfer to California in the MDL Proceedings but Now Assert California-Only Claims.

Although plaintiffs now put forth a California-only complaint, they previously *opposed* transfer to California.  ATTM moved to transfer the Actions to this District, or, in the alternative, to the Northern District of Ohio.  A small group of California plaintiffs made a cross-motion to transfer the Actions to the Northern District of California.  The self-proclaimed "Majority Plaintiffs," which included three of the four plaintiffs named in the "exemplar" complaint, opposed transfer to the Northern District of California and requested transfer to this District. (Opp'n to Cross Mot. For Transfer & Consolidation of Related Actions to the Northern District of California, Oct. 14, 2009 (JPML Docket No. 15).)  The "Majority Plaintiffs"[5] argued that "**the nexus of this action is not California**" and that proceeding in "the Northern District of

---

[4] Two plaintiffs are from Alabama, seven from California, two from Florida, one from Illinois, four from Louisiana, one from Michigan, one from Minnesota, three from Mississippi, two from Missouri, one from New Jersey, three from New York, three from Ohio, and three from Texas.

[5] The Majority Plaintiffs include three of the four individuals named in the purported "exemplar" complaint and other plaintiffs represented by counsel appointed to the Plaintiffs' Steering Committee who now seek to pursue California-only claims.

California would result in the confusion of law, claims, and/or issues." (*Id.* at 1, 2 (emphasis in original).)  At oral argument before the MDL Panel, Plaintiffs' Liaison Counsel opposed transfer to California on the ground that the MDL "is going to be a national case with 50 class actions for each state." (Hr'g Tr. 12:15-17, Nov. 19, 2009.)  The MDL Panel granted the Majority Plaintiffs' request to transfer the Actions to this District for pretrial proceedings.  After they successfully opposed transfer to California, however, plaintiffs have now done an "about face" and ask this Court to adjudicate *only* California claims on behalf of a nationwide class.

### C.      Plaintiffs Declined the Opportunity to File a Master MDL Complaint.

Plaintiffs have also taken inconsistent positions post-transfer with respect to the use of a single complaint.  In the parties' Proposed Case Management Order, Apple and ATTM advocated the use of a master administrative complaint that would "encompass the claims and allegations and putative class actions that are or become part of this MDL proceeding" and would thereby "promote efficiency and judicial economy." (Joint Proposed Case Management Order at 3, Jan. 12, 2010.)  Plaintiffs opposed a master complaint and requested that defendants respond to each underlying complaint individually.  (*Id.*; Hr'g Tr. 12:1-15, Jan. 15, 2010.)  In so doing, plaintiffs expressed doubts about their ability to proceed with a single case on behalf of a nationwide class:

> [W]e obviously would prefer a single action in a single court that can vindicate the rights of all of the consumers nationwide.  We're not convinced that can be accomplished.

(*Id.* at 30:20-23.)   The Court granted plaintiffs' request to proceed on the individual underlying complaints.  (*Id.* at 14:23-15:1.)

Plaintiffs then reversed course.  At the March 12, 2010 case management conference, Plaintiffs for the first time raised the idea of an "exemplar" complaint with discovery to proceed based on that complaint.  (Hr'g Tr. 10:22-11:7, Mar. 12, 2010.)  Defendants objected to such an unprecedented procedure, particularly if plaintiffs planned to file a complaint "just under one law that [plaintiffs] happen to select that they prefer." (*Id.* at 13:15-16.)  In response to the Court's inquiry into how many state laws were in play, plaintiffs conceded:

> BICKFORD:  [T]here are going to be state substantive law issues that are going to change from complaint to complaint.
>
> \*   \*   \*   \*   \*   \*
>
> COURT:  Does anybody have any idea how many different states are involved in these class actions at the present time?
>
> BICKFORD:  I believe it's 22 or 23 [state laws].  I would suspect the number will grow. . . . And, as it was pointed out to me, Judge, there is a nationwide putative class in this, so *at some point every law in going to be in pla[y]*.

