UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: APPLE iPHONE 3G AND 3GS "MMS" MARKETING AND SALES PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CASES | CIVIL ACTION<br>MDL No: 2116<br><br>SECTION "J"<br><br>JUDGE BARBIER<br><br>MAGISTRATE JUDGE WILKINSON |

PLAINTIFFS' RESPONSE TO DEFENDANTS'
OBJECTIONS TO EXEMPLAR COMPLAINT

The First Amended Complaint ("FAC"), which combines two of the California cases, represents Plaintiffs' attempt to accommodate Defendants' desire for a pleading that encompasses all the facts applicable to all cases, without compromising Plaintiffs' position that a "Master"[1] complaint is

---

[1] Despite agreeing at the January 15, 2010, hearing that there is no need for master complaint (Transcript at 17), Apple now again insists that a master complaint is necessary, citing *Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2005 U.S. Dist. LEXIS 45123, *5 (E.D. La. Dec. 29, 2005), and *Katz v. Really Equities Corp. of New York*, 521 F.2d 1354 (2d Cir. 1975).  However, these cases simply note that master complaints have been permitted as acceptable under Rule 42 and that they are often used in complex litigation.  They do not say that the Master Complaint *must* be filed or must contain *all* claims and theories.

merely administrative and provides no basis for motions for judgment on the pleadings. Plaintiffs are taken aback by Defendants' reaction, as the FAC gives Defendants' two things they expressly want: 1) the universe of facts applicable to all complaints and 2) an actual, live pleading (as opposed to an administrative bookmark with no legal significance) against which they can assert their Rule 8, 9, and 12 motions.[2] To be clear, the FAC is not a substitute for the other complaints; it merely proposes to go first to create procedural efficiency.

This is an MDL proceeding: there are common questions of fact present among all the complaints. Judging by their Objections to the FAC, Defendants seem to have forgotten that. Or at least Defendants conveniently ignore their own hortatory comments to the Judicial Panel on Multidistrict Litigation:

> Each of the complaints makes *virtually identical factual allegations* relating to the marketing and performance of the iPhone 3G and 3G-S with respect to MMS functionality. The Judicial Panel on Multidistrict Litigation ("Panel") has previously held that actions involving the *same allegations about the same product* present "common questions of fact." *** The Actions thus meet the "common questions of fact" requirement.

---

[2] As Plaintiffs argued previously, a master complaint *cannot* serve the purpose of acting as the foil for one giant motion to dismiss. Additionally, this Court already determined, and counsel for Apple even agreed before this Court, that a master complaint is not appropriate.

AT&T's Motion for Transfer of Actions, Exhibit A, (JPML Sep. 10, 2009), p. 3 (emphasis added).

> As set forth in ATTM's Motion, the Actions present *identical claims*; indeed, most of the complaints are classic copy-cat actions. *** When transfer is sought pursuant to 28 U.S.C. § 1407(a), "common questions of fact" exist when, *as here*, the actions assert the *same factual allegations.* *** The common allegations of these complaints make clear that these Actions are proper for transfer under § 1407(a).

Apple's Response in Support of Transfer, Exhibit B, (JPML Oct. 5, 2009), p. 3 (emphasis added). Now that Defendants have achieved centralization, they want the Court to ignore the identical facts and allegations. Defendants instead want this Court to believe that, while all the case share common questions of fact sufficient to centralize all the cases in one Court, once here, the same Court should treat these coordinated actions as though those common questions of fact have now vanished, and only the differences merit discussion. If Defendants have their way, this MDL may be at risk of devolving into a highly inflected process where this Court's task, preparing the commonalities of all the cases for trial, becomes sidetracked by invented, procedural dogma.

I.  **This MDL Pretrial Proceeding Will Prepare All Filed Cases for Trial, with California Merely Standing as the First Complaint to Be Tested.**

Rather than recognizing the practical opportunities for efficiency, Defendants engage in mischaracterizations of the consequences flowing from the FAC. Defendants incorrectly claim or imply that Plaintiffs are attempting to proceed *only* under the FAC, leaving the other complaints' sufficiency unaddressed (Rec. Doc. 53 at 7; Rec. Doc. 52 at 9-10). However, nowhere have Plaintiffs stated this intention; nor is it evident from the face of the FAC. This MDL will prepare *all* cases for remand, including answering the question whether their respective complaints survive Rule 12, should Defendants choose to present those challenges. Such a vociferous objection based on ill-conceived assumptions, articulated without even a phone call to Plaintiffs' counsel to determine what the plan may be, is unwarranted and unnecessary.[3] Stripped of the misconception (or

