# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: APPLE iPHONE 3G AND 3GS "MMS" MARKETING AND SALES PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CASES | CIVIL ACTION<br><br>MDL No. 2116<br><br>SECTION "J"<br>JUDGE BARBIER<br><br>MAGISTRATE JUDGE WILKINSON |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
<u>APPLE INC.'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(7)</u>**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

    A. Procedural History .............................................................................................. 2

    B. Plaintiffs' Theories of Liability ........................................................................... 3

III. LEGAL STANDARD ..................................................................................................... 7

IV. ARGUMENT .................................................................................................................. 9

    A. ATTM Is a Required Party to This Litigation Because Plaintiffs' Claims Are Predicated on ATTM's WSA and ATTM's Conduct .......................... 9

    B. This Case Must "in Equity and Good Conscience" Be Dismissed in ATTM's Absence ................................................................................................ 11

        1. ATTM Will Be Prejudiced if This Case Proceeds in Its Absence ........................................................................................... 11

        2. If ATTM Is Not Joined, the Case Should Be Dismissed ......................... 14

CONCLUSION ............................................................................................................................ 14

i

**I.      INTRODUCTION**

AT&T Mobility LLC ("ATTM") is a necessary party under Federal Rule of Civil Procedure 19(a), and it is a party without which this litigation may not proceed "in equity and good conscience" under Rule 19(b).  Plaintiffs' claims must therefore be dismissed with prejudice under Rule 12(b)(7) unless they join ATTM.

Plaintiffs' claims in this action are predicated on the contents of their Wireless Service Agreement ("WSA") with ATTM.  Plaintiffs allege that ATTM breached that agreement when it purportedly failed to provide plaintiffs with MMS services prior to September 23, 2010, and that ATTM billed plaintiffs for the MMS services that were allegedly not provided.  Plaintiffs argue that they may proceed against Apple alone for its failure to disclose these alleged breaches by ATTM.  Plaintiffs' position that they can litigate the meaning of ATTM's agreement and ATTM's supposed breaches of that agreement in ATTM's absence is meritless.

Plaintiffs' eleventh-hour tactic to dismiss ATTM from the litigation in order to avoid arbitration, while continuing to pursue the same claims under the guise that Apple allegedly "failed to disclose" ATTM's alleged conduct, could not be more transparent.  Notably, plaintiffs have not even attempted to amend their complaints to eliminate their allegations respecting ATTM, nor could they do so.  As plaintiffs concede, Apple made no representations regarding MMS in connection with its sale of the iPhone 3G, and clearly disclosed when MMS would be available in connection with its sale of the iPhone 3GS.  Accordingly, plaintiffs' claims against Apple are inextricably intertwined with ATTM.  Indeed, even plaintiffs' "recast" theories of liability set forth in their brief in opposition to Apple's motion to compel arbitration confirm that plaintiffs are pursuing claims against Apple that are dependent on the WSA and ATTM's alleged obligations under the WSA.

The United States District Court for the Northern District of California has already reached this conclusion in a case involving the same two defendants (Apple and ATTM) and a similar attempt by the plaintiffs to excise ATTM from the case to avoid arbitration with Apple.

1

In *In re Apple iPhone 3G Prod. Liab. Litig.* ("iPhone 3G MDL"), the plaintiffs purported to dismiss ATTM and to delete references to ATTM in an effort to avoid the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*. On December 1, 2011, Judge Ware rejected this strategy, ruling that the plaintiffs' "cosmetic modifications" did not alter the substance of their claims. *iPhone 3G MDL*, MDL No. C 09-02045 JW, 2011 U.S. Dist. LEXIS 138532, at *13 (N.D. Cal. Dec. 1, 2011).[1] Judge Ware dismissed the complaint for failure to join ATTM, ruling that the plaintiffs must replead to join ATTM if they wish to pursue their claims. *Id.* In previous orders, Judge Ware had held that ATTM is an indispensable party and that claims against Apple cannot proceed in ATTM's absence.

