## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: APPLE iPHONE 3G AND 3GS "MMS" MARKETING AND SALES PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CASES | CIVIL ACTION<br><br>MDL No. 2116<br><br>SECTION "J"<br>JUDGE BARBIER<br><br>MAGISTRATE JUDGE WILKINSON |

**REPLY IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(7)**

**TABLE OF CONTENTS**

                                                            **Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 1

    A.    Plaintiffs' Claims Are Predicated on the WSA and ATTM's Alleged Conduct Under the WSA.................................................................. 1

    B.    Because Plaintiffs' Claims Against Apple Are Predicated on the WSA and ATTM's Conduct, ATTM is a Required Party Under Rule 19 ................................................................................................................. 3

    C.    This Case Cannot Proceed in ATTM's Absence ...................................... 5

    D.    Plaintiffs' Analysis of Other Cases Involving Apple and ATTM Is Flawed ........................................................................................................... 7

    E.    Plaintiffs Cannot Avoid a Rule 19 Analysis By Relying on Rule 14 ..................... 9

III. CONCLUSION ............................................................................................................. 10

I. INTRODUCTION

Plaintiffs ignore the express allegations of their own complaints as well as direct representations they have repeatedly made to this Court in a transparent attempt to avoid *Concepcion*'s requirement that their claims be arbitrated. This tactic cannot succeed. Plaintiffs' claims place squarely at issue the meaning of ATTM's Wireless Services Agreement ("WSA") and ATTM's obligations thereunder. Plaintiffs' argument that ATTM is not an indispensable party to those claims is specious.

Plaintiffs have claimed, and continue to claim in their opposition, that the WSA allegedly required ATTM to provide plaintiffs with MMS but that ATTM did not do so. Plaintiffs also claim that ATTM billed plaintiffs for MMS services but did not provide them. Plaintiffs argue that their claims are against *Apple* because Apple "failed to disclose" that ATTM allegedly did not provide MMS services promised in ATTM's WSA and that ATTM allegedly billed plaintiffs for MMS services they did not receive. But those claims require that this Court or a jury *first* find that ATTM violated the terms of the WSA or engaged in improper billing practices. Plaintiffs' claims thus cannot be adjudicated without ATTM, and plaintiffs' effort to end run *Concepcion* must be rejected.

Plaintiffs seek to avoid this obvious result by arguing that the Court should not reach the indispensable party issue because Apple could implead ATTM. But that argument would deprive Rule 12(b)(7) of all meaning and is wrong as a matter of law. Rule 12(b)(7) and Rule 19 preclude plaintiffs from adjudicating its claims against Apple without ATTM. Apple's motion should be granted.

II. ARGUMENT

    A. **Plaintiffs' Claims Are Predicated on the WSA and ATTM's Alleged Conduct Under the WSA**

Plaintiffs' claims are based on the WSA and ATTM's alleged obligations under the WSA. Plaintiffs accuse Apple of trying to "confuse the Court as to the true nature of Plaintiffs' claims against it," but the contrary is true. Apple relies solely on plaintiffs' <u>own</u> allegations and

1

statements to the Court to demonstrate that their claims against Apple are predicated on the WSA and ATTM's alleged conduct.

The underlying complaints, which plaintiffs do not even acknowledge in their opposition, expressly allege that although MMS was a "standard feature" in the WSA (*Carbine* FAC ¶¶ 3, 7, 31, 57), ATTM failed to provide the service. (*Carbine* FAC ¶¶ 4-7)  Similarly, plaintiffs allege that ATTM wrongfully billed iPhone 3G and iPhone 3GS users for MMS services that they did not receive. (*Carbine* FAC ¶¶ 10, 55, 56, 58)  Plaintiffs' allegations regarding Apple's supposed "failure to disclose" squarely depend on these allegations regarding ATTM and the WSA. Moreover, plaintiffs have made numerous statements to the Court making clear that, contrary to their current argument, their claims rely on the WSA and ATTM's conduct under the WSA. (Mot. at 4-5)

Rather than confront the complaints' allegations and other statements to the Court about the basis of their claims against Apple, plaintiffs rely instead on an inaccurate and misleading description of how their three theories against Apple — first set forth in a November 2011 filing (Dkt. Nos. 262, 264) — have nothing to do with the WSA or ATTM.  Notwithstanding plaintiffs' protestations to the contrary, their three theories depend entirely on an interpretation of the terms of the WSA and on adjudication of ATTM's obligations under the WSA.  (Mot. at 5-6)

