1                   UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF LOUISIANA

3
   ******************************************************************
4
   IN RE:  APPLE iPHONE 3G AND
5  3GS MMS MARKETING AND SALES
   PRACTICES LITIGATION
6
                           MDL NO. 2116
7                          NEW ORLEANS, LOUISIANA
                           THURSDAY, JANUARY 12, 2012, 2:15 P.M.
8
   ******************************************************************
9

10
                 TRANSCRIPT OF ORAL ARGUMENT PROCEEDINGS
11          HEARD BEFORE THE HONORABLE CARL J. BARBIER
                    UNITED STATES DISTRICT JUDGE
12

13

14 APPEARANCES:

15

16 FOR THE PLAINTIFFS:    LAW OFFICES OF SCOTT R. BICKFORD
                          BY:  SCOTT R. BICKFORD, ESQUIRE
17                        338 LAFAYETTE STREET
                          NEW ORLEANS, LA  70130
18

19
                          MORGAN & MORGAN
20                        BY:  J. ANDREW MEYER, ESQUIRE
                          ONE TAMPA CITY CENTER
21                        201 N. FRANKLIN STREET, 7TH FLOOR
                          TAMPA, FL  33602
22

23
                          STRANGE & CARPENTER
24                        BY:  BRIAN R. STRANGE, ESQUIRE
                          12100 WILSHIRE BOULEVARD, 19TH FLOOR
25                        LOS ANGELES, CA 90025

1   APPEARANCES CONTINUED:

2

3   FOR THE DEFENDANT:          IRWIN, FRITCHIE, URQUHART & MOORE
                                BY:  QUENTIN F. URQUHART, JR., ESQUIRE
4                               400 POYDRAS STREET
                                NEW ORLEANS, LA 70130
5

6                               MORRISON FOERSTER
7                               BY:  PENELOPE PREOVOLOS, ESQUIRE
                                425 MARKET STREET
8                               SAN FRANCISCO, CA 94105

9

10  ALSO PRESENT (VIA TELEPHONE):     VIRGINIA ANELLO, ESQUIRE

11

12  OFFICIAL COURT REPORTER:     CATHY PEPPER, CRR, RMR, CCR
                                 500 POYDRAS STREET, ROOM B406
13                               NEW ORLEANS, LA  70130
                                 (504) 589-7779
14
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
15  PRODUCED BY COMPUTER.

16

17

18

19

20

21

22

23

24

25

**P-R-O-C-E-E-D-I-N-G-S**

THURSDAY, JANUARY 12, 2012

A F T E R N O O N   S E S S I O N

(COURT CALLED TO ORDER)

02:14PM    THE DEPUTY CLERK:  All rise.  Court is now in session.

02:14PM    THE COURT:  Good afternoon, everyone.  Please proceed.

02:14PM  All right.  You can call this case, Stephanie.

02:14PM    THE DEPUTY CLERK:  Multidistrict litigation 09-2116,

02:14PM  *In re: Apple iPhone 3G and 3GS MMS Marketing and Sales Practices*

02:15PM  *Litigation*.

02:15PM    THE COURT:  Counsel, if you would make your appearances,

02:15PM  please.

02:15PM    MR. BICKFORD:  Scott Bickford for the Plaintiffs'

02:15PM  Steering Committee.

02:15PM    MR. STRANGE:  Afternoon, Your Honor.  Brian Strange for

02:15PM  the Plaintiffs' Steering Committee.

02:15PM    MR. MEYER:  Andrew Meyer for the Plaintiffs' Steering

02:15PM  Committee.

02:15PM    MR. URQUHART:  Quentin Urquhart on behalf of Apple.

02:15PM    MS. PREOVOLOS:  Your Honor, Penelope Preovolos on behalf

02:15PM  of Apple, Inc.

02:15PM    THE COURT:  Okay.  What we have before the Court this

02:15PM  afternoon are two sets of motions, apparently.  One is Apple's

02:15PM 1   Motion to Compel arbitration, which is Record Document 235, and

02:15PM 2   Apple's Motion to Dismiss under Rule 23(b)7, which is

02:16PM 3   Record Document 268.

02:16PM 4       Do we have someone on the phone, too, who is

02:16PM 5   participating?

02:16PM 6      MR. BICKFORD:  Virginia Anello, who is on the

02:16PM 7   Plaintiff's Steering Committee, is on the phone.

02:16PM 8      THE COURT:  I'm sorry, what's her last name?

02:16PM 9      MR. BICKFORD:  Virginia Anello.

02:16PM 10      THE COURT:  Anello.  Can you hear us, ma'am?

02:16PM 11      MS. ANELLO:  Yes, good afternoon, Your Honor.

02:16PM 12      THE COURT:  For some reason, I can barely hear you.  Is

02:16PM 13   she coming across the speakers?  Try it again.  Can we hear you,

02:16PM 14   Ms. Anello?

02:16PM 15      MS. ANELLO:  Yes.  Good afternoon.

02:16PM 16      THE COURT:  That's better.  Could you hear us when we

02:16PM 17   were just speaking?

02:16PM 18      MS. ANELLO:  Yes, I can hear you.

02:16PM 19      THE COURT:  Okay, great.  I'm going to have to ask

02:16PM 20   everyone who is going to speak here in the courtroom today to

02:16PM 21   make sure you come up to the podium and speak close up to the

02:16PM 22   microphone, because otherwise it won't be picked up by

02:16PM 23   Ms. Pepper's audio recording equipment and it also won't probably

02:17PM 24   be heard by Ms. Anello on the phone.

02:17PM 25       So I'm sorry, who is going to do the arguing here?

02:17PM 1 I guess it's your motion, Mr. Urquhart.

02:17PM 2        MR. URQUHART:  Yes, Your Honor.  Quentin Urquhart on

02:17PM 3 behalf of Apple.  Your Honor, I would like to have Ms. Preovolos

02:17PM 4 primarily handle the argument.  There may be some aspects I'll

02:17PM 5 handle as well, but she's certainly up to speed on this and would

02:17PM 6 like to do the presentation for Your Honor.

02:17PM 7        THE COURT:  Okay.

02:17PM 8        MR. URQUHART:  If there are any questions that

02:17PM 9 Your Honor has at the beginning, we're happy to address those.

02:17PM 10       THE COURT:  I know we have, like I said, two motions.  I

02:17PM 11 think we ought to take up the Motion to Compel arbitration.

02:17PM 12       MR. BICKFORD:  We've thought that that would be the best

02:17PM 13 way to proceed as well.

02:17PM 14       THE COURT:  They are sort of overlapping in terms of the

02:17PM 15 arguments.  The issues are very similar, if not identical.

02:17PM 16       MR. BICKFORD:  Mr. Strange will be arguing for the PSC

02:17PM 17 on the Motion to Compel, and Mr. Meyer will be arguing for the

02:17PM 18 Motion to Dismiss.

02:17PM 19       MS. PREVOLOS:  Your Honor, I actually would like to

02:18PM 20 suggest, subject to what the Court ultimately concludes, that we

02:18PM 21 take up the 12(b)7 motion first because the 12(b)7 motion really

02:18PM 22 argues that this case can't proceed without AT&T and that AT&T

02:18PM 23 should be here.

02:18PM 24        I think if the Court agrees with that view, the

02:18PM 25 plaintiffs will have two choices, and one of them would be to

02:18PM 1    bring AT&T in.  If that happens, I think the arbitration

02:18PM 2    motion --

02:18PM 3         THE COURT:  Then we're right back where we are.  Then we

02:18PM 4    have to face the arbitration issue again.

02:18PM 5         MS. PREOVOLOS:  That's right, but my point is I think

02:18PM 6    arguing the arbitration issue without AT&T, in our view, doesn't

02:18PM 7    make sense because it's primarily their motion.  So I think I

02:18PM 8    would first want to address the issue of whether this case can

02:18PM 9    proceed without --

02:18PM 10        THE COURT:  I'll let you argue it any way you want to.

02:18PM 11   I was frankly thinking just the opposite:  That it made more

02:18PM 12   sense to focus on the arbitration first because if I agree with

02:18PM 13   you on the arbitration, that the plaintiffs are required to

02:19PM 14   arbitrate their claims against Apple under the equitable estoppel

02:19PM 15   theory, then that would moot the Motion to Dismiss, effectively,

02:19PM 16   too.  Would it not?

02:19PM 17        MS. PREOVOLOS:  I think, Your Honor --

02:19PM 18        THE COURT:  I mean, the plaintiffs would be forced to

02:19PM 19   arbitrate against you, if you're right on that, if they wanted to

02:19PM 20   proceed.  Presumably, if they wanted to do that, they would

02:19PM 21   arbitrate against both defendants at the same time.

02:19PM 22        MS. PREOVOLOS:  I think that's right, but I think the

02:19PM 23   plaintiffs potentially would argue that they might or might not

02:19PM 24   have to arbitrate as to AT&T but not as to Apple.

02:19PM 25             I think the predicate that they have to arbitrate

02:19PM  1   against AT&T is an argument better had in AT&T's presence.  But

02:19PM  2   you're right, they are very interrelated.  But I think the first

02:19PM  3   question, well, I think the first question really is what -- does

02:20PM  4   AT&T need to be here or not.

02:20PM  5            THE COURT:  Let's talk about that.

02:20PM  6            MS. PREOVOLOS:  Let's do that.

02:20PM  7            THE COURT:  It seems to me the issues are very similar.

02:20PM  8   Essentially, essentially Apple argues that the claims against

02:20PM  9   Apple and AT&T are so intertwined and interdependent that it's

02:20PM 10   not proper to go forward without both defendants in the case.

02:20PM 11            MS. PREOVOLOS:  That's right, Your Honor.  I won't

02:20PM 12   belabor the Motion to Dismiss, which really, I don't want to get

02:20PM 13   hung up on the Motion to Dismiss characterization.  It really is,

02:20PM 14   as Your Honor says, are plaintiffs' claims based on AT&T's

02:21PM 15   Wireless Services Agreement.  Our plaintiffs claim such that AT&T

02:21PM 16   has to be here.  I think you're right.  If the Court concludes

02:21PM 17   that that's the case, then this really is all about arbitration.

02:21PM 18   If the Court disagrees with me on that, though, then I think the

02:21PM 19   arbitration issue gets a little more complicated, which is why I

02:21PM 20   thought it might be simpler to just be very direct about the

02:21PM 21   question, you know, is it intertwined with -- are plaintiffs'

02:21PM 22   claims really about the WSA and really about AT&T.  Maybe I was

02:21PM 23   making too nuanced a point to even try to separate the arguments

02:21PM 24   in a way.

02:21PM 25            So I think we ought to just start out with, you

02:21PM  1  know, what's going on here?  What's going on here since the

02:21PM  2  inception of the litigation, vis-à-vis the role of Apple and

02:21PM  3  AT&T.  I think that's what the Court is asking.  Again, let me

02:21PM  4  start down that path and if you want to tell me to get to

02:21PM  5  arbitration, then I'll do it.

02:22PM  6        But I think I want to say this politely, but I

02:22PM  7  think the plaintiffs' dismissal of AT&T is pretty evidently a

02:22PM  8  tactic to avoid *Concepcion* and to avoid the requirement that

02:22PM  9  these claims be arbitrated.

02:22PM 10        I think that doesn't work for a few reasons.  I

02:22PM 11  think AT&T is -- or AT&T Mobility to be precise, and so I'll

02:22PM 12  apologize if I sometimes use the shorthand of AT&T, but I think

02:22PM 13  AT&T is a necessary party under Rule 19(a), and I think it is a

02:22PM 14  party, I actually think the term is important here, without whom

02:22PM 15  this litigation cannot proceed in equity and good conscience

02:22PM 16  under Rule 19(b).

02:22PM 17        Now, the plaintiffs say, no, this case is really

02:22PM 18  about -- never fly long distances in an airplane.

02:23PM 19        The plaintiffs say, no, this really is about Apple

02:23PM 20  and about what Apple disclosed or didn't disclose.  With due

02:23PM 21  respect to plaintiffs, that statement is, and that position is

02:23PM 22  contradicted by the expressed allegations of the complaints,

02:23PM 23  which the plaintiffs have not amended, and by what the plaintiffs

02:23PM 24  have been telling this Court since the litigation began.  So I

02:23PM 25  think it's helpful to look back briefly because it's been a bit

02:23PM 1   of a long and fragmented path to how we got where we are today

02:23PM 2   and to what the plaintiffs have said.

02:23PM 3              So this case started with the plaintiff saying,

02:23PM 4   basically, this is a false advertising case against Apple and

02:23PM 5   subsidiarily it's a false advertising case and perhaps a breach

02:23PM 6   of contract case against AT&T.

02:23PM 7              We said, Wait a minute, there are two phones at

02:23PM 8   issue here:  The 3G and the 3GS.  With respect to the 3G, Apple

02:24PM 9   never made any representations about MMS or texting pictures or

02:24PM 10  anything that could be construed as supporting that claim.

02:24PM 11             With respect to the phone released a year later,

02:24PM 12  the 3GS, Apple, from the first moment it disclosed that it was

02:24PM 13  going to release that phone, said MMS is coming in late summer.

02:24PM 14             Finally, we said, the absence of MMS is not because

02:24PM 15  there is anything wrong with the phone or because the phone can't

02:24PM 16  support MMS, it can, it's because AT&T's network isn't ready to

02:24PM 17  provide MMS.  We're not derogating AT&T in any way.  It was a

02:24PM 18  very brief delay.  MMS was never talked about really, until June

02:24PM 19  of -- I'm losing the years, I think it would be '09.  June of

02:24PM 20  '09.  It was available in September of '09.

02:24PM 21             THE COURT:  Was the problem that the phone was marketed

02:25PM 22  in March?

02:25PM 23             MS. PREOVOLOS:  Uh-huh (affirmative response).

02:25PM 24             THE COURT:  So the period of time that the plaintiffs

02:25PM 25  are alleging fall somewhere between March of '09 and September of

02:25PM 1   '09, as I recall.

02:25PM 2       MS. PREOVOLOS:  Well, that's correct, Your Honor.

02:25PM 3       THE COURT:  The problem, from your perspective, the

02:25PM 4 issue with why the phone couldn't perform this function, the

02:25PM 5 phone had the capability to perform the function, but the AT&T

02:25PM 6 network didn't have the capacity to support it at that time?

02:25PM 7       MS. PREOVOLOS:  I think that's right, Your Honor.  I

02:25PM 8 would say that for purposes of the argument I'm going to make

02:25PM 9 today I don't think that matters, because plaintiffs claim, as we

02:25PM 10 stand here today, say that Apple should have disclosed that

02:25PM 11 AT&T's Wireless Service Agreement, that contract required AT&T to

02:25PM 12 provide MMS and AT&T didn't provide it, that AT&T allegedly

02:26PM 13 billed for MMS and didn't provide it, and that Apple's fault was

02:26PM 14 that it failed to disclose those things.

02:26PM 15       I say, well, to find that Apple did anything wrong

02:26PM 16 here the plaintiffs are asking this Court to find that AT&T

02:26PM 17 breached its contract and engaged in false billing practices, and

02:26PM 18 you can't do that without AT&T as a matter of law.

02:26PM 19       THE COURT:  They make the statement in their reply

02:26PM 20 somewhere that that doesn't matter because that's not in dispute.

02:26PM 21       MS. PREOVOLOS:  Well, it certainly is in dispute.  To

02:26PM 22 suggest that AT&T would not dispute that the Wireless Services

02:26PM 23 Agreement required it to provide MMS, and that AT&T in derogation

02:26PM 24 of its core contract with the plaintiffs didn't provide MMS, or

02:26PM 25 that AT&T would not dispute that it billed the plaintiffs for MMS

02:26PM  1    and did not provide it, I think is a fairly outrageous suggestion

02:26PM  2    to make to resolve in AT&T's absence.

02:27PM  3         Those issues call into dispute the construction of

02:27PM  4    the WSA, which is the contract that has the arbitration clause.

02:27PM  5    It's not undisputed.  There are multiple versions of the WSA and

02:27PM  6    of the data plans.  They don't use the word *MMS*, and many of them

02:27PM  7    don't even use the language plaintiffs refer to.  So there is

02:27PM  8    going to be one huge flaming debate with AT&T about what those

02:27PM  9    agreements provide, about what wasn't provided.

02:27PM 10         If you look at the billing statements the

02:27PM 11    plaintiffs cite to in their bills, it doesn't use the term *MMS*.

02:27PM 12    So there is most definitely going to be an interpretational

02:27PM 13    question with respect to the WSA, the Wireless Services

02:27PM 14    Agreement, which the data plan is incorporated in.  There is most

02:27PM 15    definitely going to be a dispute about, I mean, really, AT&T

02:27PM 16    isn't going to dispute that it engaged in improper billing

02:27PM 17    practices.  I mean, come on.  You can't make those -- the Court

02:28PM 18    or a jury can't make those determinations without AT&T.  Apple

02:28PM 19    does not have liability for failing to disclose those things

02:28PM 20    unless AT&T did them.

02:28PM 21         So this is an emperor's new clothes game.  With all

02:28PM 22    due respect, it's a game.  It's about AT&T's conduct.

02:28PM 23         So what I started to say, though, was I do think

02:28PM 24    it's important, a little bit, to go back in history, because this

02:28PM 25    case started with the plaintiff saying something like one of the

02:28PM 1   things they are trying to say today, which is, Oh, this is all a

02:28PM 2   case about Apple's representations concerning MMS, right?  The

02:28PM 3   June period.  We said, Well, there are two problems with that.

02:28PM 4   We filed Motions to Dismiss that basically said this.  We argued

02:28PM 5   it early on to the Court.  We said there are two problems with

02:28PM 6   that:  Problem one, with respect to the 3G phone, Apple never

02:28PM 7   said a word about MMS.  With respect to the 3GS phone, when Apple

02:29PM 8   announced MMS in March it said, Coming in late summer.

02:29PM 9          The plaintiffs responded to that and have

02:29PM 10  consistently responded to that in a way that I think really

02:29PM 11  provides a final answer to what the plaintiffs are claiming here.

02:29PM 12          With permission I would like to hand up Plaintiffs'

02:29PM 13  opposition -- we talked about them in our briefs, so there is no

02:29PM 14  surprise.  But when you want to talk about what a party's

02:29PM 15  position is, it's often helpful to look at what that party

02:29PM 16  actually said.

02:29PM 17          So I would direct the Court's attention to page 8

02:29PM 18  of plaintiffs' consolidated opposition to Apple's Motion to

02:29PM 19  Dismiss, and you'll recall that this was back in -- Apple filed

02:29PM 20  its motions back in August of 2010.  AT&T also filed Motions to

02:30PM 21  Dismiss.

02:30PM 22          THE COURT:  This was before the stay?

02:30PM 23          MS. PREOVOLOS:  Yes.

02:30PM 24          THE COURT:  Okay.

02:30PM 25          MS. PREOVOLOS:  These are the motions that were stayed.

02:30PM 1    Here is what the plaintiff said.

02:30PM 2         THE COURT:  You're reading now from page 8?

02:30PM 3         MS. PREOVOLOS:  Yes, I'm reading -- yes, Your Honor, I

02:30PM 4    am sorry.  I am reading from the bottom of page 8.

02:30PM 5         THE COURT:  This is, for the record,

02:30PM 6    Record Document 204.

02:30PM 7         MS. PREOVOLOS:  Thank you, Your Honor.  I apologize.

02:30PM 8    Record Document 204, filed November 16, 2010.

02:30PM 9         The plaintiff said, "Although Apple attempts to

02:30PM 10   limit plaintiffs' case to advertisements in a time window between

02:30PM 11   June and September of 2009, plaintiffs' claims against Apple

02:30PM 12   predate that timeframe considerably."  Here is the important

02:30PM 13   part:  "And has very little to do with Apple's advertising, which

02:30PM 14   is just one part of plaintiffs' case that comes at the end of the

02:30PM 15   class period.  The alleged class period begins on June 11, 2008.

02:31PM 16   Plaintiffs allege that when defendants began selling the 3G,

02:31PM 17   Apple and AT&T failed to disclose that AT&T would be obligated by

02:31PM 18   contract," and that contract is the Wireless Services Agreement

02:31PM 19   that contains the arb clause, "obligated by contract to provide

02:31PM 20   picture messaging services..."  Note plaintiffs do not say MMS

02:31PM 21   because that's not what the WSA said.  "...to provide picture

02:31PM 22   messaging services to iPhone users."

02:31PM 23        THE COURT:  Is picture messaging services something

02:31PM 24   different than MMS?

02:31PM 25        MS. PREOVOLOS:  Well, that is something that I think

02:31PM 1   AT&T is going to -- we may have to argue it if you make the case

02:31PM 2   go forward without AT&T.  But I think AT&T is going to argue that

02:31PM 3   picture message -- I would argue, let me try it this way:  I

02:31PM 4   would argue that --

02:31PM 5           THE COURT:  Is that the language from the WSA?

02:31PM 6           MS. PREOVOLOS:  There are multiple versions of the WSA.

02:31PM 7   I believe it's a paraphrase of language from the WSA.  Actually,

02:32PM 8   take that back.  It's a paraphrase of language from the -- I

02:32PM 9   think it's a paraphrase of language from the data services plan,

02:32PM 10  which is technically part of the WSA.  But it changed over time.

02:32PM 11  But I don't think it really matters.  I mean, but, yes, picture

02:32PM 12  messaging service is what's meant to refer to MMS here.  Whether

02:32PM 13  AT&T meant it to refer to MMS, I think is something we would

02:32PM 14  argue about.  I think you may recall that from the beginning of

02:32PM 15  the case, Apple and AT&T have said you can e-mail pictures.

02:32PM 16  There are different ways you can send pictures.  MMS is a

02:32PM 17  particular way to send pictures.  That's, I think, what some of

02:32PM 18  the debate would be about, that I think you can understand Apple

02:32PM 19  doesn't think it's best situated to have in AT&T's absence.

02:32PM 20          But in any event, "AT&T would be obligated by

02:32PM 21  contract by the WSA to provide picture messaging services to

02:32PM 22  iPhone users.  Apple provides no argument addressing these

02:32PM 23  allegations.  Plaintiffs also allege that when defendants began

02:33PM 24  selling the 3G, Apple and AT&T failed to inform," I think that

02:33PM 25  means plaintiffs, "that AT&T would actually charge iPhone users

02:33PM 1    purchasing a messaging plan for video and picture messaging

02:33PM 2    services."

02:33PM 3              Again, you'll recall the plaintiffs have said,

02:33PM 4    Well, maybe -- they've said a few times in this litigation, Maybe

02:33PM 5    they didn't use the term *MMS* but that's what this meant.  I say

02:33PM 6    that's something for AT&T to litigate about.

02:33PM 7              But in any event, "...would actually charge iPhone

02:33PM 8    users purchasing a messaging plan for video and picture messaging

02:33PM 9    services despite the fact that they would not receive MMS

02:33PM 10   services."

02:33PM 11             So plaintiffs are saying AT&T charged the class,

02:33PM 12   charged the plaintiffs for MMS services they did not receive.  I

02:33PM 13   don't think you can adjudicate that kind of allegation without

02:33PM 14   AT&T.

02:33PM 15             But in any event, "Apple provides no argument

02:33PM 16   addressing these allegations.  Either Apple repeated these

02:33PM 17   failures when it began selling 3GS models on June 19th and 3G

02:34PM 18   models at a reduced price through September 24, 2009, that is,

02:34PM 19   after it failed to disclose what AT&T did not do," if you'll

02:34PM 20   pardon the double negative.

02:34PM 21             "Apple provides no argument addressing its failure

02:34PM 22   to inform its 3GS customers that its exclusive partner AT&T would

02:34PM 23   be obligated to provide picture and video messaging and would

02:34PM 24   charge for it, despite the fact that MMS would not be available

02:34PM 25   on 3GS.  None of these allegations, primary claims for

02:34PM 1    plaintiffs' primary claims for relief are addressed by Apple's

02:34PM 2    motion."

02:34PM 3              So plaintiffs' primary claims for relief, Judge, by

02:34PM 4    their own words are Apple's alleged breach -- I'm sorry -- are

02:34PM 5    AT&T's supposed breach of its WSA and AT&T's supposed billing for

02:34PM 6    services it didn't provide.

02:34PM 7         THE COURT:  In other words, your fundamental -- at the

02:34PM 8    bottom your argument is that in order to prove that Apple, the

02:35PM 9    claim that Apple failed to tell their iPhone purchasers that they

02:35PM 10   would be charged -- they would be charged for a service that they

02:35PM 11   could not use, at least for some period of time, they would have

02:35PM 12   to, in fact, prove that there was a breach of contract by AT&T in

02:35PM 13   that regard?

02:35PM 14        MS. PREOVOLOS:  That's right, Your Honor.  There are

02:35PM 15   actually two -- I think there are three points.  There are two

02:35PM 16   alleged breaches.  One they say the Wireless Services Agreement

02:35PM 17   obligated AT&T to provide MMS and AT&T didn't provide it.  That's

02:35PM 18   argument one.  Argument two, they argue ATTM billed for MMS and

02:35PM 19   didn't provide it.  So there is a breach, I mean, let's call

02:35PM 20   it -- let's call it by its name.  There is a breach of contract

02:35PM 21   argument and there is an improper billing practices argument.

02:36PM 22              Apple's sin, supposedly, is just that it failed to

02:36PM 23   disclose that conduct by AT&T.  I don't think plaintiffs can,

02:36PM 24   with a straight face, say that under Rule 19 or just common

02:36PM 25   principles of justice, fairness and good order, a court or a jury

02:36PM 1   can make those determinations in AT&T's absence.

02:36PM 2           I don't think it's fair either in terms of

02:36PM 3   prejudice to Apple under Rule 19 to say that Apple ought to be

02:36PM 4   arguing about what the various iterations of the WSA and AT&T's

02:36PM 5   various iterations of its bills and billing statements means.  We

02:36PM 6   don't know every change made to the WSA, for example.  We don't

02:36PM 7   have custody of AT&T's billing records.

02:36PM 8           AT&T is being accused of, let's face it, wrongful

02:36PM 9   conduct by plaintiffs.  They can try to dance around it all they

02:36PM 10  want.  They say, Well, we're not really alleging breach of

02:37PM 11  contract.  But if you say AT&T was obligated to provide this and

02:37PM 12  didn't, AT&T billed for something it didn't provide, how can that

02:37PM 13  not be wrongdoing by AT&T?  They should be practical about it.

02:37PM 14          But, the other thing that I think, the third thing

02:37PM 15  that I think is important from the passages I just read, and I'm

02:37PM 16  not going to do any more dramatic reading here, but I would also

02:37PM 17  direct the Court's attention at leisure to page 24 of the same

02:37PM 18  brief.

02:37PM 19          But the other point is that the plaintiffs say,

02:37PM 20  importantly, in the passage that I was just reading on page 9

02:37PM 21  they describe these two claims, right, AT&T was required to

02:37PM 22  provide MMS under the terms of the WSA, AT&T improperly billed

02:37PM 23  for MMS and didn't provide it.  But here is the other thing

02:37PM 24  that's important:  Plaintiffs say that these allegations are

02:37PM 25  plaintiffs' primary claims for relief.  It's the end of the

02:37PM  1   carryover paragraph on page 9.  Those are plaintiffs' primary

02:38PM  2   claims for relief.  Plaintiffs have run away from the argument

02:38PM  3   that this is all about Apple's misrepresentations because they

02:38PM  4   don't have a basis for those allegations.  They are trying to

02:38PM  5   rescue them now.