(*Id.* at 18:24-19:1, 22:8-11, 20-22.)  Despite these concessions, the proposed "exemplar" complaint alleges claims only under California law and ignores the laws of the twelve other states that apply to the underlying Actions.  The exemplar complaint also ignores the fact that, as plaintiffs concede, the laws of the fifty states would apply to a nationwide class.

> **D.     The Proposed "Exemplar" Complaint Now Seeks to Apply California Law to A Nationwide Class.**

The exemplar complaint purports to amend and combine two California complaints: *Williams v. Apple Inc.* (Central District of California) and *Sterker v. Apple Inc.* (Northern District of California).[6]  The hybridized exemplar complaint retreats from the core allegations of the underlying Actions that defendants' advertising misrepresented the availability of MMS. Plaintiffs now focus on supposed "contracts" that are not pled in the underlying complaints and that are neither identified in nor attached to the exemplar complaint.  The exemplar complaint still does not plead a cause of action; indeed, its allegations are *less*, not more, specific than the allegations in the underlying complaints.  The exemplar complaint does not tie a single alleged contract, advertisement, or omission to any particular plaintiff.

Apple notes that, incredibly, the "exemplar" complaint repeats some of the same deliberate omissions of Apple's express disclosures regarding MMS that appear in the underlying complaints.  Apple has filed with this Court and provided to plaintiffs accurate copies

---

[6] Plaintiffs do not explain or provide authority for the consolidation of these two actions, nor do they clarify their failure to include all five actions initially filed in California.  Three other actions were filed in California district courts: *Tran v. Apple Inc.*, originally filed in the Northern District of California, *Molina v. Apple Inc.,* originally filed in the Southern District of California, and *Kamarian v. Apple Inc.*, originally filed in the Central District of California.

of the advertisements in their original size, including obvious disclosures about the timing of the release of MMS.  Yet plaintiffs continue to allege that Apple made supposed misrepresentations but purposely omit the disclosures.  (*Compare* Pls. "Exemplar" Compl. ¶ 52 (E.D. La. Docket No. 50) *with* Apple Inc.'s Reply to Pls. Disc. Mem. Ex. B at 9:26, Ex. B1 (E.D. La. Docket No. 39).)[7]  Thus, the exemplar complaint includes pictures that omit the express disclaimer that MMS would not be available until late summer 2009, or that are reproduced in a size so drastically reduced from the original that the disclaimer is rendered virtually unreadable.  When there is an operative complaint(s), Apple will move to dismiss and will attach the documents plaintiffs partially plead or omit that defeat their claims.

The "exemplar" complaint seeks to apply California law to a nationwide class of iPhone 3G and 3GS purchasers and to a sub-class of California residents.  ("Exemplar" Compl. ¶ 66.)[8] Alternatively, Plaintiffs allege that, should the Court determine that California law does not apply to all class members or defendants, Plaintiffs bring their statutory claims under the unidentified "concomitant laws of other states."  (*Id.* ¶¶ 88, 113.)

If plaintiffs are to proceed on a single complaint, it must be a master complaint pled under the laws of all states where the Actions were filed and to which they will be remanded. Or, as they initially proposed to do, plaintiffs can amend each of the underlying complaints.  But they may not proceed on an exemplar complaint that violates established principles of MDL procedure and defendants' due process rights.  To do so would be both improper and severely wasteful of both this Court's and the parties' resources.

---

[7] Plaintiffs do not – and cannot – allege that Apple made any affirmative representations about the availability of MMS before March 2009.

[8] The exemplar complaint purports to state eight unlabeled causes of action, which appear to be:  violation of California's Unfair Competition and False Advertising Law, breach of service contract (against ATTM only), violation of California's Consumers Legal Remedies Act, breach of an unspecified contract (against both Apple and ATTM), breach of implied covenant of good faith and fair dealing, breach of express warranty, unjust enrichment, and intentional and/or negligent misrepresentation.  ("Exemplar" Compl. ¶¶ 75-140.)

I.     THE PROPOSED "EXEMPLAR" COMPLAINT WOULD ALTER
       DEFENDANTS' SUBSTANTIVE RIGHTS IN VIOLATION OF ESTABLISHED
       PRINCIPLES GOVERNING MDL ACTIONS.