---

[3] Plaintiffs do not understand the barrage of accusations aspersing their counsel for "changing courses" on multiple occasions (Rec. Doc. 54 at 5). Plaintiffs did *not* agree to file a master complaint. Counsel said they *might* do it. Furthermore, proposing the FAC was not a change in course because the manner in which amendments were to be made was never set in stone. Additionally, the FAC, against which the first motion to dismiss would be lodged, is in no way contrary to Plaintiffs' recognition that filing a single, nationwide action for all Plaintiffs against *all* Defendants may not be possible at this juncture (Rec. Doc. 55 at 5). Nor do Plaintiffs "concede" that the laws of 50 states would apply to a nationwide class action as to all defendants or as to all legal theories. In fact, insufficient discovery has taken place to determine *any* choice of law issue. Counsel should be strongly cautioned to

mischaracterization) that Plaintiffs aim to proceed *only* under the FAC for the duration of this MDL, Defendants' objections have no further voice. The FAC provides a foundation and structure for 90 percent of the issues involved in all of the cases, recognizing that, from the outset, Defendants have focused on common factual issues as the basis for their initial responses to all the pleadings.

II. **Plaintiffs' Proposed Procedure Is Not Only Justified by Defendants' Positions and Statements to Date, But It Is Also the Most Rational and Efficient Method to Address All the Pleadings.**

From the beginning of the MDL proceedings, Defendants argued: "[T]hese Actions can and should be resolved by early dispositive motions. [¶] The *factual basis* for those motions—that the timing of the activation of MMS was fully disclosed—is simple. *It will either be clear on the face of the Master Complaint* or can be readily demonstrated by Defendants . . . ." Defendants' Joint Position Statement at 3. Defendants said nothing at that time about contesting every legal theory presented in every state. Rather, Defendants impressed upon the Court that the most important aspect of responses to the

---

engage, particularly at this early stage, in strong rhetoric over nuanced aspersions of hypocrisy, especially when it was national counsel for Apple who pushed the "master complaint" issue to its adjudication, then immediately backtracked in open Court, contradicting the oral argument of Apple's liaison counsel. If the parties are to cooperate in solving complex procedural issues in good faith in this MDL, playing "gotcha" is not a good place to start.

5

complaints was the factual nature of their anticipated motions: "Defendants anticipate that they may have a variety of Rule 9, 12 or other motions. Furthermore, ATTM anticipates filing motions to enforce its arbitration agreements with Plaintiffs. As set forth above, Defendants anticipate filing early dispositive motions based on the clear disclosures set forth in their advertisements and other materials." *Id.* at 5. Rule 9(b), in particular, is a Federal Rule requiring fraud to be pled in a particular way. The Rule does not invoke state law. Nor does Rule 8 deal with state law. In fact, *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, cases cited by both Defendants forecasting the nature of their dispositive motions, deal with *factual* specificity required for complaints under Rule 8. Defendants both argued that the motions will be about "whether those factual assertions are sufficient to state a claim." (Rec. Doc. 41 at 10).

Thus, according to Defendants' own assertions presented to this Court, the motions envisioned by Defendants unquestionably emphasized facts and pleading standards, not legal theories espoused from state-to-state. In response, and in recognition of the efficiencies to be gained by filing a lead complaint that incorporates all the facts common to all the cases, Mr. Bickford stated:

> This, I think, would be a compromise position to the position that AT&T and Apple took is that they wanted to consolidate a complaint. This wouldn't be a consolidated complaint. It would

6

> be more like a bellwether or exemplar complaint that goes forward, which will raise, I think, probably 95 percent of the issues that the Court is going to have to deal with in the case.
>
> ***
>
> I think by us taking one complaint and going forward and amending that, that we can then tee that up in a fashion which takes care of 90, 95 percent of all the issues in the case, which will then be resolved to the other existing complaints.

Transcript, dated Mar. 12, 2010. In essence, the FAC, and the responses to it, will provide a foundation and quick peek into the factual bases for the pleadings and almost all the discovery issues that will be brought to bear in this MDL. Although counsel for Apple and AT&T expressed concern over the proposal, neither disputed the statement that a lead complaint would help deal with perhaps 95 percent of the preliminary issues.