Here, as in the iPhone 3G MDL, plaintiffs' dismissal of ATTM has not changed the nature of their claims. Rule 12(b)(7) and Rule 19 preclude plaintiffs from adjudicating the meaning of ATTM's WSA and the propriety of ATTM's alleged conduct without ATTM.

## II. BACKGROUND

### A. Procedural History

This MDL consists of twenty-three underlying actions (the "Actions"). On June 4, 2010, pursuant to the Court's Pretrial Order 9 (Dkt. No. 66), plaintiffs filed first amended complaints in sixteen of the Actions. (Dkt. Nos. 67-82)

Plaintiffs are current and former ATTM customers who contracted with ATTM for wireless services when they purchased Apple's iPhone 3G and/or iPhone 3GS. (*See, e.g.*, Dkt. No. 71, *Carbine* First Amended Complaint ("*Carbine* FAC") ¶ 13)[2] Each plaintiff accepted ATTM's WSA, which incorporates ATTM's terms of service. (*See* Dkt. Nos. 113, 115) Those terms include an arbitration provision identical or materially identical to the one at issue in *AT&T Mobility LLC v. Concepcion* that requires each customer to arbitrate "all disputes and

---

[1] A true and correct copy of Judge Ware's Order in the iPhone 3G MDL is attached as Exhibit B to the Declaration of Penelope A. Preovolos, filed concurrently herewith.
[2] The underlying complaints are virtually, if not entirely, identical. Thus, throughout this brief, Apple cites only to the first amended complaint in the *Carbine* case, which was originally filed in this District and is representative of the other underlying complaints.

2

claims" with ATTM on an individual basis.  (Dkt. No. 112-1 at 2, 27-28; *see also* Dkt. No. 226 at 3; Dkt. No. 117-1 at 16-20, 41-45, 66-70, 91-95; Dkt. No. 118-1 at 2-3)

In August 2010, ATTM filed a motion to compel arbitration based on the arbitration agreement each plaintiff signed when purchasing his or her iPhone and wireless service.  (Dkt. Nos. 95-111)  Apple and ATTM also filed motions to dismiss each of the sixteen first amended complaints.  (Dkt. Nos. 120-135, 138-153)

On November 3, 2010, the Court stayed proceedings between ATTM and plaintiffs pending the Supreme Court's decision in *Concepcion*.  (Dkt. No. 193)  Apple immediately moved to stay plaintiffs' claims against Apple as well.  (Dkt. No. 194)  On November 17, 2010, the Court granted Apple's motion, thereby extending the stay as to claims against both ATTM and Apple.  (Dkt. No. 206)  The MDL was stayed and thus inactive from November 2010 until October 5, 2011, pending *Concepcion*.  (Dkt. Nos. 207, 233)

On October 20, 2011, both ATTM and Apple filed motions to compel arbitration.  (Dkt. Nos. 235, 236-259)  On November 21, 2011, the day their opposition to both motions was due, plaintiffs filed a purported notice of voluntary dismissal of ATTM without prejudice, and subsequently filed similar notices in each of the underlying cases.  (Dkt. No. 262)

### B.      Plaintiffs' Theories of Liability

Plaintiffs' underlying complaints, and the positions that they have taken throughout the course of this MDL, make clear that their claims against Apple are predicated on ATTM's WSA and on ATTM's alleged conduct under the WSA.  Plaintiffs, purchasers of Apple's second- and third-generation iPhones (the iPhone 3G and iPhone 3GS), allege that as a result of Apple and ATTM's "exclusivity agreement," defendants required iPhone 3G and iPhone 3GS users to subscribe to ATTM's WSA, which included messaging services.  (*Carbine* FAC ¶¶ 2, 32) Plaintiffs contend that photo messaging ("MMS") was a "standard feature" in ATTM's WSA (*Carbine* FAC ¶¶ 3, 7, 31, 57), but that ATTM's network allegedly lacked capacity to support MMS on the iPhone 3G and iPhone 3GS.  (*Carbine* FAC ¶¶ 4-7)  Nevertheless, plaintiffs aver,