Plaintiffs respond by setting forth lists of the supposed elements they need to prove their theories and argue that the elements are either "undisputed" or concern only Apple.  (Opp'n at 5-6)  Missing from plaintiffs' lists, however, is the very crux of what plaintiffs must prove — that ATTM breached a contractual duty owed to customers under the WSA or that ATTM engaged in improper billing practices.  To find that Apple "failed to disclose" that ATTM allegedly did not provide MMS services promised in ATTM's WSA or that ATTM engaged in improper billing practices, the Court or a jury must first make findings regarding the WSA and ATTM's conduct.

Plaintiffs attempt to evade the importance of ATTM and the WSA to their theory of liability against Apple by arguing that certain "elements" of their theories are "undisputed." Plaintiffs' argument is incorrect.  The proper construction of ATTM's WSA and ATTM's billing

2

practices requires ATTM's participation.  Undoubtedly ATTM would dispute that it breached its contractual obligations or engaged in improper billing.  Plaintiffs' belief that they could overcome such arguments with supposedly "undisputed" facts is irrelevant.

In sum, plaintiffs' complaints and numerous representations to the Court leave no room for dispute that plaintiffs' claims are predicated on the WSA and ATTM's alleged conduct.

### B. Because Plaintiffs' Claims Against Apple Are Predicated on the WSA and ATTM's Conduct, ATTM is a Required Party Under Rule 19

Plaintiffs' opposition relies on their incorrect assertion that the allegations regarding the WSA and ATTM are mere background and thus need not be resolved if the case proceeds against Apple.  As demonstrated above, plaintiffs are wrong.  Plaintiffs' assertion that ATTM is not a required party (Opp'n at 8-13) thus necessarily fails.

Importantly, plaintiffs concede that parties to a contract are necessary litigants under Rule 19 where claims require interpretation of the rights and obligations imposed by that contract. (Opp'n at 8; *see also* Mot. at 12 (citing cases))  That is precisely the circumstance here, because each of plaintiffs' three theories hinges on interpretation of a contract (the WSA), the terms of that contract, and on adjudication of ATTM's alleged obligations to plaintiffs under that contract.  Accordingly, plaintiffs' reliance on *U.S. Marine, Inc. v. United States*, No. 08-2572, 2008 WL 4443054 (Sept. 26, 2008), where — unlike the WSA here — the contract at issue was merely "discussed" and was thus entirely contextual, is misplaced.[1]  Indeed, none of the cases plaintiffs rely on supports their assertion that ATTM is not necessary to this litigation.[2]

---

[1]  In that case, plaintiff alleged that the defendant (the Department of Defense) misappropriated trade secrets.  The defendant argued that VT Halter, an absent party with which the *defendant* had contracted, was necessary under Rule 19.  *U.S. Marine*, 2008 WL 4443054, at *1.  The Court disagreed, finding that reference to the contract was merely contextual — it established only how the Department of Defense learned of the alleged trade secrets but did not present any issue that had to be decided.  *Id.* at *2, 3 (although "it [was] clear to the Court that . . . the Halter-DOD contract [would] be discussed . . ., it [was] not the basis of [the plaintiff's trade secrets] cause of action").  Moreover, the Court specifically noted that the plaintiff was not a party to the contract and was not in privity with the purportedly necessary party.  *Id.*  Here, it is *plaintiffs*, not Apple, who are in contract with the absent party.  And that contract is at the core of plaintiffs' theories of liability.  (*See* Dkt. No. 204 at 9 (plaintiffs' "primary claims for relief" relate to whether "AT&T [was] *obligated* by contract to provide [MMS]," "AT&T . . . charg[ing] iPhone users purchasing a messaging plan [that is part of the WSA] for [MMS]," and Apple's "failure to

3

The law is clear: when the resolution of an action will necessarily require interpretation of a contract, the parties to that contract are required parties under Rule 19. (Mot. at 10 (citing *Sch. Dist. v. Sec'y of the U.S. Dep't of Educ.*, 584 F.3d 253, 303 (6th Cir. 2009); *Gulf Catering Co. v. Kellogg Brown & Root Servs., Inc.*, No. H-09-cv-2990, 2010 U.S. Dist. LEXIS 5883, at *15-16 (S.D. Tex. Jan. 26, 2010); *Siemens Bldg. Techs., Inc. v. Jefferson Parish*, No. 03-2272, 2004 U.S. Dist. LEXIS 16153, at *15 (E.D. La. Aug. 16, 2004))) Plaintiffs' claims against Apple fall squarely within this rule as ATTM and plaintiffs are the parties to the contract at issue.