02:38PM  6           But if plaintiffs thought they could predicate

02:38PM  7   their case simply on Apple making representations that MMS would

02:38PM  8   be available and MMS wasn't available, now, I still think AT&T

02:38PM  9   would need to be here and I can explain that if you wish.  But

02:38PM  10  the point is, if plaintiffs thought they could pursue this as a

02:38PM  11  simple advertising case against Apple with nary a mention of

02:38PM  12  AT&T, they would have done it by now.  To the contrary, the

02:38PM  13  plaintiffs told this Court that their primary claims were the two

02:38PM  14  claims about AT&T.

02:38PM  15          I just think, you know, this is gamesmanship to

02:38PM  16  avoid *Concepcion*.  I understand why it's happening, but as a

02:38PM  17  matter of law, it's just wrong.  It can't happen.

02:38PM  18          So let me quickly -- I think we've really covered

02:39PM  19  in our dialog what we were going to say.  Let me make a couple of

02:39PM  20  additional points and then we can proceed to the arbitration

02:39PM  21  motion or you can hear plaintiffs or however you wish to proceed.

02:39PM  22          To just talk about the law for a minute, I've

02:39PM  23  talked a lot about the facts, the plaintiffs importantly concede

02:39PM  24  in their opposition to the 12(b)7 motion that where the

02:39PM  25  interpretation of a party's contract is put at issue in a case,

02:39PM   1   that party is a necessary party.  We cite case law to that effect

02:39PM   2   in our brief.

02:39PM   3            We also cite case law in our brief that says that

02:39PM   4   where a party's contract is going to be interpreted, that party

02:39PM   5   is -- you know, in the old days, forgive me, I am going to use

02:39PM   6   the old lingo, is an indispensable party.  It's a party without

02:39PM   7   which the case cannot proceed under Rule 19(b), because you can't

02:39PM   8   decide what a party's contract means without that party.  That's

02:39PM   9   exactly what the plaintiffs propose to do.

02:40PM  10            I do think it's --

02:40PM  11       THE COURT:  Do you even get to the indispensable party

02:40PM  12   issue if you're right on your necessary party?  If they are a

02:40PM  13   necessary party, you don't get to the indispensable party

02:40PM  14   question unless it's not feasible to join them, correct?

02:40PM  15       MS. PREOVOLOS:  That's correct, Judge.

02:40PM  16       THE COURT:  I mean, I guess I'll ask the other side, but

02:40PM  17   in the context of this case, it's hard to imagine that it would

02:40PM  18   not be feasible for them to join AT&T since they already did join

02:40PM  19   AT&T.

02:40PM  20       MS. PREOVOLOS:  Yeah, I think that's exactly right.

02:40PM  21   Indeed, that's exactly what Judge Ware said in the 3G deal in

02:40PM  22   California, which I think is worth mentioning here and we both

02:40PM  23   have briefed it.  I'll talk about it in minute, but that's

02:40PM  24   precisely what Judge Ware said.  He said they can be joined, they

02:40PM  25   were joined and they need to be joined, and then after that we

02:40PM 1  need to decide whether this whole mess goes to arbitration.

02:40PM 2       THE COURT:  So the real question on your Motion to

02:40PM 3  Dismiss is not whether or not they are indispensable but the

02:41PM 4  fundamental question is whether they are necessary.

02:41PM 5       MS. PREOVOLOS:  I think that's right.  Well, I mean, it

02:41PM 6  sort of depends on what plaintiffs do.

02:41PM 7       THE COURT:  Sort of interrelated but it's a different

02:41PM 8  analysis, a somewhat different analysis.

02:41PM 9       MS. PREOVOLOS:  It is a somewhat different analysis but

02:41PM 10  I jump ahead to it because I think Your Honor had some interest

02:41PM 11  in at least having a preview of that future.  That's why we did

02:41PM 12  cite the cases that I think made very clear that where AT&T's

02:41PM 13  contract is going to be interpreted, and where, frankly, however

02:41PM 14  plaintiffs want to dress it up, I do think they are accusing AT&T

02:41PM 15  of wrongdoing.  You billed for services you didn't provide.  You

02:41PM 16  didn't provide services the contract required you to provide.  I

02:41PM 17  don't see how adjudicating those issues without AT&T doesn't

02:41PM 18  prejudice AT&T in the most fundamental way and in the Rule 19(b)

02:41PM 19  sense.

02:41PM 20       By the way, just as a footnote, the plaintiffs'

02:41PM 21  current complaint in paragraph 11 flat-out says AT&T breached the

02:41PM 22  Wireless Services Agreement.

02:42PM 23       We have all been looking at the --

02:42PM 24       THE COURT:  Is that the amended complaint?

02:42PM 25       MS. PREOVOLOS:  We have all talked about the amended

02:42PM 1 *Carbine* complaint.

02:42PM 2        THE COURT:  I have that in front of me.  What paragraph

02:42PM 3 are you talking about?

02:42PM 4        MS. PREOVOLOS:  11.

02:42PM 5        THE COURT:  Paragraph 11?

02:42PM 6        MS. PREOVOLOS:  Uh-huh (affirmative response).

02:42PM 7        Again, I don't think you need that because I think

02:42PM 8 although the plaintiffs try to not use the breach of contract

02:42PM 9 term, even unto their last reply and surreply, they do not run

02:42PM 10 away from the argument that the contract obligated AT&T to

02:42PM 11 provide MMS, it didn't provide it, AT&T billed for MMS, it didn't

02:42PM 12 provide it, and I honestly don't think you need anything more

02:42PM 13 than that to find that AT&T is a necessary and indeed an

02:42PM 14 indispensable party.

02:42PM 15        I think we've discussed the undisputed facts issue.

02:42PM 16 I can address it again if you want me to, but again, I think the

02:42PM 17 bottom line is you really can't say that kind of wrongful conduct

02:43PM 18 by AT&T is going to be undisputed without AT&T being here and

02:43PM 19 without the many, many different versions of the WSA and the

02:43PM 20 billing statements being before the Court for interpretation and

02:43PM 21 argument.

02:43PM 22        THE COURT:  Okay.  Let's talk about arbitration.

02:43PM 23        MS. PREOVOLOS:  Okay.  The last point I did want to

02:43PM 24 make, though, on the necessary party, and I'll make it very

02:43PM 25 quickly, but it is that Judge Ware already resolved, not that he

02:43PM  1   can decide it for this Court, but that Judge Ware resolved a

02:43PM  2   virtually -- well, what I would argue an indistinguishable issue

02:43PM  3   in the 3G MDL.  The plaintiffs try to distinguish that case and

02:43PM  4   with the Court's permission --

02:43PM  5         THE COURT:  Judge Ware had two different cases.  He had

02:43PM  6   the antitrust case apparently.  Are those two different MDLs?

02:43PM  7         MS. PREOVOLOS:  Yes, they are two different MDLs.  Let

02:43PM  8   me clarify it because I actually think it's important.  So there

02:44PM  9   is the iPhone 3G, it's called Product Liability MDL before

02:44PM 10   Judge Ware.  It's actually a misrepresentation case, not a

02:44PM 11   products case.  The argument in that case is that, well,

02:44PM 12   originally, that Apple and AT&T misrepresented that the iPhone

02:44PM 13   would be twice as fast as predecessor phones, but that because

02:44PM 14   of -- initially plaintiffs said issues with the network and now

02:44PM 15   as here they say, issues with the phone, the phone wasn't, quote,

02:44PM 16   twice as fast.

02:44PM 17         Judge Ware found that the cosmetic alterations --

02:44PM 18   so the plaintiffs in the 3G case went farther than the plaintiffs

02:44PM 19   here.  They took AT&T out of the complaint.  They took out all of

02:44PM 20   the allegations about AT&T out of the complaint.  Judge Ware

02:44PM 21   said, Well that may be as it may be but the speed of the phone is

02:44PM 22   at least in part dependent on the speed of the network, and you

02:44PM 23   can't adjudicate those claims without AT&T.

02:44PM 24         Now, plaintiffs try to say, no, this case is very

02:45PM 25   different.  This case isn't about the network.  Again, I just

02:45PM  1    have to say plaintiffs' claims are given a lie by their own

02:45PM  2    complaint.  So if you look -- and I do think it's worth looking

02:45PM  3    at again, the *Carbine* complaint.  Paragraph 4 of the *Carbine*

02:45PM  4    complaint.  Also paragraph 6 of the *Carbine* complaint.  Again,

02:45PM  5    the complaints are all uniform in these allegations.

02:45PM  6              The story plaintiffs tell is AT&T's network

02:45PM  7    couldn't, couldn't, wasn't sufficiently built up to provide MMS

02:45PM  8    because of the amount of usage that would come from iPhone 3G and

02:45PM  9    3GS.  That's whence all these problems claim -- whence where all

02:45PM 10    these problems came.

02:45PM 11              So frankly, even if the plaintiffs here could drop

02:45PM 12    their contract and billing claims, and I don't think they can,

02:46PM 13    this case would be on all fours with 3G.  It still implicates the

02:46PM 14    AT&T network.  There is nothing wrong with the phone.  Nobody

02:46PM 15    argues the phone wasn't MMS capable.  It was all about the

02:46PM 16    network.

02:46PM 17              So that's the 3G case.  Then there is another case,

02:46PM 18    it's another MDL, also in front of Judge Ware.  Now that case

02:46PM 19    goes more to the arbitration motion but I can tell you what it's

02:46PM 20    about just so we're all clear.

02:46PM 21              The plaintiffs in that case filed claims with

02:46PM 22    respect to the --

02:46PM 23              THE COURT:  This is the antitrust?

02:46PM 24              MS. PREOVOLOS:  This is the antitrust case.  So

02:46PM 25    basically what the plaintiffs in there are saying, and you can

24

02:46PM 1  read it in Judge Ware's opinion at your leisure. I won't ask you

02:46PM 2  to accept my interpretation. Basically what the plaintiffs say

02:46PM 3  is, look, as the plaintiffs here say, that the plaintiffs' story

02:46PM 4  here is Apple and AT&T entered into -- allegedly entered into an

02:46PM 5  exclusivity agreement so that plaintiffs could only obtain

02:46PM 6  service from AT&T. In the antitrust case they say that forced

02:47PM 7  the plaintiffs to enter into the WSA, which foreclosed them from

02:47PM 8  obtaining wireless services from entities other than AT&T and had

02:47PM 9  antitrust implications for both AT&T and Apple.

02:47PM 10            Now, in that case, interestingly, well, in that

02:47PM 11 case, what happened is Judge Ware said both sets of claims have

02:47PM 12 to -- that is, the claims against Apple and AT&T, both have to go

02:47PM 13 to arbitration. AT&T has claims under contract. The claims

02:47PM 14 against Apple, because as Your Honor suggested here, they rely on

02:47PM 15 the WSA and there is intertwined conduct between Apple and AT&T,

02:47PM 16 and so those claims also have to go to arbitration. So that was

02:47PM 17 the result in the antitrust case.

02:47PM 18            Now the plaintiffs just have followed, in those

02:47PM 19 cases have just followed the lead of these plaintiffs and the 3G

02:47PM 20 plaintiffs and they have refiled without AT&T, and we'll see what

02:48PM 21 happens. That's a brand-new case.

02:48PM 22            But the state of play in the two cases we're

02:48PM 23 talking about is in the iPhone 3G MDL, the one about the speed --

02:48PM 24 I'll call it *the speed representation case*. In the 3G MDL we

02:48PM 25 filed essentially the same motion we filed here, a 12(b)7 motion.

02:48PM 1    Judge Ware agreed with us and said AT&T can be added and they

02:48PM 2    have to be brought back in.  The plaintiffs have now filed a new

02:48PM 3    complaint bringing AT&T back in and there are going to be

02:48PM 4    arbitration motions.

02:48PM 5            In the antitrust case the plaintiffs did not

02:48PM 6    dismiss AT&T in the first instance, and Judge Ware sent everybody

02:48PM 7    to arbitration.

02:48PM 8            So I don't know if you want to hear my argument on

02:48PM 9    the arbitration motion, which I can do probably pretty quickly.

02:48PM 10           THE COURT:  Yes, let's do that.

02:48PM 11           MR. BICKFORD:  Your Honor, we would prefer if we could

02:48PM 12   answer the, I mean, Apple has done about 40 minutes at this

02:49PM 13   point.

02:49PM 14           THE COURT:  I'll give you equal time.

02:49PM 15           MR. BICKFORD:  I understand that.

02:49PM 16           THE COURT:  Let her finish.

02:49PM 17           MS. PREOVOLOS:  He wants to be rid of me.

02:49PM 18           THE COURT:  Even though it's different legal theories, I

02:49PM 19   think there is a lot of overlap between these two motions.

02:49PM 20           MS. PREOVOLOS:  I do, too.  I do, too.  It's just that I

02:49PM 21   think, I feel there is some oddness about my saying we should all

02:49PM 22   go to arbitration based on AT&T's contract knowing that AT&T

02:49PM 23   should be here.  I think now, having argued what I argued, A, I

02:49PM 24   think I've saved some time, and B, I think you have a pretty good

02:49PM 25   idea where I'm headed.

02:49PM 1    Let's talk about the arbitration issues for a

02:49PM 2 moment.  The first point, which I don't think the plaintiffs

02:49PM 3 dispute, is that they are all signatories to AT&T's Wireless

02:49PM 4 Services Agreement, and that Wireless Services Agreement contains

02:50PM 5 the very arbitration clause that was upheld in *Concepcion*.  No

02:50PM 6 dispute about that one.

02:50PM 7    So our argument, which is, as you say, pretty much

02:50PM 8 presaged to say the least by the argument I just made, is that

02:50PM 9 plaintiffs, as signatories to the Wireless Services Agreement,

02:50PM 10 are equitably estopped to oppose arbitration by Apple on two

02:50PM 11 separate and independent grounds:  First, the plaintiffs rely for

02:50PM 12 their claims, and as the last -- Scott timed me, so I guess

02:50PM 13 40 minutes of argument, I have established plaintiffs can't make

02:50PM 14 their claims without relying on the Wireless Services Agreement,

02:50PM 15 on AT&T's billings which are controlled by the Wireless Services

02:50PM 16 Agreement.  If the plaintiffs have a dispute about their billing

02:51PM 17 with AT&T, I don't think they would argue that that didn't have

02:51PM 18 to go to arbitration.  It's clearly covered by the WSA.

02:51PM 19    So plaintiffs' claims, I would say not only rely on

02:51PM 20 the WSA, which is the first of the two independent tests the

02:51PM 21 Fifth Circuit announced in *Grigson*, but here it really goes

02:51PM 22 beyond that.  Plaintiffs don't have those claims without the WSA.

02:51PM 23 They just don't have them.

02:51PM 24    So the first and simple point is that the

02:51PM 25 plaintiffs' claims necessarily rely on contracts that must be

02:51PM 1    arbitrated.  Where that is the case, the courts uniformly have

02:51PM 2    held where that clear kind of reliance is shown that the

02:51PM 3    plaintiffs or the party that's the signatory to the arbitration

02:51PM 4    agreement is equitably estopped from opposing arbitration as to

02:52PM 5    Apple.

02:52PM 6             But there is a second and independent ground, and

02:52PM 7    the second and independent ground is that plaintiffs allege

02:52PM 8    interdependent and concertedness conduct by Apple and AT&T

02:52PM 9    intertwined with the AT&T Wireless Services Agreement.

02:52PM 10            And, again, I think plaintiffs' arguments to the

02:52PM 11   contrary are squarely refuted by their own complaint.  I think

02:52PM 12   that's really the fairest place to look for what plaintiffs say.

02:52PM 13   I think it's the strongest argument that Apple has to make here.

02:52PM 14            So I would again, with permission, direct the

02:52PM 15   Court's attention to paragraph 2 of the *Carbine* complaint, but

02:52PM 16   again, they are all the same.  We pick on Mr. Carbine just

02:52PM 17   because he's a Louisiana resident who filed directly --

02:52PM 18            THE COURT:  You know, I'm looking at that complaint

02:53PM 19   right now.

02:53PM 20            MS. PREOVOLOS:  So paragraph 2 says --

02:53PM 21            THE COURT:  Excuse me.  But paragraph 1 refers to the

02:53PM 22   plaintiff as Ryan Casey.  Is it Casey or Carbine?

02:53PM 23            MS. PREOVOLOS:  Yeah, Your Honor, that's another little

02:53PM 24   quirk.

02:53PM 25            THE COURT:  Is this a typo?

02:53PM 1        MS. PREOVOLOS:  No, this is the *Carbine* complaint.  It

02:53PM 2  was originally filed on behalf of Mr. Carbine and I believe also

02:53PM 3  Mr. Casey.  When the plaintiffs filed their amended complaint

02:53PM 4  they dropped Mr. Carbine and the plaintiff is Mr. Casey.  But the

02:53PM 5  complaint is still styled, as this document relates, to *Carbine,*

02:53PM 6  *et al.*

02:53PM 7        THE COURT:  09-5470 is the so-called *Carbine complaint*.

02:53PM 8  *Carbine*-slash-*Casey complaint*.

02:53PM 9        MS. PREOVOLOS:  We'll call it the *Carbine*-hyphen-*Casey*

02:53PM 10  *complaint* from now on.

02:53PM 11        THE COURT:  All right.

02:53PM 12        MS. PREOVOLOS:  So paragraph 2 of that complaint says,

02:53PM 13  "Since 2011 Apple and AT&T co-marketed the iPhone with AT&T

02:53PM 14  Wireless Network Service."  Co-marketed the iPhone with AT&T's

02:54PM 15  network service.  "As a result of defendants' exclusivity

02:54PM 16  agreement, when purchasing an iPhone during the class period,

02:54PM 17  defendants," plural, that being Apple and AT&T, they are

02:54PM 18  intertwined, "required all class members to obtain wireless

02:54PM 19  service including messaging plans for their iPhones exclusively

02:54PM 20  from AT&T."

02:54PM 21        Then we get to paragraphs 4 and 5, which is the

02:54PM 22  network issue, but I think the allegations of those paragraphs

02:54PM 23  are also instructive because they say, "As defendants were about

02:54PM 24  to launch the iPhone 3G a grave complication developed," and that

02:54PM 25  complication was that the network was that AT&T realized that its

02:54PM  1   network didn't have the capacity.

02:54PM  2           Paragraph 5, "AT&T needed to build up its network.

02:54PM  3   Defendants," and again, cases looking at this question of

02:55PM  4   intertwinedness of the parties and claims and dependence on the

02:55PM  5   contract say that where allegations of the complaint refer to

02:55PM  6   defendants plural, that support the intertwinedness notion.

02:55PM  7           But again, it's their theory.  Apple and AT&T

02:55PM  8   together came up with -- entered into an exclusivity agreement

02:55PM  9   which forced these plaintiffs into the WSA.  AT&T and Apple

02:55PM 10   discovered that AT&T's network wasn't adequate.  Again, that

02:55PM 11   comes out in paragraph 6.  In paragraph 5, if you go on reading

02:55PM 12   on to the next page, "Defendants did not want to lose market

02:55PM 13   share by announcing this feature would not be available and did

02:55PM 14   not want to delay the lucrative launch of new generation 3G

02:55PM 15   phones."

02:55PM 16           Obviously I should say Apple and I think I can say

02:55PM 17   for AT&T vehemently deny these allegations, but the allegations

02:56PM 18   are there.  You know, this is concerted conduct by Apple and AT&T

02:56PM 19   wrapped around the Wireless Services Agreement.

02:56PM 20           You know, if you look at paragraph 9,

02:56PM 21   "Defendants'," plural, "marketing campaign promoted the iPhone

02:56PM 22   operating on AT&T 3G and 3GS networks by promising the latest in

02:56PM 23   mobile technology capable of everything other mobile devices

02:56PM 24   could do, including MMS.  Despite these promises, the MMS

02:56PM 25   function was knowingly and consciously disabled, while at the

02:56PM  1    same time defendants advertised that MMS was a feature included,"

02:56PM  2    and so forth.

02:56PM  3              I just don't see how you can look at those

02:56PM  4    allegations, and they've been here since the beginning.  They are

02:56PM  5    plaintiffs' theory about -- it's plaintiff's story of what

02:56PM  6    happened here.  They can pick and parse and try to pull out

02:56PM  7    little pieces, but the overall story is, here is what Apple and

02:57PM  8    AT&T did together, and here is what they did together in forcing

02:57PM  9    the plaintiffs to enter into the WSA.  That's the contract with

02:57PM 10    the arb clause.

02:57PM 11              I would say that this is a textbook example of

02:57PM 12    allegedly interdependent and concerted conduct intertwined with a

02:57PM 13    WSA.  It could be a law school hypothetical course.

02:57PM 14              And that's exactly what Judge Ware found in the

02:57PM 15    antitrust case.  I think that Your Honor alluded to that.

02:57PM 16              But, you know, the plaintiffs try to say, Oh, no,

02:57PM 17    no, that's different, that's an antitrust case.  But what Judge

02:57PM 18    Ware said is the core of what's alleged here is that Apple and

02:57PM 19    AT&T entered into an exclusive agreement which forced plaintiffs

02:57PM 20    to enter into the Wireless Services Agreement, which is the core

02:57PM 21    of our claims.  This is not any different.

02:57PM 22              The plaintiffs try to avoid Apple's right to go to

02:57PM 23    arbitration by talking about two other agreements, you may

02:57PM 24    recall.  One of those is Apple's Software License Agreement and

02:58PM 25    the other is Apple's iTunes agreement.  They say, Well, those

02:58PM  1    agreements don't have an arbitration clause and none of them

02:58PM  2    provides for a California court forum so those control.  But, but

02:58PM  3    other contracts are only relevant where they're relevant to the

02:58PM  4    subject matter of litigation.  These are not.

02:58PM  5          I've pulled out enough documents for the day here,

02:58PM  6    but if you pull out the iTunes contract, the top of the first

02:58PM  7    page says boldly and prominently that the contract governed use

02:58PM  8    of the iTunes Store and iTunes Service.  Then it says, "Service

02:58PM  9    is the rental of digital content from the iTunes Store."  MMS is

02:58PM 10    not digital content from the iTunes Store.  MMS is not provided

02:58PM 11    by Apple or the iTunes Store.  MMS is provided by AT&T pursuant

02:58PM 12    to the WSA.

02:59PM 13          Now, plaintiffs then look to the Software License

02:59PM 14    Agreement, but the Software License Agreement is about software

02:59PM 15    licensed on the iPhone.  It says, "Disputes with respect to this

02:59PM 16    software license shall be determined under California law."

02:59PM 17          But this isn't dispute about Apple software.  It's

02:59PM 18    a dispute about AT&T MMS.  So these contracts could not be less

02:59PM 19    relevant.

02:59PM 20          Now, I should add that the plaintiffs in the

02:59PM 21    California antitrust case also made the iTunes contract argument

02:59PM 22    very prominently in their briefing, and Judge Ware was affected

02:59PM 23    by that argument not at all.

02:59PM 24          So the bottom line, courts do look to other

02:59PM 25    contracts between the parties when they are being asked to invoke

02:59PM 1    equitable estoppel in an arbitration situation, but only to other

02:59PM 2    contracts relevant to the issue as to which arbitration is being

02:59PM 3    sought.

02:59PM 4            And the iTunes agreement and the SLA have

03:00PM 5    absolutely nothing to do with MMS.  Now, the plaintiffs say, here

03:00PM 6    is their best reach, they say updates to the operating system are

03:00PM 7    uploaded using iTune functionality.  So when the update to the

03:00PM 8    Apple operating system to enable MMS was uploaded, it was

03:00PM 9    uploaded using iTunes.  I say to that, so what?  There is no

03:00PM 10   dispute that the upload didn't work.  There is no dispute that

03:00PM 11   they didn't get MMS.  The minute anything happened with iTunes,

03:00PM 12   if you will.  The dispute is about what happened before under the

03:00PM 13   WSA.

03:00PM 14           Plaintiffs then make a waiver argument.  That's

03:00PM 15   really the last argument we need to talk about on arbitration.

03:00PM 16   There are multiple problems with the waiver argument.  The first

03:00PM 17   is, you know, it's kind of interesting.  The plaintiffs allege

03:00PM 18   the iTunes agreement and they allege the SLA to say, well,

03:00PM 19   California law applies.  Now, we don't agree with that.  We don't

03:01PM 20   agree that California law necessarily applies to every complaint,

03:01PM 21   and I think certainly in the Fifth Circuit that wouldn't be the

03:01PM 22   law, right, somebody suing in Louisiana probably couldn't invoke

03:01PM 23   California law.  But if this case goes on, there will be a

03:01PM 24   fulsome debate about that.

03:01PM 25           But the point is, a number of the cases were filed

03:01PM  1   in California or New Jersey or Missouri, and in those states,

03:01PM  2   *Concepcion* was -- the pre-*Concepcion* law was the law.  That is to

03:01PM  3   say, class action, arbitration class action waivers were

03:01PM  4   unenforceable.  The Ninth Circuit was the poster child for the

03:01PM  5   law before *Concepcion*.

03:01PM  6           And so a number of courts since *Concepcion* have

03:01PM  7   squarely held that failure to raise an arbitration claim prior to

03:01PM  8   *Concepcion* can't work a waiver because raising that claim would

03:01PM  9   have been futile.

03:01PM  10          But even if you decide that that's wrong, there is

03:02PM  11  a second element to the waiver requirement.  I should say if you

03:02PM  12  do that -- I think for a lot of the cases here you couldn't do

03:02PM  13  that because they were under law identical to the pre-*Concepcion*

03:02PM  14  law in the Ninth Circuit.  A number of the cases Apple never

03:02PM  15  responded to at all, so we had no opportunity to compel

03:02PM  16  arbitration.

03:02PM  17          But leaving all that aside, the plaintiffs have to

03:02PM  18  prove two things to effectuate waiver:  They have to show that

03:02PM  19  there was a substantial invocation of the litigation process and

03:02PM  20  they have to show prejudice.  I do think it's critical because it

03:02PM  21  gets a little bit obscured here, that they can't do that.

03:02PM  22          Now how do the plaintiffs say they were prejudiced?

03:02PM  23  They say two things:  They say discovery was delayed and they say

03:02PM  24  they had to file opposition to Apple's Motions to Dismiss as to

03:02PM  25  the amended complaints.  Plaintiffs are wrong for two reasons,

03:03PM 1   really for two time periods.  So let's look at those time

03:03PM 2   periods.  Time period one, before *Concepcion*, Apple and AT&T

03:03PM 3   saying, We want Motions to Dismiss heard.  AT&T said we also want

03:03PM 4   our arb motion heard before there is discovery.  The Court agreed

03:03PM 5   with that.  If Apple had filed a Motion to Compel arbitration

03:03PM 6   back in August 2010, back when AT&T did, absolutely nothing would

03:03PM 7   have changed.  The case still would have been stayed.  There

03:03PM 8   still would have been no discovery.  Nothing would have been

03:03PM 9   different.  AT&T filled that arb motion.

03:03PM 10          After the Supreme Court granted hearing in

03:03PM 11  *Concepcion*, you'll recall that what happened is the plaintiffs

03:03PM 12  stipulated to a stay with AT&T.  We said that briefing on the

03:03PM 13  Motions to Dismiss and proceedings in the case should be

03:03PM 14  coordinated, that there are different ways in which *Concepcion*

03:03PM 15  could end up being dispositive of the claims against Apple as

03:04PM 16  well.  The claims against Apple should be stayed too.  The

03:04PM 17  plaintiffs wouldn't stipulate to that.  Their brief was due,

03:04PM 18  their opposition to the Motion to Dismiss was due November 8th.