     A.     **Supreme Court Precedent Establishing MDL Procedure Precludes Plaintiffs
       from Altering Defendants' Substantive Rights in Pretrial Proceedings.**

In *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998)
("*Lexecon*"), the United States Supreme Court held that 28 U.S.C. section 1407 permits transfer
of related cases to a single district solely for pretrial proceedings, and that following such pretrial
proceedings, individual cases must be remanded to their courts of origin.  523 U.S. at 33-37, 41.
*Lexecon* halted the practice by some district courts of "self-transfer," by which an MDL court
would transfer related actions to itself for all purposes, including trial.  *Id.* at 40-41.

Given that cases transferred by the MDL Panel under section 1407 must be remanded to
their courts of origin for trial, courts have uniformly held that the MDL transferee court in
diversity cases must apply the state laws that would have been applied by the courts of origin.  *In
re ConAgra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 693 (N.D. Ga. 2008); *In re
Rezulin Prods. Liab. Litig.,* 390 F. Supp. 2d 319, 330 (S.D.N.Y. 2005).  The reason is obvious:  it
would be senseless to conduct pretrial proceedings under a different state law than that which
will govern at trial on remand.  The potential for inefficiency is evident.  For example, a class
might be certified during pretrial proceedings under the state law applicable in the transferee
court, but would then have to be decertified prior to trial under the different law applicable in the
court of origin.  *See In re Worldcom, Inc., Sec. Litig.*, No. 02 Civ. 3299 (DLC), 2005 U.S. Dist.
LEXIS 21771, at *7-8 (S.D.N.Y. Sept. 30, 2005) ("[A] transferee court applies the substantive
state law, including choice-of-law rules, of the jurisdiction in which the action was filed" to
avoid "the application of a state substantive law that differs from the law applicable in the
jurisdiction where the case was properly filed.") (citation omitted).  As a result, the "traditional
MDL practice" is "not to alter the substantive rights of foreign litigants."  *In re Vioxx Prods.
Liab. Litig.*, 522 F. Supp. 2d 799, 812 (E.D. La. 2007).

8

**B.**     **If MDL Actions Are To Proceed Under A Single Complaint, That Complaint Must Be A Master Administrative Complaint and Must Encompass All Plaintiffs and Laws In the Underlying Actions.**

Plaintiffs seek to proceed with a single, consolidated complaint that is not a master complaint.  There is no MDL precedent or procedure for such a hybrid creation.  Plaintiffs must either file a master administrative complaint or proceed on the underlying complaints in each Action.  They may not select those elements of each approach that they believe benefit them and ignore the rest in derogation of defendants' due process rights and efficient case management principles.

As multiple decisions of this District have recognized, "[m]aster complaints are often used in complex litigation," including MDLs.  *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 141 (E.D. La. 2002).  A single "master" complaint consolidating the underlying cases "becomes the operative pleading in the case, [but] does not dissolve the individual cases" or render the underlying cases "non-existent."  *Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2005 U.S. Dist. LEXIS 45123, at *6 (E.D. La. Dec. 29, 2005) (citing *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 964-65 (9th Cir. 2001)).  Instead, it is merely "a procedural device" and does "not affect the rights of the parties in separate suits."  *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 489 F. Supp. 2d 932, 936 (D. Minn. 2007).

Three important rules flow from these principles.  First, a master MDL complaint must "bring[] together *all* claims and theories of liability presented in the underlying cases."  *Turner*, 2005 U.S. Dist. LEXIS 45123, at *5 (emphasis added); *see also Katz v. Realty Equities Corp. of New York*, 521 F.2d 1354 (2d Cir. 1975).  The law of a single jurisdiction cannot be "'cherry-pick[ed].'"  *Montgomery v. Wyeth*, 540 F. Supp. 2d 933, 943 n.8 (E.D. Tenn. 2008), *aff'd*, 580 F.3d 455 (6th Cir. 2009) (citation omitted).  Second, a master complaint cannot affect applicable choice-of-law.  *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 454-55 (E.D. La. 2006); *In re Rezulin Prods. Liab. Litig.,* 390 F. Supp. 2d at 330 ("Choice of law is a substantive issue touching the rights of the parties.  Just as transfers pursuant to Sections 1404 and 1407 do not affect the applicable choice of law rules, so too the next step in the streamlining process –