III.  **The FAC, as the Lead Complaint, Will Serve Useful Purposes, Including Litigation of Motions to Dismiss, and Will Not Result in Redundant and Inefficient Motion Practice.**

There is no legal prohibition against the use of bellwether[4] complaints or trials. The principles of *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,[5] are not violated through the use of bellwether complaints to address

---

[4] The term "bellwether" is a term of art to refer to, basically, the leader of the pack. It has no legal significance, other than to refer to a complaint or case that is being treated first and separately from the rest of the complaints for purposes of efficiency or to provide valuable information to the parties and the court.

[5] 523 U.S. 26 (1998). *Lexecon* had much more to do with requiring that MDL-transferred cases be tried in their home jurisdictions than it had to do with

similar or identical legal and factual issues in MDL cases. In fact, the use of bellwether or exemplar complaints as a means to resolve consolidated litigation is well established.

This Court has used bellwether trials in order to advance complex litigation through, *inter alia*, deciding key motions and issues. Recently, in the case of *In re Chinese Manufactured Drywall Products Liability Litigation*, Judge Fallon of this Court resolved various motions, including motions *in limine*, *Daubert* motions, and other motions filed by the plaintiffs and the defendants, in the course of bellwether trials. No. 09-6050, 2010 WL 1006719, *1 (E.D. La. March 15, 2010).

Bellwether or exemplar complaints can also be an important starting point for courts to begin resolution of the many issues in complex multi-state class actions. In *Jacobson v. Cohen*, the court stated "[t]he bellwether complaint in this litigation, limited to nine plaintiffs and their claims for the year 1983, is a first step in considering proper utilization of Fed. R. Civ. P. 16 in this instance." 151 F.R.D. 526, 527 (S.D.N.Y. 1993).

Defendants' argument that the laws of the states are "materially different," even if correct, further supports the use of the exemplar or

---

the propriety of "bellwether" cases. There is nothing in *Lexecon* to suggest that beginning the pretrial MDL process by using the FAC to flush out 90 percent of the issues in the case is improper.

bellwether complaint.[6]  Breaking litigation, involving multiple claims asserted across various jurisdictions, into manageable tasks is a hallmark use of bellwether complaints.  For example, in *Adams v. U.S.,* the court used bellwether trials that addressed only parts of the plaintiffs' claims in order to simplify and manage the litigation.  No. CV-03-49-E, 2009 WL 2590202 (D. Idaho Aug. 16, 2009).  The *Adams* court held plaintiffs' aiding and abetting claims in abeyance until after the first bellwether trial.  *Id.* at *1.

Plaintiffs' FAC can serve as a platform for testing dispositive motions, as Plaintiffs propose here.  For example, in *In re FEMA Trailer Formaldehyde Products Liability Litigation*, a bellwether complaint was used to test the sufficiency of various allegations against the defendants, including the allegation that defendant Gulf Stream's products were defective.  No. 09-2892, 2009 WL 2599142 (E.D. La. Aug. 19, 2009).[7]  The Defendants have

---

[6] Defendants' missive that Plaintiffs are attempting to avoid the laws of other states and to "cherry-pick" the law of a single state fails on its face.  *See* Apple Obj. at 9 (citing *Montgomery v. Wyeth*, 540 F. Supp. 2d 933, 943 n.8 (E.D. Tenn. 2008)).  Rather, the *Wyeth* court was dealing with a situation where the parties agreed that Tennessee law would apply across the board, and then later the plaintiffs argued for application of Georgia law on a specific issue.  Plaintiffs in the present case will address choice of law issues at the appropriate time and in the appropriate context.  Deciding preliminary motions related to the FAC does not mean that the remaining complaints—or the laws applicable to them—will forever be ignored.  It means they will be decided next.

[7]  *See also In re WellNx Mktg. and Sales Practices Litig.*, 673 F. Supp. 2d 43, 49 (D. Mass. 2009) (using four "bellwether" complaints to help resolve claims including fraudulent marketing); *In re Fosamax Prod. Liab. Litig.,* 1:06-cv-

failed to provide any logical argument why the FAC cannot serve the same purposes.