3

ATTM promoted and sold its "Messaging Unlimited" data plan to iPhone 3G and iPhone 3GS users, charging them for MMS services that they could not use.  Plaintiffs further allege that Apple failed to disclose to customers that they had to pay for, but could not use, MMS on the ATTM data plan.  In addition, plaintiffs allege that Apple and ATTM falsely advertised MMS as a feature included in ATTM's data plan.  (*Carbine* FAC ¶¶ 7-9, 54-56, 58, 59)

Apple moved to dismiss sixteen of the underlying Actions on the grounds that Apple never represented that MMS was available on the iPhone 3G and that Apple's iPhone 3GS advertisements contained clear disclaimers relating to the timing of MMS availability.  (*See, e.g.*, Apple's Motion to Dismiss *Carbine* FAC, Dkt. No. 132 at 5-8, 10)  Faced with the fact that Apple never misrepresented the availability of MMS, plaintiffs attempted to salvage their claims against Apple by relying on the WSA and their allegations with respect to ATTM.  Accordingly, in opposing Apple's motions to dismiss, plaintiffs argued that their WSA with ATTM — and what it purportedly did and did not obligate ATTM to provide to plaintiffs — is the lynchpin of their claims.  Thus, plaintiffs alleged:

- "Plaintiffs' primary claims for relief" relate to their allegations that "Apple and AT&T failed to disclose that AT&T would be *obligated* by contract to provide picture messaging services to iPhone users," "Apple and AT&T failed to inform that AT&T would actually *charge* iPhone users purchasing a messaging plan for video and picture messaging services, despite the fact that they would not receive MMS services," and Apple "fail[ed] to inform its 3GS customers that its exclusive partner AT&T would be obligated to provide picture and video messaging and would charge for it, despite the fact that MMS would not be available on 3GS." (*See* Plaintiffs' Joint Opp'n to Apple's Motions to Dismiss, Dkt. No. 204 at 9 (italics in original))

- "Plaintiffs and the class may recover for . . . Apple's failure to disclose to iPhone purchasers — who are also captive AT&T customers — that AT&T was contractually obligated to provide MMS to them and would not do so; and . . . Apple's failure to disclose to iPhone purchasers . . . that AT&T would charge iPhone users for MMS but would not provide it." (*See id.* at 8)

- "AT&T's promises and obligations concerning its general data plans are directly applicable to all iPhone customers.  Apple is directly responsible for putting its customers in that position.  Thus, Apple bears a responsibility to inform its customers that AT&T was going to violate its own contract with iPhone purchasers and would charge iPhone purchasers for MMS services they would not be receiving." (*See id.* at 24)

- "Included in the price of [ATTM's service] plan was MMS service.  But defendants did not provide MMS service, did not tell consumers that they would not receive

4

>MMS service, and did not tell consumers that they nonetheless would be paying for a service that would not be made available to them on their iPhone." (*See id.* at 2)

In fact, plaintiffs have advanced this interpretation of their case since the inception of the MDL. For example, in urging the Court to permit discovery before Apple and ATTM responded to the underlying Actions, plaintiffs alleged:

- "Apple's characterization of Plaintiffs' claims . . . is wrong . . . . Apple incorrectly states, 'Plaintiffs' claims are *based entirely on what defendants represented* regarding the availability of MMS. . . .' To the contrary, Plaintiffs' claims are also based on a legal theory that . . . Apple had a duty to disclose (and materially omitted) the fact that . . . customers purchasing a text messaging package *would be charged* for MMS by virtue of their contracts with AT&T. Apple also failed to disclose the material fact that AT&T . . . was obligated to provide MMS services to consumers purchasing text messaging packages." (*See* Plaintiffs' Reply Memorandum Regarding Discovery, Dkt. No. 40 at 6-7 (italics in original))

- "*Breach of Contract*: AT&T was contractually obligated to provide MMS. However, AT&T did not provide MMS. Therefore, Plaintiffs and putative Class Members were charged for that service, despite never receiving it during the class period. Apple shares liability for damages because, by virtue of Apple's exclusive bargain with AT&T, Plaintiffs and Class Members could not receive services . . . from other providers." (*See* Plaintiffs' Memorandum Regarding Discovery, Dkt. No. 33 at 3 (italics in original))

- "Because AT&T's service agreement expressly included the obligation of AT&T to provide MMS, both AT&T and Apple had a duty to adequately disclose that MMS would *not* be provided to iPhone users." (*See id.*)

Plaintiffs repeatedly have relied on allegations that are inextricably intertwined with ATTM and its WSA as a way to assert claims against Apple.