Plaintiffs also attempt to argue that ATTM has no interest relating to the subject matter of this litigation. (Opp'n at 10-12) But the arguments plaintiffs advance are inconsistent with the underlying purpose of Rule 19(a). Plaintiffs make the nonsensical argument that "Apple does not have a right to claim an interest on behalf of AT&T." (Opp'n at 11) The purpose of Rule 19(a), however, is to require joinder of an *absent* party — like ATTM — that cannot, as a practical matter, protect its interest in the subject of the action. Fed. R. Civ. P. 19(a)(B)-(B)(i). If a party to a litigation could not "claim an interest" on behalf of the absent party to make a Rule 19 argument, Rule 19 would serve no purpose. It is no surprise, then, that plaintiffs' cases are inapposite.[3] Plaintiffs' then make the irrelevant argument that ATTM can intervene in this

---

inform its 3GS customers that its exclusive partner AT&T would be obligated to provide [MMS] and would charge for it"); *see also* Mot. at 3-5, 11 (quoting plaintiffs' earlier allegations and descriptions of their case))

[2] For example, in *Jonesfilm v. Lion Gate Int'l*, there was no question that the absent party breached its contractual obligations regarding a trademarked movie title, because the absent party *conceded* as much in a declaration. 299 F.3d 134, 142 (2d Cir. 2009). Thus, a decision about whether the defendant, to whom the alleged necessary party transferred its trademark rights, committed trademark infringement would not resolve any disputed issues with respect to the absent party's interests. *Id.* Here, by contrast, ATTM vehemently denies that it failed to meet its contractual obligations relating to MMS. (*See, e.g.*, Dkt. No. 148-1 at 2, 25-27). The other cases on which plaintiffs rely are similarly inapposite. *See Gibbs Wire & Steel Co. v. Johnson*, 255 F.R.D. 326, 330 (D. Con. 2009) (recognizing that "most of the time" "it is true that parties to a contract are . . . necessary under Rule 19(a)"; however, company's by-laws did not create a contract with absent shareholders, and they were, in any case, not necessary parties to a shareholder's claims against the company); *Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.*, 844 F. Supp. 1271 (N.D. Ill. 1994) (absent debtor was not necessary party to creditor's claims against loan guarantor, since creditor alleged that loan guarantor was party to its contract with debtor and that contract did not require creditor to pursue remedy against debtor first).

[3] The cases plaintiffs do cite do not help them. *See Pultizer-Polster v. Pulitzer*, 784 F.2d 1305 (5th Cir. 1986) (the *defendant* claimed, and the Court agreed, that the plaintiff's sister and

4

action to protect its interest.  (Opp'n at 12)  ATTM's ability to intervene under Rule 24 has no bearing on whether ATTM is a necessary party under Rule 19.[4]  The two cases plaintiffs cite do not hold or suggest otherwise.[5]

In sum, resolution of plaintiffs' claims requires interpretation of the WSA and adjudication of the propriety of ATTM's conduct, making ATTM a necessary party.

### C. This Case Cannot Proceed in ATTM's Absence

Plaintiffs argue that even if ATTM is deemed a required party, this case can nonetheless proceed without ATTM.  (Opp'n at 13-16)  Plaintiffs turn a blind eye to the prejudice ATTM would suffer if this case were litigated in its absence.  *See* Fed. R. Civ. P. 19(b).  Plaintiffs' principal argument is that ATTM will not be prejudiced because "a decision can be made as to Apple's liability without the need for a finding of liability on the part of AT&T." (Opp'n at 14)  This argument is meritless.  Plaintiffs' theories against Apple hinge on interpretation of the terms

---

mother, who were named plaintiffs in substantially similar state court lawsuit, were necessary and indispensable parties under Rule 19); *Johnson v. Smithsonian Institution*, 189 F.3d 180 (2d Cir. 1999) (reversing district court's holding that absent party was necessary on the grounds that the district court used improper criteria — that the Court would need evidence from the absent parties to decide the case — in its Rule 19 analysis); *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030 (9th Cir. 1983) (noting that the allegedly absent party – the United States – was not a party to the contract at issue in the case, and that the dispute was thus private and the government's interest was neutral or, at best, hypothetical); *Powers v. City of Seattle*, 242 F.R.D. 566 (W.D. Wash. 2007) (an interest by the absent party was not enough for Rule 19 to apply, since the absent party would not suffer prejudice without being joined).