03:04PM 19  This Court indicated that it would rule on Apple's stay motion on

03:04PM 20  November 16th.  Plaintiffs wouldn't agree to a stay, even for

03:04PM 21  that eight-day period.  They went ahead and filed their

03:04PM 22  opposition.  Then this Court did, in fact, extend the stay for

03:04PM 23  Apple.

03:04PM 24          So to the extent that plaintiffs argue they were

03:04PM 25  required or forced to file their opposition to the Motions to

03:04PM 1   Dismiss, which is the only thing different as between Apple and

03:04PM 2   AT&T, the answer is that wound was self-inflicted because Apple

03:04PM 3   said *Concepcion* has broad implications stay as to everybody,

03:04PM 4   plaintiffs or at least wait until the Judge decides.  The

03:04PM 5   plaintiffs said no.  That was their choice.  So bottom line,

03:04PM 6   there is no prejudice to plaintiffs here whatsoever.

03:04PM 7          From November 10, 2010, to the present, this case

03:04PM 8   has been stayed as to both parties by order of the Court.  The

03:05PM 9   result would have been the same if Apple had moved to compel

03:05PM 10  arbitration; the same was true before.

03:05PM 11         So bottom line, there is no prejudice.  Plaintiffs'

03:05PM 12  arguments rely and must rely on the WSA.  The passages we've read

03:05PM 13  from the complaint and from their opposition back in the day to

03:05PM 14  Apple's Motion to Dismiss make very clear that they don't have a

03:05PM 15  case without the WSA, without AT&T conduct, without the network

03:05PM 16  issues.  Any one of those things is enough of a conduct they

03:05PM 17  allege couldn't be more interrelated.  For all those reasons, if

03:05PM 18  AT&T is brought back into this case, I expect that the Court will

03:05PM 19  grant its Motion to Compel arbitration, and plaintiffs will be

03:05PM 20  equitably estopped to use the WSA as they do and have from the

03:05PM 21  beginning of this case as a sword and yet to ask this Court to

03:05PM 22  ignore the arbitration provision of that agreement as a shield.

03:06PM 23         THE COURT:  All right.  Thank you.  Who is going to

03:06PM 24  argue first?

03:06PM 25         MR. STRANGE:  Good afternoon, Your Honor.  Brian Strange

03:06PM 1  for the PSC, and I would like to address the Motion to Compel

03:06PM 2  arbitration.

03:06PM 3          THE COURT:  Okay.

03:06PM 4          MR. STRANGE:  Your Honor, it's always interesting when

03:06PM 5  you hear a defendant describe what your case is about, but I

03:06PM 6  think that the plaintiffs are entitled to frame their own

03:06PM 7  pleadings and they are entitled to frame their own claims.  The

03:06PM 8  issue before Your Honor with respect to the Motion to Compel

03:06PM 9  arbitration does relate to plaintiffs' claims, but I think there

03:06PM 10 is something that we get to before that.

03:06PM 11         While the Court in *Concepcion* did change the law

03:07PM 12 with respect to arbitration, it really dealt with the fundamental

03:07PM 13 issue is can a defendant ban class actions.

03:07PM 14         If Apple wants to arbitrate this case on a

03:07PM 15 class-wide basis, plaintiffs will do that.  If they want to try

03:07PM 16 to ban the class action and assert the ban and the class action

03:07PM 17 involved in AT&T's contract, that's where we get the principles

03:07PM 18 of equity.

03:07PM 19         The Court in *Concepcion*, and I must confess that

03:07PM 20 I'm somewhat familiar with that because the Discover Bank case,

03:07PM 21 which was reversed by the *Concepcion* court was my case that I

03:07PM 22 argued before the California Supreme Court.  Discover Bank hired

03:07PM 23 a lawyer to take a writ to the Supreme Court in that case, and

03:07PM 24 that was John Roberts before he took the bench.  So when Justice

03:07PM 25 Roberts went on to the Court, I figured that that issue was going

03:07PM 1   to finally get its way to the Supreme Court.  But it's important,

03:08PM 2   I think, to recognize that *Concepcion* deals with two contracting

03:08PM 3   parties.  Two parties that agree to arbitrate under a provision

03:08PM 4   under certain terms, and the Court was very clear about that.

03:08PM 5              Apple accuses plaintiffs here of sort of

03:08PM 6   gamesmanship, but the point of the matter is that Apple is not a

03:08PM 7   signatory to this contract.

03:08PM 8              THE COURT:  Let me ask you this:  What was the intended

03:08PM 9   purpose -- I'm trying to figure out the maneuver of dismissing

03:08PM 10  AT&T all of a sudden.  I'm assuming that the plaintiffs concluded

03:08PM 11  that you would be forced to arbitrate your claims against AT&T

03:08PM 12  under *Concepcion*?

03:08PM 13             MR. STRANGE:  That's correct.

03:08PM 14             THE COURT:  I can't really figure any other reason why

03:09PM 15  you would dismiss them.

03:09PM 16             MR. STRANGE:  Absolutely.  We figured that Your Honor

03:09PM 17  would grant that under *Concepcion* because it involved the same

03:09PM 18  arbitration clause and that arbitration clause has a ban on class

03:09PM 19  actions.  What it means is that no plaintiff will have a claim

03:09PM 20  against AT&T.  No one is going to arbitrate for $20 or $50 or

03:09PM 21  whatever the claim is.

03:09PM 22             THE COURT:  I think that was Justice Breyer's argument

03:09PM 23  in *Concepcion*, right?  Wasn't he in the dissent?

03:09PM 24             MR. STRANGE:  Yes, he was, Your Honor.

03:09PM 25             THE COURT:  And he argued that basically it doesn't mean

03:09PM 1    that there would be hundreds or thousands of small claims in

03:09PM 2    arbitration, it meant that there would be no claims.

03:09PM 3            MR. STRANGE:  That's correct.

03:09PM 4            THE COURT:  Because of the small value to any one

03:09PM 5    person.  I think in this case, somebody said early on that each

03:09PM 6    claimant potentially has a claim for $100 or so.

03:10PM 7            MR. STRANGE:  That's correct, Your Honor.

03:10PM 8            THE COURT:  And Justice Scalia's response to that was,

03:10PM 9    Oh, no, not in this case because, I don't remember the exact

03:10PM 10   language, but something about that the AT&T contract provided for

03:10PM 11   attorney's fees or something.

03:10PM 12           MR. STRANGE:  That's correct, Your Honor.  Then that was

03:10PM 13   the argument that was resolved by the *Concepcion* court.

03:10PM 14           But the reason that I raise it with Your Honor is

03:10PM 15   that that dealt with two signatories to a contract, and the

03:10PM 16   Supreme Court said, Okay, well, what are the consumer-friendly

03:10PM 17   provisions in this AT&T contract that may justify banning class

03:10PM 18   actions?

03:10PM 19           Here what Apple seeks to do is to invoke principles

03:10PM 20   of fairness and to say that we want a ban on class actions too.

03:10PM 21   That is not right and that's not fair, and I can tell you why I

03:10PM 22   think it would be error to grant that against a nonsignatory.

03:11PM 23           THE COURT:  Go ahead.

03:11PM 24           MR. STRANGE:  Unless Your Honor has an issue that's more

03:11PM 25   pressing.

03:11PM  1          THE COURT:  No, I guess I could say philosophically I

03:11PM  2   fully agree with you.  I think it's, what the Supreme Court has

03:11PM  3   done with arbitration is -- I don't know what the right word is

03:11PM  4   for it.

03:11PM  5          MR. STRANGE:  They ban class actions.

03:11PM  6          THE COURT:  Well, I'm talking about way before that.

03:11PM  7   Just the fact that most of these contracts are really contracts

03:11PM  8   of adhesion in a lot of ways, consumer contracts where you can't

03:11PM  9   negotiate these things.  It's not like two equal parties

03:11PM 10   negotiating a contract and agreeing to arbitrate, which is fine,

03:11PM 11   if two parties of equal bargaining power want to arbitrate their

03:12PM 12   claims, that's fine.  But in all of these consumer situations,

03:12PM 13   you know, you have to accept it to buy the product or to get the

03:12PM 14   service, so there is no bargaining, and --

03:12PM 15          MR. STRANGE:  It's a contract of adhesion.

03:12PM 16          THE COURT:  It really is, but the Supreme Court, way

03:12PM 17   back has said that's okay.  They have rejuvenated, put life into

03:12PM 18   the Federal Arbitration Act that nobody knew existed 20 years

03:12PM 19   ago, I guess.  But, you know, I can't do anything about that.

03:12PM 20          MR. STRANGE:  I'm not here to ask Your Honor to overturn

03:12PM 21   *Concepcion*.

03:12PM 22          THE COURT:  As much as I would like to, if I had the

03:12PM 23   power to I would love to, because I see the inherent unfairness

03:12PM 24   of it every day, not every day, that's an exaggeration, but often

03:12PM 25   around here.

03:12PM 1          But the fact is, you know, it is what it is.  It's

03:13PM 2    there.  I have on a number of occasions, you know, dismissed

03:13PM 3    cases in favor of arbitration and even applied this equitable

03:13PM 4    estoppel theory.  I had one recently, I can't remember the name

03:13PM 5    of the case, nobody cited it.  It's not that important.  There

03:13PM 6    was a claim against a group of attorneys, and it had to do with a

03:13PM 7    patent, and patent claims, malpractice claims against the

03:13PM 8    attorneys and so forth, and there was an employment contract with

03:13PM 9    the attorneys, there was another contract.  Basically, I held in

03:13PM 10   that case that this equitable estoppel theory did apply and the

03:13PM 11   Fifth Circuit affirmed.  I wish I could quote you the name of

03:13PM 12   that case.  I can't.

03:13PM 13         So the problem I guess I'm having here is that once

03:14PM 14   we know that the case against AT&T is going to have to be

03:14PM 15   arbitrated if it's pursued, you know, can it make any sense to

03:14PM 16   allow, you know, your case to go forward against Apple

03:14PM 17   independently of that, when it does seem to be intertwined and

03:14PM 18   interdependent here.  So that's what you need to talk about.

03:14PM 19         MR. STRANGE:  Thank you, Your Honor, I appreciate that

03:14PM 20   guidance.

03:14PM 21         I think that that analysis is covered by the

03:14PM 22   Fifth Circuit in the *Weingarten* case, and which itself cites --

03:14PM 23         THE COURT:  That's the loan guarantee case?

03:14PM 24         MR. STRANGE:  That's the loan guarantee case.  Which

03:14PM 25   itself cites the *Westmoreland* case, decided in 2002, a Fifth

03:14PM 1    Circuit case.  Going back to *Westmoreland* for a minute, the Court

03:15PM 2    there held that there could be and should not be and it was error

03:15PM 3    to compel arbitration against a nonsignatory when their suit did

03:15PM 4    not seek to enforce any duty involved in the agreement.  So let

03:15PM 5    me back up for a minute about that analysis.

03:15PM 6            THE COURT:  But don't you, in this case, don't you have

03:15PM 7    to prove, I mean, your brief or whoever filed the brief sort of

03:15PM 8    glossed over, it seems to me, the issue of whether the WSA

03:15PM 9    obligated AT&T to provide MMS services and/or whether AT&T

03:15PM 10   breached that agreement in some way, and then of course whether

03:16PM 11   Apple should have advised people of this, either wrongfully,

03:16PM 12   improperly disclosed or failed to disclose.

03:16PM 13           I don't know how you prove your case without

03:16PM 14   proving the case against AT&T in effect.

03:16PM 15           MR. STRANGE:  Your Honor, let me address that issue

03:16PM 16   because I absolutely hoped to convince you in denying this motion

03:16PM 17   that our claims against Apple are not dependent on the claims

03:16PM 18   against AT&T.  It is true, Your Honor, that we initially filed a

03:16PM 19   case against AT&T and Apple and made allegations in that case,

03:16PM 20   but I think the issue for Your Honor, and this is why I go back

03:16PM 21   to the *Westmoreland* and *Weingarten* cases, the issue for

03:16PM 22   Your Honor is, are there any claims that plaintiffs are making

03:16PM 23   which they can litigate to a judgment without having Your Honor

03:16PM 24   interpret the contract or being involved with AT&T?  And I think,

03:17PM 25   and the reason I say that is there any claims, the language that

03:17PM 1    I'm getting for that is in the *Weingarten* case, where the Court,

03:17PM 2    I have the Westlaw cite, Your Honor, 661 F.3d 904, states, "An

03:17PM 3    arbitration agreement may be invoked by a nonsignatory only in

03:17PM 4    'rare circumstances,'" citing to *Westmoreland.*  The Court said

03:17PM 5    that that can happen, "When each of the signatory claims against

03:17PM 6    a nonsignatory make reference or presume the existence of the

03:17PM 7    written agreement."

03:17PM 8             So with that in mind, I would like to talk about

03:17PM 9    what our claims are, not what Apple says our claims are, but what

03:17PM 10   our theories are that can be alleged.

03:18PM 11            I think we've tried to make clear that when the

03:18PM 12   iPhone came out, every phone, every workable phone, even these

03:18PM 13   simple flip phones had the ability to have MMS messaging,

03:18PM 14   including pictures.  So the consumers, and part of our claims

03:18PM 15   here, and we've alleged them before, is that Apple represented it

03:18PM 16   had those capacities also, so you had the consumers' expectation,

03:18PM 17   you have the representations by Apple, nothing to do with AT&T,

03:18PM 18   you have a consumer purchasing a phone at the point of sale, with

03:18PM 19   that understanding, and you have a consumer getting a phone that

03:18PM 20   does not have those capabilities.  Those representations and that

03:18PM 21   sale and that point of sale by AT&T are before the consumer even

03:18PM 22   contracts with AT&T.  So those are claims about the

03:19PM 23   misrepresentation and the sales practices.  That's the name of

03:19PM 24   this MDL.  That has nothing to do with AT&T.  Those claims have

03:19PM 25   to survive.  As much as Apple wants to say that they are related

03:19PM 1    to AT&T, they are not, because I just stated what the claims

03:19PM 2    were.  If we need to amend our complaint to make it clearer than

03:19PM 3    it already is, we can do that.

03:19PM 4          But the point I think, Your Honor, is, is that

03:19PM 5    claim intertwined with AT&T, and the answer is no.  Not only is

03:19PM 6    it intertwined, it has to --

03:19PM 7          THE COURT:  But you don't allege that there was anything

03:19PM 8    wrong with the phone itself, with the Apple iPhone.  That the

03:19PM 9    phone didn't have the capability of MMS messaging?

03:19PM 10         MR. STRANGE:  We were not sure and we're still not sure

03:19PM 11   whether it's the phone or the network.

03:19PM 12         THE COURT:  There has been no representation of that or

03:19PM 13   evidence of that that I've ever seen.

03:19PM 14         MR. BICKFORD:  Your Honor, I'm going to have to leave in

03:20PM 15   a few minutes and I apologize to the Court for that.  I just

03:20PM 16   didn't want to interrupt.

03:20PM 17         THE COURT:  Okay.

03:20PM 18         MR. MEYER:  I'm Andrew Meyer for the PSC.  It's a little

03:20PM 19   bit difficult because of how we divide up the argument.  I

03:20PM 20   apologize for jumping in, but I was going to be arguing the

03:20PM 21   Motion to Dismiss, and so I wanted to answer your question,

03:20PM 22   because as a part of my argument I wanted to say that in

03:20PM 23   paragraph 9, for instance, of the complaint, we allege that the

03:20PM 24   iPhone's MMS function was knowingly and consciously disabled

03:20PM 25   while at the same time defendants advertised that MMS was a

03:20PM 1  feature included with the iPhone 3G and 3GS.

03:20PM 2        THE COURT:  They turned it off because it wouldn't work

03:20PM 3  because the AT&T network couldn't handle it.  There wasn't

03:20PM 4  anything wrong with the phone.  You're not alleging any product

03:20PM 5  liability against the phone.

03:20PM 6        MR. MEYER:  No.  What we're alleging is that Apple knew

03:21PM 7  that and notwithstanding that represented to consumers that the

03:21PM 8  phone would have that functionality, despite the fact that they

03:21PM 9  themselves, Apple, turned it off.  Yet they represented to

03:21PM 10 consumers that it has it.  They also allow consumers to have the

03:21PM 11 expectation that it has it because that's what all phones have.

03:21PM 12 Apple makes all of these representations to consumers about what

03:21PM 13 a revolutionary phone this is and it does everything under the

03:21PM 14 sun.  So the average consumer comes to the table --

03:21PM 15       THE COURT:  They make a pretty strong argument that they

03:21PM 16 disclosed all of this.  It wouldn't be available to, you know, it

03:21PM 17 was available a few months later when AT&T built their network

03:21PM 18 up.

03:21PM 19       MR. STRANGE:  With respect to the adequacy of their

03:21PM 20 disclosures, which we think are not only woefully inadequate, we

03:21PM 21 think they are intentionally misleading.  But that just proves

03:21PM 22 our point.  Apple's point is they are not liable because they

03:21PM 23 made disclosures regarding their representations.  We don't need

03:21PM 24 AT&T to adjudicate the liability of Apple.  Because our

03:21PM 25 allegations and our contentions with respect to this claim, and

03:22PM 1    I'm going to get to the other ones in a minute, with respect to

03:22PM 2    this claim is that Apple made representations and Apple made

03:22PM 3    omissions regarding what its phone could do.  Whether it was

03:22PM 4    AT&T, Sprint or Joe Blow provider doesn't matter.

03:22PM 5                In fact, the case, one of the cases we cited,

03:22PM 6    Your Honor, that deals with a phone manufacturer and a carrier is

03:22PM 7    the *Nokia versus AT&T* case.  That's a 2004 case, and it is a

03:22PM 8    state court case, but the Court, in a pretty good analysis denied

03:22PM 9    a Motion to Compel by the manufacturer of the phone saying that

03:22PM 10   its claims, the claim with respect to the duties, you know,

03:22PM 11   imposed or the duties that that manufacturer had are independent

03:22PM 12   of the carrier.  Here Apple can't -- Apple can't make

03:23PM 13   misrepresentations at the point of sale of its phone and then

03:23PM 14   say, Okay, but we get the benefit of this arbitration clause that

03:23PM 15   hasn't even been agreed to by the consumer at the time he buys

03:23PM 16   the phone.  If we want to talk about equities, that, those facts

03:23PM 17   are compelling to not compel arbitration on that claim.

03:23PM 18                By Apple contending that their disclosures were

03:23PM 19   adequate or that they didn't really make these representations,

03:23PM 20   those just go to the merits and not to whether AT&T is necessary

03:23PM 21   to adjudicate whether Apple is liable.

03:23PM 22                It seems to me, Your Honor, that the fundamental

03:23PM 23   issue for the Court is, are the duties that the law imposes Apple

03:23PM 24   independent duties that don't require Your Honor to adjudicate

03:24PM 25   what AT&T did.

03:24PM 1          So as to the representations by Apple, it clearly

03:24PM 2    can't.  That, I think is in line with the *Weingarten* and the

03:24PM 3    *Westmoreland* case and the *Nokia* case.

03:24PM 4          Your Honor is quite familiar, in the *Weingarten*

03:24PM 5    case, which is a recent case, November 2011, where the

03:24PM 6    Fifth Circuit upheld a denial of a motion to arbitrate by a

03:24PM 7    nonsignatory, in that case there was a guarantee to a loan and a

03:24PM 8    loan itself.  Even though, you know, the issue of whether the

03:24PM 9    loan itself wasn't paid was going to be at issue in the case, the

03:24PM 10   Court said, Well, so what.  That's just kind of a background.

03:24PM 11   The issue is whether this guarantee is enforceable.

03:25PM 12         And here the issue is, did Apple make

03:25PM 13   misrepresentations that induced the consumers to purchase this

03:25PM 14   phone, and that has nothing to do with AT&T.  So that's one point

03:25PM 15   I would like to make to Your Honor.

03:25PM 16         And with respect to the other theories of

03:25PM 17   plaintiffs, it is true that we have a claim against AT&T for

03:25PM 18   charging for MMS but not providing it.  But that's separate from

03:25PM 19   the issue we just discussed about.  Also, it's separate from

03:25PM 20   another theory against Apple is, does Apple have affirmative

03:25PM 21   obligations under the law not to make misrepresentations.  The

03:25PM 22   next area of liability is, does it have affirmative obligations

03:25PM 23   not to make omissions.

03:25PM 24         And with respect to plaintiff's claim on the

03:25PM 25   omission of the fact that the consumers had to pay for MMS, what

03:26PM 1   we have to prove in that claim, Your Honor, is that the consumer

03:26PM 2   paid MMS.

03:26PM 3           THE COURT:  Doesn't that get into the claim against

03:26PM 4   AT&T?

03:26PM 5           MR. STRANGE:  No, Your Honor, we don't even have to have

03:26PM 6   AT&T in the court.  The consumer -- we can prove that the

03:26PM 7   consumer paid for MMS by looking at what the consumers' checks

03:26PM 8   say and what the bills say.

03:26PM 9           THE COURT:  The bill says MMS?

03:26PM 10          MR. STRANGE:  Absolutely.  So it's not -- there is no

03:26PM 11  dispute.

03:26PM 12          THE COURT:  You know, you say that, but I can't believe

03:26PM 13  that AT&T, if they were still in the case, would come in and roll

03:26PM 14  over and say, You're right, we were billing you for something

03:26PM 15  that we weren't providing, so essentially they would be admitting

03:26PM 16  they defrauded you.  You don't think AT&T is going to dispute

03:26PM 17  that?

03:26PM 18          MR. STRANGE:  I mean, you know, we do have a copy of the

03:26PM 19  bill and we did provide it in a previous briefing, and we're

03:27PM 20  happy to do it post-argument, but it's pretty compelling.  There

03:27PM 21  is a bill that says MMS and the consumer did pay it, so --

03:27PM 22          THE COURT:  There is a separate line item for that?

03:27PM 23          MR. STRANGE:  Yes.  We'll submit that to Your Honor.

03:27PM 24  But we're not talking about the Service Agreement.  We're talking

03:27PM 25  about whether the consumer paid for a service.  It's undisputed.

48

03:27PM 1      THE COURT:  Well, how can you talk about whether they

03:27PM 2  paid for a service without talking about the Service Agreement?

03:27PM 3      MR. STRANGE:  Well, I don't think whether they, whether

03:27PM 4  the consumer paid for a service is -- you have to get into the

03:27PM 5  agreement.  The question is whether they were billed for a

03:27PM 6  service and whether they were billed for MMS.  We can determine

03:27PM 7  that based on the bill.  Your Honor, even if we did have to take

03:27PM 8  AT&T's deposition and liken the --

03:27PM 9      THE COURT:  I don't know how any of that billing works.

03:28PM 10 It seems to me I can envision all sorts of issues.  They could

03:28PM 11 say that they have a flat charge with or without MMS.  I don't

03:28PM 12 know.  You know, the bill could be the same with or without it.

03:28PM 13 Did the bill go up at some point when they started providing MMS?

03:28PM 14     MR. STRANGE:  No.

03:28PM 15     THE COURT:  The bill was the same?

03:28PM 16     MR. STRANGE:  Yes.

03:28PM 17     THE COURT:  There are all sorts of arguments or defenses

03:28PM 18 that could be made that I can envision just sitting here.  I'm

03:28PM 19 sure good lawyers for AT&T can come up with a lot of additional

03:28PM 20 arguments as to why they didn't breach their contract.  If they

03:28PM 21 didn't breach their contract, it doesn't seem like you have a

03:28PM 22 claim against Apple because Apple didn't misrepresent anything if

03:28PM 23 there is no breach by AT&T.

03:28PM 24     MR. STRANGE:  Well, Your Honor, that was going to be my

03:28PM 25 next point.

03:28PM 1          THE COURT:  Okay.

03:28PM 2          MR. STRANGE:  The breach of contract, whether AT&T did

03:28PM 3   breach its contract or did not breach its contract, is not

03:29PM 4   something we have to prove for our next claim to happen

03:29PM 5   because --

03:29PM 6          THE COURT:  What is your next claim?

03:29PM 7          MR. STRANGE:  The claim that AT&T failed to --

03:29PM 8          THE COURT:  Apple failed to -- here is the three claims

03:29PM 9   you have alleged:  I'm not reading them in order you have them

03:29PM 10  listed, but Apple failed to disclose that AT&T's data plan

03:29PM 11  required MMS that service would not be provided to plaintiffs.

03:29PM 12  That certainly is dependent upon you proving that AT&T's data

03:29PM 13  plan required MMS, which was not provided, right?

03:29PM 14         MR. STRANGE:  Yes, the way that's --

03:29PM 15         THE COURT:  Well, I don't know how that's not dependent

03:29PM 16  on the WSA, that particular claim there.

03:29PM 17         MR. STRANGE:  Your Honor, you know, as a factual matter,

03:29PM 18  like in the *Weingarten* case when they have the proof that the

03:30PM 19  loan wasn't paid, it seems to me, just because we would have to

03:30PM 20  show to -- assuming that our claim is as follows, Your Honor,

03:30PM 21  that Apple knew that the consumers would have to pay for MMS when

03:30PM 22  they would not receive MMS, assuming that's our claim, it seems

03:30PM 23  to me we have to prove what Apple knew, and whether the plaintiff

03:30PM 24  paid for MMS and whether they received MMS.

03:30PM 25         And regardless of how Apple wants to argue about

03:30PM 1   what their contract says or doesn't say, whether that's a breach

03:30PM 2   of their contract or not, is not something that has to be

03:30PM 3   determined for that claim.  It seems to me all we have to prove

03:30PM 4   is the consumer paid for MMS but did not receive it.

03:31PM 5              And so the answer to that question, Your Honor, we

03:31PM 6   would have to determine --

03:31PM 7         THE COURT:  Well, you first have to prove that they were

03:31PM 8   supposed to provide it, that they didn't provide it, and that you

03:31PM 9   paid for it.

03:31PM 10        MR. STRANGE:  No, I don't think we have to prove the

03:31PM 11  first point, Your Honor.

03:31PM 12        THE COURT:  You certainly have to prove that you didn't

03:31PM 13  get it and you paid for it.

03:31PM 14        MR. STRANGE:  Yes.

03:31PM 15        THE COURT:  Okay.  You don't think some of that is going

03:31PM 16  to be disputed?

03:31PM 17        MR. STRANGE:  I don't see how AT&T can dispute whether

03:31PM 18  or not they provided the service.  I think it's undisputed they

03:31PM 19  didn't or they wouldn't have millions of consumers --

03:31PM 20        THE COURT:  And that they billed you for something they

03:31PM 21  didn't provide?

03:31PM 22        MR. STRANGE:  Right.

03:31PM 23        THE COURT:  You don't think they are going to dispute

03:31PM 24  that?

03:31PM 25        MR. STRANGE:  I don't see how they can, Your Honor, they

03:31PM 1   either did or they didn't.

03:31PM 2       THE COURT:  No, they did or didn't provide it.  Whether

03:31PM 3   they did or did not bill you for something they didn't provide is

03:31PM 4   another question.

03:31PM 5       MR. STRANGE:  Right.  But it seems to me it can only go

03:31PM 6   one way or the other.  We're not asking for --

03:31PM 7       THE COURT:  No, they could say, We didn't provide it but

03:32PM 8   we weren't billing you extra for it at the time.

03:32PM 9       MR. STRANGE:  Right.  Then we lose.