namely consolidation into one proceeding of two or more actions initially filed in different states – does not affect them."). Finally, a master complaint cannot merge one or more of the underlying actions without prior agreement of the parties. *See, e.g., In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. C 07-01841 MHP, 2008 U.S. Dist. LEXIS 53616, at \*12-14 (N.D. Cal. June 10, 2008).

Plaintiffs' proposed exemplar complaint violates all three principles. The present MDL is comprised of twenty-four underlying complaints brought by thirty-three plaintiffs under the laws of thirteen states. The exemplar complaint selectively includes only the claims of four plaintiffs from a single state, California, and pleads claims only under California law. Plaintiffs have conceded that their proposed exemplar complaint would not encompass "other substantive law issues from other states" applicable to the other underlying Actions. (Hr'g Tr. 11:8-9, Mar. 12, 2010.) But if plaintiffs wish to proceed on a single complaint, that complaint must incorporate all claims and all plaintiffs.

The exemplar complaint also improperly merges two underlying suits transferred from two different districts, the Northern District of California and the Central District of California, into one complaint. Plaintiffs cannot use an "exemplar" complaint to achieve what would be clearly prohibited in a master complaint.

Defendants previously advocated the filing of a proper master complaint "containing allegations that encompass the entire range of allegations and types of proposed class actions" in the underlying complaints. (Joint Proposed Case Management Order at 2, Jan. 12, 2010.) Defendants further emphasized that such a master complaint would not alter the rights of any party or the applicable choice-of-law rules, but would be "an administrative, managerial device intended to promote efficiency and judicial economy." (*Id.* at 3.) Plaintiffs opposed the filing of a master complaint and sought to proceed on the individual underlying complaints; the Court permitted them to do so.

Plaintiffs now seek to file a single complaint which alters applicable substantive rights and choice-of-law rules. That squarely violates MDL procedures. Not surprisingly, there is no

precedent for an "exemplar" complaint unilaterally selected by plaintiffs prior to pleadings challenges in a diversity case.

## II.     THE "EXEMPLAR COMPLAINT" WOULD LEAD TO MANIFOLD INEFFICIENCIES AND WOULD VIOLATE DEFENDANTS' RIGHT TO DUE PROCESS.

### A.     Litigating Motions to Dismiss Regarding the "Exemplar Complaint" Serves No Useful Purpose and Results in Redundant and Inefficient Motion Practice.

The principles of *Lexecon* preclude litigating motions to dismiss on an exemplar complaint that is predicated on the law of a single state.  As post-*Lexecon* courts have recognized, the operative complaint(s) in an MDL proceeding must be predicated on the law that will apply to each Action when it is remanded to its home district for trial.  *See, e.g.*, *ConAgra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. at 693; *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. at 141-42.  The Actions here arise under the laws of thirteen states; the exemplar complaint pleads the law of only one.  Litigating motions to dismiss and settling the pleadings as to the law of only a single state – California – is a purposeless exercise when it leaves the pleadings as to the other twelve jurisdictions unresolved.  Motions to dismiss must be addressed to either a proper master complaint[9] or the complaints in each of the underlying Actions.

Plaintiffs have expressly conceded that "[t]here are going to be state substantive law issues that are going to change from complaint to complaint."  (Hr'g Tr. 18:24-19:1, Mar. 12, 2010.)  The complaints in the underlying Actions allege claims under the consumer protection statutes and common laws of thirteen states.

Those laws vary in numerous and significant respects.  *See, e.g., In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 158-59 (S.D.N.Y. 2008); *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 625 (D. Kan. 2008) ("Many courts . . . have rejected the argument that state consumer protection laws are essentially the same."); *In re Prempro Prods. Liab. Litig.*,

---

[9] It is well established that an MDL master complaint is subject to Rule 12(b).  *See, e.g., In re Ford Motor Co. Vehicle Paint Litig.,* 1996 U.S. Dist. LEXIS 11063 (E.D. La. July 30, 1996); *Turner,* 2005 U.S. Dist. LEXIS 45123, at *5-6.