IV. **Among the Possible Candidates, the California Complaint Is the Most Logical and Efficient Complaint to Spearhead These MDL Proceedings.**

   A. **Because the FAC Alleges a Nationwide Class Against Apple, Certification of that Class May Moot Individual State Class Actions as to Apple.**

The exemplar complaint seeks a nationwide class action under California law against Apple. A nationwide class action against Apple can and will be certified under California law because Apple, as a California resident, is subject to California law. Apple has a California choice of law clause in its contracts.[8] Thus, Apple's concerns that a single state's laws cannot be applied to a nationwide class of consumers are misplaced, as California law may be applied to all consumers as to Apple. When a nationwide class action against Apple is certified, the individual class actions against Apple in every other state may become moot at least. Thus, moving

---

5087, 2009 WL 3398930, *7 (S.D.N.Y. Oct. 21, 2009) (using bellwether trials and noting how most of the discovery was already completed through the MDL and bellwether trials); *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, No. 09-2977, 2009 WL 3834126, *1 (E.D. La. Nov. 16, 2009) (addressing summary judgment motion with respect to bellwether plaintiff's complaint).

[8] The merits of the certification of a national class addressed by Apple in its brief will be addressed in full by Plaintiffs at a later date.

forward first with the California class action will provide meaningful information and experience to all litigants.

### B. Because the FAC Alleges the Largest State Class, the Parties and the Court Have the Most to Gain by Pursuing It First.

According to the 2009 estimates of the United States Census Bureau, California with over 36 million residents was the most populous state and made up 11.95% of the population of the country. Because of California's population and technology demographics, discovery will show that California has more iPhone customers than any other state. It makes sense to spearhead these proceedings with the complaint that will impact the most people.

### V. This Court Should First Schedule Motions to Dismiss, Pre-Certification Discovery, and the Class Certification Motion Based on the FAC, Before Proceeding on the Other Complaints.

Defendants mischaracterize the procedural framework that may be established in the wake of filing the FAC, incorrectly positing that if they are required to answer or file motions on the complaint, they will forever lose the opportunity to do so with regard to the other cases in the context of this MDL.[9] Thus, Defendants present a false dilemma: deal with all

---

[9] "Since pretrial proceedings would not have been conducted in [the non-California] cases [after remand of the California case], the parties in each case would potentially have to begin anew, with motions to dismiss, discovery, and class certification proceedings." (Rec. Doc. 53 at 3).

amendments and all motions to dismiss in all cases right now, or deal only with the California case through its remand.  Clearly, this would not be efficient, which is why Defendants erect this straw man.[10]  But Plaintiffs advocate neither of these options.

 A number of procedural options are available to the Court, which would create greater efficiencies than dealing with all pleadings at once.  For instance, in describing his experiences with developing an MDL procedural framework, Judge Eldon Fallon highlighted the role of bellwether trials.  *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2332 (2008).  As Judge Fallon explained, "[t]he ultimate purpose of holding bellwether trials . . . was not to resolve the thousands of related cases pending in either MDL in one 'representative' proceeding, but instead to provide meaningful information and experience to everyone involved in the litigations." *Id.*

---

[10] Defendants' argument that pursuing the FAC first could somehow alter proper choice of law considerations is wholly meritless.  There is no procedural mechanism to alter the obligation to perform such analyses at the appropriate juncture; nor do Plaintiffs attempt to pursue one.  The fact is that one of two Defendants in this action runs its operations from within California borders and California has the most significant consumer population in terms of iPhone users.  While these facts do not make California the "nexus of this action" due to the presence of AT&T and its conduct, there is nothing nefarious about proceeding first with the FAC—it is an obvious choice in effectuating a quick peek into the remainder of the MDL proceedings.

In the instant case, while Plaintiffs do not propose bellwether *trials* at this juncture, Plaintiffs have analogously proposed to move forward on a lead complaint through class certification. The preliminary orders flowing from the FAC (i.e., motions to dismiss and class certification) will provide meaningful information and experience to everyone involved in the litigation. For instance, the laws on the prohibition of the ban of class actions in California are mirrored in approximately 10 states that are involved in this litigation. A decision by this Court on the ban on class actions in the California class action could moot the same motions in numerous other cases. Furthermore, other issues of law and fact arising from the FAC will provide meaningful information and experience for the remaining cases, such as the very issues Defendants have focused upon from the beginning—the factual adequacy of the complaints under the Federal Rules.