In November 2011, plaintiffs simultaneously dropped ATTM as a defendant and opposed Apple's motion to compel arbitration. (Dkt. Nos. 262, 264) In their opposition brief, plaintiffs for the first time assert that Apple's alleged conduct is "separate [from claims against ATTM], divisible, and independently actionable," and that their "theories" of liability against Apple do not allege "any obligation . . . imposed . . . by [the WSA]." (Plaintiffs' Opposition to Apple's Motion to Compel Arbitration, Dkt. No. 264 at 2) These assertions are flatly contradicted by the allegations in the underlying complaints (*see, e.g., Carbine* FAC ¶¶ 51, 53-59, 76, 93, 97) and by numerous representations plaintiffs have made to the Court (*see* Apple's Motion to Compel Arbitration, Dkt. No. 235 at 3-6). They are also contradicted by the three "theories" of liability plaintiffs set forth in their opposition brief to Apple's motion to compel arbitration.

5

Plaintiffs' three theories depend entirely on an interpretation of the terms of the WSA and on adjudication of ATTM's obligations under the WSA and ATTM's obligations to plaintiffs. Plaintiffs' theory that "Apple failed to disclose that AT&T's data plan required MMS but that service would not be provided to Plaintiffs" (Dkt. No. 264 at 4) necessarily requires determination of whether "AT&T's service agreement expressly included the obligation of AT&T to provide MMS" and whether ATTM breached *its* duties and obligations to plaintiffs under the WSA. (*See* Dkt. No. 40 at 3)  Unless ATTM breached its contract, this theory fails.

Plaintiffs' alternative theory is that Apple is liable for failing to disclose that ATTM was allegedly billing customers for MMS services that they were not receiving. (Dkt. No. 264 at 4) The predicate for that theory is, of course, a determination that ATTM improperly billed its customers.  If it did not do so, then there was no failure to disclose by Apple.  Apple's supposed liability is thus once again entirely derivative of plaintiffs' claims against an absent party, ATTM.

Plaintiffs' final theory — that "Apple made affirmative misrepresentations to plaintiffs regarding MMS availability on the iPhone 3G and 3GS" — similarly depends on plaintiffs' allegations regarding ATTM. (Dkt. No. 264 at 2)  As plaintiffs concede, Apple never represented that the iPhone 3G had MMS capability, and Apple's representations regarding the iPhone 3GS expressly disclosed when MMS would be available.[3]  Plaintiffs' response is to argue that their "claims against Apple . . . have very little to do with Apple's advertising." (*See* Dkt. No. 204 at 8-9)  Rather, plaintiffs have argued that their "primary claims for relief" related to ATTM's supposed obligation to provide MMS under the WSA and its alleged billing for MMS. (*See id.* at 9)

---

[3] *See* Dkt. No. 235 at 1; *see also* Dkt. No. 132 at 5-9; Dkt. No. 204 at 4 (plaintiffs note that Apple's first representation regarding MMS was made in connection with the iPhone 3GS launch); *id.* at 8-9 (plaintiffs note that advertising claims relate to the summer 2009 time frame).

### III. LEGAL STANDARD

Rule 12(b)(7) of the Federal Rules of Civil Procedure authorizes the dismissal of an action for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). "Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue." *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003) (citing Fed. R. Civ. P. 19(a)); *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986). "It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." *Wingate*, 327 F.3d at 438.