[4]  To the contrary, Rule 24 is a counterpart to Rule 19.  *See* Fed. R. Civ. P. 24 Advisory Committee's Note (1966) ("Intervention of right is here seen to be a kind of counterpart to Rule 19(a)(2)(i) on joinder of persons needed for a just adjudication: where, upon motion of a party in an action, an absentee should be joined so that he may protect his interest which as a practical matter may be substantially impaired by the disposition of the action, he ought to have a right to intervene in the action on his own motion.").

[5]  Plaintiffs' citation to *In re Chinese Manufactured Drywall Products Liability Litigation*, 273 F.R.D. 380 (E.D. La. 2011), is misplaced.  In that case, the Court rejected defendants' Rule 19 arguments not because the absent party — co-insured subcontractors — did not intervene in the action (although they could have), but, among other reasons, because of directly relevant authority holding that an absent insured with an interest in a limited insurance fund is not a required party, and similarly on point law rejecting the premise that an absent insured is a required party where a co-insured seeks recovery of a shared insurance fund.  273 F.R.D. at 386-87.  Likewise, in *Abbott v. BP Exploration & Production, Inc.*, 781 F. Supp. 2d 453 (S.D. Tex. 2011), although the court noted that the absent party (the Department of the Interior) had a right under the Outer Continental Shelf Lands Act to intervene, it was not a required party for entirely independent reasons — among others, because its absence did not preclude complete relief and its interests were not impaired by the litigation.  781 F. Supp. 2d at 468-69.

of the WSA, including whether ATTM was required to provide MMS before it was available, and on adjudication of ATTM's alleged obligations to plaintiffs under the WSA, including whether ATTM engaged in improper billing practices.

Courts uniformly hold that interpreting an agreement in a contracting party's absence is the type of prejudice that warrants dismissal.  (Mot. at 12 (citing *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir. 1984); *F&M Distribs., Inc. v. Am. Hardware Supply Co.*, 129 F.R.D. 494, 498-99 (W.D. Pa. 1990); *Gellman v. Paul*, 85 F.R.D. 357, 358 (S.D.N.Y. 1980); *Shell Oil Co. v. Aetna Cas. & Sur. Co.*, 158 F.R.D. 395, 401 (N.D. Ill. 1994))  Plaintiffs offer no response to this authority.  Furthermore, this Court cannot "in equity and good conscience" determine whether ATTM breached the WSA, improperly billed plaintiffs for MMS services, or engaged in other conduct alleged in the complaints in ATTM's absence.[6]

Plaintiffs next argue that "no decision by this Court should influence or even be applicable to future arbitration proceedings, where the issue of AT&T's liability would likely be raised."  (Opp'n at 15)  But this argument is, yet again, based on plaintiffs' erroneous contention that "an interpretation of the WSA and/or a finding of liability on the part of AT&T will **not** be necessary."  (*Id.* (emphasis in original))  As demonstrated above, plaintiffs are wrong.  Thus, as demonstrated in the motion, ATTM is potentially prejudiced because any decisions this Court makes regarding the terms of the WSA or ATTM's alleged conduct may influence future arbitration proceedings.  (Mot. at 13)[7]

Finally, plaintiffs contend that they will not have an adequate remedy if the action is dismissed for nonjoinder.  (Opp'n at 15-16)  This is incorrect.  Plaintiffs can pursue their claims against ATTM and Apple through arbitration.  (Mot. at 13)  Plaintiffs respond that Apple's argument assumes ATTM will be ordered to arbitrate.  This argument is frivolous, because plaintiffs concede that the WSA at issue here, including its arbitration clause, is essentially the

---

[6] Plaintiffs contend that Apple "does not argue that it will be prejudiced by failure to join AT&T." (Opp'n at 14).  This is incorrect.  (*See* Mot. at 11-13)

[7] Furthermore, the prejudice to ATTM cannot be lessened through limitations on relief.  *See* Fed. R. Civ. P. 19(b)(2)(B).  Plaintiffs decline to address this point.  (*See* Opp'n at 15)

same agreement that the United States Supreme Court considered in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1753 (2011). Plaintiffs contend that they will not necessarily receive "adequate redress" in arbitration for Apple's alleged misconduct, because the "arbitration will focus on AT&T's misconduct, not that of Apple." (Opp'n at 16) This contention is also meritless. Plaintiffs' claims against Apple are premised on the WSA and ATTM's alleged conduct — the very issues that would be the subject of any arbitration.