03:32PM 10      THE COURT:  Okay.  Whether you lose because your claim

03:32PM 11  failed against AT&T.

03:32PM 12      MR. STRANGE:  No, but in other words, if we were suing

03:32PM 13  AT&T in the contract, we would have -- you would have to -- we

03:32PM 14  would have to bring the contract to Your Honor, and you would

03:32PM 15  have to say, I reviewed this contract and I believe that it

03:32PM 16  obligates AT&T to provide MMS, and I understand the facts are

03:32PM 17  that it didn't provide it, and so therefore it's a breach of

03:32PM 18  contract.  You have to interpret whether the contract obligates

03:32PM 19  them to provide it.

03:32PM 20          What I'm saying for plaintiffs to prevail against

03:32PM 21  Apple on this claim is only that the consumers were billed for

03:32PM 22  MMS, paid for it and didn't get it, and that Apple knew that the

03:32PM 23  consumers were going to be required to pay for it and not get it

03:33PM 24  and didn't tell them that.

03:33PM 25          And so with respect to that claim, Your Honor,

03:33PM 1   either AT&T provided MMS or it didn't.  I mean, that's really a

03:33PM 2   yes-or-no question.  Whether the consumers paid for MMS or didn't

03:33PM 3   is also a yes-or-no question.

03:33PM 4           So those, I mean, we're not contending AT&T is

03:33PM 5   liable.  We don't have to prove that AT&T had to provide it, or

03:33PM 6   et cetera, under their contract.  It's just a factual matter.

03:33PM 7   Factually did they provide it, did the plaintiffs pay for it?

03:33PM 8           I mean, if we were suing -- if we were suing under

03:33PM 9   a theory which required us to prove that AT&T breached their

03:33PM 10  contract, I would agree with you.  But under our theory which I

03:33PM 11  just mentioned, we don't care whether AT&T breached the contract

03:33PM 12  or not.  We don't care what their contract says.  What we care

03:34PM 13  about is what Apple said the consumer was going to get and what

03:34PM 14  the consumer received.

03:34PM 15          THE COURT:  Okay.  I understand your argument.

03:34PM 16          MR. STRANGE:  So and I think the case that most closely

03:34PM 17  analyzes this particular issue is the *Weisblatt* case, and that's

03:34PM 18  the iPad case, Your Honor.  In that case, the theory by the

03:34PM 19  plaintiffs was that they purchased this iPad and that they were

03:34PM 20  being billed, you know, for this service that they could either

03:34PM 21  turn off or on.  There the Court I think correctly said, and very

03:34PM 22  closely to our case, the Court said that the liability of Apple

03:35PM 23  can be determined without regard to the intent, knowledge or

03:35PM 24  liability of AT&T.

03:35PM 25          So with respect to our facts, can plaintiffs

03:35PM 1    prevail on a claim against Apple regarding their representations

03:35PM 2    for MMS, without regard to the intent, knowledge or liability of

03:35PM 3    AT&T, and I think the answer is yes, because we do not have to

03:35PM 4    prove what AT&T intended, whether they intended or not to provide

03:35PM 5    MMS, whether they intended or not to bill it.  We don't care.

03:35PM 6    Maybe it was an accident.  Maybe AT&T could say, Yeah, we

03:35PM 7    shouldn't have done that.  But who cares.  I mean, the question

03:35PM 8    is, did the consumer pay for MMS and did they receive it?

03:35PM 9           And so the knowledge of AT&T is not imputed, and

03:36PM 10   whether that breaches a contract of the WSA is not relevant

03:36PM 11   either.

03:36PM 12          So this is a case that -- and I think that all of

03:36PM 13   the courts have looked at, particularly with nonsignators it

03:36PM 14   rises and falls on the facts.  If, as the *Weingarten* case noted,

03:36PM 15   if we have a -- if each of our claims were dependent upon the

03:36PM 16   liability of AT&T, it's one thing, but if they are not, is it

03:36PM 17   fair for AT&T, who not only had one contract, had two contracts

03:36PM 18   with the consumer, never put an arbitration clause in it,

03:36PM 19   actually used the iTunes service to try to upload software which

03:36PM 20   would allow the MMS to work on the phone, they have these two

03:36PM 21   contracts, they have no arbitration clause and, Your Honor, the

03:36PM 22   AT&T arbitration clause itself doesn't even list Apple as a party

03:37PM 23   that has a right to arbitrate by it.

03:37PM 24          And the reason I think that's relevant, there is a

03:37PM 25   case that says that's exactly relevant, but just out of fairness,

03:37PM 1   if you want to talk about fairness, Apple knew that AT&T was

03:37PM 2   going to be their exclusive provider.  So they could have had an

03:37PM 3   arbitration, they could have had that arbitration clause.  They

03:37PM 4   could have negotiated that.  They could have put in an

03:37PM 5   arbitration clause themselves.  But what they really want to do

03:37PM 6   is, post-*Concepcion*, they want to say, We want a ban on class

03:37PM 7   actions, too.  We wish we would have put it in our -- and we want

03:37PM 8   to make this case go away, not that we want to arbitrate, we want

03:37PM 9   to try to latch on to some provisions of this agreement that the

03:37PM 10  consumer never agreed to with us.

03:37PM 11          THE COURT:  All right.  Do you want to let your

03:37PM 12  co-counsel argue?

03:37PM 13          MR. STRANGE:  Thank you.

03:38PM 14          MR. MEYER:  Thank you, Your Honor.  Again, Andrew Meyer

03:38PM 15  on behalf of the Plaintiffs' Steering Committee.  I'll try to be

03:38PM 16  brief and not duplicate too much of what my colleague said if not

03:38PM 17  much at all duplication.  I think it's important to say that for

03:38PM 18  the purposes of the indispensable party analysis and also the

03:38PM 19  arbitration analysis that you keep in mind there is two

03:38PM 20  transactions at issue that we're attacking.  We attacked in our

03:38PM 21  initial complaint.

03:38PM 22          The first transaction was the consumers' purchase

03:38PM 23  of the iPhone.  The second transaction was the consumer entering

03:38PM 24  into the Wireless Service Agreement with AT&T.  The AT&T issue

03:38PM 25  and the AT&T Wireless Services Agreement, that's out of the case

03:38PM 1   with the dismissal of AT&T.

03:38PM 2          But the question of the consumers' purchase of the

03:38PM 3   iPhone from Apple is what's alive in the case now.  That

03:38PM 4   transaction and the representations that Apple made to the

03:38PM 5   consumers inducing them to purchase the iPhone are what we attack

03:38PM 6   now.  Those misrepresentations are independent of the Wireless

03:39PM 7   Services Agreement.

03:39PM 8          And my colleague was discussing it at length, so I

03:39PM 9   won't harp on the point too much but to say that really, some of

03:39PM 10  the questions you're asking, Your Honor, are questions of fact.

03:39PM 11  Did AT&T provide MMS?  What does the AT&T bill say?  What does it

03:39PM 12  charge the consumer for?  Those are factual questions.  Those are

03:39PM 13  not contractual questions.  It doesn't matter if the Wireless

03:39PM 14  Services Agreement calls that feature MMS or whether it calls it

03:39PM 15  picture messaging or it calls it a data plan or whatever.  There

03:39PM 16  is no need to go into the depths of the Wireless Services

03:39PM 17  Agreement and interpret that in order to resolve that question.

03:39PM 18  What would be important is, is the factual matter, did the

03:39PM 19  consumer get MMS services that were billed by Apple as being

03:39PM 20  available on that phone?

03:39PM 21          THE COURT:  It wasn't billed by Apple.

03:39PM 22          MR. MEYER:  I'm sorry, billed in the sense of

03:39PM 23  represented.  Represented by Apple of being a feature of the

03:39PM 24  phone.

03:39PM 25          And Your Honor asked me earlier when I was up about

03:40PM  1   Apple contending that those were not the representations that it

03:40PM  2   made.  That it only made a few limited representations about the

03:40PM  3   3G phone and it made certain limitations when it made

03:40PM  4   representations about the 3GS phone.  Well, those are questions

03:40PM  5   of fact.  That's what discovery is about.  Our complaint, even

03:40PM  6   though, you know, now that we've dropped AT&T, it's not as clean

03:40PM  7   as we would like, it is sufficient to state a cause of action

03:40PM  8   against Apple that is independent of the Wireless Services

03:40PM  9   Agreement.  You need not go into the intricacies of the Wireless

03:40PM 10   Services Agreement to determine that consumers did not get what

03:40PM 11   they thought they were getting when they bought an Apple iPhone.

03:40PM 12   Separate and apart of what happened when they entered into the

03:40PM 13   Wireless Services Agreement, when they signed that document at

03:40PM 14   the AT&T Store, online or however else that happened.

03:40PM 15          Also counsel for Apple has talked about Judge Ware

03:40PM 16   and the two different cases where Judge Ware has, you know, not

03:41PM 17   allowed a case to proceed against Apple in the absence of AT&T,

03:41PM 18   but I think it's important to note that in both of those cases

03:41PM 19   the facts were different.

03:41PM 20          In this case, we're talking about

03:41PM 21   misrepresentations and omissions by Apple inducing consumers to

03:41PM 22   buy a product that did not do what they thought it would do.

03:41PM 23          In the 3GS speed case, the crux of the problem is

03:41PM 24   that both the network and the phone did not work as advertised.

03:41PM 25   In order to prove the plaintiffs' claim, the Court would have to

03:41PM 1   get into how much of that was a problem with the network, how

03:41PM 2   much of that was a problem with the phone.  In that instance,

03:41PM 3   both those parties AT&T and Apple had to be present in the case.

03:41PM 4   In our case, by contrast, you don't need to know.  It doesn't

03:41PM 5   really matter specifically whether it's a technical breach of

03:41PM 6   contract that AT&T did not provide MMS services.  If they didn't

03:42PM 7   provide it and Apple led consumers to believe that they were

03:42PM 8   going to have it, that was an independent misrepresentation.

03:42PM 9        THE COURT:  Is there something to that case, because in

03:42PM 10  that case the argument was that they advertised the phone as

03:42PM 11  being twice as fast.  The plaintiff said, you know, the argument

03:42PM 12  was, the allegation was that that was deceptive advertising,

03:42PM 13  misrepresentation or whatever you want to call it.  Then there

03:42PM 14  was some question about whether it was the phone's fault or the

03:42PM 15  network's fault or whatever.  But the fact, according to the

03:42PM 16  plaintiffs was, it was not twice as fast.  That strikes me as

03:42PM 17  pretty similar to what you all arguing in this case.

03:42PM 18       MR. STRANGE:  Your Honor, could I address that?  Excuse

03:42PM 19  me.

03:42PM 20       THE COURT:  Yes, sure.

03:42PM 21       MR. STRANGE:  Because I'm familiar with that case.  I

03:42PM 22  actually consulted on that case, and I know Judge Ware.  I was

03:42PM 23  familiar with that decision.  The problem with that case is that

03:43PM 24  the contention was that the Apple phone was twice as fast.  Apple

03:43PM 25  was saying, Well, it is twice as fast.  It's just that the AT&T

03:43PM  1    network won't make it happen.

03:43PM  2          THE COURT:  Doesn't that strike you as very similar to

03:43PM  3    what you're arguing here?

03:43PM  4          MR. STRANGE:  No.

03:43PM  5          THE COURT:  That the iPhone was represented as being

03:43PM  6    capable of providing MMS messaging when, in fact, it wasn't.  The

03:43PM  7    reason it wasn't is because the AT&T network wasn't capable of

03:43PM  8    providing that service at that time.  It strikes me as very

03:43PM  9    similar.

03:43PM 10          MR. STRANGE:  Let me try to dissuade you of that because

03:43PM 11    when that case was filed, the allegation about the speed of the

03:43PM 12    network was seminal.  The speed of the AT&T network was seminal

03:43PM 13    in the case, so much so that Judge Ware granted a Motion to

03:43PM 14    Dismiss under the preemption doctrine because their claims were

03:44PM 15    preempted under the *Bastien* line of cases about the Federal

03:44PM 16    Communications Act.

03:44PM 17          So he granted that Motion to Dismiss and left very

03:44PM 18    few claims, all of which were based seminal to determine whether

03:44PM 19    the phone actually was faster or whose fault it was really had

03:44PM 20    you delve into the capability of that network.

03:44PM 21          The distinction I would make here is that the issue

03:44PM 22    here, it doesn't matter why MMS wasn't provided.  It doesn't --

03:44PM 23    what matters is whether the consumers thought it was something

03:44PM 24    they were getting, whether they were told --

03:44PM 25          THE COURT:  Couldn't the plaintiffs in the other case

03:44PM 1 make the same exact argument?  It doesn't matter why it's not

03:44PM 2 twice as fast.  It's not twice as fast so we can sue Apple

03:45PM 3 independent of AT&T.

03:45PM 4     MR. STRANGE:  They could have and they did.  But I think

03:45PM 5 what Judge Ware decided, and I'm not sure if it's legally

03:45PM 6 correct, but what he decided was, look, when we first came here,

03:45PM 7 we did all this litigation about the speed of the network and I

03:45PM 8 made a preemption ruling because you brought up the whole issue

03:45PM 9 about the adequacy of this network.  So Judge -- from

03:45PM 10 Judge Ware's perspective he's saying this whole case seems to be

03:45PM 11 about the network as you framed it.  But I'm not so sure that

03:45PM 12 it's correct, in all due respect to that opinion, to say, well,

03:45PM 13 you made that allegation, so therefore, you know, you can't now

03:45PM 14 make a factual allegation that it's all based on the speed of the

03:45PM 15 network as an independent claim.

03:45PM 16     I don't know, but it seems to me from my reading of

03:45PM 17 the case is that if a claim, like the *Weingarten* case, if a claim

03:45PM 18 doesn't require you to, you know, interpret some contract, then

03:46PM 19 you can have a nonsignatory grab on to a signatory's arbitration

03:46PM 20 clause.  So and that of course that was more of a --

03:46PM 21     THE COURT:  Excuse me one second.

03:46PM 22     Thank you, I'm sorry.  Go ahead, Mr. Strange.

03:46PM 23     MR. STRANGE:  I think that Judge Ware's opinion is more

03:46PM 24 squarely involved in the necessary party analysis as opposed to

03:46PM 25 an equitable argument.  Here, when we're talking about equities,

03:46PM 1   we have independent claims against AT&T -- I mean against Apple

03:46PM 2   and AT&T.  The fact that we dismissed one party doesn't mean we

03:46PM 3   can't proceed on the claims because our factual basis, we don't

03:46PM 4   care why they didn't provide MMS.  All we care is what the

03:46PM 5   consumers, whether their expectations were reasonable they would

03:47PM 6   get it.

03:47PM 7           So that's how I distinguish Judge Ware's decision.

03:47PM 8   On the antitrust case, the whole principal there was there was a

03:47PM 9   tying arrangement between, according to the plaintiffs, about the

03:47PM 10  exclusivity of the AT&T contract and when it was -- the consumer

03:47PM 11  thought it would only last for two years when, in fact, Apple has

03:47PM 12  this secret five-year contract that they didn't know about.  So

03:47PM 13  that requires necessarily the interpretation of those contracts.

03:47PM 14  Here I would say if it's a factual background, I think the courts

03:47PM 15  have stated if it's a factual background that the nonsignatory

03:47PM 16  can't get the benefit of this arbitration clause.  So I apologize

03:47PM 17  for that.

03:47PM 18          MR. MEYER:  No, I mean, unless Your Honor has any

03:47PM 19  specific other questions that are related to the (b)7 motion, I

03:48PM 20  think I've pretty much.

03:48PM 21          THE COURT:  No, I do not.  Thank you.

03:48PM 22          MR. MEYER:  Thank you, Your Honor.

03:48PM 23          THE COURT:  I'll give you about three minutes to

03:48PM 24  respond.

03:48PM 25          MS. PREOVOLOS:  Mr. Urquhart suggested that I take no

03:48PM 1 more, so I think I can comply with that.

03:48PM 2          THE COURT:  Okay.  I'll take this under advisement.

03:48PM 3          MS. PREOVOLOS:  I did actually want to make --

03:48PM 4          THE COURT:  I thought you said you didn't want to take

03:48PM 5 any more time.

03:48PM 6          MS. PREOVOLOS:  No, no, I said Mr. Urquhart advised me

03:48PM 7 to take more than that.

03:48PM 8          THE COURT:  I misunderstood.

03:48PM 9          MS. PREOVOLOS:  Everyone but me wants me to be quiet but

03:48PM 10 it's very hard to make a lawyer be quiet.  I really do only have

03:48PM 11 three minutes.

03:48PM 12          THE COURT:  I forgot about -- Ms. Anello, are you still

03:48PM 13 with us?

03:48PM 14          MS. ANELLO:  Yes, Your Honor.

03:48PM 15          THE COURT:  Go ahead.

03:48PM 16          MS. PREOVOLOS:  I just want to bring it back to the

03:48PM 17 beginning.  First of all, I just want to emphasize, whatever the

03:49PM 18 plaintiffs say, they are not dropping their complaint.  They are

03:49PM 19 not dropping their claims about AT&T's supposed duty to provide

03:49PM 20 MMS or AT&T's supposed billing with respect MMS.  I don't think

03:49PM 21 this Court can adjudicate those claims.

03:49PM 22          THE COURT:  What's your response to the three cases in

03:49PM 23 particular that Mr. Strange referred to, the *Weingarten*, was it

03:49PM 24 *Westmoreland* and iPad case?

03:49PM 25          MS. PREOVOLOS:  Yeah, *Weisblatt*.  So *Weingarten* is

03:49PM 1   purely an arbitration case.  It's not an indispensable party

03:49PM 2   case.  In the *Weingarten* court, and I brought that one up.  That

03:49PM 3   was in my three minutes.  I actually have the F.3d opinion, so

03:49PM 4   but there the Court says, and I direct the Court's attention to

03:49PM 5   page -- I'm looking for the jump cite, just to make sure I have

03:50PM 6   the right version of the case for you.  I apologize.

03:50PM 7           So I'm looking at page 8 of the Westlaw opinion.

03:50PM 8   On page 8 of the Westlaw opinion, the Court basically says the

03:50PM 9   claim under the guarantee agreement doesn't depend on the loan

03:50PM 10  agreement.  It's true that if the loan agreement had been carried

03:50PM 11  out, the guarantee agreement might not be relevant.  But the

03:50PM 12  Court says --

03:50PM 13          THE COURT:  They didn't have to prove a default on the

03:50PM 14  loan, but the borrower --

03:50PM 15          MS. PREOVOLOS:  That's what the Court says.  The Court

03:50PM 16  said, "Thus none of the transactions," well, basically it's

03:50PM 17  undisputed.  "None of the transactions at issue in the loan

03:50PM 18  agreement occurred.  Instead the guarantors were merely asked to

03:50PM 19  pay as they contracted to do, solely in the limited guarantee."

03:50PM 20  The Court goes through a series of ways in which the loan might

03:50PM 21  be relevant and finds that, in fact, the effort to enforce the

03:50PM 22  guarantee doesn't depend on the loan agreement.  That's very

03:50PM 23  different here.

03:50PM 24          THE COURT:  What about the iPad case?

03:51PM 25          MS. PREOVOLOS:  *Weisblatt* is a totally different case.

03:51PM 1    I should say that I'm counsel of record in the *Weisblatt* case for

03:51PM 2    Apple, so I can speak to it.  *Weisblatt* was a few things:  First

03:51PM 3    of all, Judge Ware distinguishes the *Weisblatt* case on the ground

03:51PM 4    in his December 9, 2010 ruling, and I would urge the Court to

03:51PM 5    look at that.  But basically the *Weisblatt* case was decided

03:51PM 6    before *Concepcion*.  It was decided right as *Concepcion*, right

03:51PM 7    when the Supreme Court granted hearing in *Concepcion*.

03:51PM 8             Judge White said there are claims against Apple and

03:51PM 9    claims against AT&T.  I'm not going to stay any of the case

03:51PM 10   pending *Concepcion* because I think this is a different kind of

03:51PM 11   case, which is what Judge Ware said, too.  It's a straight-up

03:51PM 12   false advertising case.

03:51PM 13            And Judge White said, you know, so there was a

03:51PM 14   plaintiff who had claims against AT&T there who hadn't even

03:52PM 15   signed the WSA.  So it was a very different kind of case.  But

03:52PM 16   Judge White said, I'm not going to stay discovery as to Apple.

03:52PM 17   That's all he said, I'm not going to stay discovery as to Apple

03:52PM 18   because I think that there are straight-up false advertising

03:52PM 19   claims against Apple that have nothing to do with AT&T and don't

03:52PM 20   require proof of anything disputed against AT&T.  That's not this

03:52PM 21   case.

03:52PM 22            Plaintiffs try to say it is.  That was the other

03:52PM 23   thing I wanted to talk about.  The plaintiffs say, Well, we have

03:52PM 24   three claims and they are all independent.  I think the Court

03:52PM 25   sees why the claim about the supposed obligation to tell

03:52PM  1   plaintiffs that the WSA -- for Apple to tell plaintiffs that the

03:52PM  2   WSA promised them MMS and they didn't get it or that they were

03:52PM  3   billed for MMS and didn't get it.  I think we don't need to see

03:53PM  4   more about why that can't happen without AT&T.  But the

03:53PM  5   plaintiffs say, No, no, we have this other claim that Apple

03:53PM  6   misrepresented the availability of MMS and that's a separate and

03:53PM  7   independent claim.

03:53PM  8            I want to respond to that because I think, I think

03:53PM  9   the Court already sees a problem with that argument.  But that's,

03:53PM 10   that's the claim we moved to dismiss back in the day.  When I

03:53PM 11   was -- I read to you what plaintiffs said earlier, they say,

03:53PM 12   Apple attempts to limit the case to Apple ads, but that's not

03:53PM 13   what the case is really about.  They say the case is primarily

03:53PM 14   about these two claims involving AT&T.  Because Apple never

03:53PM 15   advertised, never advertised MMS with respect to 3G, with respect

03:53PM 16   to 3GS.  They had a disclaimer.  The plaintiffs say, Well, that's

03:53PM 17   an issue of fact.  Maybe, maybe not.  But the point is the

03:53PM 18   plaintiffs ran away from that claim and ran back to the two

03:53PM 19   claims that are predicated against AT&T.  They are not dropping

03:53PM 20   those claims.

03:54PM 21            But even if they did, even if they did, then I

03:54PM 22   think you're in 3G land because then I think this case -- if the

03:54PM 23   plaintiffs dropped the claims about the Wireless Services

03:54PM 24   Agreement and they dropped the claims about billing practices,

03:54PM 25   which by the way, I think they have made it clear that they can't

03:54PM 1   do that, because if they could they would have by now.  But if
03:54PM 2   they did --
03:54PM 3          THE COURT:  In other words, what if they had never sued
03:54PM 4   AT&T and they just sued Apple and said, Look, we bought a phone
03:54PM 5   from you that you represented, either you represented that it had
03:54PM 6   MMS functionality and it didn't or you failed to disclose that it
03:54PM 7   did not have MMS functionality; where would you be then?
03:54PM 8          MS. PREOVOLOS:  I think that's not what happened.  It
03:54PM 9   might be -- I think if that had happened, we would have brought a
03:54PM 10  quick Motion to Dismiss saying we never made any allegations
03:54PM 11  about -- we never made any representations that 3G would provide
03:54PM 12  MMS, and on 3GS we had a clear disclaimer, and I think this case
03:55PM 13  would be long gone.  I think the plaintiffs knew that, which is
03:55PM 14  why in their opposition to the Motions to Dismiss they ran
03:55PM 15  rapidly to the WSA obligation and billing contract claims.
03:55PM 16          And you notice, if they wanted to make the best
03:55PM 17  argument they could here today, they would have dropped those
03:55PM 18  claims, Your Honor, and they didn't do it.  They didn't go to the
03:55PM 19  kind of claim --
03:55PM 20          THE COURT:  I know you don't represent AT&T, but does
03:55PM 21  the bill from AT&T, does it have a line item saying you're being
03:55PM 22  charged 20 dollars a month or whatever it is for MMS messaging?
03:55PM 23          MS. PREOVOLOS:  No, Your Honor.  Let me find that line
03:55PM 24  of the -- I will tell you what I can tell you.  I'm sure AT&T
03:55PM 25  might tell you some more things.  But let me find that part of

03:55PM 1   the complaint because I was doing that while the argument was

03:55PM 2   going on.  If you look at page 17 of the complaint we have been

03:55PM 3   talking about and look at paragraph 56, it is as you suspect,

03:56PM 4   there is a charge for what's called Family Message Unlimited.  My

03:56PM 5   progressive lenses don't progress far enough.  Sorry about that.

03:56PM 6   But it says it includes multimedia messaging and text messaging.

03:56PM 7         THE COURT:  $30 a month for Family Messaging Unlimited,

03:56PM 8   which it says includes MMS and text messaging?

03:56PM 9         MS. PREOVOLOS:  Yeah, I think that's right.  As

03:56PM 10  Your Honor pointed out, you know, that charge didn't change over

03:56PM 11  time.  Well, I think that AT&T -- it is hard to argue for AT&T.

03:56PM 12  I think AT&T would say that was a flat charge.  You could use

03:56PM 13  more of one, some of one, all of the other.  I suspect they might

03:56PM 14  have some other arguments, too.  But I think your point that it's

03:56PM 15  a package and AT&T would say people pay for a package is probably

03:56PM 16  what AT&T would say.

03:56PM 17         Also, this is one bill very late in the billing

03:56PM 18  period.  This is right before MMS was activated, so I don't know

03:57PM 19  what the earlier statements look like.

03:57PM 20         I think the point is, we're sitting here

03:57PM 21  speculating about what AT&T would say, and that's not speculation

03:57PM 22  that's appropriate without AT&T.  It's certainly not undisputed

03:57PM 23  though that this charge applies to multiple things, not just MMS.

03:57PM 24         But, Your Honor, the argument, well, what if it had

03:57PM 25  just been about Apple?  I think, I mean, it wasn't just about

03:57PM 1   Apple's representations.  For the reasons we argue in our Motions

03:57PM 2   to Dismiss, it couldn't be just about Apple's representations.

03:57PM 3   Plaintiffs are not willing to drop the allegations that implicate

03:57PM 4   AT&T.

03:57PM 5        But I think the final point to make is this case

03:57PM 6   really is just like the 3G MDL wherein Judge Ware said, Look, I

03:57PM 7   don't have to blind myself to what you said before, plaintiffs.

03:57PM 8   Before, you had all kinds of allegations about the network issue

03:57PM 9   underlying that.  That's exactly the same here.  Plaintiffs have

03:58PM 10  told us a story, Your Honor.  The story doesn't -- you know, the

03:58PM 11  plaintiffs can choose how to plead their complaint but they told

03:58PM 12  you a story and I don't think they are going to tell you the

03:58PM 13  story isn't true.  The story is, there was a plan to provide MMS,

03:58PM 14  the network wasn't capable of providing MMS, and that's where we

03:58PM 15  are today.

03:58PM 16        That is a claim unlike *Weisblatt* or *Weingarten*.

03:58PM 17  That is a claim that even in its narrowest form can't be made

03:58PM 18  without AT&T.