230 F.R.D. 555, 564 & n. 67 (E.D. Ark. 2005) ("Both consumer fraud and unfair competition laws of the states differ with regard to the defendant's state of mind, type of prohibited conduct, proof of injury-in-fact, available remedies, and reliance, just to name a few . . . .").

As the *In re Grand Theft Auto* court noted, state consumer protection laws vary with respect to whether they require proof of actual reliance and, if so, what proof of that reliance entails. 251 F.R.D. at 161. The standards for proof of fraud or misrepresentation under these statutes, as well as causation requirements, also diverge. Some state consumer protection statutes provide for actual damages, others do not.

Common law tort claims and remedies also differ. The "common law of fraud is materially different in the fifty states. The elements of fraud vary greatly from state to state, with respect to elements including mitigation, causation, damages, reliance, and the duty to disclose." *Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002). Similarly, "the state common law breach of contract claims vary with respect to statutes of limitations, parole evidence and burdens of proof." *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 468 (D.N.J. 2009). These variations in applicable state law render litigating motions to dismiss respecting claims pled under the law of a single state an exercise in futility. *See In re Bridgestone/ Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("[D]ifferences [in state law] have led us to hold that . . . warranty, fraud, or products-liability suits may not proceed as nationwide classes.").

The practical result of litigating motions to dismiss under a single state's laws is a "heads I win tails you lose" violation of defendants' due process rights.[10] If plaintiffs win, they proceed to discovery without ever resolving whether the Actions that will be remanded to federal courts in the other twelve states can survive a pleadings challenge. If plaintiffs lose, they simply tee up

---

[10] Application of a single state's laws to a nationwide class of consumers may pose serious constitutional problems. *Propulsid*, 208 F.R.D. at 143 n.7; *see also Philips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Util. Consumers' Action Network v. Sprint Solutions, Inc.*, 259 F.R.D. 484 (S.D. Cal. 2009) (holding application of California law to nationwide class unconstitutional under *Shutts*).

another complaint and then another for consideration.  Thus, plaintiffs' proposed exemplar

complaint inevitably results in a waste of both the Court's and the parties' time and resources.

> **B.      Pre-Certification Discovery and Class Certification Cannot Be Based on the "Exemplar" Complaint**

Plaintiffs presume they will survive a motion to dismiss and contend that they should

then be permitted to proceed with discovery and class certification under California law.  But

plaintiffs once again ignore *Lexecon*.  Even assuming that a California class could be certified –

which is not the case – this leaves the issue of class certification unresolved as to the actions that

are to be remanded to the other twelve states.  Plaintiffs cannot seriously contend that this MDL

Court, in the Eastern District of Louisiana, should begin by focusing the class certification issues

solely on two California complaints with only California plaintiffs.  That contention is

particularly egregious in light of plaintiffs' opposition to transfer to California and representation

to the MDL Panel that "[t]he nexus of this action is not California."  (Opp'n to Cross Mot. For

Transfer & Consolidation of Related Actions to the Northern District of California at 1, Oct. 14,

2009 (JPML Docket No. 15).)

Plaintiffs may be asking this Court to gamble on the theoretical possibility that they can

certify a nationwide class by applying California law to putative class members from all fifty

states.  But plaintiffs have already conceded, as they must, that to the extent they allege a

nationwide class, the laws of every state, not just California, will necessarily be in play.  (Hr'g

Tr. 22:20-22, Mar. 12, 2010.)  Indeed, at the hearing before the MDL Panel, the "Majority

Plaintiffs," in opposing transfer to California, argued that there would likely be 50 separate

statewide classes because a nationwide class could not be certified.  (Hr'g Tr. 12:15-17, Nov. 19,

2009.)  Similarly, at the initial January 15 hearing before this Court, plaintiffs conceded that they

had grave doubts that a nationwide class could be certified.  (Hr'g Tr. 30:20-23, Jan. 15, 2010.)