Once the Court resolves Defendants' motion to dismiss or to compel arbitration of the FAC (and assuming *arguendo* the complaint survives), the Court can permit discovery to go forward and allow Plaintiffs to file their motion for class certification under the FAC. Once those two early motions are decided, the Court may direct Plaintiffs to amend the remainder of the complaints in phases, determine what, if any, further discovery is necessary, and then order abbreviated briefing regarding the sufficiency of those complaints and whether they are suited for class treatment. Because the

supplemental amendment and briefing process in the remaining cases would be abbreviated, they could be multi-tracked or conducted in waves. If this Court, however, is forced to adjudicate 46 motions to dismiss simultaneously, before the parties even know whether the common factual allegations pass procedural muster, the burdens, inefficiencies, and waste involved become painfully apparent.

A similar tack was taken by Judge Miller, MDL Judge in *In re: FedEx Ground Package System, Inc., Employment Practices Litigation*. Approximately 56 actions were pending in his court related to the employment classification of FedEx's drivers and presenting a common set of facts applicable to each case. Initially, the Court ordered that class certification motions be filed in 3 separate waves, including classes asserted in 28 different states and respective Federal Districts. *Id.*, No. 05-MD-527, Slip Op. at *1, 3 (N.D. Ind. Mar. 25, 2008) (relevant excerpts attached as Exhibit C). The Court first considered the Kansas certification motion (alleging the nationwide class), and issued an order granting class certification. *In re: FedEx Ground Package System, Inc., Employment Practices Litig.*, No. 05-MD-527, 2007 WL 3027405, *27 (MDL 1700) (N.D. Ind. Oct. 15, 2007). Rather than consider all the briefing in subsequent cases, however, the Court ordered the parties to file abbreviated "supplemental statements" for each case, elucidating the differences or

14

similarities between the Kansas order and the issues presented in the remaining actions. *Id.*

Using that model, this Court could adjudicate motions challenging the FAC and the motion for class certification, then set schedule for amending remaining complaints in waves. The Court could then order the parties to submit abbreviated, supplemental statements describing how their position regarding the sufficiency of the complaints differs from the position taken by the Court in its opinion regarding the sufficiency of the FAC. Meanwhile, should the FAC survive, discovery would begin immediately. There would be no duplication of effort or waste of resources because the discovery in the California case, containing as it does "the same allegations about the same product," would be virtually the same as in all other cases.

Proceeding immediately with motions on the FAC would provide the Court and the parties with a foundation for the broader litigation, determining whether at least one complaint is viable, beginning discovery at the earliest practicable time, and still affording Defendants the opportunity to bring their legal challenges to the remaining complaints in a reasonable timeframe. The alternative is to grind the clerk's office and this Court's chambers to a halt with 46 motions to dismiss filed simultaneously. Given that, even if only one complaint survives, the vast majority of discovery Plaintiffs will need to prosecute that action would be the same as if all 23

cases survived, the efficiencies of the FAC-first approach far surpass the carpet bombing campaign proposed by Defendants.

## VI. Plaintiffs' Approach Does Not Violate Defendants' Due Process Rights.

Defendants' argument that their right to due process will be violated through the use of the Plaintiffs' FAC is legally baseless, premised on the flawed notion that if their alleged rights are not addressed in a specific order, they are denied. The Defendants have not provided *any* authority to support their argument that use of a bellwether complaint violates their right to due process—nor can they. The use of the bellwether complaint merely provides a means to address the rights of the parties in an efficient, orderly manner. It does not deny or change the rights of any party.

Defendants will have the same opportunity to assert the same defenses, whether all complaints are pursued at the same time or whether the FAC is used as means to spearhead this litigation. The fact that Defendants' rights may have to be asserted at a later time does not deny the Defendants due process of law, as Defendants are not prejudiced in any way. It is Plaintiffs'

claims that are being delayed, which Defendants are not being forced to spend time or money defending at this time.

Respectfully Submitted,

*/s/ SCOTT R. BICKFORD*

SCOTT R. BICKFORD (1165)

Martzell & Bickford

338 Lafayette St.

New Orleans, LA 70130

Telephone:  504/581-9065

Facsimile:   504/581-7636

usdcedla@mbfirm.com
Liaison Counsel on Behalf of the

Plaintiffs' Steering Committee

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of May, 2010, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of electronic filing.

/s/ *SCOTT R. BICKFORD*

SCOTT R. BICKFORD