"Rule 12(b)(7) analysis entails two inquiries under Rule 19." *Wingate*, 327 F.3d at 439; *see Pulitzer-Polster*, 784 F.2d at 1309. "The court must first determine under Rule 19(a) whether a person should be joined to the lawsuit. If joinder is warranted, then the person will be brought into the lawsuit." *Wingate*, 327 F.3d at 439. "But if such joinder would destroy the court's jurisdiction, then the court must determine under Rule 19(b) whether to press forward without the person or to dismiss the litigation." *Id.*

Pursuant to Rule 19(a), a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined if: "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed. R. Civ. P. 19(a); *see also Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 107 (1968); *Pulitzer-Polster*, 784 F.2d at 1309-10; *Gulf Catering Co. for Gen. Trading & Contracting WLL v. Kellogg Brown & Root Servs.*, No. H-09-cv-2990, 2010 U.S. Dist. LEXIS 5883, at *9 (S.D. Tex. Jan. 26, 2010); *Siemens Bldg. Techs., Inc. v. Jefferson Parish*, No. 03-2272 Section "K" (3), 2004 U.S. Dist. LEXIS 16153, at *13 (E.D. La. Aug. 16, 2004).

"Whenever feasible, the persons materially interested in the subject of an action . . . should be joined as parties so that they may be heard and a complete disposition made." Fed. R. Civ. P. 19, advisory committee note of 1966. "When this comprehensive joinder cannot be accomplished . . . the case should be examined pragmatically and a choice made between the alternatives of proceeding with the action in the absence of particular interested persons, and dismissing the action." *Id.*; *Tick v. Cohen*, 787 F.2d 1490, 1493 (11th Cir. 1986); *see Whalen v. Carter*, 954 F.2d 1087, 1096 (5th Cir. 1992) ("Pragmatic and equitable considerations control the Rule 19(b) analysis."); *Pulitzer-Polster*, 784 F.2d at 1309 ("The 1966 amendments to Rule 19 militate in favor of a highly practical, fact-based decision.").

The Court must dismiss an action in the absence of a party that cannot be joined if "in equity and good conscience" the Court cannot proceed without that party. *Provident Tradesmen's Bank*, 390 U.S. at 108; *Whalen*, 954 F.2d at 1096. Factors to consider under Rule 19(b) include: "(1) prejudice to an absent party or others in the lawsuit from a judgment; (2) whether the shaping of relief can lessen prejudice to absent parties; (3) whether adequate relief can be given without participation of the party; and (4) whether the plaintiff has another effective forum if the suit is dismissed." *Wingate*, 327 F.3d at 439; *Gulf Catering*, 2010 U.S. Dist. LEXIS 5883, at *15-16.

"In ruling on a motion to dismiss for failure to join a necessary and indispensable party, a court must accept the complaint allegations as true." *Gulf Catering*, 2010 U.S. Dist. LEXIS 5883, at *10 (quotations and citation omitted). "[T]he burden of proof remains on the moving defendant to demonstrate that an absent party is indispensable and that the action should be dismissed." *Id.* at *10-11 (quotations and citation omitted). However, "when an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." *Pulitzer-Polster*, 784 F.2d at 1309. Whether a party is a necessary or indispensable party under Rule 19 is governed by federal law. *Whalen*, 954 F.2d at 1097 n.8.

8

IV.   ARGUMENT

    A.   **ATTM Is a Required Party to This Litigation Because Plaintiffs' Claims Are Predicated on ATTM's WSA and ATTM's Conduct**

As set forth above, plaintiffs' claims against Apple are based on ATTM's WSA, ATTM's supposed breach of the WSA, and ATTM's supposed misconduct, including allegedly billing plaintiffs for MMS services they did not receive. Resolution of plaintiffs' claims thus requires interpretation of the WSA and adjudication of the propriety or impropriety of ATTM's conduct. This is clear from the face of the underlying complaints themselves, as well as the manner in which plaintiffs have urged this Court to interpret those complaints.

Most recently, in a procedural gambit to avoid arbitration, plaintiffs have argued that their claims are based upon three theories that supposedly do not implicate ATTM or the WSA. (Dkt. No. 264 at 2) As set forth above, plaintiffs are wrong. Nothing of substance has changed. Plaintiffs' theories of liability against Apple, even as recently recast in opposition to Apple's arbitration motion, are clearly predicated on the WSA and on ATTM's alleged conduct.