In sum, this case cannot "in equity and good conscience" continue in ATTM's absence. *See Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 108 (1968).

### D. Plaintiffs' Analysis of Other Cases Involving Apple and ATTM Is Flawed

Plaintiffs attempt to distinguish the iPhone 3G MDL on the ground that this action is similar to that case "*only* insofar as they involve the same Defendants and relate to iPhones." (Opp'n at 18 (italics in original)) This argument is without merit. In the iPhone 3G MDL, Judge Ware considered whether plaintiffs could proceed without ATTM after claims against it were dismissed following *Concepcion*. Upon review of the operative MDL complaint, the court determined that it was "based on the core allegation" that the 3G network could not accommodate iPhone 3G users, and that Plaintiffs were "deceived . . . into paying higher rates" for service which could not be delivered on the 3G network." *In re Apple iPhone 3G Prods. Liab. Litig.*, No. C 09-02045 JW, 2011 U.S. Dist. LEXIS 138532, at *9-10 (N.D. Cal Dec. 1, 2011). Accordingly, the court held that ATTM was a necessary party.

Plaintiffs trumpet the fact that, unlike this case, "Apple's liability in [the iPhone 3G MDL] would have required the Court to make a determination as to the technical sufficiency of AT&T's 3G network." (Opp'n at 19) But this is a distinction without a difference. Judge Ware unambiguously held that where Apple's liability hinges on ATTM's actions (in that case, the sufficiency of its 3G network), "cosmetic modifications" — i.e., "simply delet[ing] references to ATTM" — do not "alter[] the gravamen of [the] allegations." 2011 U.S. Dist. LEXIS 138532, at *13. The *same* circumstances are present here. Plaintiffs have done exactly what the iPhone 3G MDL plaintiffs did — they dropped ATTM to avoid arbitration but did not change their factual

7

allegations or legal claims; nor did they even attempt to make "cosmetic modifications" like those addressed in the iPhone 3G MDL. Plaintiffs' cases here remains firmly grounded in the factual allegations regarding ATTM's obligations to provide MMS under the WSA and alleged billing practices. The Court here is thus faced with the same issue that Judge Ware resolved: can plaintiffs proceed against Apple alone on claims that require adjudication of facts in which ATTM has a significant interest? The answer, as Judge Ware has held, is no.

Plaintiffs then cite *Weisblatt v. Apple Inc.*, No. C-10-02553 RMW, 2010 U.S. Dist. LEXIS 113663 (N.D. Cal. Oct. 18, 2010), a case in which the court declined to stay proceedings against ATTM and Apple pending *Concepcion*. *Weisblatt* is inapposite. The allegations in *Weisblatt* were unrelated to the terms of the WSA. The plaintiffs — some of whom had not even signed up for an ATTM WSA — alleged that Apple and ATTM misrepresented the availability of certain data plans. 2010 U.S. Dist. LEXIS 113663, at *3-4, 6-7. Here, by contrast, plaintiffs have expressly argued that their claims are premised on the WSA. *Weisblatt* is thus distinguishable from this case for the same reason Judge Ware distinguished it from the iPhone 3G MDL. *iPhone 3G MDL*, No. C 09-02045 JW, 2010 U.S. Dist. LEXIS 144055, at *9 (Dec. 9, 2010) ("[u]nlike the [*Weisblatt*] case before Judge Whyte," a stay was appropriate as to both ATTM and Apple because claims against Apple were inextricably tied to ATTM).

Furthermore, the *Weisblatt* court was presented with neither of the issues presented here: whether ATTM is an indispensable party and whether equitable estoppel applies, compelling arbitration. Rather, the order plaintiffs cite relates to a motion to stay filed by ATTM (which Apple joined). 2010 U.S. Dist. LEXIS 113663, at *7. The court denied that motion as to Apple and ATTM.[8] Plaintiffs' reliance on *Weisblatt* is baseless.