03:58PM 19        A final point -- a couple of final points.  Lawyers

03:58PM 20  already have too many final points.  But a final point is,

03:58PM 21  imagine this case going forward without AT&T.  This is the point,

03:58PM 22  Judge, where we're going to have discovery.  We're going to say

03:58PM 23  it was an issue with the network, the phone was fine, we didn't

03:58PM 24  make representations.  Plaintiffs have admitted in their briefs

03:58PM 25  that they are going to have to take discovery from AT&T.  Now you

03:58PM 1   have -- and the arbitration cases talk about this, it's one of

03:58PM 2   the grounds for equitable estoppel.  If AT&T gets dragged back

03:58PM 3   into this case for discovery, and they will be, given these

03:59PM 4   claims, any of those claims, you know, just as just Judge Ware

03:59PM 5   said, they are going to say it's the phone, we're going to say

03:59PM 6   it's the network.  If they are going to be dragged back into this

03:59PM 7   case, that fundamentally defeats the purpose of *Concepcion*.

03:59PM 8          The last point is the plaintiffs say, Well, we have

03:59PM 9   no remedy left after *Concepcion*.  As Your Honor said, the

03:59PM 10  Supreme Court called that one.  But I don't think -- I want to be

03:59PM 11  clear:  This case isn't different than *Concepcion*.  In *Concepcion*

03:59PM 12  the individual claims were also about $100.  The Court found that

03:59PM 13  those claims would be properly vindicated, even better than in

03:59PM 14  court, and you or I may not agree with that but that's what the

03:59PM 15  Supreme Court said.

03:59PM 16       THE COURT:  I suspect that that's probably fantasy or

03:59PM 17  wishful thinking on the part of the Supreme Court, but it is what

03:59PM 18  they said.

03:59PM 19       MS. PREOVOLOS:  It is what they said, and that is the

03:59PM 20  exact arbitration clause that would be at issue here.  Apple has

03:59PM 21  said we are moving on the basis of equitable estoppel to go to

04:00PM 22  arbitration with AT&T.  I'm authorized by my client to say that

04:00PM 23  Apple stipulates that we will go to arbitration under the AT&T

04:00PM 24  terms.  We're not trying to game it.  The plaintiffs don't think

04:00PM 25  that's meaningful, and that's fine.  You know, we can have --

04:00PM 1          THE COURT:  Willing to arbitrate as a class?

04:00PM 2          MS. PREOVOLOS:  The United States Supreme Court has said

04:00PM 3     that a defendant can't be required to arbitrate as a class.

04:00PM 4          THE COURT:  They were asking if you want to offer to do

04:00PM 5     that.

04:00PM 6          MS. PREOVOLOS:  No, I don't think we'll do that.  If

04:00PM 7     we're going to have a class proceeding, Judge, I think we would

04:00PM 8     prefer to stay with you, as the Supreme Court has said is our

04:00PM 9     right.  But I don't think that's the issue here.  I think the

04:00PM 10    issue is *Concepcion* says what it says.  The equitable estoppel

04:00PM 11    principles are what they are and plaintiffs have brought a case

04:00PM 12    that is wholly intertwined with AT&T's network, its contract, its

04:00PM 13    billing practices, they are not dropping any of those claims and

04:00PM 14    they couldn't, couldn't drop the underpinnings of those claims

04:01PM 15    because they would be left with nothing.  It's intertwined and

04:01PM 16    both parties go to arbitration.

04:01PM 17         THE COURT:  All right.  Thank you very much.  I'll take

04:01PM 18    it under advisement.

04:01PM 19         MR. STRANGE:  Could I have one point.  You've been so

04:01PM 20    patient but two points, one with respect to the plaintiffs'

04:01PM 21    claims.  If Your Honor concludes that some claims are intertwined

04:01PM 22    and some are not, we would request the right to amend to only

04:01PM 23    allege the claims that only involve Apple.  We clearly, I think,

04:01PM 24    under the law would have a right to do that.  That's the first

04:01PM 25    point I would ask.

04:01PM  1          The second point is obviously, if Your Honor did

04:01PM  2   compel arbitration, I believe the law is it's up to the

04:01PM  3   arbitrator to determine what the terms are and whether it bans

04:02PM  4   class actions or not.

04:01PM  5          THE COURT:  All right.  Have a good day, everyone.

04:01PM  6          (WHEREUPON, the proceedings at 4:01 p.m. were

04:01PM  7   concluded.)

8                            *    *    *

9

10                      REPORTER'S CERTIFICATE

11

12        I, Cathy Pepper, Certified Realtime Reporter, Registered
     Merit Reporter, Registered Professional Reporter, Certified Court
13   Reporter for the State of Louisiana, Official Court Reporter for
     the United States District Court, Eastern District of Louisiana,
     do hereby certify that the foregoing is a true and correct
14   transcript, to the best of my ability and understanding, from the
     record of the proceedings in the above-entitled and numbered
15   matter.


20        Cathy Pepper, CCR, RMR, CRR
          Certified Realtime Reporter
21        Official Court Reporter
          United States District Court
22        (504) 589-7779
          Cathy_Pepper@laed.uscourts.gov
23

24

25

**$**

**$100** [2] - 38:6, 68:12
**$20** [1] - 37:20
**$30** [1] - 66:7
**$50** [1] - 37:20

**'**

**'09** [5] - 9:19, 9:20, 9:25, 10:1
**'rare** [1] - 42:4

**0**

**09-2116** [1] - 3:10
**09-5470** [1] - 28:7

**1**

**1** [1] - 27:21
**10** [1] - 35:7
**11** [4] - 13:15, 20:21, 21:4, 21:5
**12** [2] - 1:7, 3:2
**12(b)7** [4] - 5:21, 18:24, 24:25
**12100** [1] - 1:24
**16** [1] - 13:8
**16th** [1] - 34:20
**17** [1] - 66:2
**19** [2] - 16:24, 17:3
**19(a** [1] - 8:13
**19(b** [2] - 19:7, 20:18
**19(b)** [1] - 8:16
**19th** [1] - 15:17
**19TH** [1] - 1:24

**2**

**2** [3] - 27:15, 27:20, 28:12
**20** [2] - 39:18, 65:22
**2002** [1] - 40:25
**2004** [1] - 45:7
**2008** [1] - 13:15
**2009** [2] - 13:11, 15:18
**201** [1] - 1:21
**2010** [5] - 12:20, 13:8, 34:6, 35:7, 63:4
**2011** [2] - 28:13, 46:5
**2012** [1] - 1:7, 3:2
**204** [2] - 13:6, 13:8
**2116** [1] - 1:6
**23(b)7** [1] - 4:2
**235** [1] - 4:1

**24** [2] - 15:18, 17:17
**268** [1] - 4:3
**2:15** [1] - 1:7

**3**

**33602** [1] - 1:21
**338** [1] - 1:17
**3G** [27] - 1:4, 3:11, 9:8, 12:6, 13:16, 14:24, 15:17, 19:21, 22:3, 22:9, 22:18, 23:8, 23:13, 23:17, 24:19, 24:23, 24:24, 28:24, 29:14, 29:22, 44:1, 56:3, 64:15, 64:22, 65:11, 67:6
**3GS** [15] - 1:5, 3:11, 9:8, 9:12, 12:7, 15:17, 15:22, 15:25, 23:9, 29:22, 44:1, 56:4, 56:23, 64:16, 65:12

**4**

**4** [2] - 23:3, 28:21
**40** [2] - 25:12, 26:13
**400** [1] - 2:4
**425** [1] - 2:7
**4:01** [1] - 70:6

**5**

**5** [3] - 28:21, 29:2, 29:11
**500** [1] - 2:12
**504** [2] - 2:13, 70:22
**56** [1] - 66:3
**589-7779** [2] - 2:13, 70:22

**6**

**6** [2] - 23:4, 29:11
**661** [1] - 42:2

**7**

**70130** [3] - 1:17, 2:4, 2:13
**7TH** [1] - 1:21

**8**

**8** [5] - 12:17, 13:2,

13:4, 62:7, 62:8
**8th** [1] - 34:18

**9**

**9** [5] - 17:20, 18:1, 29:20, 43:23, 63:4
**90025** [1] - 1:25
**904** [1] - 42:2
**94105** [2] - 2:8

**A**

**ability** [2] - 42:13, 70:14
**above-entitled** [1] - 70:14
**absence** [5] - 9:14, 11:2, 14:19, 17:1, 56:17
**absolutely** [5] - 32:5, 34:6, 37:16, 41:16, 47:10
**accept** [2] - 24:2, 39:13
**accident** [1] - 53:6
**according** [2] - 57:15, 60:9
**accused** [1] - 17:8
**accuses** [1] - 37:5
**accusing** [1] - 20:14
**Act** [2] - 39:18, 58:16
**action** [5] - 33:3, 36:16, 56:7
**actions** [7] - 36:13, 37:19, 38:18, 38:20, 39:5, 54:7, 70:4
**activated** [1] - 66:18
**add** [1] - 31:20
**added** [1] - 25:1
**additional** [2] - 18:20, 48:19
**address** [6] - 5:9, 6:8, 21:16, 36:1, 41:15, 57:18
**addressed** [1] - 16:1
**addressing** [3] - 14:22, 15:16, 15:21
**adequacy** [2] - 44:19, 59:9
**adequate** [2] - 29:10, 45:19
**adhesion** [2] - 39:8, 39:15
**adjudicate** [6] - 15:13, 22:23, 44:24, 45:21, 45:24, 61:21
**adjudicating** [1] -

20:17
**admitted** [1] - 67:24
**admitting** [1] - 47:15
**ads** [1] - 64:12
**advertised** [6] - 30:1, 43:25, 56:24, 57:10, 64:15
**advertisements** [1] - 13:10
**advertising** [7] - 9:4, 9:5, 13:13, 18:11, 57:12, 63:12, 63:18
**advised** [2] - 41:11, 61:6
**advisement** [2] - 61:2, 69:18
**affected** [1] - 31:22
**affirmed** [1] - 40:11
**afternoon** [6] - 3:8, 3:17, 3:25, 4:11, 4:15, 35:25
**ago** [1] - 39:19
**agree** [6] - 6:12, 32:19, 32:20, 34:20, 37:3, 39:2, 52:10, 68:14
**agreed** [4] - 25:1, 34:4, 45:15, 54:10
**agreeing** [1] - 39:10
**agreement** [21] - 24:5, 27:4, 28:16, 29:8, 30:19, 30:25, 32:4, 32:18, 35:22, 41:4, 41:10, 42:3, 42:7, 48:5, 54:9, 62:9, 62:10, 62:11, 62:18, 62:22
**Agreement** [29] - 7:15, 10:11, 10:23, 11:14, 13:18, 16:16, 20:22, 26:4, 26:9, 26:14, 26:16, 27:9, 29:19, 30:20, 30:24, 31:14, 47:24, 48:2, 54:24, 54:25, 55:7, 55:14, 55:17, 56:9, 56:10, 56:13, 64:24
**agreements** [3] - 11:9, 30:23, 31:1
**agrees** [1] - 5:24
**ahead** [5] - 20:10, 34:21, 38:23, 59:22, 61:15
**airplane** [1] - 8:18
**al** [1] - 28:6
**alive** [1] - 55:3
**allegation** [5] - 15:13, 57:12, 58:11, 59:13, 59:14
**allegations** [18] - 8:22,

14:23, 15:16, 15:25, 17:24, 18:4, 22:20, 23:5, 28:22, 29:5, 29:17, 30:4, 41:19, 44:25, 65:10, 67:3, 67:8
**allege** [9] - 13:16, 14:23, 27:7, 32:17, 32:18, 35:17, 43:7, 43:23, 69:23
**alleged** [7] - 13:15, 16:4, 16:16, 30:18, 42:10, 42:15, 49:9
**allegedly** [3] - 10:12, 24:4, 30:12
**alleging** [4] - 9:25, 17:10, 44:4, 44:6
**allow** [3] - 40:16, 44:10, 53:20
**allowed** [1] - 56:17
**alluded** [1] - 30:15
**ALSO** [1] - 2:10
**alterations** [1] - 22:17
**amend** [2] - 43:2, 69:22
**amended** [5] - 8:23, 20:24, 20:25, 28:3, 33:25
**amount** [1] - 23:8
**analysis** [9] - 20:8, 20:9, 40:21, 41:5, 45:8, 54:18, 54:19, 59:24
**analyzes** [1] - 52:17
**AND** [2] - 1:4, 1:5
**Andrew** [3] - 3:19, 43:18, 54:14
**ANDREW** [1] - 1:20
**ANELLO** [5] - 2:10, 4:11, 4:15, 4:18, 61:14
**Anello** [6] - 4:6, 4:9, 4:10, 4:14, 4:24, 61:12
**ANGELES** [1] - 1:25
**announced** [2] - 12:8, 26:21
**announcing** [1] - 29:13
**answer** [7] - 12:11, 25:12, 35:2, 43:5, 43:21, 50:5, 53:3
**antitrust** [11] - 22:6, 23:23, 23:24, 24:6, 24:9, 24:17, 25:5, 30:15, 30:17, 31:21, 60:8
**apart** [1] - 56:12
**apologize** [6] - 8:12, 13:7, 43:15, 43:20,

60:16, 62:6
**APPEARANCES** [2] -
1:14, 2:1
**appearances** [1] -
3:13
**APPLE** [1] - 1:4
**Apple** [142] - 3:11,
3:21, 3:23, 5:3, 6:14,
6:24, 7:8, 7:9, 8:2,
8:19, 8:20, 9:4, 9:8,
9:12, 10:10, 10:15,
11:18, 12:6, 12:7,
12:19, 13:9, 13:11,
13:17, 14:15, 14:18,
14:22, 14:24, 15:15,
15:16, 15:21, 16:8,
16:9, 17:3, 18:7,
18:11, 22:12, 24:4,
24:9, 24:12, 24:14,
24:15, 25:12, 26:10,
27:5, 27:8, 27:13,
28:13, 28:17, 29:7,
29:9, 29:16, 29:18,
30:7, 30:18, 31:11,
31:17, 32:8, 33:14,
34:2, 34:5, 34:15,
34:16, 34:23, 35:1,
35:2, 35:9, 36:14,
37:5, 37:6, 38:19,
40:16, 41:11, 41:17,
41:19, 42:9, 42:15,
42:17, 42:25, 43:8,
44:6, 44:9, 44:12,
44:24, 45:2, 45:12,
45:18, 45:21, 45:23,
46:1, 46:12, 46:20,
48:22, 49:8, 49:10,
49:21, 49:23, 49:25,
51:21, 51:22, 52:13,
52:22, 53:1, 53:22,
54:1, 55:3, 55:4,
55:19, 55:21, 55:23,
56:1, 56:8, 56:11,
56:15, 56:17, 56:21,
57:3, 57:7, 57:24,
59:2, 60:1, 60:11,
63:2, 63:8, 63:16,
63:17, 63:19, 64:1,
64:5, 64:12, 64:14,
65:4, 66:25, 68:20,
68:23, 69:23
**Apple's** [19] - 3:25,
4:2, 10:13, 12:2,
12:18, 13:13, 16:1,
16:4, 16:22, 18:3,
30:22, 30:24, 30:25,
33:24, 34:19, 35:14,
44:22, 67:1, 67:2
**applied** [1] - 40:3
**applies** [3] - 32:19,

32:20, 66:23
**apply** [1] - 40:10
**appreciate** [1] - 40:19
**appropriate** [1] -
66:22
**arb** [4] - 13:19, 30:10,
34:4, 34:9
**arbitrate** [16] - 6:14,
6:19, 6:21, 6:24,
6:25, 36:14, 37:3,
37:11, 37:20, 39:10,
39:11, 46:6, 53:23,
54:8, 69:1, 69:3
**arbitrated** [3] - 8:9,
27:1, 40:15
**arbitration** [67] - 4:1,
5:11, 6:1, 6:4, 6:6,
6:12, 6:13, 7:17,
7:19, 8:5, 11:4,
18:20, 20:1, 21:22,
23:19, 24:13, 24:16,
25:4, 25:7, 25:9,
25:22, 26:1, 26:5,
26:10, 26:18, 27:3,
27:4, 30:23, 31:1,
32:1, 32:2, 32:15,
33:3, 33:7, 33:16,
34:5, 35:10, 35:19,
35:22, 36:2, 36:9,
36:12, 37:18, 38:2,
39:3, 40:3, 41:3,
42:3, 45:14, 45:17,
53:18, 53:21, 53:22,
54:3, 54:5, 54:19,
59:19, 60:16, 62:1,
68:1, 68:20, 68:22,
68:23, 69:16, 70:2
**Arbitration** [1] - 39:18
**arbitrator** [1] - 70:3
**area** [1] - 46:22
**argue** [16] - 6:10, 6:23,
14:1, 14:2, 14:3,
14:4, 14:14, 16:18,
22:2, 26:17, 34:24,
35:24, 49:25, 54:12,
66:11, 67:1
**argued** [5] - 12:4,
25:23, 36:22, 37:25
**argues** [5] - 5:22, 7:8,
23:15
**arguing** [8] - 4:25,
5:16, 5:17, 6:6, 17:4,
43:20, 57:17, 58:3
**ARGUMENT** [1] - 1:10
**argument** [40] - 5:4,
7:1, 10:8, 14:22,
15:15, 15:21, 16:8,
16:18, 16:21, 18:2,
21:10, 21:21, 22:11,
25:8, 26:7, 26:8,

26:13, 27:13, 31:21,
31:23, 32:14, 32:15,
32:16, 37:22, 38:13,
43:19, 43:22, 44:15,
47:20, 52:15, 57:10,
57:11, 59:1, 59:25,
64:9, 65:17, 66:1,
66:24
**arguments** [7] - 5:15,
7:23, 27:10, 35:12,
48:17, 48:20, 66:14
**arrangement** [1] -
60:9
**aside** [1] - 33:17
**aspects** [1] - 5:4
**assert** [1] - 36:16
**assuming** [3] - 37:10,
49:20, 49:22
**AT&T** [210] - 5:22, 6:1,
6:6, 6:24, 7:1, 7:4,
7:9, 7:15, 7:22, 8:3,
8:7, 8:11, 8:12, 8:13,
9:6, 9:17, 10:5,
10:11, 10:12, 10:16,
10:18, 10:22, 10:23,
10:25, 11:8, 11:15,
11:18, 11:20, 12:20,
13:17, 14:1, 14:2,
14:13, 14:15, 14:20,
14:24, 14:25, 15:6,
15:11, 15:14, 15:19,
15:22, 16:12, 16:17,
16:23, 17:8, 17:11,
17:12, 17:13, 17:21,
17:22, 18:8, 18:12,
18:14, 19:18, 19:19,
20:14, 20:17, 20:18,
20:21, 21:10, 21:11,
21:13, 21:18, 22:12,
22:19, 22:20, 22:23,
23:14, 24:4, 24:6,
24:8, 24:9, 24:12,
24:13, 24:15, 24:20,
25:1, 25:3, 25:6,
25:22, 26:17, 27:8,
27:9, 28:13, 28:17,
28:20, 28:25, 29:2,
29:7, 29:9, 29:17,
29:18, 29:22, 30:8,
30:19, 31:11, 31:18,
34:2, 34:3, 34:6,
34:9, 34:12, 35:2,
35:15, 35:18, 37:10,
37:11, 37:20, 38:10,
38:17, 40:14, 41:9,
41:14, 41:18, 41:19,
41:24, 42:17, 42:21,
42:22, 42:24, 43:1,
43:5, 44:3, 44:17,
44:24, 45:4, 45:7,

45:20, 45:25, 46:14,
46:17, 47:4, 47:6,
47:13, 47:16, 48:19,
48:23, 49:2, 49:7,
50:17, 51:11, 51:13,
51:16, 52:1, 52:4,
52:5, 52:9, 52:11,
52:24, 53:3, 53:4,
53:6, 53:9, 53:16,
53:17, 53:22, 54:1,
54:24, 54:25, 55:1,
55:11, 56:6, 56:14,
56:17, 57:3, 57:6,
57:25, 58:7, 58:12,
59:3, 60:1, 60:2,
60:10, 63:9, 63:14,
63:19, 63:20, 64:4,
64:14, 64:19, 65:4,
65:20, 65:21, 65:24,
66:11, 66:12, 66:15,
66:16, 66:21, 66:22,
67:4, 67:18, 67:21,
67:25, 68:2, 68:22,
68:23
**AT&T's** [26] - 7:1,
7:14, 9:16, 10:11,
11:2, 11:22, 14:19,
16:5, 17:1, 17:4,
17:7, 20:12, 23:6,
25:22, 26:3, 26:15,
28:14, 29:10, 36:17,
48:8, 49:10, 49:12,
61:19, 61:20, 69:12
**attack** [1] - 55:5
**attacked** [1] - 54:20
**attacking** [1] - 54:20
**attempts** [2] - 13:9,
64:12
**attention** [4] - 12:17,
17:17, 27:15, 62:4
**ATTM** [1] - 16:18
**attorney's** [1] - 38:11
**attorneys** [3] - 40:6,
40:8, 40:9
**audio** [1] - 4:23
**August** [2] - 12:20,
34:6
**authorized** [1] - 68:22
**availability** [1] - 64:6
**available** [8] - 9:20,
15:24, 18:8, 29:13,
44:16, 44:17, 55:20
**average** [1] - 44:14
**avoid** [4] - 8:8, 18:16,
30:22

**B**

**b)7** [1] - 60:19

**B406** [1] - 2:12
**background** [3] -
46:10, 60:14, 60:15
**ban** [7] - 36:13, 36:16,
37:18, 38:20, 39:5,
54:6
**Bank** [2] - 36:20,
36:22
**banning** [1] - 38:17
**bans** [1] - 70:3
**BARBIER** [1] - 1:11
**barely** [1] - 4:12
**bargaining** [2] - 39:11,
39:14
**based** [5] - 7:14,
25:22, 48:7, 58:18,
59:14
**basis** [4] - 18:4, 36:15,
60:3, 68:21
**Bastien** [1] - 58:15
**BEFORE** [1] - 1:11
**began** [4] - 8:24,
13:16, 14:23, 15:17
**beginning** [5] - 5:9,
14:14, 30:4, 35:21,
61:17
**begins** [1] - 13:15
**behalf** [5] - 3:21, 3:22,
5:3, 28:2, 54:15
**belabor** [1] - 7:12
**bench** [1] - 36:24
**benefit** [2] - 45:14,
60:16
**best** [5] - 5:12, 14:19,
32:6, 65:16, 70:14
**better** [3] - 4:16, 7:1,
68:13
**between** [7] - 9:25,
13:10, 24:15, 25:19,
31:25, 35:1, 60:9
**beyond** [1] - 26:22
**Bickford** [1] - 3:15
**BICKFORD** [10] - 1:16,
1:16, 3:15, 4:6, 4:9,
5:12, 5:16, 25:11,
25:15, 43:14
**bill** [12] - 47:9, 47:19,
47:21, 48:7, 48:12,
48:13, 48:15, 51:3,
53:5, 55:11, 65:21,
66:17
**billed** [16] - 10:13,
10:25, 16:18, 17:12,
17:22, 20:15, 21:11,
48:5, 48:6, 50:20,
51:21, 52:20, 55:19,
55:21, 55:22, 64:3
**billing** [18] - 10:17,
11:10, 11:16, 16:5,
16:21, 17:5, 17:7,

21:20, 23:12, 26:16, 47:14, 48:9, 51:8, 61:20, 64:24, 65:15, 66:17, 69:13
**billings** [1] - 26:16
**bills** [3] - 11:11, 17:5, 47:8
**bit** [4] - 8:25, 11:24, 33:21, 43:19
**blind** [1] - 67:7
**Blow** [1] - 45:4
**boldly** [1] - 31:7
**borrower** [1] - 62:14
**bottom** [6] - 13:4, 16:8, 21:17, 31:24, 35:5, 35:11
**bought** [2] - 56:11, 65:4
**BOULEVARD** [1] - 1:24
**brand** [1] - 24:21
**brand-new** [1] - 24:21
**breach** [7] - 9:5, 16:4, 16:5, 16:12, 16:19, 16:20, 17:10, 21:8, 48:20, 48:21, 48:23, 49:2, 49:3, 50:1, 51:17, 57:5
**breached** [5] - 10:17, 20:21, 41:10, 52:9, 52:11
**breaches** [2] - 16:16, 53:10
**Breyer's** [1] - 37:22
**Brian** [2] - 3:17, 35:25
**BRIAN** [1] - 1:24
**brief** [8] - 9:18, 17:18, 19:2, 19:3, 34:17, 41:7, 54:16
**briefed** [1] - 19:23
**briefing** [3] - 31:22, 34:12, 47:19
**briefly** [1] - 8:25
**briefs** [2] - 12:13, 67:24
**bring** [3] - 6:1, 51:14, 61:16
**bringing** [1] - 25:3
**broad** [1] - 35:3
**brought** [6] - 25:2, 35:18, 59:8, 62:2, 65:9, 69:11
**build** [1] - 29:2
**built** [2] - 23:7, 44:17
**buy** [2] - 39:13, 56:22
**buys** [1] - 45:15
**BY** [7] - 1:16, 1:20, 1:24, 2:3, 2:7, 2:14, 2:15

**C**

**CA** [2] - 1:25, 2:8
**California** [9] - 19:22, 31:2, 31:16, 31:21, 32:19, 32:20, 32:23, 33:1, 36:22
**CALLED** [1] - 3:4
**campaign** [1] - 29:21
**cannot** [2] - 8:15, 19:7
**capabilities** [1] - 42:20
**capability** [3] - 10:5, 43:9, 58:20
**capable** [5] - 23:15, 29:23, 58:6, 58:7, 67:14
**capacities** [1] - 42:16
**capacity** [2] - 10:6, 29:1
**Carbine** [11] - 21:1, 23:3, 23:4, 27:15, 27:22, 28:1, 28:5, 28:7, 28:8, 28:9
**carbine** [3] - 27:16, 28:2, 28:4
**Carbine-hyphen-Casey** [1] - 28:9
**Carbine-slash-Casey** [1] - 28:8
**care** [6] - 52:11, 52:12, 53:5, 60:4
**cares** [1] - 53:7
**CARL** [1] - 1:11
**CARPENTER** [1] - 1:23
**carried** [1] - 62:10
**carrier** [2] - 45:6, 45:12
**carryover** [1] - 18:1
**case** [144] - 3:9, 5:22, 6:8, 7:10, 7:17, 8:17, 9:3, 9:4, 9:5, 9:6, 11:25, 12:2, 13:10, 13:14, 14:1, 14:15, 18:7, 18:11, 18:25, 19:1, 19:3, 19:7, 19:17, 22:3, 22:6, 22:10, 22:11, 22:18, 22:24, 22:25, 23:13, 23:17, 23:18, 23:21, 23:24, 24:6, 24:10, 24:11, 24:17, 24:21, 24:24, 25:5, 27:1, 30:15, 30:17, 31:21, 32:23, 34:7, 34:13, 35:7, 35:15, 35:18, 35:21, 36:5, 36:14, 36:20, 36:21, 36:23,