Plaintiffs' ability to certify a nationwide class is not doubtful, it is nonexistent.  This

Circuit, as well as this District, have repeatedly held that certification of a nationwide class on

state-law issues is not appropriate.  Every court in this Circuit that has considered the application

of a single state's law to a nationwide class has concluded that such application is inappropriate, and has denied certification of the purported nationwide class. *See, e.g., Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996); *Vioxx*, 239 F.R.D. at 454; *Propulsid*, 208 F.R.D. at 141. Where certification of a nationwide class has been sought under the laws of multiple states, certification has similarly been denied. As the Fifth Circuit concluded in *Castano*, "variations in state law may swamp any common issues and defeat predominance." 84 F.3d at 741. *Accord, Cole v. GMC*, 484 F.3d 717, 724 (5th Cir. 2007); *Ancar v. Murphy Oil, U.S.A., Inc.*, No. 06-3246, 2008 U.S. Dist. LEXIS 68490 (E.D. La. July 25, 2008).

The consequence of proceeding down the path plaintiffs have proposed if a nationwide class cannot be certified is months if not years of wasted discovery and class certification proceedings. At the end of that process, when certification is denied, the whole exercise will then commence anew to determine whether a statewide class can be certified under the state laws applicable to any of the non-California Actions. Indeed, that is precisely what occurred in *Vioxx*, 239 F.R.D. at 454 n.5. Further, these proceedings would have to recommence at square one: resolving pleading challenges to the complaints in all the underlying Actions.

Finally, even if there were a ghost of a chance that a nationwide class could be certified, plaintiffs' proposed exercise would court grave uncertainties and inefficiencies. Class certification is conditional until the conclusion of trial. *See Castano,* 84 F.3d at 741 ("The purpose of conditional certification is to preserve the Court's power to revoke certification in those cases wherein the magnitude or complexity of the litigation may eventually reveal problems not theretofore apparent.") (quoting *In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974)); *Horton v. Goose Creek Independent Sch. Dist.*, 690 F.2d 470, 487 (5th Cir. 1982) ("Rule 23 provides a district judge with great flexibility to adopt any appropriate procedures, issue appropriate orders, and invite intervention. It explicitly permits him to certify conditionally or to decertify a class.") (citation omitted).

Thus, this Court could later conclude that the nationwide class should be decertified. Further, it is not uncommon for class certification to be vacated or narrowed as individual issues

14

and other manageability problems emerge at trial.  *See Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) ("Under Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts."); *see also* 3 Newberg on Class Actions § 7.47 (4th ed. 2006).  Accordingly, whichever California court ended up with the Action (plaintiffs do not indicate how this selection would be made) could decertify the class at any time up to or during trial.  The result would be procedural chaos.  No pretrial issue would have been resolved in the remaining twenty-two complaints.  All the pretrial effort of the parties and this Court would essentially have been for naught.

## CONCLUSION

For all these reasons, the Court should decline plaintiffs' invitation to engage in this fruitless and grossly inefficient exercise.  Plaintiffs should be ordered either to file a proper master administrative complaint or to amend the complaints in the underlying Actions.

Respectfully submitted,

*/s/ Douglas J. Moore*
IRWIN FRITCHIE URQUHART & MOORE, LLC
QUENTIN F. URQUHART, JR. (#14475)
DAVID W. O'QUINN (#18366)
DOUGLAS J. MOORE (#27706)
400 Poydras Street, Suite 2700
New Orleans, Louisiana  70130
Telephone:  (504) 310-2100
Facsimile:  (504) 310-2101

PENELOPE A. PREOVOLOS (*admitted pro hac vice*)
ANDREW MUHLBACH (*admitted pro hac vice*)
HEATHER A. MOSER (*admitted pro hac vice*)
MORRISON & FOERSTER, LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Counsel for Apple Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been electronically filed and served upon all known counsel of record by electronic service and/or U. S. mail, properly addressed, this the 21st day of April, 2010.


*/s/ Douglas J. Moore*