Litigating these theories will require this Court to determine what services ATTM allegedly promised to provide, which services plaintiffs were required to pay for, whether the terms of the WSA were lawful, and whether ATTM allegedly breached the terms of the agreement. The Court will also need to make determinations about ATTM's billing practices. Resolving these issues can only be accomplished by interpreting the terms of the WSA and determining the propriety of ATTM's alleged conduct. Plaintiffs cannot seriously suggest that such determinations can be made in ATTM's absence.

ATTM is a necessary party to claims implicating the WSA. Rule 19(a) requires the joinder of a party who has an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect its interest. Fed. R. Civ. P. 19(a)(B)-(B)(i); *Provident Tradesmen's Bank*, 390 U.S. at 107. Plainly, ATTM has an interest relating to the subject matter of this

litigation.  Plaintiffs' theories of liability against Apple directly challenge ATTM's alleged conduct under the WSA.

When the resolution of an action will necessarily require interpretation of a contract, the parties to that contract are required parties under Rule 19.  *See Sch. Dist. v. Sec'y of the U.S. Dep't of Educ.*, 584 F.3d 253, 303 (6th Cir. 2009) ("It is hornbook law that all parties to a contract are necessary in an action challenging its validity or interpretation."); *Gulf Catering*, 2010 U.S. Dist. LEXIS 5883, at *15-16; *Siemens Bldg. Techs.*, 2004 U.S. Dist. LEXIS 16153, at *15 ("Federal courts consistently hold that a party to an agreement in dispute is an indispensable party under F[ed.] Rule Civ. P. 19(a) in a suit seeking to rescind, annul, or interpret that agreement.").  It is equally evident — indeed, it should go without saying — that claims that ATTM allegedly breached its contract or allegedly engaged in improper billing practices cannot be adjudicated without ATTM.

In similar circumstances, Judge Ware held in the iPhone 3G MDL that ATTM is a necessary party within the meaning of Rule 19(a) to claims implicating ATTM's network.  There, the plaintiffs attempted to excise ATTM from the case by dropping ATTM as a defendant and deleting all references to ATTM and its network from the complaint.  *iPhone 3G MDL*, 2011 U.S. Dist. LEXIS 138532, at *13.  Judge Ware nonetheless ruled that the plaintiffs' "cosmetic modifications" did not "alter[] the gravamen of their allegations" regarding iPhone 3G functionality on ATTM's network.  *Id.*  Judge Ware therefore concluded that ATTM was a necessary party that had to be joined before the action could proceed.  *Id.*

The same result is even more clearly mandated in the present case.  Plaintiffs here have not excised and cannot excise references to ATTM from the complaints.  Rather, plaintiffs' allegations directly place in issue their WSA with ATTM and directly attack ATTM's alleged conduct under the WSA and otherwise.  Plaintiffs cannot seriously dispute that ATTM is a necessary party under Rule 19(a).

### B. This Case Must "in Equity and Good Conscience" Be Dismissed in ATTM's Absence

#### 1. ATTM Will Be Prejudiced if This Case Proceeds in Its Absence

ATTM and its WSA are at the core of this dispute, and therefore this case cannot "in equity and good conscience" continue in ATTM's absence. *See Provident Tradesmen's Bank*, 390 U.S. at 108. Plaintiffs allege that ATTM breached the WSA, improperly charged plaintiffs for MMS services, and otherwise engaged in purported misconduct. It would be utterly unfair to permit plaintiffs to pursue such claims without ATTM. It would be similarly unfair to require Apple to defend ATTM's interpretation of the WSA or ATTM's conduct under the WSA without ATTM.