---

[8] When faced with the same question of a stay in this case, the Court granted a stay as to both Apple and ATTM, finding that this case presents potentially dispositive issues as to both parties. (Dkt. No. 206 at 1-2)

8

E.  **Plaintiffs Cannot Avoid a Rule 19 Analysis By Relying on Rule 14**

Plaintiffs attempt to avoid the indispensable party analysis required by Rule 19. They assert that the "potentially dispositive question that the Court must first address is whether the allegedly indispensable absent party can be impleaded under Rule 14." (Opp'n at 7) This is contrary to the Federal Rules, and is not supported by the case law. Indeed, courts have expressly held that Rule 14 is not to be used as a means to "thwart" Rule 19. *See Pasco Int'l (London), Ltd. v. Stenograph Corp.* 637 F.2d 496, 503 (7th Cir. 1980).

Plaintiffs cite several cases they claim support their invented rule, but in each case the court underwent a thorough Rule 19 analysis before determining whether or not an absent party needed to be joined. In *Boone v. General Motors Acceptance Corp.*, the court concluded that the absent party was not necessary because the plaintiff's claims were unrelated to the conduct of the absent party. 682 F.2d 552, 553-54 (5th Cir. 1982). The court concluded that, "[b]ased on the pragmatic analysis required under Rule 19" dismissal was not proper. *Id.* at 554. Likewise, in *Lacoste Builders, L.L.C. v. Croft Metals, Inc.* the court concluded that "in equity and good conscience" the case should not be dismissed because there was "no support offered for how a judgment without [the absent party] prejudices anyone or how a judgment without [the absent party] is inadequate." No. 01-1860 C/W 01-2312, 2001 U.S. Dist. LEXIS 17235, at *4 (E.D. La Oct. 17, 2001). The court underwent a balancing of all of the factors under Rule 19, and concluded on the equities that dismissal was not necessary. *Id.*[9]

---

[9] Plaintiffs' other cases are similarly inapposite. In *Pasco Int'l* the court held that "a careful application of [the Rule 19] factors compels the conclusion that [the absent party] is not an indispensable party." 637 F.2d at 500. The Plaintiffs quote the *Pasco* court as stating that "the existence of the Rule 14 provisions demonstrates that parties such as [the absent party] who may be impleaded under Rule 14 are not indispensable parties within Rule 19(b)." (Opp'n at 7) This language was taken out of context so as to distort its meaning. In fact, the court went out of its way to note that it "[did] not use Rule 14 to thwart Rule 19" and carefully considered other sources of potential prejudice to the parties. *Pasco Int'l*, 637 F.2d at 500. In *Associated Dry Goods Corp. v. Towers Financial Corp.* the court did not base its decision on Rule 14, and in fact the concurrence notes that the case was distinct from cases interpreting Rule 14. 920 F.2d 1121, 1126 (2d Cir. 1990). More importantly, the court found that the absent party was necessary under Rule 19(a), but in equity and good conscience the absent party was not indispensable under the factors of Rule 19(b). *Id.* at 1124-26.

In sum, not one of the decisions cited by plaintiff supports the position that "there is no need for this Court to even address whether AT&T is a necessary and indispensable party under Rule 19." (Opp'n at 8)

## III. CONCLUSION

Because this case cannot proceed without ATTM, the case should be dismissed. Alternatively, should the Court find that dismissal is not required in this case because ATTM could be joined, the Court may choose, as Judge Ware did in the iPhone 3G MDL, to dismiss without prejudice to permit plaintiffs to join ATTM pursuant to Rule 19.

Respectfully submitted,

/s/ Quentin F. Urquhart
QUENTIN F. URQUHART, JR. (#14475)
DAVID W. O'QUINN (#18366)
DOUGLAS J. MOORE (#27706)
IRWIN FRITCHIE URQUHART & MOORE, LLC
400 Poydras Street, Suite 2700
New Orleans, LA  70130
Telephone:  (504) 310-2100
Facsimile:  (504) 310-2101

PENELOPE A. PREOVOLOS (*admitted pro hac vice*)
STUART C. PLUNKETT (*admitted pro hac vice*)
SUZANNA P. BRICKMAN (*admitted pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone:  (415) 268-7000
Facsimile:   (415) 268-7522

*Counsel for Apple Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been electronically filed on January 10, 2012, with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing.

                                      */s/ Quentin F. Urquhart*