38:5, 38:9, 40:5, 40:10, 40:12, 40:14, 40:16, 40:22, 40:23, 40:24, 40:25, 41:1, 41:6, 41:13, 41:14, 41:19, 42:1, 45:5, 45:7, 45:8, 46:3, 46:5, 46:7, 46:9, 47:13, 49:18, 52:16, 52:17, 52:18, 52:22, 53:12, 53:14, 53:25, 54:8, 54:25, 55:3, 56:17, 56:20, 56:23, 57:3, 57:4, 57:9, 57:10, 57:17, 57:21, 57:22, 57:23, 58:11, 58:13, 58:25, 59:10, 59:17, 60:8, 61:24, 62:1, 62:2, 62:6, 62:24, 62:25, 63:1, 63:3, 63:5, 63:9, 63:11, 63:12, 63:15, 63:21, 64:12, 64:13, 64:22, 65:12, 67:5, 67:21, 68:3, 68:7, 68:11, 69:11
**cases** [16] - 20:12, 22:5, 24:19, 24:22, 29:3, 32:25, 33:12, 33:14, 40:3, 41:21, 45:5, 56:16, 56:18, 58:15, 61:22, 68:1
**Casey** [6] - 27:22, 28:3, 28:4, 28:8, 28:9
**Cathy** [2] - 70:11, 70:20
**CATHY** [1] - 2:12
**Cathy_Pepper@laed .uscourts.gov** [1] - 70:22
**CCR** [2] - 2:12, 70:20
**CENTER** [1] - 1:20
**certain** [2] - 37:4, 56:3
**certainly** [6] - 5:5, 10:21, 32:21, 49:12, 50:12, 66:22
**CERTIFICATE** [1] - 70:10
**Certified** [2] - 70:11, 70:12
**certified** [1] - 70:20
**certify** [1] - 70:13
**cetera** [1] - 52:6
**change** [3] - 17:6, 36:11, 66:10
**changed** [2] - 14:10, 34:7
**characterization** [1] - 7:13

**charge** [9] - 14:25, 15:7, 15:24, 48:11, 55:12, 66:4, 66:10, 66:12, 66:23
**charged** [5] - 15:11, 15:12, 16:10, 65:22
**charging** [1] - 46:18
**checks** [1] - 47:7
**child** [1] - 33:4
**choice** [1] - 35:5
**choices** [1] - 5:25
**choose** [1] - 67:11
**Circuit** [8] - 26:21, 32:21, 33:4, 33:14, 40:11, 40:22, 41:1, 46:6
**circumstances** [1] - 42:4
**cite** [6] - 11:11, 19:1, 19:3, 20:12, 42:2, 62:5
**cited** [2] - 40:5, 45:5
**cites** [2] - 40:22, 40:25
**citing** [1] - 42:4
**CITY** [1] - 1:20
**claim** [45] - 7:15, 9:10, 10:9, 16:9, 23:9, 33:7, 33:8, 37:19, 37:21, 38:6, 40:6, 43:5, 44:25, 45:2, 45:10, 45:17, 46:17, 46:24, 47:1, 47:3, 48:22, 49:4, 49:6, 49:7, 49:16, 49:20, 49:22, 50:3, 51:10, 51:21, 51:25, 53:1, 56:25, 59:15, 59:17, 62:9, 63:25, 64:5, 64:7, 64:10, 64:18, 65:19, 67:16, 67:17
**claimant** [1] - 38:6
**claiming** [1] - 12:11
**claims** [16] - 6:14, 7:18, 7:14, 7:22, 8:9, 13:11, 15:25, 16:1, 16:3, 17:21, 17:25, 18:2, 18:13, 18:14, 22:23, 23:1, 23:12, 23:21, 24:11, 24:12, 24:13, 24:16, 26:12, 26:14, 26:19, 26:22, 26:25, 29:4, 30:21, 34:15, 34:16, 36:7, 36:9, 37:11, 38:1, 38:2, 39:12, 40:7, 41:17, 41:22, 41:25, 42:5, 42:9, 42:14, 42:22, 42:24, 43:1, 45:10, 49:8, 53:15, 58:14, 58:18, 60:1,

60:3, 61:19, 61:21, 63:8, 63:9, 63:14, 63:19, 63:24, 64:14, 64:19, 64:20, 64:23, 64:24, 65:15, 65:18, 68:4, 68:12, 68:13, 69:13, 69:14, 69:21, 69:23
**clarify** [1] - 22:8
**class** [20] - 13:15, 15:11, 28:16, 28:18, 33:3, 36:13, 36:15, 36:16, 37:18, 38:17, 38:20, 39:5, 54:6, 69:1, 69:3, 69:7, 70:4
**class-wide** [1] - 36:15
**clause** [11] - 4:4, 13:19, 26:5, 30:10, 31:1, 37:18, 45:14, 53:18, 53:21, 53:22, 54:3, 54:5, 59:20, 60:16, 68:20
**clean** [1] - 56:6
**clear** [9] - 20:12, 23:20, 27:2, 35:14, 37:4, 42:11, 64:25, 65:12, 68:11
**clearer** [1] - 43:2
**clearly** [3] - 26:18, 46:1, 69:23
**CLERK** [2] - 3:7, 3:10
**client** [1] - 68:22
**close** [1] - 4:21
**closely** [2] - 52:16, 52:22
**clothes** [1] - 11:21
**co** [3] - 28:13, 28:14, 54:12
**co-counsel** [1] - 54:12
**co-marketed** [2] - 28:13, 28:14
**colleague** [2] - 54:16, 55:8
**coming** [2] - 4:13, 9:13
**Coming** [1] - 12:8
**Committee** [5] - 3:16, 3:18, 3:20, 4:7, 54:15
**common** [1] - 16:24
**Communications** [1] - 58:16
**compel** [5] - 33:15, 35:9, 41:3, 45:17, 70:2
**Compel** [8] - 4:1, 5:11, 5:17, 34:5, 35:19, 36:1, 36:8, 45:9
**compelling** [2] -

45:17, 47:20
**complaint** [31] - 20:21, 20:24, 21:1, 22:19, 22:20, 23:2, 23:3, 23:4, 25:3, 27:11, 27:15, 27:18, 28:1, 28:3, 28:5, 28:7, 28:8, 28:10, 28:12, 29:5, 32:20, 35:13, 43:2, 43:23, 54:21, 56:5, 61:18, 66:1, 66:2, 67:11
**complaints** [1] - 8:22, 23:5, 33:25
**complicated** [1] - 7:19
**complication** [2] - 28:24, 28:25
**comply** [1] - 61:1
**COMPUTER** [1] - 2:15
**concede** [1] - 18:23
**Concepcion** [32] - 8:8, 18:16, 26:5, 33:2, 33:5, 33:6, 33:8, 33:13, 34:2, 34:11, 34:14, 35:3, 36:11, 36:19, 36:21, 37:2, 37:12, 37:17, 37:23, 38:13, 39:21, 54:6, 63:6, 63:7, 63:10, 68:7, 68:9, 68:11, 69:10
**concerning** [1] - 12:2
**concerted** [2] - 29:18, 30:12
**concertedness** [1] - 27:8
**concluded** [2] - 37:10, 70:7
**concludes** [3] - 5:20, 7:16, 69:21
**conduct** [10] - 11:22, 16:23, 17:9, 21:17, 24:15, 27:8, 29:18, 30:12, 35:15, 35:16
**confess** [1] - 36:19
**conscience** [1] - 8:15
**consciously** [2] - 29:25, 43:24
**considerably** [1] - 13:12
**consistently** [1] - 12:10
**consolidated** [1] - 12:18
**construction** [1] - 11:3
**construed** [1] - 9:10
**consulted** [1] - 57:22
**consumer** [24] - 38:16, 39:8, 39:12,

42:18, 42:19, 42:21, 44:14, 45:15, 47:1, 47:6, 47:7, 47:21, 47:25, 48:4, 50:4, 52:13, 52:14, 53:8, 53:18, 54:10, 54:23, 55:12, 55:19, 60:10
**consumer-friendly** [1] - 38:16
**consumers** [18] - 42:14, 44:7, 44:10, 44:12, 46:13, 46:25, 49:21, 50:19, 51:21, 51:23, 52:2, 55:5, 56:10, 56:21, 57:7, 58:23, 60:5
**consumers'** [4] - 42:16, 47:7, 54:22, 55:2
**contains** [2] - 13:19, 26:4
**contending** [3] - 45:18, 52:4, 56:1
**content** [2] - 31:9, 31:10
**contention** [1] - 57:24
**contentions** [1] - 44:25
**context** [1] - 19:17
**CONTINUED** [1] - 2:1
**contract** [61] - 9:6, 10:11, 10:17, 10:24, 11:4, 13:18, 13:19, 14:21, 16:12, 16:20, 17:11, 18:25, 19:4, 19:8, 20:13, 20:16, 21:8, 21:10, 23:12, 24:13, 25:22, 29:5, 30:9, 31:6, 31:7, 31:21, 36:17, 37:7, 38:10, 38:15, 38:17, 39:10, 39:15, 40:8, 40:9, 41:24, 48:20, 48:21, 49:2, 49:3, 50:1, 50:2, 51:13, 51:14, 51:15, 51:18, 52:6, 52:10, 52:11, 52:12, 53:10, 53:17, 57:6, 59:18, 60:10, 60:12, 65:15, 69:12
**contracted** [1] - 62:19
**contracting** [1] - 37:2
**contracts** [12] - 26:25, 31:3, 31:18, 31:25, 32:2, 39:7, 39:8, 42:22, 53:17, 53:21, 60:13
**contractual** [1] - 55:13
**contradicted** [1] - 8:22

**contrary** [2] - 18:12, 27:11
**contrast** [1] - 57:4
**control** [1] - 31:2
**controlled** [1] - 26:15
**convince** [1] - 41:16
**coordinated** [1] - 34:14
**copy** [1] - 47:18
**core** [3] - 10:24, 30:18, 30:20
**correct** [10] - 10:2, 19:14, 19:15, 37:13, 38:3, 38:7, 38:12, 59:6, 59:12, 70:13
**correctly** [1] - 52:21
**cosmetic** [1] - 22:17
**counsel** [4] - 3:13, 54:12, 56:15, 63:1
**couple** [2] - 18:19, 67:19
**course** [3] - 30:13, 41:10, 59:20
**COURT** [116] - 1:1, 2:12, 3:4, 3:8, 3:13, 3:24, 4:8, 4:10, 4:12, 4:16, 4:19, 5:7, 5:10, 5:14, 6:3, 6:10, 6:18, 7:5, 7:7, 9:21, 9:24, 10:3, 10:19, 12:22, 12:24, 13:2, 13:5, 13:23, 14:5, 16:7, 19:11, 19:16, 20:2, 20:7, 20:24, 21:2, 21:5, 21:22, 22:5, 23:23, 25:10, 25:14, 25:16, 25:18, 27:18, 27:21, 27:25, 28:7, 28:11, 35:23, 36:3, 37:8, 37:14, 37:22, 37:25, 38:4, 38:8, 38:23, 39:1, 39:6, 39:16, 39:22, 40:23, 41:6, 43:7, 43:12, 43:17, 44:2, 44:15, 47:3, 47:9, 47:12, 47:22, 48:1, 48:9, 48:15, 48:17, 49:1, 49:6, 49:8, 49:15, 50:7, 50:12, 50:15, 50:20, 50:23, 51:2, 51:7, 51:10, 52:15, 54:11, 55:21, 57:9, 57:20, 58:2, 58:5, 58:25, 59:21, 60:21, 60:23, 61:2, 61:4, 61:8, 61:12, 61:15, 61:22, 62:13, 62:24, 65:3, 65:20, 66:7, 68:16, 69:1, 69:4,

69:17, 70:5
**court** [9] - 3:7, 16:25, 31:2, 36:21, 38:13, 45:8, 47:6, 62:2, 68:14
**Court** [62] - 3:24, 5:20, 5:24, 7:16, 7:18, 8:3, 8:24, 10:16, 11:17, 12:5, 18:13, 21:20, 22:1, 34:4, 34:10, 34:19, 34:22, 35:8, 35:18, 35:21, 36:11, 36:19, 36:22, 36:23, 36:25, 37:1, 37:4, 38:16, 39:2, 39:16, 41:1, 42:1, 42:4, 43:15, 45:8, 45:23, 46:10, 52:21, 52:22, 56:25, 61:21, 62:4, 62:8, 62:12, 62:15, 62:20, 63:4, 63:7, 63:24, 64:9, 68:10, 68:12, 68:15, 68:17, 69:2, 69:8, 70:12, 70:12, 70:13, 70:21, 70:21
**Court's** [5] - 12:17, 17:17, 22:4, 27:15, 62:4
**courtroom** [1] - 4:20
**courts** [5] - 27:1, 31:24, 33:6, 53:13, 60:14
**covered** [3] - 18:18, 26:18, 40:21
**critical** [1] - 33:20
**CRR** [2] - 2:12, 70:20
**crux** [1] - 56:23
**current** [1] - 20:21
**custody** [1] - 17:7
**customers** [1] - 15:22

# D

**dance** [1] - 17:9
**data** [6] - 11:6, 11:14, 14:9, 49:10, 49:12, 55:15
**days** [1] - 19:5
**deal** [1] - 19:21
**deals** [2] - 37:2, 45:6
**dealt** [2] - 36:12, 38:15
**debate** [3] - 11:8, 14:18, 32:24
**December** [1] - 63:4
**deceptive** [1] - 57:12
**decide** [4] - 19:8, 20:1, 22:1, 33:10
**decided** [5] - 40:25,

59:5, 59:6, 63:5, 63:6
**decides** [1] - 35:4
**decision** [2] - 57:23, 60:7
**default** [1] - 62:13
**defeats** [1] - 68:7
**DEFENDANT** [1] - 2:3
**defendant** [3] - 36:5, 36:13, 69:3
**Defendants** [1] - 29:12
**defendants** [10] - 6:21, 7:10, 13:16, 14:23, 28:17, 28:23, 29:3, 29:6, 30:1, 43:25
**defendants'** [1] - 28:15
**Defendants'** [1] - 29:21
**defenses** [1] - 48:17
**definitely** [2] - 11:12, 11:15
**defrauded** [1] - 47:16
**delay** [2] - 9:18, 29:14
**delayed** [1] - 33:23
**delve** [1] - 58:20
**denial** [1] - 46:6
**denied** [1] - 45:8
**deny** [1] - 29:17
**denying** [1] - 41:16
**dependence** [1] - 29:4
**dependent** [5] - 22:22, 41:17, 49:12, 49:15, 53:15
**deposition** [1] - 48:8
**depths** [1] - 55:16
**DEPUTY** [2] - 3:7, 3:10
**derogating** [1] - 9:17
**derogation** [1] - 10:23
**describe** [2] - 17:21, 36:5
**despite** [4] - 15:9, 15:24, 29:24, 44:8
**determinations** [2] - 11:18, 17:1
**determine** [4] - 48:6, 50:6, 56:10, 58:18, 70:3
**determined** [3] - 31:16, 50:3, 52:23
**developed** [1] - 28:24
**devices** [1] - 29:23
**dialog** [1] - 18:19
**different** [23] - 13:24, 14:16, 20:7, 20:8, 20:9, 21:19, 22:5, 22:6, 22:7, 22:25, 25:18, 30:17, 30:21,

34:9, 34:14, 35:1,
56:16, 56:19, 62:23,
62:25, 63:10, 63:15,
68:11
**difficult** [1] - 43:19
**digital** [2] - 31:9,
31:10
**direct** [5] - 7:20,
12:17, 17:17, 27:14,
62:4
**directly** [1] - 27:17
**disabled** [2] - 29:25,
43:24
**disagrees** [1] - 7:18
**disclaimer** [2] - 64:16,
65:12
**disclose** [9] - 8:20,
10:14, 11:19, 13:17,
15:19, 16:23, 41:12,
49:10, 65:6
**disclosed** [5] - 8:20,
9:12, 10:10, 41:12,
44:16
**disclosures** [3] -
44:20, 44:23, 45:18
**Discover** [2] - 36:20,
36:22
**discovered** [1] - 29:10
**discovery** [9] - 33:23,
34:4, 34:8, 56:5,
63:16, 63:17, 67:22,
67:25, 68:3
**discussed** [2] - 21:15,
46:19
**discussing** [1] - 55:8
**dismiss** [3] - 25:6,
37:15, 64:10
**Dismiss** [21] - 4:2,
5:18, 6:15, 7:12,
7:13, 12:4, 12:19,
12:21, 20:3, 33:24,
34:3, 34:13, 34:18,
35:1, 35:14, 43:21,
58:14, 58:17, 65:10,
65:14, 67:2
**dismissal** [2] - 8:7,
55:1
**dismissed** [2] - 40:2,
60:2
**dismissing** [1] - 37:9
**dispositive** [1] - 34:15
**dispute** [19] - 10:20,
10:21, 10:22, 10:25,
11:3, 11:15, 11:16,
26:3, 26:6, 26:16,
31:17, 31:18, 32:10,
32:12, 47:11, 47:16,
50:17, 50:23
**disputed** [2] - 50:16,
63:20

**Disputes** [1] - 31:15
**dissent** [1] - 37:23
**dissuade** [1] - 58:10
**distances** [1] - 8:18
**distinction** [1] - 58:21
**distinguish** [2] - 22:3,
60:7
**distinguishes** [1] -
63:3
**District** [3] - 70:13,
70:21
**DISTRICT** [3] - 1:1,
1:2, 1:11
**divide** [1] - 43:19
**doctrine** [1] - 58:14
**document** [2] - 28:5,
56:13
**Document** [4] - 4:1,
4:3, 13:6, 13:8
**documents** [1] - 31:5
**dollars** [1] - 65:22
**done** [4] - 18:12,
25:12, 39:3, 53:7
**double** [1] - 15:20
**down** [1] - 8:4
**dragged** [2] - 68:2,
68:6
**dramatic** [1] - 17:16
**dress** [1] - 20:14
**drop** [3] - 23:11, 67:3,
69:14
**dropped** [5] - 28:4,
56:6, 64:23, 64:24,
65:17
**dropping** [4] - 61:18,
61:19, 64:19, 69:13
**due** [5] - 8:20, 11:22,
34:17, 34:18, 59:12
**duplicate** [1] - 54:16
**duplication** [1] - 54:17
**during** [1] - 28:16
**duties** [4] - 45:10,
45:11, 45:23, 45:24
**duty** [2] - 41:4, 61:19

**E**

**e-mail** [1] - 14:15
**early** [2] - 12:5, 38:5
**EASTERN** [1] - 1:2
**Eastern** [1] - 70:13
**effect** [2] - 19:1, 41:14
**effectively** [1] - 6:15
**effectuate** [1] - 33:18
**effort** [1] - 62:21
**eight** [1] - 34:21
**eight-day** [1] - 34:21
**either** [8] - 15:16,
17:2, 41:11, 51:1,

52:1, 52:20, 53:11,
65:5
**element** [1] - 33:11
**emperor's** [1] - 11:21
**emphasize** [1] - 61:17
**employment** [1] - 40:8
**enable** [1] - 32:8
**end** [3] - 13:14, 17:25,
34:15
**enforce** [2] - 41:4,
62:21
**enforceable** [1] -
46:11
**engaged** [2] - 10:17,
11:16
**enter** [3] - 24:7, 30:9,
30:20
**entered** [5] - 24:4,
29:8, 30:19, 56:12
**entering** [1] - 54:23
**entities** [1] - 24:8
**entitled** [3] - 36:6,
36:7, 70:14
**envision** [2] - 48:10,
48:18
**equal** [3] - 25:14, 39:9,
39:11
**equipment** [1] - 4:23
**equitable** [8] - 6:14,
32:1, 40:3, 40:10,
59:25, 68:2, 68:21,
69:10
**equitably** [2] - 26:10,
27:4, 35:20
**equities** [2] - 45:16,
59:25
**equity** [2] - 8:15, 36:18
**error** [2] - 38:22, 41:2
**ESQUIRE** [6] - 1:16,
1:20, 1:24, 2:3, 2:7,
2:10
**essentially** [4] - 7:8,
24:25, 47:15
**established** [1] -
26:13
**estopped** [3] - 26:10,
27:4, 35:20
**estoppel** [7] - 6:14,
32:1, 40:4, 40:10,
68:2, 68:21, 69:10
**et** [2] - 28:6, 52:6
**event** [3] - 14:20, 15:7,
15:15
**evidence** [1] - 43:13
**evidently** [1] - 8:7
**exact** [3] - 38:9, 59:1,
68:20
**exactly** [6] - 19:9,
19:20, 19:21, 30:14,
53:25, 67:9

**exaggeration** [1] -
39:24
**example** [2] - 17:6,
30:11
**exclusive** [3] - 15:22,
30:19, 54:2
**exclusively** [1] - 28:19
**exclusivity** [4] - 24:5,
28:15, 29:8, 60:10
**excuse** [2] - 27:21,
57:18, 59:21
**existed** [1] - 39:18
**existence** [1] - 42:6
**expect** [1] - 35:18
**expectation** [2] -
42:16, 44:11
**expectations** [1] -
60:5
**explain** [1] - 18:9
**expressed** [1] - 8:22
**extend** [1] - 34:24
**extent** [1] - 34:24
**extra** [1] - 51:8

**F**

**F.3d** [2] - 42:2, 62:3
**face** [3] - 6:4, 16:24,
17:8
**fact** [17] - 15:9, 15:24,
16:12, 34:22, 39:7,
40:1, 44:8, 45:5,
46:25, 55:10, 56:5,
57:15, 58:6, 60:2,
60:11, 62:21, 64:17
**facts** [7] - 18:23,
21:15, 45:16, 51:16,
52:25, 53:14, 56:19
**factual** [8] - 49:17,
52:6, 55:12, 55:18,
59:14, 60:3, 60:14,
60:15
**factually** [1] - 52:7
**failed** [12] - 10:14,
13:17, 14:24, 15:19,
16:9, 16:22, 41:12,
49:7, 49:8, 49:10,
51:11, 65:6
**failing** [1] - 11:19
**failure** [2] - 15:21,
33:7
**failures** [1] - 15:17
**fair** [3] - 17:2, 38:21,
53:17
**fairest** [1] - 27:12
**fairly** [1] - 11:1
**fairness** [4] - 16:25,
38:20, 53:25, 54:1
**fall** [1] - 9:25

**falls** [1] - 53:14
**false** [5] - 9:4, 9:5,
10:17, 63:12, 63:18
**familiar** [4] - 36:20,
46:4, 57:21, 57:23
**Family** [2] - 66:4, 66:7
**fantasy** [1] - 68:16
**far** [1] - 66:5
**fast** [8] - 22:13, 22:16,
57:11, 57:16, 57:24,
57:25, 59:2
**faster** [1] - 58:19
**fault** [4] - 10:13,
57:14, 57:15, 58:19
**favor** [1] - 40:3
**feasible** [2] - 19:14,
19:18
**feature** [5] - 29:13,
30:1, 44:1, 55:14,
55:23
**Federal** [2] - 39:18,
58:15
**fees** [1] - 38:11
**few** [7] - 8:10, 15:4,
43:15, 44:17, 56:2,
58:18, 63:2
**Fifth** [6] - 26:21,
32:21, 40:11, 40:22,
40:25, 46:6
**figure** [2] - 37:9, 37:14
**figured** [2] - 36:25,
37:16
**file** [2] - 33:24, 34:25
**filed** [17] - 12:4, 12:19,
12:20, 13:8, 23:21,
24:25, 25:2, 27:17,
28:2, 28:3, 32:25,
34:5, 34:21, 41:7,
41:18, 58:11
**filled** [1] - 34:9
**final** [6] - 12:11, 67:5,
67:19, 67:20
**finally** [2] - 9:14, 37:1
**fine** [4] - 39:10, 39:12,
67:23, 68:25
**finish** [1] - 25:16
**first** [21] - 5:21, 6:8,
6:12, 7:2, 7:3, 9:12,
25:6, 26:2, 26:11,
26:20, 26:24, 31:6,
32:16, 35:24, 50:7,
50:11, 54:22, 59:6,
61:17, 63:2, 69:24
**five** [1] - 60:12
**five-year** [1] - 60:12
**FL** [1] - 1:21
**flaming** [1] - 11:8
**flat** [3] - 20:21, 48:11,
66:12
**flat-out** [1] - 20:21

flip [1] - 42:13
FLOOR [2] - 1:21, 1:24
fly [1] - 8:18
focus [1] - 6:12
FOERSTER [1] - 2:6
followed [2] - 24:18, 24:19
follows [1] - 49:20
footnote [1] - 20:20
FOR [2] - 1:16, 2:3
forced [6] - 6:18, 24:6, 29:9, 30:19, 34:25, 37:11
forcing [1] - 30:8
foreclosed [1] - 24:7
foregoing [1] - 70:13
forgive [1] - 19:5
forgot [1] - 61:12
form [1] - 67:17
forth [2] - 30:2, 40:8
forum [1] - 31:2
forward [4] - 7:10, 14:2, 40:16, 67:21
fours [1] - 23:13
fragmented [1] - 9:1
frame [2] - 36:6, 36:7
framed [1] - 59:11
FRANCISCO [1] - 2:8
FRANKLIN [1] - 1:21
frankly [3] - 6:11, 20:13, 23:11
friendly [1] - 38:16
FRITCHIE [1] - 2:3
front [2] - 21:2, 23:18
fully [1] - 39:2
fulsome [1] - 32:24
function [4] - 10:4, 10:5, 29:25, 43:24
functionality [4] - 32:7, 44:8, 65:6, 65:7
fundamental [5] - 16:7, 20:4, 20:18, 36:12, 45:22
fundamentally [1] - 68:7
futile [1] - 33:9
future [1] - 20:11

**G**

game [3] - 11:21, 11:22, 68:24
gamesmanship [2] - 18:15, 37:6
generation [1] - 29:14
given [2] - 23:1, 68:3
glossed [1] - 41:8

governed [1] - 31:7
grab [1] - 59:19
grant [3] - 35:19, 37:17, 38:22
granted [4] - 34:10, 58:13, 58:17, 63:7
grave [1] - 28:24
great [1] - 4:19
Grigson [1] - 26:21
ground [3] - 27:6, 27:7, 63:3
grounds [2] - 26:11, 68:2
group [1] - 40:6
guarantee [8] - 40:23, 40:24, 46:7, 46:11, 62:9, 62:11, 62:19, 62:22
guarantors [1] - 62:18
guess [6] - 5:1, 19:16, 26:12, 39:1, 39:19, 40:13
guidance [1] - 40:20

**H**

hand [1] - 12:12
handle [3] - 5:4, 5:5, 44:3
happy [2] - 5:9, 47:20
hard [3] - 19:17, 61:10, 66:11
harp [1] - 55:9
headed [1] - 25:25
hear [8] - 4:10, 4:12, 4:13, 4:16, 4:18, 18:21, 25:8, 36:5
HEARD [1] - 1:11
heard [3] - 4:24, 34:3, 34:4
hearing [2] - 34:10, 63:7
held [4] - 27:2, 33:7, 40:9, 41:2
helpful [2] - 8:25, 12:15
hereby [1] - 70:13
hired [1] - 36:22
history [1] - 11:24
honestly [1] - 21:12
Honor [74] - 3:17, 3:22, 4:11, 5:2, 5:3, 5:6, 5:9, 5:19, 6:17, 7:11, 7:14, 10:2, 10:7, 13:3, 13:7, 16:14, 20:10, 24:14, 25:11, 27:23, 30:15, 35:25, 36:4, 36:8, 37:16, 37:24, 38:7,

38:12, 38:14, 38:24, 39:20, 40:19, 41:15, 41:18, 41:20, 41:22, 41:23, 42:2, 43:4, 43:14, 45:6, 45:22, 45:24, 46:4, 46:15, 47:1, 47:5, 47:23, 48:7, 48:24, 49:17, 49:20, 50:5, 50:11, 50:25, 51:14, 51:25, 52:18, 53:21, 54:14, 55:10, 55:25, 57:18, 60:18, 60:22, 61:14, 65:18, 65:23, 66:10, 66:24, 67:10, 68:9, 69:21, 70:1
HONORABLE [1] - 1:11
hoped [1] - 41:16
huge [1] - 11:8
hundreds [1] - 38:1
hung [1] - 7:13
hyphen [1] - 28:9
hypothetical [1] - 30:13