In their own words, "[p]laintiffs' primary claims for relief" relate to "Apple['s] and AT&T['s] fail[ure] to disclose that AT&T would be *obligated* by contract to provide picture messaging services to iPhone users"; "Apple['s] and AT&T['s] fail[ure] to inform that AT&T would actually *charge* iPhone users purchasing a messaging plan for video and picture messaging services, despite the fact that they would not receive MMS services"; and Apple's "failure to inform its 3GS customers that its exclusive partner AT&T would be obligated to provide picture and video messaging and would charge for it, despite the fact that MMS would not be available on 3GS." (*See* Dkt. No. 204 at 9 (italics in original))[4]

It is hard to imagine a scenario more clearly demonstrating ATTM's indispensability. Every equitable consideration under Rule 19(b) weighs in favor of dismissal. Most importantly, the Court must consider the prejudice that would result from a judgment rendered in ATTM's

---

[4] Similarly, plaintiffs have argued that Apple's purported liability for its alleged failure to disclose that ATTM was billing for MMS services arises from ATTM's "contractual[] obligat[ion]" to provide MMS, its alleged breach of that obligation, and its resulting improper billing practices. (*See* Dkt. No. 40 at 3; *see also* Dkt. No. 33 at 3 (same)) Plaintiffs have also made it clear that whether ATTM's billing practices were permissible under the terms of the WSA must be decided in order to determine whether Apple did anything wrong by (as plaintiffs allege) failing to disclose that customers would be charged for MMS by virtue of their contracts with ATTM. (*See* Dkt. No. 40 at 6 ("Apple had a duty to disclose (and materially omitted) the fact that . . . customers purchasing a text messaging package *would be charged for MMS by virtue of their contracts with AT&T*"))

absence. *See* Fed. R. Civ. P. 19(b). "While [Rule 19(b)(1)] appears to encompass the same analysis as was conducted under Rule 19(a), the difference is one of degrees. While the Rule 19(a) analysis focuses on a basic possibility of harm, Rule 19(b)(1) is concerned with whether that harm will actually occur." *Stanley Elec. Co. v. Crawford Equip. & Eng'g Co.*, 249 F.R.D. 267, 276 (S.D. Ohio 2008) (finding that the harm would "almost certainly occur" when "[p]laintiff's entire theory of contract liability hinges on the interpretation" of the absent parties contract; and that "[d]eciding th[o]se issues in [the party's] absence w[ould] completely deny [the party] the opportunity to protect its claimed interests, inevitably resulting in prejudice to [the party]").

Interpreting an agreement in a contracting party's absence is uniformly held to be the type of prejudice that warrants dismissal. *See, e.g.*, *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir. 1984) (affirming that party was indispensable when it possessed rights arising from the contracts at issue which were "inextricably intertwined with issues bound to be raised in an action solely against" the named defendant); *F&M Distribs., Inc. v. Am. Hardware Supply Co.*, 129 F.R.D. 494, 498-99 (W.D. Pa. 1990) (holding that dismissal was necessary when the plaintiff sued based upon an absent party's alleged breach of contract, and the named defendant was not a party to the contract); *Gellman v. Paul*, 85 F.R.D. 357, 358 (S.D.N.Y. 1980) (holding that an absent party was indispensable when "[a]ny disposition of plaintiff's claims against the two defendants already joined w[ould] necessarily involve an interpretation of two contracts to which [the absent party] [was] a party"); *Shell Oil Co. v. Aetna Cas. & Sur. Co.*, 158 F.R.D. 395, 401 (N.D. Ill. 1994) (dismissing a complaint because "[t]he absent [parties], then, will have lost the opportunity to present their arguments regarding the interpretation of their policies at the time when they would be most forceful, i.e., when the interpretation of the contract terms was first litigated"). Similarly, this Court cannot "in equity and good conscience" determine whether ATTM breached the WSA, improperly billed plaintiffs for MMS services, or engaged in other conduct alleged in the complaints in ATTM's absence.

12

ATTM is also potentially prejudiced because any decisions this Court makes regarding the terms of the WSA or ATTM's alleged conduct may influence future arbitration proceedings. ATTM may have to arbitrate claims with individual plaintiffs based on the same facts underlying this case; notably, plaintiffs dismissed ATTM *without prejudice*, and nothing precludes plaintiffs or the purported class members from pursuing the present claims in arbitration. That is sufficient prejudice to warrant dismissal. *Pulitzer-Polster*, 784 F.2d at 1310 ("[T]he establishment of a negative precedent can provide the requisite prejudice to the absentee."); *Shell Oil*, 158 F.R.D. at 401 ("[A] state court may be inclined, albeit not required, to adopt an interpretation similar to that which this court decides is correct. The absent [parties], then, will have lost the opportunity to present their arguments regarding the interpretation of their policies at the time when they would be most forceful, i.e., when the interpretation of the contract terms was first litigated."); *see Provident Tradesmen's Bank*, 390 U.S. at 110 (concluding that court's decision may still impair the rights of an absent party, even if it is not binding on that party).