**I**

idea [1] - 25:25
identical [2] - 5:15, 33:13
ignore [1] - 35:22
imagine [2] - 19:17, 67:21
implicate [1] - 67:3
implicates [1] - 23:13
implications [2] - 24:9, 35:3
important [11] - 8:14, 11:24, 13:12, 17:15, 17:24, 22:8, 37:1, 40:5, 54:17, 55:18, 56:18
importantly [2] - 17:20, 18:23
imposed [1] - 45:11
imposes [1] - 45:23
improper [2] - 11:16, 16:21
improperly [2] - 17:22, 41:12
imputed [1] - 53:9
IN [1] - 1:4
inadequate [1] - 44:20
Inc [1] - 3:23
inception [1] - 8:2
included [2] - 30:1, 44:1
includes [2] - 66:6,

66:8
including [3] - 28:19, 29:24, 42:14
incorporated [1] - 11:14
indeed [2] - 19:21, 21:13
independent [14] - 26:11, 26:20, 27:6, 27:7, 45:11, 45:24, 55:6, 56:8, 57:8, 59:3, 59:15, 60:1, 63:24, 64:7
independently [1] - 40:17
indicated [1] - 34:19
indispensable [7] - 19:6, 19:11, 19:13, 20:3, 21:14, 54:18, 62:1
indistinguishable [1] - 22:2
individual [1] - 68:12
induced [1] - 46:13
inducing [2] - 55:5, 56:21
inflicted [1] - 35:2
inform [2] - 14:24, 15:22
inherent [1] - 39:23
initial [1] - 54:21
instance [2] - 25:6, 43:23, 57:2
instead [1] - 62:18
instructive [1] - 28:23
intended [4] - 37:8, 53:4, 53:5
intent [2] - 52:23, 53:2
intentionally [1] - 44:21
interdependent [4] - 7:9, 27:8, 30:12, 40:18
interest [1] - 20:10
interesting [2] - 32:17, 36:4
interestingly [1] - 24:10
interpret [4] - 41:24, 51:18, 55:17, 59:18
interpretation [4] - 18:25, 21:20, 24:2, 60:13
interpretational [1] - 11:12
interpreted [2] - 19:4, 20:13
interrelated [3] - 7:2, 20:7, 35:17
interrupt [1] - 43:16

intertwined [12] - 7:9, 7:21, 24:15, 27:9, 28:18, 30:12, 40:17, 43:5, 43:6, 69:12, 69:15, 69:21
intertwinedness [2] - 29:4, 29:6
intricacies [1] - 56:9
invocation [1] - 33:19
invoke [1] - 31:25, 32:22, 38:19
invoked [1] - 42:3
involve [1] - 69:23
involved [5] - 36:17, 37:17, 41:4, 41:24, 59:24
involving [1] - 64:14
iPad [4] - 52:18, 52:19, 61:24, 62:24
iPhone [25] - 1:4, 3:11, 13:22, 14:22, 14:25, 15:7, 16:9, 22:9, 22:12, 23:8, 24:23, 28:13, 28:14, 28:16, 28:24, 29:21, 31:15, 42:12, 43:8, 44:1, 54:23, 55:3, 55:5, 56:11, 58:5
iPhone's [1] - 43:24
iPhones [1] - 28:19
IRWIN [1] - 2:3
issue [38] - 6:4, 6:6, 6:8, 7:19, 9:8, 10:4, 18:25, 19:12, 21:15, 22:2, 28:22, 32:2, 36:8, 36:13, 36:25, 38:24, 41:8, 41:15, 41:20, 41:21, 45:23, 46:8, 46:9, 46:11, 46:12, 46:19, 52:17, 54:20, 54:24, 58:21, 59:8, 62:17, 64:17, 67:8, 67:23, 68:20, 69:9, 69:10
issues [9] - 5:15, 7:7, 11:3, 20:17, 22:14, 22:15, 26:1, 35:16, 48:10
item [2] - 47:22, 65:21
iterations [2] - 17:4, 17:5
itself [6] - 40:22, 40:25, 43:8, 46:8, 46:9, 53:22
iTune [1] - 32:7
iTunes [13] - 30:25, 31:6, 31:8, 31:9, 31:10, 31:11, 31:21, 32:4, 32:9, 32:11, 32:18, 53:19

## J

JANUARY [2] - 1:7, 3:2
Jersey [1] - 33:1
Joe [1] - 45:4
John [1] - 36:24
join [3] - 19:14, 19:18
joined [3] - 19:24, 19:25
JR [1] - 2:3
Judge [37] - 16:3, 19:15, 19:21, 19:24, 21:25, 22:1, 22:5, 22:10, 22:17, 22:20, 23:18, 24:1, 24:11, 25:1, 25:6, 30:14, 30:17, 31:22, 35:4, 56:15, 56:16, 57:22, 58:13, 59:5, 59:9, 59:10, 59:23, 60:7, 63:3, 63:8, 63:11, 63:13, 63:16, 67:6, 67:22, 68:4, 69:7
JUDGE [1] - 1:11
judgment [1] - 41:23
jump [2] - 20:10, 62:5
jumping [1] - 43:20
June [6] - 9:18, 9:19, 12:3, 13:11, 13:15, 15:17
jury [2] - 11:18, 16:25
justice [1] - 16:25
Justice [3] - 36:24, 37:22, 38:8
justify [1] - 38:17

## K

keep [1] - 54:19
kind [8] - 15:13, 21:17, 27:2, 32:17, 46:10, 63:10, 63:15, 65:19
kinds [1] - 67:8
knowing [1] - 25:22
knowingly [2] - 29:25, 43:24
knowledge [3] - 52:23, 53:2, 53:9

## L

LA [3] - 1:17, 2:4, 2:13
LAFAYETTE [1] - 1:17
land [1] - 64:22
language [7] - 11:7, 14:5, 14:7, 14:8, 14:9, 38:10, 41:25

last [7] - 4:8, 21:9, 21:23, 26:12, 32:15, 60:11, 68:8
latch [1] - 54:9
late [3] - 9:13, 12:8, 66:17
latest [1] - 29:22
launch [2] - 28:24, 29:14
LAW [1] - 1:16
law [21] - 10:18, 18:17, 18:22, 19:1, 19:3, 30:13, 31:16, 32:19, 32:20, 32:22, 32:23, 33:2, 33:5, 33:13, 33:14, 36:11, 45:23, 46:21, 69:24, 70:2
lawyer [2] - 36:23, 61:10
lawyers [2] - 48:19, 67:19
lead [1] - 24:19
least [5] - 16:11, 20:11, 22:22, 26:8, 35:4
leave [1] - 43:14
leaving [1] - 33:17
led [1] - 57:7
left [3] - 58:17, 68:9, 69:15
legal [1] - 25:18
legally [1] - 59:5
leisure [2] - 17:17, 24:1
length [1] - 55:8
lenses [1] - 66:5
less [1] - 31:18
liability [1] - 11:19, 44:5, 44:24, 46:22, 52:22, 52:24, 53:2, 53:16
Liability [1] - 22:9
liable [3] - 44:22, 45:21, 52:5
License [3] - 30:24, 31:13, 31:14
license [1] - 31:16
licensed [1] - 31:15
lie [1] - 23:1
life [1] - 39:17
liken [1] - 48:8
limit [2] - 13:10, 64:12
limitations [1] - 56:3
limited [2] - 56:2, 62:19
line [9] - 21:17, 31:24, 35:5, 35:11, 46:2, 47:22, 58:15, 65:21, 65:23
lingo [1] - 19:6

list [1] - 53:22
listed [1] - 49:10
litigate [2] - 15:6, 41:23
LITIGATION [1] - 1:5
litigation [8] - 3:10, 8:2, 8:15, 8:24, 15:4, 31:4, 33:19, 59:7
Litigation [1] - 3:12
loan [12] - 40:23, 40:24, 46:7, 46:8, 46:9, 49:19, 62:9, 62:10, 62:14, 62:17, 62:20, 62:22
Look [2] - 65:4, 67:6
look [16] - 8:25, 11:10, 12:15, 23:2, 24:3, 27:12, 29:20, 30:3, 31:13, 31:24, 34:1, 59:6, 63:5, 66:2, 66:3, 66:19
looked [1] - 53:13
looking [7] - 20:23, 23:2, 27:18, 29:3, 47:7, 62:5, 62:7
LOS [1] - 1:25
lose [3] - 29:12, 51:9, 51:10
losing [1] - 9:19
Louisiana [4] - 27:17, 32:22, 70:12, 70:13
LOUISIANA [2] - 1:2, 1:7
love [1] - 39:23
lucrative [1] - 29:14

## M

ma'am [1] - 4:10
mail [1] - 14:15
malpractice [1] - 40:7
maneuver [1] - 37:9
manufacturer [3] - 45:6, 45:9, 45:11
March [3] - 9:22, 9:25, 12:8
market [1] - 29:12
MARKET [1] - 2:7
marketed [3] - 9:21, 28:13, 28:14
MARKETING [1] - 1:5
Marketing [1] - 3:11
marketing [1] - 29:21
matter [14] - 10:18, 10:20, 18:17, 31:4, 37:6, 45:4, 49:17, 52:6, 55:13, 55:18, 57:5, 58:22, 59:1, 70:15

matters [3] - 10:9, 14:11, 58:23
MDL [8] - 1:6, 22:3, 22:9, 23:18, 24:23, 24:24, 42:24, 67:6
MDLs [2] - 22:6, 22:7
mean [19] - 6:18, 11:15, 11:17, 14:11, 16:19, 19:16, 20:5, 25:12, 37:25, 41:7, 47:18, 52:1, 52:4, 52:8, 53:7, 60:1, 60:2, 60:18, 66:25
meaningful [1] - 68:25
means [4] - 14:25, 17:5, 19:8, 37:19
meant [4] - 14:12, 14:13, 15:5, 38:2
MECHANICAL [1] - 2:14
members [1] - 28:18
mention [1] - 18:11
mentioned [1] - 52:11
mentioning [1] - 19:22
merely [1] - 62:18
Merit [1] - 70:12
merits [1] - 45:20
mess [1] - 20:1
message [1] - 14:3
Message [1] - 66:4
messaging [19] - 13:20, 13:22, 13:23, 14:12, 14:21, 15:1, 15:8, 15:23, 28:19, 42:13, 43:9, 55:15, 58:6, 65:22, 66:6, 66:8
Messaging [1] - 66:7
MEYER [8] - 1:20, 3:19, 43:18, 44:6, 54:14, 55:22, 60:18, 60:22
Meyer [4] - 3:19, 5:17, 43:18, 54:14
microphone [1] - 4:22
might [8] - 6:23, 7:20, 62:11, 62:20, 65:9, 65:25, 66:13
millions [1] - 50:19
mind [2] - 42:8, 54:19
minute [7] - 9:7, 18:22, 19:23, 32:11, 41:1, 41:5, 45:1
minutes [6] - 25:12, 26:13, 43:15, 60:23, 61:11, 62:3
misleading [1] - 44:21
misrepresent [1] - 48:22
misrepresentation [4]

- 22:10, 42:23, 57:8, 57:13
misrepresentations [6] - 18:3, 45:13, 46:13, 46:21, 55:6, 56:21
misrepresented [2] - 22:12, 64:6
Missouri [1] - 33:1
misunderstood [1] - 61:8
MMS [98] - 1:5, 3:11, 9:9, 9:13, 9:14, 9:16, 9:17, 9:18, 10:12, 10:13, 10:23, 10:24, 10:25, 11:6, 11:11, 12:2, 12:7, 12:8, 13:20, 13:24, 14:12, 14:13, 14:16, 15:5, 15:9, 15:12, 15:24, 16:17, 16:18, 17:22, 17:23, 18:7, 18:8, 21:11, 23:7, 23:15, 29:24, 30:1, 31:9, 31:10, 31:11, 31:18, 32:5, 32:8, 32:11, 41:9, 42:13, 43:9, 43:24, 43:25, 46:18, 46:25, 47:2, 47:7, 47:9, 47:21, 48:6, 48:11, 48:13, 49:11, 49:13, 49:21, 49:22, 49:24, 50:4, 51:16, 51:22, 52:1, 52:2, 53:2, 53:5, 53:8, 53:20, 55:11, 55:14, 55:19, 57:6, 58:6, 58:22, 60:4, 61:20, 64:2, 64:3, 64:6, 64:15, 65:6, 65:7, 65:12, 65:22, 66:8, 66:18, 66:23, 67:13, 67:14
mobile [2] - 29:23
Mobility [1] - 8:11
models [2] - 15:17, 15:18
moment [2] - 9:12, 26:2
month [2] - 65:22, 66:7
months [1] - 44:17
MOORE [1] - 2:3
moot [1] - 6:15
MORGAN [2] - 1:19
MORRISON [1] - 2:6
most [5] - 11:12, 11:14, 20:18, 39:7, 52:16
motion [18] - 5:1,

5:21, 6:2, 6:7, 16:2, 18:21, 18:24, 23:19, 24:25, 25:9, 34:4, 34:9, 34:19, 41:16, 46:6, 60:19
**Motion** [21] - 4:1, 4:2, 5:11, 5:17, 5:18, 6:15, 7:12, 7:13, 12:18, 20:2, 34:5, 34:18, 35:14, 35:19, 36:1, 36:8, 43:21, 45:9, 58:13, 58:17, 65:10
**Motions** [8] - 12:4, 12:20, 33:24, 34:3, 34:13, 34:25, 65:14, 67:1
**motions** [6] - 3:25, 5:10, 12:20, 12:25, 25:4, 25:19
**moved** [2] - 35:9, 64:10
**moving** [1] - 68:21
**MR** [65] - 3:15, 3:17, 3:19, 3:21, 4:6, 4:9, 5:2, 5:8, 5:12, 5:16, 25:11, 25:15, 35:25, 36:4, 37:13, 37:16, 37:24, 38:3, 38:7, 38:12, 38:24, 39:5, 39:15, 39:20, 40:19, 40:24, 41:15, 43:10, 43:14, 43:18, 44:6, 44:19, 47:5, 47:10, 47:18, 47:23, 48:3, 48:14, 48:16, 48:24, 49:2, 49:7, 49:14, 49:17, 50:10, 50:14, 50:17, 50:22, 50:25, 51:5, 51:9, 51:12, 52:16, 54:13, 54:14, 55:22, 57:18, 57:21, 58:4, 58:10, 59:4, 59:23, 60:18, 60:22, 67:6, 69:12
**MS** [53] - 3:22, 4:11, 4:15, 4:18, 5:19, 6:5, 6:17, 6:22, 7:6, 7:11, 9:23, 10:2, 10:7, 10:21, 12:23, 12:25, 13:3, 13:7, 13:25, 14:6, 16:14, 19:15, 19:20, 20:5, 20:9, 20:25, 21:4, 21:6, 21:23, 22:7, 23:24, 25:17, 25:20, 27:20, 27:23, 28:1, 28:9, 28:12, 60:25, 61:3, 61:6, 61:9, 61:14, 61:16, 61:25, 62:15,

62:25, 65:8, 65:23, 66:9, 68:19, 69:2, 69:6
**multidistrict** [1] - 3:10
**multimedia** [1] - 66:6
**multiple** [4] - 11:5, 14:6, 32:16, 66:23
**must** [3] - 26:25, 35:12, 36:19

## N

**name** [5] - 4:8, 16:20, 40:4, 40:11, 42:23
**narrowest** [1] - 67:17
**nary** [1] - 18:11
**necessarily** [3] - 26:25, 32:20, 60:13
**necessary** [9] - 8:13, 19:1, 19:12, 19:13, 20:4, 21:13, 21:24, 45:20, 59:24
**need** [14] - 7:4, 18:9, 19:25, 20:1, 21:7, 21:12, 32:15, 40:18, 43:2, 44:23, 55:16, 56:9, 57:4, 64:3
**needed** [1] - 29:2
**negative** [1] - 15:20
**negotiate** [1] - 39:9
**negotiated** [1] - 54:4
**negotiating** [1] - 39:10
**network** [34] - 9:16, 10:6, 22:14, 22:22, 22:25, 23:6, 23:14, 23:16, 28:15, 28:22, 28:25, 29:1, 29:2, 29:10, 35:15, 43:11, 44:3, 44:17, 56:24, 57:1, 58:1, 58:7, 58:12, 58:20, 59:7, 59:9, 59:11, 59:15, 67:8, 67:14, 67:23, 68:6, 69:12
**Network** [1] - 28:14
**network's** [1] - 57:15
**networks** [1] - 29:22
**never** [12] - 8:18, 9:9, 9:18, 12:6, 33:14, 53:18, 54:10, 64:14, 64:15, 65:3, 65:10, 65:11
**new** [4] - 11:21, 24:21, 25:2, 29:14
**New** [1] - 33:1
**NEW** [4] - 1:7, 1:17, 2:4, 2:13
**next** [5] - 29:12, 46:22, 48:25, 49:4, 49:6

**Ninth** [2] - 33:4, 33:14
**NO** [1] - 1:6
**nobody** [3] - 23:14, 39:18, 40:5
**Nokia** [2] - 45:7, 46:3
**none** [4] - 15:25, 31:1, 62:16, 62:17
**nonsignators** [1] - 53:13
**nonsignatory** [7] - 38:22, 41:3, 42:3, 42:6, 46:7, 59:19, 60:15
**note** [1] - 56:18
**Note** [1] - 13:20
**noted** [1] - 53:14
**nothing** [9] - 23:14, 32:5, 34:6, 34:8, 42:17, 42:24, 46:14, 63:19, 69:15
**notice** [1] - 29:6
**notion** [1] - 29:6
**notwithstanding** [1] - 44:7
**November** [5] - 13:8, 34:18, 34:20, 35:7, 46:5
**nuanced** [1] - 7:23
**number** [4] - 32:25, 33:6, 33:14, 40:2
**numbered** [1] - 70:14

## O

**obligated** [8] - 13:17, 13:19, 14:20, 15:23, 16:17, 17:11, 21:10, 41:9
**obligates** [2] - 51:16, 51:18
**obligation** [2] - 63:25, 65:15
**obligations** [2] - 46:21, 46:22
**obscured** [1] - 33:21
**obtain** [2] - 24:5, 28:18
**obtaining** [1] - 24:8
**obviously** [2] - 29:16, 70:1
**occasions** [1] - 40:2
**occurred** [1] - 62:18
**oddness** [1] - 25:21
**OF** [3] - 1:2, 1:10, 1:16
**offer** [1] - 69:4
**OFFICES** [1] - 1:16
**OFFICIAL** [1] - 2:12
**Official** [2] - 70:12, 70:21

**often** [2] - 12:15, 39:24
**old** [2] - 19:5, 19:6
**omission** [1] - 46:25
**omissions** [3] - 45:3, 46:23, 56:21
**once** [1] - 40:13
**ONE** [1] - 1:20
**one** [31] - 3:25, 5:25, 11:8, 11:25, 12:6, 13:14, 16:16, 16:18, 24:23, 26:6, 30:24, 34:2, 35:16, 37:20, 38:4, 40:4, 45:5, 46:14, 51:6, 53:16, 53:17, 59:21, 60:2, 62:2, 66:13, 66:17, 68:1, 68:10, 69:19, 69:20
**ones** [1] - 45:1
**online** [1] - 56:14
**operating** [3] - 29:22, 32:6, 32:8
**opinion** [6] - 24:1, 59:12, 59:23, 62:3, 62:7, 62:8
**opportunity** [1] - 33:15
**oppose** [1] - 26:10
**opposed** [1] - 59:24
**opposing** [1] - 27:4
**opposite** [1] - 6:11
**opposition** [9] - 12:13, 12:18, 18:24, 33:24, 34:18, 34:22, 34:25, 35:13, 65:14
**ORAL** [1] - 1:10
**order** [6] - 16:8, 16:25, 35:8, 49:9, 55:17, 56:25
**ORDER** [1] - 3:4
**originally** [2] - 22:12, 28:2
**ORLEANS** [4] - 1:7, 1:17, 2:4, 2:13
**otherwise** [1] - 4:22
**ought** [3] - 5:11, 7:25, 17:3
**outrageous** [1] - 11:1
**overall** [1] - 30:7
**overlap** [1] - 25:19
**overlapping** [1] - 5:14
**overturn** [1] - 39:20
**own** [5] - 16:4, 23:1, 27:11, 36:6, 36:7

## P

**p.m** [1] - 70:6

**P.M** [1] - 1:7
**package** [2] - 66:15
**page** [12] - 12:17, 13:2, 13:4, 17:17, 17:20, 18:1, 29:12, 31:7, 62:5, 62:7, 62:8, 66:2
**paid** [13] - 46:9, 47:2, 47:7, 47:25, 48:2, 48:4, 49:19, 49:24, 50:4, 50:9, 50:13, 51:22, 52:2
**paragraph** [16] - 18:1, 20:21, 21:2, 21:5, 23:3, 23:4, 27:15, 27:20, 27:21, 28:12, 29:2, 29:11, 29:20, 43:23, 66:3
**paragraphs** [2] - 28:21, 28:22
**paraphrase** [3] - 14:7, 14:8, 14:9
**pardon** [1] - 15:20
**parse** [1] - 30:6
**part** [8] - 13:13, 13:14, 14:10, 22:22, 42:14, 43:22, 65:25, 68:17
**participating** [1] - 4:5
**particular** [4] - 14:17, 49:16, 52:17, 61:23
**particularly** [1] - 53:13
**parties** [9] - 29:4, 31:25, 35:8, 37:3, 39:9, 39:11, 57:3, 69:16
**partner** [1] - 15:22
**party** [21] - 8:13, 8:14, 12:15, 19:1, 19:4, 19:6, 19:8, 19:11, 19:12, 19:13, 21:14, 21:24, 27:3, 53:22, 54:18, 59:24, 60:2, 62:1
**party's** [4] - 12:14, 18:25, 19:4, 19:8
**passage** [1] - 17:20
**passages** [2] - 17:15, 35:12
**patent** [2] - 40:7
**path** [2] - 8:4, 9:1
**patient** [1] - 69:20
**pay** [8] - 46:25, 47:21, 49:21, 51:23, 52:7, 53:8, 62:19, 66:15
**pending** [1] - 63:10
**PENELOPE** [1] - 2:7
**Penelope** [1] - 3:22
**people** [2] - 41:11, 66:15
**Pepper** [2] - 70:11,

70:20
**PEPPER** [1] - 2:12
**Pepper's** [1] - 4:23
**perform** [2] - 10:4,
10:5
**perhaps** [1] - 9:5
**period** [9] - 9:24, 12:3,
13:15, 16:11, 28:16,
34:2, 34:21, 66:18
**periods** [2] - 34:1,
34:2
**permission** [3] -
12:12, 22:4, 27:14
**person** [1] - 38:5
**perspective** [2] - 10:3,
59:10
**philosophically** [1] -
39:1
**phone** [47] - 4:4, 4:7,
4:24, 9:11, 9:13,
9:15, 9:21, 10:4,
10:5, 12:6, 12:7,
22:15, 22:21, 23:14,
23:15, 42:12, 42:18,
42:19, 43:8, 43:9,
43:11, 44:4, 44:5,
44:8, 44:13, 45:3,
45:6, 45:9, 45:13,
45:16, 46:14, 53:20,
55:20, 55:24, 56:3,
56:4, 56:24, 57:2,
57:10, 57:24, 58:19,
65:4, 67:23, 68:5
**phone's** [1] - 57:14
**phones** [5] - 9:7,
22:13, 29:15, 42:13,
44:11
**pick** [2] - 27:16, 30:6
**picked** [1] - 4:22
**picture** [10] - 13:20,
13:21, 13:23, 14:3,
14:11, 14:21, 15:1,
15:8, 15:23, 55:15
**pictures** [5] - 9:9,
14:15, 14:16, 14:17,
42:14
**pieces** [1] - 30:7
**place** [1] - 27:12
**plaintiff** [10] - 9:3,
11:25, 13:1, 13:9,
27:22, 28:4, 37:19,
49:23, 57:11, 63:14
**Plaintiff's** [1] - 4:7
**plaintiff's** [2] - 30:5,
46:24
**PLAINTIFFS** [1] - 1:16
**plaintiffs** [123] - 5:25,
6:13, 6:16, 6:23,
7:15, 8:17, 8:19,
8:21, 8:23, 9:2, 9:24,

10:9, 10:16, 10:24,
10:25, 11:7, 11:11,
12:9, 12:11, 13:16,
13:20, 14:23, 14:25,
15:3, 15:11, 15:12,
16:23, 17:9, 17:19,
17:24, 18:2, 18:6,
18:10, 18:13, 18:21,
18:23, 19:9, 20:6,
20:14, 21:8, 22:3,
22:14, 22:18, 22:24,
23:6, 23:11, 23:21,
23:25, 24:2, 24:3,
24:5, 24:7, 24:18,
24:19, 24:20, 25:2,
25:5, 26:2, 26:9,
26:11, 26:13, 26:16,
26:22, 27:3, 27:7,
27:12, 28:3, 29:9,
30:9, 30:16, 30:19,
30:22, 31:13, 31:20,
32:5, 32:14, 32:17,
33:17, 33:22, 33:25,
34:11, 34:17, 34:20,
34:24, 35:4, 35:5,
35:6, 35:19, 36:6,
36:15, 37:5, 37:10,
41:22, 46:17, 49:11,
51:20, 52:7, 52:19,
52:25, 57:16, 58:25,
60:9, 61:18, 63:22,
63:23, 64:1, 64:5,
64:11, 64:16, 64:18,
64:23, 65:13, 67:3,
67:7, 67:9, 67:11,
67:24, 68:8, 68:24,
69:11
**plaintiffs'** [22] - 7:14,
7:21, 8:7, 12:18,
13:10, 13:11, 13:14,
16:1, 16:3, 17:25,
18:1, 20:20, 23:1,
24:3, 26:19, 26:25,
27:10, 30:5, 35:11,
36:9, 56:25, 69:20
**Plaintiffs'** [5] - 3:15,
3:18, 3:19, 12:12,
54:15
**plan** [8] - 11:14, 14:9,
15:1, 15:8, 49:10,
49:13, 55:15, 67:13
**plans** [2] - 11:6, 28:19
**play** [1] - 24:22
**plead** [1] - 67:11
**pleadings** [1] - 36:7
**plural** [3] - 28:17,
29:6, 29:21
**podium** [1] - 4:21
**point** [32] - 6:5, 7:23,
17:19, 18:10, 21:23,

25:13, 26:2, 26:24,
32:25, 37:6, 42:18,
42:21, 43:4, 44:22,
45:13, 46:14, 48:13,
48:25, 50:11, 55:9,
64:17, 66:14, 66:20,
67:5, 67:19, 67:20,
67:21, 68:8, 69:19,
69:25, 70:1
**pointed** [1] - 66:10
**points** [5] - 16:15,
18:20, 67:19, 67:20,
69:20
**politely** [1] - 8:6
**position** [2] - 8:21,
12:15
**post** [2] - 47:20, 54:6
**post-argument** [1] -
47:20
**post-Concepcion** [1] -
54:6
**poster** [1] - 33:4
**potentially** [2] - 6:23,
38:6
**power** [2] - 39:11,
39:23
**POYDRAS** [2] - 2:4,
2:12
**practical** [1] - 17:13
**PRACTICES** [1] - 1:5
**practices** [6] - 10:17,
11:17, 16:21, 42:23,
64:24, 69:13
**Practices** [1] - 3:11
**pre** [2] - 33:2, 33:13
**pre-Concepcion** [2] -
33:2, 33:13
**precise** [1] - 8:11
**precisely** [1] - 19:24
**predate** [1] - 13:12
**predecessor** [1] -
22:13
**predicate** [2] - 6:25,
18:6
**predicated** [1] - 64:19
**preempted** [1] - 58:15
**preemption** [2] -
58:14, 59:8
**prefer** [2] - 25:11, 69:8
**prejudice** [5] - 17:3,
20:18, 33:20, 35:6,
35:11
**prejudiced** [1] - 33:22
**Preovolos** [2] - 3:22,
5:3
**PREOVOLOS** [49] -
2:7, 3:22, 6:5, 6:17,
6:22, 7:6, 7:11, 9:23,
10:2, 10:7, 10:21,
12:23, 12:25, 13:3,