Here, the prejudice to ATTM cannot be lessened through limitations on relief. *See* Fed. R. Civ. P. 19(b)(2)(B). The prejudice in this case flows from the inevitable interpretation of ATTM's contract and determination of the propriety of ATTM's alleged conduct. Once those determinations have been made in ATTM's absence, the damage will have been done. This litigation cannot proceed without ATTM.

Moreover, plaintiffs will have an adequate remedy if this case is dismissed. *See* Fed. R. Civ. P. 19(b)(4). Plaintiffs can pursue their claims against ATTM as well as against Apple through arbitration; indeed, both Apple and ATTM have moved to compel arbitration. Plaintiffs concede that the WSA at issue here, including its arbitration clause, is essentially the same agreement that the United States Supreme Court considered in *Concepcion*. *Concepcion* concluded that plaintiffs could be made whole in arbitration and noted the district court's conclusion that plaintiffs were in fact better off in arbitration then they would have been in class litigation. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1753 (2011).

In sum, this case cannot "in equity and good conscience" proceed without ATTM.

13

### 2. If ATTM Is Not Joined, the Case Should Be Dismissed

Plaintiffs voluntarily dismissed ATTM in an effort to avoid arbitration of their claims against both ATTM and Apple. Because this case cannot proceed without ATTM, that tactic must not succeed, and the case should be dismissed. In analogous circumstances, courts have concluded that "equity and good conscience" require dismissal when parties "attempt to manipulate jurisdiction by dropping [parties] with a substantial interest in the claim solely for the purpose of retaining jurisdiction in the federal court." *Envirotech*, 729 F.2d at 76 (quoting *Acton Co. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 81 (1st Cir. 1982)); *Global Discount Travel Servs., LLC v. TWA*, 960 F. Supp. 701, 710 (S.D.N.Y. 1997) ("Equity and good conscience would seem to require that under circumstances such as those presented here, parties should present their claims in a state court rather than attempt to manipulate jurisdiction by dropping plaintiffs with a substantial interest in the claim solely for the purpose of retaining jurisdiction in the federal forum.") (quoting *Envirotech*).

Alternatively, should the Court find that dismissal is not required in this case because ATTM could be joined, the Court may choose, as Judge Ware did, to dismiss without prejudice to permit plaintiffs to join ATTM pursuant to Rule 19. *iPhone 3G MDL*, 2011 U.S. Dist. LEXIS 138532, at *16-17 (dismissing plaintiffs' complaints with leave to amend to join ATTM); *and see Gulf Catering*, 2010 U.S. Dist. LEXIS 5883, at *16 (compelling joinder of a required party when it would not divest the court of subject-matter jurisdiction). The Court can then adjudicate ATTM's and Apple's motions to compel arbitration.

### CONCLUSION

For the foregoing reasons, the Court should dismiss this action because ATTM is an indispensable party under Rule 19.

14

Respectfully submitted,


     */s/ Quentin F. Urquhart*
QUENTIN F. URQUHART, JR. (#14475)
DAVID W. O'QUINN (#18366)
DOUGLAS J. MOORE (#27706)
IRWIN FRITCHIE URQUHART & MOORE, LLC
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone:  (504) 310-2100
Facsimile:  (504) 310-2101

PENELOPE A. PREOVOLOS (*admitted pro hac vice*)
STUART C. PLUNKETT (*admitted pro hac vice*)
SUZANNA P. BRICKMAN (*admitted pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone:  (415) 268-7000
Facsimile:   (415) 268-7522

*Counsel for Apple Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been electronically filed on December 12, 2011, with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

_____/s/ Quentin F. Urquhart_____