13:7, 13:25, 14:6,
16:14, 19:15, 19:20,
20:5, 20:9, 20:25,
21:4, 21:6, 21:23,
22:7, 23:24, 25:17,
25:20, 27:20, 27:23,
28:1, 28:9, 28:12,
60:25, 61:3, 61:6,
61:9, 61:16, 61:25,
62:15, 62:25, 65:8,
65:23, 66:9, 68:19,
69:2, 69:6
**presaged** [1] - 26:8
**presence** [1] - 7:1
**present** [2] - 35:7,
57:3
**PRESENT** [1] - 2:10
**presentation** [1] - 5:6
**pressing** [1] - 38:25
**presumably** [1] - 6:20
**presume** [1] - 42:4
**pretty** [9] - 8:7, 25:9,
25:24, 26:7, 44:15,
45:8, 47:20, 57:17,
60:20
**prevail** [2] - 51:20,
53:1
**preview** [1] - 20:11
**previous** [1] - 47:19
**PREVOLOS** [1] - 5:19
**price** [1] - 15:18
**primarily** [3] - 5:4, 6:7,
64:13
**primary** [6] - 15:25,
16:1, 16:3, 17:25,
18:1, 18:13
**principal** [1] - 60:8
**principles** [4] - 16:25,
36:17, 38:19, 69:11
**problem** [9] - 9:21,
10:3, 12:6, 40:13,
56:23, 57:1, 57:2,
57:23, 64:9
**problems** [5] - 12:3,
12:5, 23:9, 23:10,
32:16
**proceed** [11] - 3:8,
5:13, 5:22, 6:9, 6:20,
8:15, 18:20, 18:21,
19:7, 56:17, 60:3
**proceeding** [1] - 69:7
**proceedings** [3] -
34:13, 70:6, 70:14
**PROCEEDINGS** [3] -
1:10, 2:14, 3:1
**process** [1] - 33:19
**PRODUCED** [1] - 2:15
**product** [3] - 39:13,
44:4, 56:22
**Product** [1] - 22:9

**products** [1] - 22:11
**Professional** [1] -
70:12
**progress** [1] - 66:5
**progressive** [1] - 66:5
**prominently** [2] -
31:7, 31:22
**promised** [1] - 64:2
**promises** [1] - 29:24
**promising** [1] - 29:22
**promoted** [1] - 29:21
**proof** [2] - 49:18,
63:20
**proper** [1] - 7:10
**properly** [1] - 68:13
**propose** [1] - 19:9
**prove** [18] - 16:8,
16:12, 33:18, 41:7,
41:13, 47:1, 47:6,
49:4, 49:23, 50:3,
50:7, 50:10, 50:12,
52:5, 52:9, 53:4,
56:25, 62:13
**proves** [1] - 44:21
**provide** [48] - 9:17,
10:12, 10:13, 10:23,
10:24, 11:1, 11:9,
13:19, 13:21, 14:21,
15:23, 16:6, 16:17,
16:19, 17:11, 17:12,
17:22, 17:23, 20:15,
20:16, 21:11, 21:12,
23:7, 41:9, 47:19,
50:8, 50:21, 51:2,
51:3, 51:7, 51:16,
51:17, 51:19, 52:5,
52:7, 53:4, 55:11,
57:6, 57:7, 60:4,
61:19, 65:11, 67:13
**provided** [9] - 11:9,
31:10, 31:11, 38:10,
49:11, 49:13, 50:18,
52:1, 58:22
**provider** [2] - 45:4,
54:2
**provides** [5] - 12:11,
14:22, 15:15, 15:21,
31:2
**providing** [6] - 46:18,
47:15, 48:13, 58:6,
58:8, 67:14
**proving** [2] - 41:14,
49:12
**provision** [1] - 35:22,
37:3
**provisions** [2] - 38:17,
54:9
**PSC** [5] - 5:16, 36:1,
43:18
**pull** [2] - 30:6, 31:6

pulled [1] - 31:5
purchase [4] - 46:13, 54:22, 55:2, 55:5
purchased [1] - 52:19
purchasers [1] - 16:9
purchasing [4] - 15:1, 15:8, 28:16, 42:18
purely [1] - 62:1
purpose [2] - 37:9, 68:7
purposes [2] - 10:8, 54:18
pursuant [1] - 31:11
pursue [1] - 18:10
pursued [1] - 40:15
put [5] - 18:25, 39:17, 53:18, 54:4, 54:7

## Q

QUENTIN [1] - 2:3
Quentin [2] - 3:21, 5:2
questions [7] - 5:8, 55:10, 55:12, 55:13, 56:4, 60:19
quick [1] - 65:10
quickly [3] - 18:18, 21:25, 25:9
quiet [2] - 61:9, 61:10
quirk [1] - 27:24
quite [1] - 46:4
quote [2] - 22:15, 40:11

## R

raise [2] - 33:7, 38:14
raising [1] - 33:8
ran [3] - 64:18, 65:14
rapidly [1] - 65:15
RE [1] - 1:4
re [1] - 3:11
reach [1] - 32:6
read [4] - 17:15, 24:1, 35:12, 64:11
reading [8] - 13:2, 13:3, 13:4, 17:16, 17:20, 29:11, 49:9, 59:16
ready [1] - 20:2
real [1] - 20:2
realized [1] - 28:25
really [33] - 5:21, 7:3, 7:12, 7:13, 7:17, 7:22, 8:17, 8:19, 9:18, 11:15, 12:10, 14:11, 17:10, 18:18, 21:17, 26:21, 27:12,

32:15, 34:1, 36:12, 37:14, 39:7, 39:16, 45:19, 52:1, 54:5, 55:9, 57:5, 58:19, 61:10, 64:13, 67:6
Realtime [2] - 70:11, 70:20
reason [6] - 4:12, 37:14, 38:14, 41:25, 53:24, 58:7
reasonable [1] - 60:5
reasons [4] - 8:10, 33:25, 35:17, 67:1
receive [5] - 15:9, 15:12, 49:22, 50:4, 53:8
received [2] - 49:24, 52:14
recent [1] - 46:5
recently [1] - 40:4
recognize [1] - 37:2
record [3] - 13:5, 63:1, 70:14
Record [4] - 4:1, 4:3, 13:6, 13:8
RECORDED [1] - 2:14
recording [1] - 4:23
records [1] - 17:7
reduced [1] - 15:18
refer [4] - 11:7, 14:12, 14:13, 29:5
reference [1] - 42:6
referred [1] - 61:23
refers [1] - 27:21
refiled [1] - 24:20
refuted [1] - 17:11
regard [3] - 16:13, 52:23, 53:2
regarding [3] - 44:23, 45:3, 53:1
regardless [1] - 49:25
Registered [2] - 70:11, 70:12
rejuvenated [1] - 39:17
relate [1] - 36:9
related [2] - 42:25, 60:19
relates [1] - 28:5
release [1] - 9:13
released [1] - 9:11
relevant [9] - 31:3, 31:19, 32:2, 53:10, 53:24, 53:25, 62:11, 62:21
reliance [1] - 27:2
relief [4] - 16:1, 16:3, 17:25, 18:2
rely [6] - 24:14, 26:11, 26:19, 26:25, 35:12

relying [1] - 26:14
remedy [1] - 68:9
remember [2] - 38:9, 40:4
rental [1] - 31:9
repeated [1] - 15:16
reply [2] - 10:19, 21:9
REPORTER [1] - 2:12
Reporter [7] - 70:11, 70:12, 70:12, 70:20, 70:21
REPORTER'S [1] - 70:10
represent [1] - 65:20
representation [2] - 24:24, 43:12
representations [19] - 9:9, 12:2, 18:7, 42:17, 42:20, 44:12, 44:23, 45:2, 45:19, 46:1, 53:1, 55:4, 56:1, 56:2, 56:4, 65:11, 67:1, 67:2, 67:24
represented [8] - 42:15, 44:7, 44:9, 55:23, 58:5, 65:5
request [1] - 69:22
require [3] - 45:24, 59:18, 63:20
required [12] - 6:13, 10:11, 10:23, 17:21, 20:16, 28:18, 34:25, 49:11, 49:13, 51:23, 52:9, 69:3
requirement [2] - 8:8, 33:11
requires [1] - 60:13
rescue [1] - 18:5
resident [1] - 27:17
resolve [1] - 11:2, 55:17
resolved [3] - 21:25, 22:1, 38:13
respect [24] - 8:21, 9:9, 9:11, 11:13, 11:22, 12:6, 12:7, 23:22, 31:15, 36:8, 36:12, 44:19, 44:25, 45:1, 45:10, 46:16, 46:24, 51:25, 52:25, 59:12, 61:20, 64:15, 69:20
respond [2] - 60:24, 64:8
responded [3] - 12:9, 12:10, 33:15
response [2] - 38:8, 61:22
response) [2] - 9:23,

21:6
result [3] - 24:17, 28:15, 35:9
reversed [1] - 36:21
reviewed [1] - 51:15
revolutionary [1] - 44:13
rid [1] - 25:17
rise [1] - 3:7
rises [1] - 53:14
RMR [2] - 2:12, 70:20
Roberts [2] - 36:24, 36:25
role [1] - 8:2
roll [1] - 47:13
ROOM [1] - 2:12
Rule [7] - 4:2, 8:13, 8:16, 16:24, 17:3, 19:7, 20:18
rule [1] - 34:19
ruling [2] - 59:8, 63:4
run [2] - 18:2, 21:9
Ryan [1] - 27:22

## S

sale [4] - 42:18, 42:21, 45:13
SALES [1] - 1:5
Sales [1] - 3:11
sales [1] - 42:23
SAN [1] - 2:8
saved [1] - 25:24
Scalia's [1] - 38:8
school [1] - 30:13
SCOTT [2] - 1:16, 1:16
Scott [2] - 3:15, 26:12
second [6] - 27:6, 27:7, 33:11, 54:23, 59:21, 70:1
secret [1] - 60:12
see [7] - 20:17, 24:20, 30:3, 39:23, 50:17, 50:25, 64:3
seek [1] - 41:4
seeks [1] - 38:19
seem [2] - 40:17, 48:21
sees [2] - 63:25, 64:9
self [1] - 35:2
self-inflicted [1] - 35:2
selling [3] - 13:16, 14:24, 15:17
seminal [3] - 58:12, 58:18
send [2] - 14:16, 14:17
sense [5] - 6:7, 6:12, 20:19, 40:15, 55:22
sent [1] - 25:6

separate [7] - 7:23, 26:11, 46:18, 46:19, 47:22, 56:12, 64:6
September [4] - 9:20, 9:25, 13:11, 15:18
series [1] - 62:20
service [15] - 14:12, 16:10, 24:6, 28:15, 28:19, 39:14, 47:25, 48:2, 48:4, 48:6, 49:11, 50:18, 52:20, 53:19, 58:8
Service [7] - 10:11, 28:14, 31:8, 47:24, 48:2, 54:24
Services [22] - 7:15, 10:22, 11:13, 13:18, 16:16, 20:22, 26:4, 26:9, 26:14, 26:15, 27:9, 29:19, 30:20, 54:25, 55:7, 55:14, 55:16, 56:8, 56:10, 56:13, 64:23
services [15] - 13:22, 13:23, 14:9, 14:21, 15:2, 15:9, 15:10, 15:12, 16:6, 20:15, 20:16, 24:8, 41:9, 55:19, 57:6
services.. [1] - 13:20
session [1] - 3:7
sets [2] - 3:25, 24:11
shall [1] - 31:16
share [1] - 29:13
shield [1] - 35:22
shorthand [1] - 8:12
show [3] - 33:18, 33:20, 49:20
shown [1] - 27:2
side [1] - 19:16
signatories [3] - 26:3, 26:9, 38:15
signatory [3] - 27:3, 37:7, 42:5
signatory's [1] - 59:19
signed [2] - 56:13, 63:15
similar [5] - 5:15, 7:7, 57:17, 58:2, 58:9
simple [3] - 18:11, 26:24, 42:13
simpler [1] - 7:20
simply [1] - 18:7
sin [1] - 16:22
sitting [2] - 48:18, 66:20
situated [1] - 14:19
situation [1] - 32:1
situations [1] - 39:12
SLA [2] - 32:4, 32:18

**slash** [1] - 28:8
**small** [2] - 38:1, 38:4
**so-called** [1] - 28:7
**Software** [3] - 30:24, 31:13, 31:14
**software** [4] - 31:14, 31:16, 31:17, 53:19
**solely** [1] - 62:19
**someone** [1] - 4:4
**sometimes** [1] - 8:12
**somewhat** [3] - 20:8, 20:9, 36:20
**somewhere** [2] - 9:25, 10:20
**sorry** [7] - 4:8, 4:25, 13:4, 16:4, 55:22, 59:22, 66:5
**sort** [5] - 5:14, 20:6, 20:7, 37:5, 41:7
**sorts** [2] - 48:10, 48:17
**sought** [1] - 32:3
**speakers** [1] - 4:13
**speaking** [1] - 4:17
**specific** [1] - 60:19
**specifically** [1] - 57:5
**speculating** [1] - 66:21
**speculation** [1] - 66:21
**speed** [10] - 5:5, 22:21, 22:22, 24:23, 24:24, 56:23, 58:11, 58:12, 59:7, 59:14
**Sprint** [1] - 45:4
**squarely** [3] - 27:11, 33:7, 59:24
**stand** [1] - 10:10
**start** [2] - 7:25, 8:4
**started** [4] - 9:3, 11:23, 11:25, 48:13
**State** [1] - 70:12
**state** [3] - 24:22, 45:8, 56:7
**statement** [2] - 8:21, 10:19
**statements** [4] - 11:10, 17:5, 21:20, 66:19
**states** [2] - 33:1, 42:2
**States** [3] - 69:2, 70:13, 70:21
**STATES** [2] - 1:1, 1:11
**stay** [10] - 12:22, 34:12, 34:19, 34:20, 34:22, 35:3, 63:9, 63:16, 63:17, 69:8
**stayed** [4] - 12:25, 34:7, 34:16, 35:8
**Steering** [5] - 3:16,

3:18, 3:19, 4:7, 54:15
**STENOGRAPHY** [1] - 2:14
**Stephanie** [1] - 3:9
**still** [8] - 18:8, 23:13, 28:5, 34:7, 34:8, 43:10, 47:13, 61:12
**stipulate** [1] - 34:17
**stipulated** [1] - 34:12
**stipulates** [1] - 68:23
**Store** [5] - 31:8, 31:9, 31:10, 31:11, 56:14
**story** [9] - 23:6, 24:3, 30:5, 30:7, 67:10, 67:12, 67:13
**straight** [3] - 16:24, 63:11, 63:18
**straight-up** [2] - 63:11, 63:18
**STRANGE** [49] - 1:23, 1:24, 3:17, 35:25, 36:4, 37:13, 37:16, 37:24, 38:3, 38:7, 38:12, 38:24, 39:5, 39:15, 39:20, 40:19, 40:24, 41:15, 43:10, 44:19, 47:5, 47:10, 47:18, 47:23, 48:3, 48:14, 48:16, 48:24, 49:2, 49:7, 49:14, 49:17, 50:10, 50:14, 50:17, 50:22, 50:25, 51:5, 51:9, 51:12, 52:16, 54:13, 57:18, 57:21, 58:4, 58:10, 59:4, 59:23, 69:19
**Strange** [5] - 3:17, 5:16, 35:25, 59:22, 61:23
**STREET** [5] - 1:17, 1:21, 2:4, 2:7, 2:12
**strike** [1] - 58:2
**strikes** [2] - 57:16, 58:8
**strong** [1] - 44:15
**strongest** [1] - 27:13
**styled** [1] - 28:5
**subject** [2] - 5:20, 31:4
**submit** [1] - 47:23
**subsidiarily** [1] - 9:5
**substantial** [1] - 33:19
**sudden** [1] - 37:10
**sue** [1] - 59:2
**sued** [2] - 65:3, 65:4
**sufficient** [1] - 56:7
**sufficiently** [1] - 23:7
**suggest** [2] - 5:20, 10:22

**suggested** [2] - 24:14, 60:25
**suggestion** [1] - 11:1
**suing** [4] - 32:22, 51:12, 52:8
**suit** [1] - 41:3
**summer** [2] - 9:13, 12:8
**sun** [1] - 44:14
**support** [3] - 9:16, 10:6, 29:6
**supporting** [1] - 9:10
**supposed** [6] - 16:5, 50:8, 61:19, 61:20, 63:25
**supposedly** [1] - 16:22
**Supreme** [13] - 34:10, 36:22, 36:23, 37:1, 38:16, 39:2, 39:16, 63:7, 68:10, 68:15, 68:17, 69:2, 69:8
**surprise** [1] - 12:14
**surreply** [1] - 21:9
**survive** [1] - 42:25
**suspect** [3] - 66:3, 66:13, 68:16
**sword** [1] - 35:21
**system** [2] - 32:6, 32:8

**T**

**table** [1] - 44:14
**tactic** [1] - 8:8
**TAMPA** [2] - 1:20, 1:21
**technical** [1] - 57:5
**technically** [1] - 14:10
**technology** [1] - 29:23
**TELEPHONE** [1] - 2:10
**term** [4] - 8:14, 11:11, 15:5, 21:9
**terms** [6] - 5:14, 17:2, 17:22, 37:4, 68:24, 70:3
**tests** [1] - 26:20
**text** [2] - 66:6, 66:8
**textbook** [1] - 30:11
**texting** [1] - 9:9
**THE** [118] - 1:11, 1:16, 2:3, 3:7, 3:8, 3:10, 3:13, 3:24, 4:8, 4:10, 4:12, 4:16, 4:19, 5:7, 5:10, 5:14, 6:3, 6:10, 6:18, 7:5, 7:7, 9:21, 9:24, 10:3, 10:19, 12:22, 12:24, 13:2, 13:5, 13:23, 14:5, 16:7, 19:11, 19:16,

20:2, 20:7, 20:24, 21:2, 21:5, 21:22, 22:5, 23:23, 25:10, 25:14, 25:16, 25:18, 27:18, 27:21, 27:25, 28:7, 28:11, 35:23, 36:3, 37:8, 37:14, 37:22, 37:25, 38:4, 38:8, 38:23, 39:1, 39:6, 39:16, 39:22, 40:23, 41:6, 43:7, 43:12, 43:17, 44:2, 44:15, 47:3, 47:9, 47:12, 47:22, 48:1, 48:9, 48:15, 48:17, 49:1, 49:6, 49:8, 49:15, 50:7, 50:12, 50:15, 50:20, 50:23, 51:2, 51:7, 51:10, 52:15, 54:11, 55:21, 57:9, 57:20, 58:2, 58:5, 58:25, 59:21, 60:21, 60:23, 61:2, 61:4, 61:8, 61:12, 61:15, 61:22, 62:13, 62:24, 65:3, 65:20, 66:7, 68:16, 69:1, 69:4, 69:17, 70:5
**themselves** [2] - 44:9, 54:5
**theories** [3] - 25:18, 42:10, 46:16
**theory** [9] - 6:15, 29:7, 30:5, 40:4, 40:10, 46:20, 52:9, 52:10, 52:18
**therefore** [2] - 51:17, 59:13
**they've** [2] - 15:4, 30:4
**thinking** [2] - 6:11, 68:17
**third** [1] - 17:14
**thousands** [1] - 38:1
**three** [7] - 16:15, 49:8, 60:23, 61:11, 61:22, 62:3, 63:24
**THURSDAY** [2] - 1:7, 3:2
**timed** [1] - 26:12
**timeframe** [1] - 13:12
**TO** [1] - 3:4
**today** [7] - 4:20, 9:1, 10:9, 10:10, 12:1, 65:17, 67:15
**together** [2] - 29:8, 30:8
**took** [2] - 22:19, 36:24
**top** [1] - 31:6
**totally** [1] - 62:25
**transaction** [3] -

54:22, 54:23, 55:4
**transactions** [3] - 54:20, 62:16, 62:17
**transcript** [1] - 70:14
**TRANSCRIPT** [2] - 1:10, 2:14
**tried** [1] - 42:11
**true** [6] - 35:10, 41:18, 46:17, 62:10, 67:13, 70:13
**try** [16] - 4:13, 7:23, 14:3, 17:9, 21:8, 22:3, 22:24, 30:6, 30:16, 30:22, 36:15, 53:19, 54:9, 54:15, 58:10, 63:22
**trying** [4] - 12:1, 18:4, 37:9, 68:24
**turn** [1] - 52:21
**turned** [2] - 44:2, 44:9
**twice** [8] - 22:13, 22:16, 57:11, 57:16, 57:24, 57:25, 59:2
**two** [36] - 3:25, 5:10, 5:25, 9:7, 12:3, 12:5, 16:15, 16:18, 17:21, 18:13, 22:5, 22:6, 22:7, 24:22, 25:19, 26:10, 26:20, 30:23, 33:18, 33:23, 33:25, 34:1, 37:2, 37:3, 38:15, 39:9, 39:11, 53:17, 53:20, 54:19, 56:16, 60:11, 64:14, 64:18, 69:20
**tying** [1] - 60:9
**typo** [1] - 27:25

**U**

**ultimately** [1] - 5:20
**under** [28] - 4:2, 6:14, 8:13, 8:16, 16:24, 17:3, 17:22, 19:7, 24:13, 31:16, 32:12, 33:13, 37:3, 37:4, 37:12, 37:17, 44:13, 46:21, 52:6, 52:8, 52:10, 58:14, 58:15, 61:2, 62:9, 68:23, 69:18, 69:24
**underlying** [1] - 67:9
**underpinnings** [1] - 69:14
**undisputed** [7] - 11:5, 21:15, 21:18, 47:25, 50:18, 62:17, 66:22
**unenforceable** [1] - 33:4

**unfairness** [1] - 39:23
**uniform** [1] - 23:5
**uniformly** [1] - 27:1
**United** [3] - 69:2, 70:13, 70:21
**UNITED** [2] - 1:1, 1:11
**unless** [4] - 11:20, 19:14, 38:24, 60:18
**unlike** [1] - 67:16
**Unlimited** [2] - 66:4, 66:7
**unto** [1] - 21:9
**up** [24] - 4:21, 4:22, 5:5, 5:11, 5:21, 7:13, 12:12, 20:14, 23:7, 29:2, 29:8, 34:15, 41:5, 43:19, 44:18, 48:13, 48:19, 55:25, 59:8, 62:2, 63:11, 63:18, 70:2
**update** [1] - 32:7
**updates** [1] - 32:6
**upheld** [2] - 26:5, 46:6
**upload** [2] - 32:10, 53:19
**uploaded** [3] - 32:7, 32:8, 32:9
**urge** [1] - 63:4
**Urquhart** [5] - 3:21, 5:1, 5:2, 60:25, 61:6
**URQUHART** [5] - 2:3, 2:3, 3:21, 5:2, 5:8
**usage** [1] - 23:8
**users** [4] - 13:22, 14:22, 14:25, 15:8

## V

**value** [1] - 38:4
**various** [2] - 17:4, 17:5
**vehemently** [1] - 29:17
**version** [1] - 62:6
**versions** [3] - 11:5, 14:6, 21:19
**versus** [1] - 45:7
**VIA** [1] - 2:10
**video** [3] - 15:1, 15:8, 15:23
**view** [2] - 5:24, 6:6
**vindicated** [1] - 68:13
**VIRGINIA** [1] - 2:10
**Virginia** [2] - 4:6, 4:9
**virtually** [1] - 22:2
**vis-à-vis** [1] - 8:2

## W

**Wait** [1] - 9:7
**wait** [1] - 35:4
**waiver** [5] - 32:14, 32:16, 33:8, 33:11, 33:18
**waivers** [1] - 33:3
**wants** [5] - 25:17, 36:14, 42:25, 49:25, 61:9
**Ware** [24] - 19:21, 19:24, 21:25, 22:1, 22:5, 22:10, 22:17, 22:20, 23:18, 24:11, 25:1, 25:6, 30:14, 30:18, 31:22, 56:15, 56:16, 57:22, 58:13, 59:5, 63:3, 63:11, 67:6, 68:4
**Ware's** [4] - 24:1, 59:10, 59:23, 60:7
**ways** [4] - 14:16, 34:14, 39:8, 62:20
**Weingarten** [12] - 40:22, 41:21, 42:1, 46:2, 46:4, 49:18, 53:14, 59:17, 61:23, 61:25, 62:2, 67:16
**Weisblatt** [8] - 52:17, 61:25, 62:25, 63:1, 63:2, 63:3, 63:5, 67:16
**Westlaw** [3] - 42:2, 62:7, 62:8
**Westmoreland** [6] - 40:25, 41:1, 41:21, 42:4, 46:3, 61:24
**whatsoever** [1] - 35:6
**whence** [2] - 23:9
**wherein** [1] - 67:6
**WHEREUPON** [1] - 70:6
**White** [3] - 63:8, 63:13, 63:16
**whole** [4] - 20:1, 59:8, 59:10, 60:8
**wholly** [1] - 69:12
**wide** [1] - 36:15
**willing** [2] - 67:3, 69:1
**WILSHIRE** [1] - 1:24
**window** [1] - 13:10
**Wireless** [25] - 7:15, 10:11, 10:22, 11:13, 13:18, 16:16, 20:22, 26:3, 26:4, 26:9, 26:14, 26:15, 27:9, 28:14, 29:19, 30:20, 54:24, 54:25, 55:6,

55:13, 55:16, 56:8, 56:9, 56:13, 64:23
**wireless** [2] - 24:8, 28:18
**wish** [4] - 18:9, 18:21, 40:11, 54:7
**wishful** [1] - 68:17
**woefully** [1] - 44:20
**word** [3] - 11:6, 12:7, 39:3
**words** [4] - 16:4, 16:7, 51:12, 65:3
**workable** [1] - 42:12
**works** [1] - 48:9
**worth** [2] - 19:22, 23:2
**wound** [1] - 35:2
**wrapped** [1] - 29:19
**writ** [1] - 36:23
**written** [1] - 42:7
**wrongdoing** [2] - 17:13, 20:15
**wrongful** [2] - 17:8, 21:17
**wrongfully** [1] - 41:11
**WSA** [35] - 7:22, 11:4, 11:5, 11:13, 13:21, 14:5, 14:6, 14:7, 14:10, 14:21, 16:5, 17:4, 17:6, 17:22, 21:19, 24:7, 24:15, 26:18, 26:20, 26:22, 29:9, 30:9, 30:13, 31:12, 32:13, 35:12, 35:15, 35:20, 41:8, 49:16, 53:10, 63:15, 64:1, 64:2, 65:15

## Y

**year** [2] - 9:11, 60:12
**years** [3] - 9:19, 39:18, 60:11
**yes-or-no** [2] - 52:2, 52:3